**NELSON MULLINS RILEY & SCARBOROUGH LLP**
James C. Wald (Bar No. 229108)
Pacific Gateway
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone: 424-221-7459
Email: james.wald@nelsonmullins.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Brook B. Andrews (*pro hac vice application forthcoming*)
Meridian Building
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: 803-255-5508
Email: brook.andrews@nelsonmullins.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Joshua Redelman (*pro hac vice application forthcoming*)
Heritage Plaza
1111 Bagby Street, Suite 2100
Houston, TX 77002
Telephone: 346-646-5889
Email: joshua.redelman@nelsonmullins.com

*Attorneys for Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon, and LlamaLab, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. | Case No. 2:26-CV-00321-FMO-RAO <br><br> **DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S NOTICE OF MOTION AND MOTION TO SEVER** |

Health Gorilla, Inc.; RavillaMed
PLLC; Avinash Ravilla; Shere
Saidon; LlamaLab, Inc.; Unique Medi
Tech LLC, d/b/a Mammoth Dx;
Mammoth Path Solution, LLC;
Mammoth Rx, Inc.; Ryan Hilton;
Daniel Baker; Max Toovey; Unit 387
LLC; SelfRx, LLC d/b/a
Myself.Health; Critical Care Nurse
Consultants, LLC d/b/a GuardDog
Telehealth; Hoppr, LLC; Meredith
Manak, and DOES 1-100,

Defendants.

Date:  April 16, 2026
Time: 10:00 a.m.
Ctrm:  6D

*[Filed concurrently with Proposed Order]*

Complaint Filed:  January 13, 2026

1

## **NOTICE OF MOTION**

2

PLEASE TAKE NOTICE that, on April 16, 2026 at 10:00 a.m., or as soon

3

thereafter as the matter may be heard, Defendants Dr. Avinash Ravilla, RavillaMed,

4

PLLC, Shere Saidon, and LlamaLab, Inc. (together the "RavillaMed Defendants"),

5

will bring for hearing this motion to sever. This motion will be made before the

6

Honorable Fernando M. Olguin, United States District Judge, Courtroom 6D, located

7

in the First Street Federal Courthouse, 350 W. 1st Street, Los Angeles, CA 90012.

8

The RavillaMed Defendants move to sever the claims against them from the

9

claims against the Mammoth Defendants and the Unit 387 Defendants under Federal

10

Rules of Civil Procedure 20(a)(2) and 21, or, in the alternative, to order separate trials

11

under Rules 20(b) and 42(b), on the grounds that the three defendant groups are

12

misjoined and that a joint trial would result in substantial prejudice to the RavillaMed

13

Defendants.

14

This motion is made upon this Notice, the attached Memorandum of Points and

15

Authorities, and all pleadings, records, and other documents on file with the Court in

16

this action, and upon such oral argument as may be presented at the hearing of this

17

motion. This motion is made following the conference of counsel pursuant to Local

18

Rule 7-3 which was held on February 13, 2026.

19

Dated:  February 25, 2026          Respectfully submitted,

20

21

By:   /s/James C. Wald

22

James C. Wald (Bar No. 229108)
*Attorney for Defendants RavillaMed PLLC,*
*Avinash Ravilla, Shere Saidon, and LlamaLab,*
*Inc.*

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES ..................................1

   INTRODUCTION ...........................................................................................1

   BACKGROUND .............................................................................................2

      I.     The Complaint Alleges Three Separate Schemes by Three
           Unrelated Groups. .............................................................................3

           A.    The RavillaMed Defendants ...................................................3

           B.    The Mammoth Defendants ....................................................3

           C.    The Unit 387 Defendants ......................................................4

      II.    The Complaint's Own Structure Confirms the Independence of the
           Three Groups. .....................................................................................5

   ARGUMENT ...................................................................................................6

      I.     Plaintiffs' Claims Against the Three Defendant Groups Are
           Misjoined. ..........................................................................................7

           A.    Independently Using the Same Platform to Commit Separate
                Wrongs Does Not Satisfy Rule 20(a)(2) ...............................7

           B.    This Court Has Already Decided This Misjoinder Issue on
                 Nearly Identical Facts. ..........................................................8

           C.    Plaintiffs' "Hub" Theory Fails ............................................11

           D.    The Joinder is Improper ......................................................13

      II.    Even if Joinder Were Proper, the Court Should Exercise Its
           Discretion to Sever or Order Separate Trials. ...............................14

           A.    The Prejudice to the RavillaMed Defendants is Concrete and
                Substantial ...........................................................................14

           B.    Severance Will Promote, Not Hinder, Judicial Economy ...17

   CONCLUSION ..............................................................................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AF Holdings, LLC v. Does 1-1058,*
752 F.3d 990 (D.C. Cir. 2014)..................................................................7, 13

*Allstate Ins. Co. v. Baturov,*
544 F. Supp. 3d 264 (E.D.N.Y. 2021)..............................................................9

*Bravado Int'l Grp. Merch. Servs. v. Cha,*
No. CV 09-9066-PSG-CWx, 2010 WL 2650432 (C.D. Cal. June 30,
2010) ...............................................................................................................8, 10

*Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.,*
No. 1:09-cv-480 OWW GSA, 2009 WL 3857417 (E.D. Cal. Nov. 17,
2009) ......................................................................................................7, 18, 19

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271 (9th Cir. 2000) ........................................................................6, 14

*Corley v. Google, Inc.,*
316 F.R.D. 277 (N.D. Cal. 2016) ...............................................................16, 18

*Coughlin v. Rogers,*
130 F.3d 1348 (9th Cir. 1997) ......................................................................6, 7

*Desert Empire Bank v. Ins. Co. of N. Am.,*
623 F.2d 1371 (9th Cir. 1980) ..........................................................................14

*DIRECTV v. Loussaert,*
218 F.R.D. 639 (S.D. Iowa 2003).......................................................................7

*Fashion Avenue Sweater Knits, LLC v. A'Gaci, LLC,*
No. CV 20-07165-CJC (JEMx), 2020 WL 13248958 (C.D. Cal. Oct. 26,
2020) ...............................................................................................................8, 12

*Friedman v. Live Nation Merch., Inc.,*
833 F.3d 1180 (9th Cir. 2016) ..........................................................................12

*Hard Drive Prods., Inc. v. Does 1-30,*
No. 2:11cv345, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011)..........................14

RavillaMed Defendants' Motion to Sever

*Hard Drive Prods., Inc. v. Does 1-188*,
     809 F. Supp. 2d 1150 (N.D. Cal. 2011)...............................................7, 13, 14, 18

*In re EMC Corp.*,
     677 F.3d 1351 (Fed. Cir. 2012) .......................................................................6, 7

*Jones v. CertifiedSafety, Inc.*,
     No. 17-cv-02229-EMC, 2019 WL 758308 (N.D. Cal. Feb. 20, 2019) ..............14

*Mosley v. Gen. Motors Corp.*,
     497 F.2d 1330 (8th Cir. 1974) ...............................................................................6

*Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*,
     497 F.2d 1151 (2d Cir. 1974) ...............................................................................18

*Padron v. Onewest Bank*,
     No. 2:14-CV-01340-ODW, 2014 WL 1364901 (C.D. Cal. Apr. 7, 2014) ..........7

*Rubio v. Monsanto Co.*,
     181 F. Supp. 3d 746 (C.D. Cal. 2016)...................................................................7

*Spaeth v. Mich. State Univ. Coll. of Law*,
     845 F. Supp. 2d 48 (D.D.C. 2012)......................................................................14

*State Comp. Ins. Fund v. Drobot*,
     No. SACV 13-956 AG (CWx), 2014 WL 12586244, at *4 (C.D. Cal. Jan. 28,
     2014) ....................................................................................................................10

*United States v. Martin*,
     4 F.3d 757 (9th Cir. 1993) ...................................................................................11

*United States ex rel. Silingo v. WellPoint, Inc.*,
     904 F.3d 667 (9th Cir. 2018) ...............................................................................11

*United States ex rel. Switzer v. Wood*,
     No. CV 18-08118-CJC (ASx), 2023 WL 6370917 (C.D. Cal. May 16,
     2023) ...................................................................................8, 9, 11, 12, 15

*Williams v. King*,
     875 F.3d 500 (9th Cir. 2017) ............................................................................7, 8

*Wynn v. Nat'l Broad. Co.*,
     234 F. Supp. 2d 1067 (C.D. Cal. 2002) ................................................................8

RavillaMed Defendants' Motion to Sever

## Rules

Fed. R. Civ. P. 20 ................................................................................................7, 8, 13

Fed. R. Civ. P. 20(a) ................................................................................................6, 14

Fed. R. Civ. P. 20(a)(2) ................................................................1, 6, 7, 12, 13, 19

Fed. R. Civ. P. 20(b) ................................................................1, 6, 14, 15, 19

Fed. R. Civ. P. 21 ................................................................................................1, 6, 19

Fed. R. Civ. P. 42(b) ................................................................................1, 15, 19

Local Rule 7-3 ................................................................................................1

## Statutes

18 U.S.C. § 371 ................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Plaintiffs' Complaint sweeps three entirely unrelated groups of defendants into a single lawsuit and asks this Court to treat them as participants in a common scheme. They are not. The RavillaMed Defendants, the Mammoth Defendants, and the Unit 387 Defendants are separate organizations, with separate ownership, separate personnel, separate business models, and separate timelines of alleged conduct. They had no coordinated plan, no conspiracy, and no communication with one another. As Plaintiffs allege, they had no business relationship of any kind.

The sole thread Plaintiffs rely upon to stitch these groups together into one case is that each happened to use Defendant Health Gorilla as its technical gateway to access patient records through the Carequality and TEFCA interoperability frameworks. But as this Court has held, independent actors who use the same intermediary should not become defendants in a single action when their transactions are unrelated to each other.

Plaintiffs' own Complaint is telling. It is organized into three separate, self-contained sections, one for RavillaMed, one for Mammoth, and one for Unit 387. Because, as Plaintiffs must concede, the alleged conduct of each group is separate. Indeed, Plaintiffs plead their fraud claims separately against each group, because the transactions are separate. Nowhere does the Complaint allege that any member of one group coordinated with, communicated with, or had any business relationship with any member of another group. The Complaint's own structure all but concedes that these claims do not arise from the same transaction or occurrence.

The consequences of this misjoinder are not abstract. If forced into a single trial, the RavillaMed Defendants will be made to sit alongside the Mammoth Defendants, whose principal, Daniel Baker, has been convicted in federal court for conspiring to defraud the United States of America and is subject to an SEC enforcement bar. The RavillaMed Defendants have no connection to Baker. They should not be forced to defend themselves against the backdrop of this record, in a proceeding that requires a

1

factfinder to hold three entirely separate fact patterns in mind at once, with the attendant risks of evidentiary spillover and guilt by association.

Judicial economy favors separation, not mass joinder. A single trial of three unrelated fraud schemes will not be more efficient than three focused proceedings. It will be an unwieldy exercise in which the Court must effectively conduct three separate mini-trials under one caption, with different witnesses, different documents, and different defenses for each group. The RavillaMed Defendants respectfully move this Court to sever the three defendant groups into separate actions.[1]

## BACKGROUND

Plaintiffs Epic Systems Corporation ("Epic"), OCHIN, Inc. ("OCHIN"), Reid Hospital & Health Care Services, Inc. ("Reid"), Trinity Health Corporation ("Trinity"), and UMass Memorial Health Care, Inc. ("UMass") are participants in two national health information exchange networks: the Carequality framework and the Trusted Exchange Framework and Common Agreement ("TEFCA"). ECF No. 1 ¶¶ 6, 7, 115–19. Within the Carequality framework, Epic serves as an "Implementer," facilitating access to the exchange network for its Carequality Connections, including OCHIN, Reid, Trinity, and UMass. *Id.* ¶¶ 6, 116–19. Within the TEFCA framework, Epic serves as a Qualified Health Information Network ("QHIN"), performing the same function. *Id.* ¶¶ 115–19.

Defendant Health Gorilla, Inc. ("Health Gorilla") is a separate Implementer and QHIN that provides access to the Carequality and TEFCA frameworks for its own customers. ECF No. 1 ¶ 31. It is through Health Gorilla that the three defendant groups at issue in this motion gained access to the interoperability networks. *Id.*

---

[1] The RavillaMed Defendants are filing a simultaneous motion to dismiss, based on Plaintiffs' failure to follow contractually-obligated dispute resolution procedures. This motion is presented to the Court in the alterative.

## I.     The Complaint Alleges Three Separate Schemes by Three Unrelated Groups.

Plaintiffs' Complaint names over a dozen defendants across three distinct groups. ECF No. 1 ¶¶ 32–53. The Complaint's own factual allegations confirm that these are three independent enterprises with no connection to one another.

### A.     The RavillaMed Defendants

Defendant RavillaMed PLLC is a Pennsylvania professional limited liability company founded by Defendant Avinash Ravilla, D.O. ECF No. 1 ¶¶ 32, 143. Co-Defendant Shere Saidon and Defendant LlamaLab, Inc., allegedly provided technical support for RavillaMed's integration into the interoperability frameworks. *Id.* ¶¶ 33-35, 144. Plaintiffs allege that RavillaMed first appeared in the Carequality directory on August 23, 2024, and obtained patient records from October 2024 through December 2025, purportedly for treatment purposes but allegedly for the commercial benefit of selling records to litigation-related third parties through LlamaLab. *Id.* ¶¶ 144, 146, 157. The corporate RavillaMed Defendants, RavillaMed and LlamaLab are based in Pennsylvania and New York, respectively, and the individual RavillaMed Defendants, Mr. Ravilla and Mr. Saidon, are domiciled in Florida and New York, respectively. *Id.* ¶¶ 32–35.

### B.     The Mammoth Defendants

Defendants Unique Medi Tech LLC d/b/a Mammoth Dx, Mammoth Path Solution LLC, Mammoth Rx, Inc., Ryan Hilton, Daniel Baker, and Max Toovey are entirely separate entities and individuals based in Lake Forest, California. ECF No. 1 ¶¶ 37–43. They are alleged to have obtained patient records from July 2024 to October 2025 through a different set of representations, with records allegedly funneled through Mammoth Rx and Nationwide Healthcare Provider Corp to attorneys and social security claimant representatives. *Id.* ¶¶ 159–71. The individual Mammoth Defendants, Hilton, Baker, and Toovey, have no alleged connection to Ravilla, Saidon, RavillaMed, or LlamaLab. Defendant Baker has a federal criminal conviction

1   for conspiracy to defraud the United States and is subject to an SEC enforcement bar.

2   *Id.* ¶ 165.

3   **C.    The Unit 387 Defendants**

4   Defendants Unit 387 LLC, Hoppr LLC, SelfRx LLC d/b/a Myself.Health,

5   Critical Care Nurse Consultants LLC d/b/a GuardDog Telehealth, and Meredith

6   Manak constitute a third distinct group, based in Texas and Massachusetts. ECF No.

7   1 ¶¶ 44–49. Unit 387 entered the Carequality directory in September 2022, over two

8   years before RavillaMed first appeared, and operated as a "candidate implementer"

9   that onboarded its own downstream connections onto the framework. *Id.* ¶¶ 172–83.

10  Unlike RavillaMed and Mammoth, who accessed the frameworks as end users

11  through Health Gorilla, Unit 387 functioned as an intermediary in its own right,

12  onboarding its own downstream connections, including SelfRx and GuardDog, onto

13  the Carequality framework. ECF No. 1 ¶¶ 172-76. Unit 387's relationship to Health

14  Gorilla was thus structurally different from that of the other two groups, further

15  undermining any claim that the three groups participated in a common series of

16  transactions. Manak is alleged to have operated Unit 387 and Hoppr as a vehicle for

17  selling patient records to law firms and insurance companies. *Id.* ¶ 182.[2] The Unit 387

18  Defendants have no alleged connection to the RavillaMed Defendants or the

19  Mammoth Defendants.

---

24          [2] Each group allegedly funneled records through different downstream
25  channels for different commercial purposes. *Compare* ECF No. 1 ¶ 157 (RavillaMed
    transmitted records to LlamaLab, which allegedly sold them to trial attorneys), *with*
26  *id*. ¶ 167 (Mammoth disclosed records to Nationwide Healthcare Provider Corp
    and/or Mammoth Rx for sale to social security claimant representatives), *and id*. ¶
27  173 (Manak founded Hoppr, which 'instantly aggregates all patient records' for law
28  firms and insurance companies).

4

## II.    The Complaint's Own Structure Confirms the Independence of the Three Groups.

Plaintiffs' allegations in the Complaint confirm the Defendants are independent entities. For instance, the factual allegations are organized into discrete, self-contained sections: Section A addresses the RavillaMed Defendants (ECF No. 1 ¶¶ 142–58); Section B addresses the Mammoth Defendants (*Id*. ¶¶ 159–71); and Section C addresses the Unit 387 Defendants (*Id*. ¶¶ 172–83). None of these sections alleges any coordination, communication, or shared plan among the three groups. There is no allegation that any member of one group coordinated with, communicated with, or had any business relationship with any member of another group.

The causes of action mirror this separation. Plaintiffs assert separate fraud claims against each group: the First Cause of Action (Fraud) is directed at Health Gorilla and the RavillaMed Defendants; the Second Cause of Action (Fraud) at Health Gorilla and the Mammoth Defendants; and the Third Cause of Action (Fraud) at Health Gorilla and the Unit 387 Defendants. ECF No. 1 ¶¶ 198–251. The aiding-and-abetting fraud claims are likewise separately pleaded against each group. *Id.* ¶¶ 252–75. Even Plaintiffs' breach of contract and California Unfair Competition Law claims, while nominally directed at all three groups, rest on the allegation that each group independently submitted fraudulent records requests through its own separate course of dealing. *Id.* ¶¶ 276–301, 302–19.

The only allegation Plaintiffs offer to connect the three groups is that Health Gorilla served as each group's Implementer or QHIN, the technical intermediary through which each separately accessed the interoperability frameworks. ECF No. 1 ¶ 184 ("The common thread between Defendants RavillaMed, Mammoth, and Unit 387 . . . is Defendant Health Gorilla."). But this is an admission that Health Gorilla is a common platform, not a common transaction. Each group independently contracted with Health Gorilla, independently accessed the frameworks, independently obtained patient records, and independently channeled those records to its own separate

downstream entities for its own separate commercial purposes. *Id.* ¶¶ 157, 167, 170, 182. These are three separate pipelines operated by three separate enterprises. They do not become a single transaction or occurrence because the on-ramp happened to be the same.

## ARGUMENT

Under Federal Rule of Civil Procedure 20(a)(2), a plaintiff cannot join defendants together in a single action unless the plaintiff's allegations satisfy two requirements: (A) the plaintiff's right to relief against the defendants arises "out of the same transaction, occurrence, or series of transactions or occurrences," and (B) there is "any question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2). The plaintiff must satisfy both requirements. *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) ("[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact."); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974); *In re EMC Corp.*, 677 F.3d 1351, 1357 (Fed. Cir. 2012) ("In the present context the mere fact that infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise common questions of claim construction.").

Where defendants are improperly joined, Rule 21 authorizes the Court to sever any claim against a party or to dismiss all but the first-named defendant without prejudice. Fed. R. Civ. P. 21; *Coughlin*, 130 F.3d at 1350. Additionally, even where joinder satisfies Rule 20(a)'s threshold requirements, the Court retains discretion under Rule 20(b) to order separate trials or other relief "to protect a party against embarrassment, delay, expense, or other prejudice." Fed. R. Civ. P. 20(b). The Ninth Circuit has held that "even once [the Rule 20(a)] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).

I.   **Plaintiffs' Claims Against the Three Defendant Groups Are Misjoined.**

   A.   **Independently Using the Same Platform to Commit Separate Wrongs Does Not Satisfy Rule 20(a)(2).**

As for the first required element for joinder, the Ninth Circuit has interpreted the "same transaction or occurrence" requirement to demand "similarity in the factual background of a claim." *Coughlin*, 130 F.3d at 1350; *see Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 756 (C.D. Cal. 2016) (citing *Padron v. Onewest Bank*, No. 2:14-CV-01340-ODW, 2014 WL 1364901, at *2 (C.D. Cal. Apr. 7, 2014) (quoting *Coughlin*, 130 F.3d at 1350)); *In re EMC Corp.*, 677 F.3d at 1358 (To join independent defendants together in one case, there must be "a logical relationship between the separate causes of action," which requires "substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant."); *Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, No. 1:09-cv-480 OWW GSA, 2009 WL 3857417, at *2 (E.D. Cal. Nov. 17, 2009) (The rule requires that "parties must assert rights, or have rights asserted against them, that arise from related activities[,] a transaction or an occurrence or a series thereof.")

Federal courts across the country repeatedly hold that "[s]imply committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) (plaintiff misjoined over a thousand defendants who allegedly used the same file-sharing network to infringe the same copyrighted work); *see*, *e.g.*, *DIRECTV v. Loussaert*, 218 F.R.D. 639, 642-43 (S.D. Iowa 2003) (seven defendants who allegedly purchased illegal satellite access devices through a single California distribution center were misjoined because they "acted independently, each for his own individual purpose" and "[n]o defendant knew of the others' transactions or purposes"); *see Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1161-64 (N.D. Cal. 2011) (collecting cases), *disapproved on other grounds by Williams v. King*, 875 F.3d 500, 505 (9th Cir. 2017).

This Court routinely dismisses misjoined defendants who merely engaged in similar transactions. *See Fashion Avenue Sweater Knits, LLC v. A'Gaci, LLC*, No. CV 20-07165-CJC (JEMx), 2020 WL 13248958, at *1 (C.D. Cal. Oct. 26, 2020) (this Court dismissed all but the first-named defendant where nineteen defendants independently purchased infringing garments from a single common distributor, holding that "purchasing the allegedly infringing merchandise from a single source is similarly insufficient" to satisfy Rule 20's transactional requirement); *Bravado Int'l Grp. Merch. Servs. v. Cha*, No. CV 09-9066-PSG-CWx, 2010 WL 2650432, at *4-5 (C.D. Cal. June 30, 2010) (this Court dismissed numerous defendants for misjoinder, finding joinder proper only for defendants within the same distribution chain and improper for the rest because the "Complaint is entirely devoid of any allegations that Defendants conspired with one another."); *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002) (this Court severed claims against fifty-one broadcasting companies and talent agencies "to prevent jury confusion," to promote "judicial efficiency," and "to prevent unfair prejudice" because membership in a common industry did not establish that the claims arose from the same transaction or occurrence).

**B.  This Court Has Already Decided This Misjoinder Issue on Nearly Identical Facts.**

This Court has already decided a nearly identical case on the misjoinder issue. In *United States ex rel. Switzer v. Wood*, No. CV 18-08118-CJC (ASx), 2023 WL 6370917, at *3 (C.D. Cal. May 16, 2023), this Court decided whether the plaintiff had misjoined three sets of defendants in a qui tam action alleging healthcare fraud schemes. In that case, the California Defendants, the Georgia Defendants, and the Nevada Defendants each operated in different states, with different personnel, over different timeframes, through different entities. The only connection among them was that a single individual, Mr. Wood, acted in tandem with each group to commit similar False Claims Act violations. The court found joinder improper because the action

"does not assert any claims against all defendants, allege that all defendants worked together, or seek to hold all defendants jointly-and-severally liable," even though the defendants were alleged to have "engaged in separate, but fundamentally similar schemes." *Id.* at *3 (quoting *Allstate Ins. Co. v. Baturov*, 544 F. Supp. 3d 264, 267 (E.D.N.Y. 2021)).

The facts here provide an even stronger case for severance than in *Switzer*. In *Switzer*, the three defendant groups at least shared a common individual actor, Wood, who personally participated in each of the three fraud schemes. Even accepting that Health Gorilla's role went beyond passive platform access, its dealings with each group were separate. Health Gorilla independently onboarded each group, independently reviewed each group's conduct when questions arose, and independently communicated with the interoperability frameworks on each group's behalf. ECF No. 1 ¶¶ 185, 187. That Health Gorilla was actively involved with each group does not transform three separate bilateral relationships into a single multilateral transaction.

There is no common individual who straddles the three groups. And the Complaint itself confirms what *Switzer* found dispositive: these are three separate enterprises, operating in different states (Pennsylvania and New York; California; Texas and Massachusetts), over different timelines (September 2022; July 2024; August 2024), through different entities and personnel, with different downstream channels (LlamaLab to trial attorneys; Mammoth Rx/Nationwide Healthcare to social security claimant representatives; Hoppr to law firms and insurance companies) and through different interoperability frameworks (RavillaMed and Mammoth accessed both Carequality and TEFCA; the Unit 387 Defendants accessed only Carequality). ECF No. 1 ¶¶ 31, 86, 142-83. Plaintiffs themselves organized the Complaint into three discrete, self-contained sections, one for each group, because they could not plausibly allege that any member of one group coordinated with, communicated with, or had any business relationship with any member of another group. *Id.* ¶¶ 142-58

(RavillaMed); ¶¶ 159-71 (Mammoth); ¶¶ 172-83 (Unit 387). Their own pleading structure is tantamount to an admission that these claims do not arise from the same transaction or occurrence.

This case is far removed from those in which severance has been denied because the defendants shared common personnel, a common address, or a common scheme to defraud the same entity. *Cf. State Comp. Ins. Fund v. Drobot*, No. SACV 13-956 AG (CWx), 2014 WL 12586244, at \*4 (C.D. Cal. Jan. 28, 2014) (denying severance where defendants were operated by the "same person or persons leading them, and operat[ed] often from the same address, created and hid similar schemes with a common purpose to defraud the same entity"). Here, the three groups share no personnel, no address, no scheme, and no business relationship with one another.

Plaintiffs do include one paragraph that attempts to establish a connection among the groups. Paragraph 141 of the Complaint asserts that the three defendant groups "use sophisticated camouflaging techniques to cloak their wrongdoing" and attributes to them a "common mission[] to obtain access to sensitive patient records under the false pretense of 'treatment.'" ECF No. 1 ¶ 141. But the assertion is entirely conclusory. It contains no factual allegation that any member of one group communicated with, coordinated with, or had any business relationship with any member of another group.

The assertion is also contradicted by the very paragraphs that follow it. Beginning at Paragraph 142, the Complaint details three self-contained factual narratives describing three entirely separate operations, with separate personnel, separate entities, separate timelines, and separate downstream channels. A conclusory label of "common mission" cannot create a transactional link where the underlying facts establish none.[3] *See Bravado*, 2010 WL 2650432, at \*4-5 (C.D. Cal. June 30,

---

[3] Plaintiffs' own scheme-specific allegations confirm the separateness. Each group is alleged to have acted 'in concert with its employees and affiliates,' and in each instance the alleged co-conspirators are exclusively members of that group.

2010) (finding misjoinder despite plaintiff's assertion that defendants were connected, where the actual factual allegations showed no conspiracy or coordination among them).

### C.    Plaintiffs' "Hub" Theory Fails

Plaintiffs' allegation that Health Gorilla is the "common thread between Defendants RavillaMed, Mammoth, and Unit 387" cannot save this case from severance. ECF No. 1 ¶ 184. The RavillaMed Defendants do not dispute that Health Gorilla may face liability in connection with each group's alleged conduct. But that is precisely the point. Health Gorilla's alleged facilitation of three separate schemes is three separate wrongs, not one. Plaintiffs' own causes of action confirm this: the First Cause of Action alleges fraud by Health Gorilla and the RavillaMed Defendants; the Second alleges fraud by Health Gorilla and the Mammoth Defendants; the Third alleges fraud by Health Gorilla and the Unit 387 Defendants. ECF No. 1 ¶¶ 198-251. Health Gorilla's presence in each claim does not merge three separate transactions into one. And Health Gorilla's alleged role creates no transactional link between the three defendant groups, who had no relationship with one another. Plaintiffs will likely argue otherwise, casting Health Gorilla as the hub of a wheel-like conspiracy that connects the three groups. But that theory requires more than a common hub; it requires a rim.

In *Switzer*, the relators made the same argument: that the common actor (Wood) created a wheel-like conspiracy connecting the three defendant groups. This Court rejected it, explaining that a wheel-like conspiracy requires "showing 'that the spokes are bound by a rim,'" meaning "there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the

---

*Compare* ECF No. 1 ¶ 142 (RavillaMed acting with 'Ravilla, D.O., Shere Saidon, and LlamaLab'), *with id.* ¶ 159 (Mammoth Dx acting with 'Hilton, Baker, and Toovey'), *and id.* ¶ 172 (Unit 387 acting with 'Manak, Hoppr, GuardDog, and SelfRx'). No member of one group appears in another group's allegations.

conspiracy." 2023 WL 6370917, at *4 (C.D. Cal. May 16, 2023) (quoting *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 678 (9th Cir. 2018), and *United States v. Martin*, 4 F.3d 757, 760 (9th Cir. 1993)). The relators could point only to allegations connecting the parties within each set of defendants (the California Defendants among themselves, the Georgia Defendants among themselves, and the Nevada Defendants among themselves), but those allegations did "not connect one set of defendants to another." *Id*. The same is true here. Plaintiffs can point to allegations connecting the RavillaMed Defendants among themselves, the Mammoth Defendants among themselves, and the Unit 387 Defendants among themselves. But they cannot point to a single allegation connecting one group to another. There is no "rim."

This Court's decision in *Fashion Avenue* independently forecloses the hub theory. There, the plaintiff argued that adding its common distributor, Poof Apparel, as a defendant would cure the joinder defect because Poof Apparel would be jointly and severally liable with each defendant. This Court rejected this argument, holding that "[e]ven if Poof Apparel were jointly and severally liable with each Defendant, the Defendants still would not be jointly and severally liable with each other," and therefore the distributor's addition "would not make joinder appropriate for all Defendants." 2020 WL 13248958, at *2 (C.D. Cal. Oct. 26, 2020) (citing *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1190 (9th Cir. 2016)). The logic is the same here. Even if Health Gorilla is liable to Plaintiffs in connection with each group's conduct, the three groups are not liable to each other, and Health Gorilla's presence in the case does not make them so.

The hub theory also proves too much. Health Gorilla is alleged to be an Implementer and QHIN that provides access to the Carequality and TEFCA frameworks for numerous entities. If merely using the same Implementer were sufficient to establish a "series of transactions or occurrences," then any plaintiff alleging misconduct by Health Gorilla's customers could join every such customer in

a single lawsuit, regardless of whether those customers had any connection to one another. That result would swallow Rule 20(a)(2)'s transactional requirement entirely.

As the *Hard Drive Productions* court recognized, accepting such a theory of joinder would mean that any plaintiff could join hundreds of unrelated actors in a single action, especially when many of those addresses fall outside of the court's jurisdiction. *See* 809 F. Supp. 2d at 1164-65. The purpose of Rule 20 is to promote judicial economy and trial convenience, not to enable plaintiffs to lump together unrelated defendants on the theory that they used the same service provider.

The Court should take notice that Plaintiffs have named 100 "Doe" Defendants in this action, effectively reserving the right to inject any future Health Gorilla customer accused of misusing the interoperability frameworks into this same case. ECF No. 1 at 1. If the Court accepts Plaintiffs' theory of joinder, there is no principled limit on the number of unrelated defendants who can be added to this action so long as they, too, used Health Gorilla as their gateway to the networks.[4]

### D.    The Joinder is Improper

Three separate groups of defendants, operating separate enterprises, at different times, using different methods, through different personnel, with no coordination, communication, or business relationship among them, have been swept into a single lawsuit on no basis other than their independent use of the same platform. That is precisely the kind of misjoinder that Rule 20(a)(2) prohibits and that courts have

---

[4] The Complaint identifies numerous additional entities that allegedly engaged in the same type of conduct through the same frameworks. *See, e.g.,* ECF No. 1 ¶¶ 132-35 (Integritort barred from Carequality for 12 months after taking records for mass tort purposes, but not sued in this action despite its CEO being Defendant Baker); *id.* ¶¶ 136-37 (CCH removed from directory after taking over 59,000 records and sharing only 80 back, not sued); *id.* ¶ 190 (MedSync allowed to take patient records without standard onboarding, not sued); *id.* ¶¶ 130-31 (approximately thirty law-firm-related entries added to Carequality by a separate Implementer, quietly removed, not sued). Under Plaintiffs' joinder theory, each of these entities could have been joined in this action as well.

repeatedly rejected. "[S]imply committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *AF Holdings*, 752 F.3d at 998 (quoting *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11cv345, 2011 WL 4915551, at *3 (E.D. Va. Oct. 17, 2011)); *see also Jones v. CertifiedSafety, Inc.*, No. 17-cv-02229 EMC, No. 18-cv-04379-EMC, 2019 WL 758308, at *4 (N.D. Cal. Feb. 20, 2019) (quoting *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (stating that plaintiff "'cannot join defendants who *simply engaged in similar types of behavior*, but who are otherwise unrelated [and that] some allegation of concerted action between defendants is required.'")).

## II. Even if Joinder Were Proper, the Court Should Exercise Its Discretion to Sever or Order Separate Trials.

### A. The Prejudice to the RavillaMed Defendants is Concrete and Substantial

Even where the threshold requirements of Rule 20(a) are met, "a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman*, 232 F.3d at 1296 (quoting *Desert Empire Bank v. Insurance Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). Under Rule 20(b), the Court may issue orders, including orders for separate trials, "to protect a party against embarrassment, delay, expense, or other prejudice." Fed. R. Civ. P. 20(b). Courts have exercised this discretion where "[i]nstead of making the resolution of [the] case more efficient . . . joinder would instead confuse and complicate the issues for all parties involved." *Hard Drive Prods.*, 809 F. Supp. 2d at 1156 (quoting *Wynn*, 234 F. Supp. 2d at 1088).

The *Hard Drive Productions* court exercised precisely this discretion, finding that a joint proceeding would "undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case" and "would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving

different evidence and testimony." *Id*. The court further found that permissive joinder "does not comport with the 'notions of fundamental fairness,' and that it will likely cause prejudice to the putative defendants." *Id*. (*citing Coleman*, 232 F.3d at 1296).

Those same concerns apply with full force here. A joint trial would require the factfinder to simultaneously evaluate three entirely separate fact patterns involving three different groups of defendants, three different sets of corporate entities, three different sets of individual actors, three different timelines, and three different alleged downstream commercial channels. The risk that evidence admitted against one group would "spill over" and prejudice another is substantial.

That risk is compounded by one fact, in particular. The Mammoth Defendants include Daniel Baker, an individual with a federal criminal conviction for conspiracy to defraud the United States (18 U.S.C. § 371) and an SEC enforcement action barring him from securities transactions. ECF No. 1 ¶ 165. The RavillaMed Defendants have no relationship with Baker. This is not a speculative concern. It is the kind of concrete, particularized prejudice that Rules 20(b) and 42(b) exist to prevent.[5] This Court reached the same conclusion in *Switzer*, where the court not only found misjoinder but exercised its discretion to sever the claims into separate actions, finding that a joint proceeding involving three unrelated healthcare fraud schemes by three geographically distinct defendant groups would be unmanageable. 2023 WL 6370917, at *5 (C.D. Cal. May 16, 2023). The same reasoning applies here with even greater force, because the defendant groups in this case do not even share a common individual actor. They should not be forced to sit alongside Defendant Baker and the

---

[5] The prejudice is not limited to the bare fact of Baker's conviction. Plaintiffs' narrative repeatedly emphasizes Baker's criminal history as central to the Mammoth Defendants' alleged scheme. *See* ECF No. 1 ¶ 15 (describing Baker as a 'convicted felon' who co-founded Integritort, which was itself barred from Carequality); *id.* ¶ 165 (detailing Baker's guilty plea to conspiracy to defraud the United States under 18 U.S.C. § 371 and his prohibition from exchanging securities by the SEC). In a joint trial, this narrative would be presented to the factfinder in the same proceeding in which the RavillaMed Defendants must defend themselves.

Mammoth Defendants at counsel table, creating an inevitable inference of guilt by association in the eyes of the factfinder.

The volume disparity further illustrates the risk of prejudice. The Mammoth Defendants are alleged to have obtained over 140,000 patient records (ECF No. 1 ¶ 161), compared to approximately 42,000 attributed to RavillaMed (*id.* ¶ 146). In a joint trial, the sheer scale of the Mammoth allegations would dominate the proceedings and risk overwhelming the factfinder's assessment of the distinct and smaller-scale claims against the RavillaMed Defendants.

This is not the kind of prejudice that jury instructions can cure. Where, as here, the three defendant groups' alleged conduct is so factually distinct that there is no overlapping evidence, limiting instructions would require the factfinder to disregard entire categories of testimony, documents, and witnesses that relate exclusively to one group. At that point, the Court would be managing three separate trials under one caption, confirming that severance, not instruction, is the appropriate remedy. *See Corley v. Google, Inc.*, 316 F.R.D. 277, 289 (N.D. Cal. 2016) (finding that mass joinder would cause significant prejudice and likely cause jury confusion, resulting in what would amount to hundreds of mini-trials).

The prejudice risk is further compounded by Health Gorilla's own divergent responses to Plaintiffs' inquiries about each group. The Complaint alleges that Health Gorilla characterized RavillaMed's query volume as a "technical glitch" (ECF No. 1 ¶ 185), while separately defending the Mammoth Defendants' conduct as falling "well within the statutory definitions of Treatment" (*id.* ¶ 187(c)). In a joint trial, each group would need to present and contextualize these conflicting Health Gorilla communications, creating a substantial risk that the factfinder will conflate one group's defense posture with another's.

**B.     Severance Will Promote, Not Hinder, Judicial Economy.**

The case as pleaded names seventeen individual and corporate defendants across at least seven separate business entities and four states, with alleged conduct spanning from September 2022 through December 2025. Each defendant group will present unique factual and legal defenses. The distinctions extend to the clinical merits of each group's defense. Each group claimed a different clinical specialty: RavillaMed is a chronic care management provider (ECF No. 1 ¶ 32), Mammoth operated as a diagnostic laboratory (*id.* ¶ 160), and SelfRx conducted diabetes monitoring (*id.* ¶¶ 48, 139). Defending the 'treatment' question, which is central to all three fraud claims, will require different clinical standards, different expert testimony, and different regulatory frameworks for each group.

Discovery in the RavillaMed claims will involve the records and communications of RavillaMed, LlamaLab, Dr. Ravilla, and Mr. Saidon, entities and individuals based in Pennsylvania, New York, and Florida. Discovery in the Mammoth claims will involve entirely different entities and individuals based in California. Discovery in the Unit 387 claims will involve yet another set of entities and individuals based in Texas and Massachusetts.

There is no overlap in the custodians, witnesses, or electronic records of the defendant groups themselves. While each group accessed the same interoperability frameworks, the records relevant to each group's defense, including its own internal communications, business records, and dealings with Health Gorilla, are entirely distinct. The only common discovery will relate to Health Gorilla, which will be a party in any severed action. A joint proceeding will not reduce the volume of discovery; it will simply force all parties to manage it simultaneously, at greater cost and complexity.

The supposed efficiencies of a joint proceeding are illusory. The Court would still need to adjudicate the distinct facts underlying each group's alleged misconduct, resulting in what the court in *Hard Drive Productions* described as "scores of mini-

trials involving different evidence and testimony." 809 F. Supp. 2d at 1164. Three focused proceedings will be more efficient, not less. As the Second Circuit recognized in *Nassau County*, joining 164 independent defendants who committed 'distinct and unrelated acts which happened to involve violations of the same statutory duty' was 'such a gross abuse of procedure' that dismissal was warranted. *Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154–55 (2d Cir. 1974). Although the RavillaMed Defendants do not seek so drastic a remedy, *Nassau County* underscores that courts have no tolerance for the kind of mass joinder of unrelated defendants at issue here.

The Northern District of California reached a similar conclusion in *Corley*, where the court found that joinder of 879 plaintiffs would not promote judicial economy because "[t]he sheer number of Plaintiffs, combined with their geographic diversity, would impede effective case management[]." 316 F.R.D. at 290. The court ordered severance rather than dismissal as the appropriate remedy. *Id.* at 294. The same case management concerns apply here, where over a dozen named defendants spanning four states will generate distinct discovery, distinct motions practice, and distinct trial preparation for each group.

The Eastern District of California concluded the same in *Coalition for a Sustainable Delta*, where, despite a shared environmental concern, the court granted severance because "determining and potentially remedying the lawfulness of each agency action will require review of vastly divergent information." 2009 WL 3857417, at *6–7 (E.D. Cal. Nov. 17, 2009). The court ordered severance into separate actions while coordinating them for case management purposes. *Id.* at *8. The same approach is warranted here. If the Court determines that some degree of coordination is appropriate, the severed actions can be assigned coordinated case management while preserving each defendant group's right to a focused proceeding on the merits. Severance would not multiply the burden on Health Gorilla. As the common Implementer and QHIN, Health Gorilla would remain a defendant in each

severed action, and the Court could coordinate Health Gorilla-related discovery across the three proceedings, just as in *Coalition for a Sustainable Delta*. 2009 WL 3857417, at *8 (E.D. Cal. Nov. 17, 2009).

Fairness, efficiency, and the avoidance of prejudice all point in one direction. This case should be severed into three separate actions, or, at minimum, the Court should order separate trials to ensure that each defendant group is judged on its own conduct, before its own factfinder, on its own evidence.

## CONCLUSION

For the foregoing reasons, the RavillaMed Defendants respectfully request the Court sever the claims against the RavillaMed Defendants from the claims against the Mammoth Defendants and the Unit 387 Defendants pursuant to Federal Rules of Civil Procedure 20(a)(2) and 21. Alternatively, the RavillaMed Defendants respectfully request that the Court order separate trials concerning the RavillaMed Defendants under Rules 20(b) and 42(b) to protect the RavillaMed Defendants from prejudice, embarrassment, delay, and expense.


Dated:  February 25, 2026            Respectfully submitted,

                                   **NELSON MULLINS RILEY & SCARBOROUGH LLP**


                          By:   /s/James C. Wald
                                JAMES C. WALD (Bar No. 229108)
                                Pacific Gateway
                                19191 South Vermont Avenue, Suite 900
                                Torrance, CA 90502
                                Telephone: 424-221-7459
                                Email: james.wald@nelsonmullins.com

                                BROOK B. ANDREWS (*pro hac vice application forthcoming*)
                                Meridian Building
                                1320 Main Street, 17th Floor
                                Columbia, SC 29201
                                Telephone: 803-255-5508
                                Email: brook.andrews@nelsonmullins.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOSHUA REDELMAN (*pro hac vice application forthcoming*)
Heritage Plaza
1111 Bagby Street, Suite 2100
Houston, TX 77002
Telephone: 346-646-5889
Email: joshua.redelman@nelsonmullins.com


*Attorneys for Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon, and LlamaLab, Inc.*

RavillaMed Defendants' Motion to Sever

## <u>LOCAL RULE 11.6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record certifies that this memorandum contains 5,959 words, which complies with the word limit set by L.R. 11-6.1.

Dated:  February 25, 2026          Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:    /s/James C. Wald

JAMES C. WALD (Bar No. 229108)
Pacific Gateway
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone: 424-221-7459
Email: james.wald@nelsonmullins.com

BROOK B. ANDREWS (*pro hac vice application forthcoming*)
Meridian Building
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: 803-255-5508
Email: brook.andrews@nelsonmullins.com

JOSHUA REDELMAN (*pro hac vice application forthcoming*)
Heritage Plaza
1111 Bagby Street, Suite 2100
Houston, TX 77002
Telephone: 346-646-5889
Email: joshua.redelman@nelsonmullins.com

*Attorneys for Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon, and LlamaLab, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.


_/s/ James C. Wald_
James C. Wald