Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Sharon Mayer - State Bar No. 212862
    smayer@birdmarella.com
Alexander H. Tran - State Bar No. 338940
    atran@birdmarella.com
Melissa C. Decker – State Bar No. 330062
    mdecker@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants Unique Medi
Tech LLC, d/b/a Mammoth Dx, Mammoth
Path Solution, LLC, Mammoth Rx, Inc.
and Ryan Hilton

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, <br><br> Defendants. | CASE NO. 2:26-cv-00321-FMO <br> Assigned to Hon. Fernando M. Olguin <br> Courtroom: 6D <br><br> **DEFENDANTS UNIQUE MEDI TECH LLC, D/B/A MAMMOTH DX, MAMMOTH PATH SOLUTION, LLC, MAMMOTH RX, INC. AND RYAN HILTON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLAIMS UNDER FRCP 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [*Filed Concurrently with Declaration of Alexander H. Tran, and [Proposed] Order*] <br><br> Date:    April 23, 2026 <br> Time:    10:00 a.m. <br> Crtrm.:  6D <br><br> Action Filed: January 13, 2026 |

4119552.8

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on **April 23, 2026**, at **10:00 a.m.** in Courtroom 6D of the above-entitled Court, located at 350 W 1st Street, Los Angeles, CA 90012-4565, Defendants Unique Medi Tech LLC, d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc. and Ryan Hilton (collectively, the "Mammoth Defendants") by and through their attorneys of record herein, will and hereby do move this court to dismiss the Second, Fifth, Seventh, Ninth and Tenth Causes of Action asserted in the Complaint against the Mammoth Defendants, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

As a matter of law, Plaintiffs' Complaint fails to state a claim upon which relief may be granted as to the Mammoth Defendants for several key reasons: First, Plaintiffs' generalized grievances fail to establish Article III standing for the requested relief.  Second, Plaintiffs' fraud and aiding and abetting allegations fail to state a claim and fail to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  Third, Plaintiffs' Computer Fraud and Abuse Act ("CFAA") claim rests on conclusory allegations of unauthorized access and investigative loss, and fails to meet the applicable legal standard.

The Mammoth Defendants also join in the arguments made in the motions to dismiss of Defendant Health Gorilla, Inc. (ECF No. 56 (Argument, Section I)), and of Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon and LlamaLab, Inc. (ECF No. 51 (Argument, Sections I and II)) that Plaintiffs failed to exhaust the mandatory contractually-obligated dispute resolution process before filing this lawsuit.

This motion will be based on this Notice, the Memorandum of Points and Authorities herein, the Declaration of Alexander H. Tran, the facts subject to judicial notice, the Court's file for the above-referenced action, and any other matters properly before the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 6, 2026.  (Declaration of Alexander H. Tran ¶ 2.)

DATED:  March 13, 2026          Respectfully submitted,

                                Bird, Marella, Rhow,
                                Lincenberg, Drooks & Nessim, LLP


                                By:    /s/ Sharon Mayer
                                        Sharon Mayer
                                Attorneys for Defendants Unique Medi
                                Tech LLC, d/b/a Mammoth Dx, Mammoth
                                Path Solution, LLC, Mammoth Rx, Inc. and
                                Ryan Hilton

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ....................................................................................... 1

II.   SUMMARY OF ALLEGATIONS .............................................................. 2

III.  LEGAL STANDARD ................................................................................ 4

IV.   PLAINTIFFS' CLAIMS AGAINST THE MAMMOTH
      DEFENDANTS SHOULD BE DISMISSED .............................................. 5

      A.    Plaintiffs Have Failed to Establish Article III Standing ..................... 5

            1.    Plaintiffs' Alleged Expenditures Were Voluntary And Not
                  Outside of Their Normal Business Operations............................ 6

            2.    Plaintiffs Cannot Allege They Would Have Suffered
                  Injury Absent the Diversion of Resources.................................. 8

      B.    Plaintiffs Fail to State a Claim Under the Computer Fraud and
            Abuse Act............................................................................................ 9

      C.    Plaintiffs Fail to Allege Their Fraud Claims with Particularity .......... 12

            1.    Plaintiffs Fail to Allege the Who, What, When, Where and
                  How............................................................................................ 13

            2.    Plaintiffs Fail to Allege Justifiable Reliance ............................. 17

      D.    Plaintiffs Fail to Allege Aiding and Abetting Fraud Against
            Defendant Hilton.................................................................................. 18

V.    CONCLUSION .......................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*123 Los Robles LLC v. Metzler*,
   2017 WL 10311210 (C.D. Cal. Aug. 14, 2017) .................................................. 10

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   824 F. Supp. 2d 1164 (C.D. Cal. 2011) ............................................................ 18

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
   938 F.3d 1147 (9th Cir. 2019) .......................................................................... 6

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*,
   407 F. Supp. 3d 1016 (D. Haw. 2019) .............................................................. 16

*Arroyo v. Chattem, Inc.*,
   926 F. Supp. 2d 1070 (N.D. Cal. 2012) ............................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 4, 5, 15, 19

*ATLF v. City of Lake Forest*,
   2008 WL 11411732 (C.D. Cal. Aug. 18, 2008) ................................................. 6

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 14, 15, 19

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
   2021 WL 3173736 (S.D.N.Y. July 26, 2021) .................................................... 11

*Bly-Magee v. California*,
   236 F. 3d 1014 (9th Cir. 2001) ........................................................................ 16

*Calendar Rsch. LLC v. StubHub, Inc.*,
   2020 WL 4390391 (C.D. Cal. May 13, 2020) ................................................... 10

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ......................................................................................... 7

*Custom Packaging Supply, Inc. v. Phillips*,
   2016 WL 1532220 (C.D. Cal. Apr. 15, 2016) ................................................... 12

*Davidson v. Sprout Foods, Inc.*,
  106 F. 4th 842 (9th Cir. 2024), *cert. denied*, 145 S. Ct 1922 (2025) ................ 13

*eBay Inc. v. Digital Point Sols., Inc.*,
  608 F. Supp. 2d 1156 (N.D. Cal. 2009) ................................................... 10

*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ................................................................ 18

*Fair Hous. Council of Or. v. Travelers Home and Marine Ins. Co.*,
  2016 WL 7423414 (D. Or. Dec. 2, 2015) ................................................ 8

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................................... 7

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) .............................................................. 6

*Fraser v. Mint Mobile, LLC*,
  2022 WL 2391000 (N.D. Cal. July 1, 2022) ................................... 11, 12

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................... 4

*Groff v. Keurig Green Mountain, Inc.*,
  2024 WL 2335634 (C.D. Cal. Mar. 18, 2024) ...................................... 19

*Gutierrez v. Johnson & Johnson Consumer Inc.*,
  2021 WL 822721 (S.D. Cal. Jan. 22, 2021) .......................................... 17

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................... 6, 8

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ............................................................ 9, 10

*Karma Auto. LLC v. Lordstown Motors Corp.*,
  No. SACV 20-02104 ............................................................................. 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .............................................................. 19

*Ketayi v. Health Enrollment Grp.*,
  516 F. Supp. 3d 1092 (S.D. Cal. 2021) ................................................ 19

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) .................................................................6, 7, 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................5

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009)...............................................................10

*Neilson v. Union Bank of California, N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003)................................................18

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015)...............................................................5

*Redlands Country Club Inc. v. Cont'l Cas. Co.*,
    2011 WL 13224843 (C.D. Cal. Jan. 28, 2011).....................................14

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ..............................................................13

*Scheibe v. Esupplements, LLC.*,
    681 F. Supp. 3d 1101 (S.D. Cal. 2023) ................................................19

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985).................................................................17

*Shepardson v. U.S. Bank Tr. Nat'l Ass'n as Tr. for Bungalow Series IV Tr.*,
    2024 WL 3304800 (N.D. Cal. July 3, 2024) .......................................18

*Sollberger v. Wachovia Sec., LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010).......................................16

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................14

*Su v. Henry Glob. Consulting Grp.*,
    2022 WL 19392 (C.D. Cal. Jan. 3, 2022)..............................................18

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007).................................................................16

*United Poultry Concerns v. Chabad of Irvine*,
    743 F. App'x 130 (9th Cir. 2018) .........................................................8

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) .............................................................. 11

*Van Buren v. United States*,
    593 U.S. 374 (2021) .......................................................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................... 13

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
    724 F. Supp. 3d 948 (N.D. Cal. 2024) ............................................... 12

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................. 13

**California Cases**

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997) ....................................................................... 12

**Federal Statutes**

18 U.S.C.
    § 1030 ............................................................................................. 2, 9
    § 1030(c)(4)(A)(i)(I) ............................................................................ 11
    § 1030(a)(2)(C), (a)(5)(B), (g) ............................................................ 10
    § 1030(e)(11) ....................................................................................... 11

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ................................................*passim*

Federal Rule of Civil Procedure 12(b)(6) ........................................... 4, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

This case is part of Plaintiff Epic Systems Corporation's ("Epic") well-documented public and legal campaign to maintain its dominance over the electronic health records ("EHR") ecosystem by labeling legitimate, authorized EHR access by independent healthcare providers as misconduct.  Epic, together with several hospital systems it serves (collectively, "Plaintiffs") cloak their Complaint in the rhetoric of protecting patient privacy and interoperability networks, but in reality, this lawsuit seeks to *undermine* nationwide healthcare interoperability and ensure Epic's continued revenue stream.

Defendant Unique Medi Tech LLC, d/b/a Mammoth Dx ("Mammoth Dx") is a leading provider in molecular and pathology laboratory testing.  Defendant Mammoth Path Solution, LLC ("MPS") is a certified pathology laboratory. Defendant Mammoth Rx, Inc. ("Mammoth Rx") is a healthcare technology and software company.  Defendant Ryan Hilton serves in a management capacity for Mammoth Dx, MPS and Mammoth Rx.  (Mammoth Dx, MPS and Mammoth Rx together with Ryan Hilton are collectively referred to as the "Mammoth Defendants").  As Defendant Health Gorilla confirmed at the conclusion of its extended investigation of Epic's accusations against the Mammoth Defendants in December 2025, the Mammoth Defendants never accessed patient records unlawfully or without proper authorization and never misused patient information.

---

[1]    The Mammoth Defendants hereby join in the argument that Plaintiffs have failed to exhaust the mandatory contractually-obligated dispute resolution process as required by the Carequality and TEFCA network agreements, more fully discussed in the motions to dismiss of Defendant Health Gorilla, Inc., (ECF No. 56 (Argument, Section I)), and Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon and LlamaLab, Inc. (ECF No. 51 (Argument, Sections I and II)). The Mammoth Defendants hereby reserve and do not waive any defenses, objections, or arguments, including those raised herein.

In their Complaint, Plaintiffs rely on rank speculation, generalized allegations and rhetorical appeals to "data integrity and privacy issues," rather than on well-pleaded facts showing any unlawful access or misuse of patient information by the Mammoth Defendants.  Plaintiffs' baseless accusations are untethered from the governing legal standards and are unsupported by the allegations.

*First*, Plaintiffs lack Article III standing to assert their claims because their injury allegations consist of generalized grievances and voluntary expenses, rather than the particularized injury-in-fact required to confer standing.

*Second*, Plaintiffs fail to state any cognizable claim under the Computer Fraud and Abuse Act because they fail to allege both unauthorized access and the required statutory loss.

*Third*, the fraud and aiding and abetting allegations rely entirely on speculation, wild inferences and conclusory allegations that fall far short of the heightened pleading standard applicable to fraud claims.  Plaintiffs also fail to plead that they relied to their detriment on any alleged misrepresentations by the Mammoth Defendants.

Simply put, Epic's attempt to divert attention away from the mounting public and legal scrutiny of its monopolistic dominance over the electronic health record system should not be condoned by the Court.  The claims against the Mammoth Defendants fail as a matter of law and must be dismissed with prejudice.

## II.    SUMMARY OF ALLEGATIONS

Carequality and the Trusted Exchange Framework and Common Agreement ("TEFCA") are national interoperability frameworks designed to enable the electronic exchange of healthcare information.  (Complaint ¶¶ 53, 81.)  Epic is an electronic health record software developer.  (*Id.* ¶ 6.)  Plaintiff OCHIN, Inc. ("OCHIN") is a corporation that connects healthcare providers to the interoperability frameworks.  (*Id.* ¶ 7.)  Plaintiffs Reid Hospital & Health Care Services, Inc. d/b/a Reid Health ("Reid"), Trinity Health Corporation ("Trinity"),

and UMass Memorial Health Care, Inc. ("UMass Memorial Health") (collectively, the "Hospital Plaintiffs") are various nonprofit healthcare providers and systems. (*Id.* ¶¶ 8-10.)

As an "Implementer," Epic facilitates access to the Carequality interoperability frameworks for the Hospital Plaintiffs and other providers, referred to as Carequality "Connections."   On the TEFCA frameworks Epic serves as a Qualified Health Information Network ("QHIN"), facilitating access by the Hospital Plaintiffs and other providers that are referred to as "Participants." (*Id.* ¶¶ 6-10.)

Like Epic, Defendant Health Gorilla is a Carequality Implementer and a TEFCA QHIN.  Plaintiffs allege that Health Gorilla wrongfully provided access to the Mammoth Defendants and others, who supposedly have monetized patient records without the patients' knowledge or consent in violation of various Carequality and TEFCA requirements and agreements.  (*Id.* ¶¶ 11-15.)  According to Plaintiffs, Defendants have used "sophisticated camouflaging techniques" to "obtain access to sensitive patient records under the false pretense of 'treatment,'" but took patient records for other purposes, including to market them to lawyers searching for potential claimants in mass tort class action lawsuits.  (*Id.* ¶¶ 11, 141, 161.)

Plaintiffs allege that Health Gorilla entered the Mammoth Defendants into the Carequality and TEFCA directories in July 2024.  (*Id.*, ¶ 161.)  Plaintiffs' assertion that the Mammoth Defendants orchestrated a widespread fraudulent scheme is premised entirely on generalized observations about patterns in patient data access and conclusory inferences unsupported by any concrete factual allegations.  For example, based on Mammoth's supposedly "highly abnormal patient-record exchange patterns," Plaintiffs allege that this volume is a "clear red flag that the patient records were accessed for non-treatment purposes." (*Id.* ¶ 162.)  As another purported "clear red flag," Plaintiffs allege that the patient records returned by Mammoth are "junk data" with "vague clinical notes" which "lack basic clinical

information." (*Id.* ¶ 163.)

Plaintiffs also allege that Mammoth Rx's website has "significant functionality flaws" including some "dead links" which allegedly presents a "serious red flag" regarding Mammoth Rx's "actual treatment of patients." (*Id.* ¶ 164.) Plaintiffs further allege that Defendant Daniel Baker's securities conviction in an entirely unrelated case involving a completely different subject matter somehow implicates the Mammoth Defendants. Plaintiffs assert, without any support, that Baker is the founder and Chief Technology Officer of Mammoth Rx, but acknowledge that Defendant Ryan Hilton denied this in a sworn affidavit. (*Id.* ¶¶ 41, 165-166.)

Plaintiffs do not allege any concrete or particularized injury from the Mammoth Defendants' purported misconduct. Plaintiffs generally allege that they "expend[ed] resources" to investigate Defendants' misconduct and to address unspecified "data integrity and privacy issues." (*Id.* ¶¶ 19, 215, 233.) Plaintiffs Epic and OCHIN further allege that "*some* of Epic and OCHIN's healthcare provider customers have voiced that, because of the abuses, they have contemplated limiting their participation in the Carequality and TEFCA frameworks or withdrawing from them entirely." (*Id.* ¶ 193 (emphasis added).) Notably absent is any specific allegation that any healthcare provider customer has actually left the interoperability frameworks.

## III. LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must separate conclusory assertions from specific factual allegations and disregard the former. *Id.* at 678-79. Courts do not credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th

Cir. 2008).  The remaining factual allegations must state a plausible claim—i.e.,
contain "factual content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678-79.  Facts
"merely consistent" with liability but also consistent with nonliability fall short of
"plausibility."  *Id.*

## IV.   PLAINTIFFS' CLAIMS AGAINST THE MAMMOTH DEFENDANTS SHOULD BE DISMISSED

### A.   Plaintiffs Have Failed to Establish Article III Standing

Plaintiffs' generalized grievances fail to establish Article III standing for the
requested relief.  Article III standing requires that a plaintiff demonstrate (1) an
"injury in fact," (2) "a causal connection between the injury and the conduct
complained of," and (3) a likelihood "that the injury will be redressed by a favorable
decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations
omitted).  "An injury in fact is an invasion of a legally protected interest that is
concrete and particularized and actual or imminent, not conjectural or hypothetical."
*Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015) (quotation marks and
alteration omitted) (citing *Lujan*, 504 U.S. at 560).  "Because a generalized
grievance is not a particularized injury, a suit alleging only generalized grievances
fails for lack of standing."  *Id.*

In their Complaint, Plaintiffs rely primarily on their purported "expenditure of
resources" and diversion of employee time to investigate Defendants' alleged
misconduct.  Specifically, the Hospital Plaintiffs assert that they have "incurred
operational expenses and have been forced to expend resources in the form of funds
and employee time to investigate the breadth of the harm and to address data
integrity and privacy issues and [have] expended resources monitoring and
attempting to mitigate the harm."  (Complaint ¶ 233.)  Plaintiffs Epic and OCHIN
allege that they have been "harmed in the same way" and they have "incurred costs
in connection with responding to fraudulent requests for records, suffered losses in

1    employee time and diversion of resources to investigate and address this fraud and

2    the complaints." (*Id.*) These alleged harms are nothing more than generalized

3    grievances that fail to confer Article III standing.

4        To "establish an injury," "[a]n organization suing on its own behalf" must

5    show it has "suffered both a diversion of its resources and a frustration of its

6    mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,

7    624 F.3d 1083, 1088 (9th Cir. 2010) ("*ATLF II*") (citation omitted). In addition, the

8    organization "must . . . show that it would have suffered some other injury if it had

9    not diverted resources to counteracting the problem." *Id.* The alleged injury it seeks

10   to counteract must be "more than simply a setback to the organization's abstract

11   social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). This

12   means that organizations like Plaintiffs must show that Defendants' actions

13   "perceptibly impaired the organization's ability to provide services," not just that its

14   "mission has been compromised" in the abstract. *Food & Water Watch, Inc. v.*

15   *Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted). The organization

16   "cannot manufacture the injury by . . . simply choosing to spend money fixing a

17   problem that otherwise would not affect the organization at all." *ATLF II*, 624 F.3d

18   at 1088. Plaintiffs' allegations do not meet either part of this standard.

19       **1.    Plaintiffs' Alleged Expenditures Were Voluntary And Not**

20       **Outside of Their Normal Business Operations.**

21       A "diversion of resources" exists only when it is "a necessity" for the

22   organization to spend resources on "activities outside of its normal realm," *i.e.*,

23   those not "in line with the organization['s] missions." *ATLF v. City of Lake Forest*,

24   No. SA CV 07-250, 2008 WL 11411732, at *6 (C.D. Cal. Aug. 18, 2008) ("*ATLF*

25   *I*"), *aff'd*, 624 F.3d 1083 (9th Cir. 2010). An organization cannot establish standing

26   based on a diversion of resources theory when it is "merely going about its business

27   as usual." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th

28   Cir. 2019).

The Hospital Plaintiffs are in the business of providing health services which necessarily require access to and storage of patient records.  (*See* Complaint ¶¶ 28-30.)  Thus, for the Hospital Plaintiffs, providing and storing patient records accessed through the Carequality and TEFCA networks is "business as usual."

Similarly, Plaintiffs' alleged expenditure of resources to "monitor CCs and Implementers" or develop monitoring tools to prevent improper disclosures of patient records" (*id.* ¶¶ 193, 196, 233) is "business as usual" for Implementers, QHINs and healthcare providers who are required to maintain certain practices and measures to protect patient privacy and safeguard patient information while providing and storing patient records.  At best, those expenditures reflect voluntary, self-directed operational responses to perceived risks within the broader interoperability ecosystem.

Nor can Plaintiffs' allegations that they expended resources to investigate the harm caused by Defendants' alleged conduct satisfy the standing requirements.  Courts have consistently held that voluntary expenditure of resources on investigation or litigation cannot manufacture standing, and that abstract allegations of harm to system integrity constitute impermissible generalized grievances.  "An organization cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem."  *ATLF II*, 624 F.3d at 1088.  And more recently, the Supreme Court clarified and further limited the resources theory of organizational standing by explaining that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."  *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).  "An organization cannot manufacture its own standing in that way."  *Id.*; *see also Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 416 (2013) (no standing where plaintiffs "inflict[ed] harm on themselves" by "incurr[ing] certain costs" in response to defendant's actions).

Here, Plaintiffs' allegations about investigating "the breadth of the harm" and responding to complaints are properly characterized as pre-litigation investigation costs that do not manufacture standing.  Similarly, alleged "losses in employee time and diversion of resources to investigate and address" the alleged fraud and "its effects on data integrity, privacy, and the interoperability frameworks as a whole" are insufficient.  (Complaint ¶¶ 215, 233, 249, 258, 267, 276, 284, 299, 316, 328.) Simply put, these "harms" are voluntary investigations conducted in anticipation of unspecified future harm rather than forced resource diversions to counteract concrete injuries.

## 2.    Plaintiffs Cannot Allege They Would Have Suffered Injury Absent the Diversion of Resources.

The second prong requires plausible allegations that the alleged conduct impaired plaintiff's ability to provide services and thus absent the diversion of resources its mission would have been harmed.  *United Poultry Concerns v. Chabad of Irvine*, 743 F. App'x 130, 131 (9th Cir. 2018) (finding no standing and reasoning that had plaintiff not chosen to divert time to investigate the defendant, its mission "would have been totally unaffected" by defendant's actions).

Plaintiffs' allegations fail to satisfy this prong too.  Plaintiffs identify only their "data integrity and privacy issues," which allegedly were harmed by Defendants' conduct.  (Complaint ¶¶ 215, 233.)  Viewed favorably, this purported injury at best might qualify as a "setback to the organization's abstract social interests" that the Supreme Court in *Havens* characterized as insufficient for organizational standing.  *Havens Realty Corp*, 455 U.S. at 379; *see also Fair Hous. Council of Or. v. Travelers Home and Marine Ins. Co.*, No. 3:15-cv-00925, 2016 WL 7423414, at *7 (D. Or. Dec. 2, 2015) (allegations that companies engaged in housing discrimination described only "abstract social interests" of fair housing

1   organization insufficient for standing).

2          In short, Plaintiffs cannot manufacture an Article III injury by "choosing to

3   spend money" on efforts to investigate vague and abstract concerns for patient

4   privacy when the alleged conduct did not impair their ability to provide services.

5   *ATLF II*, 624 F.3d at 1088.  Epic's and OCHIN's mission to provide electronic

6   health record software to healthcare providers, and the Hospital Plaintiff's mission

7   to provide healthcare services to patients "would have been totally unaffected" but

8   for Plaintiffs' voluntary investigations into Defendants' purported wrongdoing.

9   Accordingly, despite Plaintiffs' exaggerated characterization, the alleged "direct

10  costs" associated with responding to purportedly fraudulent requests for records do

11  not reflect any specific, non-speculative harm sufficient for Article III standing, and

12  as such, each of Plaintiffs' causes of action against the Mammoth Defendants should

13  be dismissed.[2]

14         **B.      Plaintiffs Fail to State a Claim Under the Computer Fraud and**

15                 **Abuse Act.**

16         Plaintiffs' tenth cause of action under the Computer Fraud and Abuse Act

17  ("CFAA") rests on conclusory allegations of unauthorized access and investigative

18  loss, and fails to meet the applicable legal standard.

19         The CFAA was enacted "to prevent intentional intrusion onto someone else's

20  computer—specifically, computer hacking."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31

21  F.4th 1180, 1196 (9th Cir. 2022).  To state a CFAA damages claim, Plaintiffs must

22  plausibly allege: (1) that Defendants intentionally accessed a protected computer

23

24  _____

    [2]   Plaintiffs Epic and OCHIN also allege that "some of Epic and OCHIN's

25  healthcare provider customers have voiced that, because of the abuses, they have

26  contemplated limiting their participation in the Carequality and TEFCA frameworks

    or withdrawing from them entirely."  (Complaint ¶ 193.)  But notably absent is any

27  specific allegation that any healthcare provider customer has actually left the

28  interoperability frameworks.

1    system, (2) without authorization or exceeding authorized access, and (3) such

2    conduct caused a "loss" aggregating at least $5,000.  *See* 18 U.S.C. § 1030(a)(2)(C),

3    (a)(5)(B), (g); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009);

4    *eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1163 (N.D. Cal. 2009).

5        The CFAA claim fails at the outset because Plaintiffs cannot plausibly allege

6    that the Mammoth Defendants' access was "unauthorized."  (Complaint ¶¶ 20, 326.)

7    Plaintiffs concede that Mammoth lawfully accessed the interoperability frameworks

8    pursuant to executed agreements, alleging that "Mammoth [. . .] entered CC Terms

9    with Health Gorilla" and that, in July 2024, "Health Gorilla entered Mammoth into

10   the Carequality and TEFCA directories."  (*Id.* ¶¶ 60, 161.)  Although Plaintiffs

11   (falsely) assert that Mammoth acted "without authorization" by purportedly

12   misrepresenting a treatment purpose, that theory is foreclosed by binding authority.

13   (*Id.* ¶¶ 322, 323.)

14       Specifically, courts have repeatedly held that where a party misuses data it

15   was permitted to access, its access does not become "unauthorized" under the

16   CFAA.  *See LVRC Holdings*, 581 F.3d at 1133; *hiQ Labs, Inc.*, 31 F.4th at 1198

17   (holding that a user with authorization is not subject to contractual or policy-based

18   limitations for CFAA purposes, citing *Van Buren v. United States*, 593 U.S. 374,

19   390 n.8 (2021)); *Karma Auto. LLC v. Lordstown Motors Corp.*, No. SACV 20-

20   02104 JVS (DFMx), 2022 WL 17886045, at *4 (C.D. Cal. Nov. 18, 2022)

21   ("contract-based provisions limiting scope of access does not equate to 'without

22   authorization'").  Put simply, whether Mammoth may have breached contractual

23   obligations under the Carequality or TEFCA frameworks has no bearing on whether

24   its access to the network was "unauthorized" for purposes of the CFAA.[3]

25   _____

26   [3]   Further, where a defendant indisputably had authorized access, a CFAA claim
     requires that any revocation of that access be "unequivocally conveyed" to the
27   defendant.  *123 Los Robles LLC v. Metzler*, 2017 WL 10311210, at *3 (C.D. Cal.
     Aug. 14, 2017); *see also Calendar Rsch. LLC v. StubHub, Inc.*, 2020 WL 4390391,

28

1    Plaintiffs' theory that the Mammoth Defendants "exceed[ed] authorized

2 access" in violation of the CFAA likewise fails. (Complaint ¶¶ 322.) The Ninth

3 Circuit explained the meaning of "exceeding authorized access" for purposes of the

4 CFAA in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012). There, the Ninth

5 Circuit dismissed a CFAA charge under § 1030(a)(4) where a former employee

6 asked current employees to steal confidential information to help him start a

7 competing business. *Id.* at 864. The *Nosal* court explained that the "exceeds

8 authorized access" in the CFAA does not extend to "violations of use restrictions"

9 or "violations of a duty of loyalty." *Id.* at 862-63. Here, it is undisputed that

10 Mammoth had lawful and legitimate access to medical records on the Carequality or

11 TEFCA frameworks and therefore Mammoth could not "exceed authorized access"

12 under the CFAA based solely on the alleged misuse of that patient data. Because

13 the CFAA targets unauthorized access—not the subsequent use of information

14 lawfully obtained—Plaintiffs' allegations fail as a matter of law.

15    Plaintiffs also fail to plausibly allege the required statutory "loss" of at least

16 $5,000 under 18 U.S.C. § 1030(c)(4)(A)(i)(I). Epic alleges only that it incurred

17 investigative and monitoring expenses "in excess of $5,000" over a one-year period

18 to respond to the challenged queries. (Complaint ¶ 326.) But the CFAA defines

19 recoverable "loss" as costs incurred because of an "interruption of service," 18

20 U.S.C. § 1030(e)(11). Courts consistently hold that internal investigation costs—

21 absent any service interruption, data inaccessibility, or system damage—are not

22 recoverable CFAA losses. *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL

23 3173736, at *4 (S.D.N.Y. July 26, 2021) (post-access investigative costs are not

24 CFAA losses where plaintiff suffered no lost access to data); *Fraser v. Mint Mobile,*

25 *LLC*, 2022 WL 2391000, at *2 (N.D. Cal. July 1, 2022) (expert-tracing expenses not

26

27 at *17 (C.D. Cal. May 13, 2020) (revocation must be explicit). Plaintiffs plead no

28 such unequivocal revocation here and therefore cannot state a claim.

1  cognizable losses); *Custom Packaging Supply, Inc. v. Phillips*, 2016 WL 1532220,

2  at *5 (C.D. Cal. Apr. 15, 2016) (lost opportunities as a result of employees

3  investigating the data breach do not constitute "loss" under the CFAA).

4        Indeed, the Supreme Court clarified in *Van Buren* that "[t]he statutory

5  definitions of 'damage' and 'loss'... focus on technological harms—such as the

6  corruption of files—of the type unauthorized users cause to computer systems and

7  data." 593 U.S. at 391-392; *accord id.* at 1659-60 ("The term 'loss' ... relates to

8  costs caused by harm to computer data, programs, systems, or information

9  services."). The *Van Buren* Court explained that "[l]imiting 'damage' and 'loss' in

10 this way makes sense in a scheme 'aimed at preventing the typical consequences of

11 hacking.'" *Id.* at 392. Here, Plaintiffs allege no interruption of service or

12 impairment to any computer system, and investigatory costs incurred only to assess

13 damages have been found not to be cognizable losses under the CFAA. *See, e.g.*, *X

14 Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 983-84 (N.D.

15 Cal. 2024) (finding that investigatory costs designed to assess the plaintiff's

16 damages were not cognizable losses under the CFAA); *Fraser*, 2022 WL 2391000,

17 at *2 (finding that the plaintiff's proposed amendment to his complaint adding

18 allegations that the plaintiff hired an expert to trace stolen cryptocurrency would fail

19 to allege a cognizable loss under the CFAA).

20        **C.    Plaintiffs Fail to Allege Their Fraud Claims with Particularity**

21        Under California law, the tort of deceit or fraud requires "(a)

22 misrepresentation (false representation, concealment, or nondisclosure); (b)

23 knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

24 justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp.,

25 Inc.*, 15 Cal. 4th 951, 974 (1997).

26        Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard,

27 expressly requiring that a party alleging fraud "state with particularity the

28 circumstances constituting fraud," while permitting malice, intent, and knowledge to

be alleged generally.  Fed. R. Civ. P. 9(b).  To meet this standard, Plaintiffs'
complaint must "identify the who, what, when, where, and how of the misconduct
charged, as well as what is false or misleading about the purportedly fraudulent
statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133
(9th Cir. 2013); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.
2003).  Plaintiffs' fraud allegations fall well short of Rule 9(b)'s heightened
pleading standard.

### 1.    Plaintiffs Fail to Allege the Who, What, When, Where and How

Plaintiffs' allegations consist of broad, conclusory assertions that Mammoth
made unspecified false "assertions" about its treatment purposes in obtaining patient
records.  (Complaint ¶¶ 219-220.)  Plaintiffs purport to limit any allegations of fraud
against Mammoth to their alleged misrepresentations "for all patient records relating
to persons who were not under Mammoth's medical care" (*id.* ¶¶ 221, 225), but that
allegation does not provide any more specificity.  Plaintiffs' claims are deficient
because they fail to identify any specific statements or factual basis underlying the
conclusory allegation that Mammoth *ever* retrieved records for patients *not* under
their medical care.  *See Davidson v. Sprout Foods, Inc.*, 106 F. 4th 842, 852-54 (9th
Cir. 2024), *cert. denied*, 145 S. Ct 1922 (2025) (affirming that plaintiffs' harm
allegations were insufficient under Rule 9(b) where their only product-specific sugar
content allegations lacked contextual explanations as to why those specific sugar
levels were harmful, and the remaining allegations were speculative, hypothetical,
and failed to allege that defendant's products actually caused any harm).  Plaintiffs'
allegations patently fail to identify the "who, what, when, where, and how" of the
alleged "treatment purpose" misrepresentations.  *See Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117, 1123-24 (C.D. Cal. 2010) (dismissing claims as deficient
under Rule 9(b) where the complaint failed to allege with particularity when during
a decade-long period the plaintiff encountered the alleged misrepresentations, where

1  she purchased the product, or which version of the packaging or statements she

2  relied upon).

3         Furthermore, Plaintiffs' allegations are premised on pure speculations and

4  wild inferences.  As one example, Plaintiffs allege that an increase in patient-record

5  requests in September 2025 by Mammoth is "a clear red flag that the patient records

6  were accessed for non-treatment purposes."  (Complaint ¶ 162.)  That conclusory

7  assertion does not plausibly support an inference of unlawful conduct.  Courts are

8  not required to accept as true speculative and conclusory allegations like this.  *See*

9  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining

10 that a court is not "required to accept as true allegations that are merely conclusory,

11 unwarranted deductions of fact, or unreasonable inferences").  Variations in patient

12 query volume are commonplace and entirely lawful, and Plaintiffs plead no facts

13 showing that an increase in queries reflects improper access rather than routine

14 operational activity.  Where, as here, lawful explanations are at least as plausible as

15 the misconduct Plaintiffs hypothesize, the Complaint fails to state a claim under

16 Rule 12(b)(6).  *See Redlands Country Club Inc. v. Cont'l Cas. Co.*, No.

17 CV101905GAF (DTBx), 2011 WL 13224843, at *3 (C.D. Cal. Jan. 28, 2011)

18 (explaining that, under *Twombly*, "[a]llegations that are equally consistent with

19 lawful and unlawful conduct are insufficient" to state a claim).  At a minimum, the

20 speculative assertions that predominate Plaintiffs' Complaint fail to meet the

21 heightened pleading standard for fraud.[4]

22

---

23 [4]   Plaintiffs' other "red flag" allegations are similarly conclusory and
24 impermissibly speculative.  For example, they allege that Mammoth's share-back
   information constitutes "junk data" because the records purportedly contain "vague
25 clinical notes" lacking "basic information such as a date, a clinical assessment, a
   plan, or clinical recommendations." (Complaint ¶ 163.)  Again, Plaintiffs ask the
26 Court to infer wrongdoing from their characterization of the records as "junk data,"
27 without plausible factual allegations supporting the alleged wrongful conduct.  The
28 multitude of "red flags" allegations is not a substitute for well pleaded fraud

Aside from their speculative conclusions based on supposed "red flags," Plaintiffs include no factual assertions or details supporting the conclusion that the Mammoth Defendants obtained patient records for non-treatment purposes—rather than for legitimate clinical or laboratory services. Although they purport that "Mammoth has disclosed the patient records to NHPC and/or other entities for sale for profit" (Complaint ¶ 170), that allegation does not negate the lawful retrieval of patient records for treatment purposes; nor does it suggest that treatment was not provided to those patients. The Complaint therefore asks the Court to infer wrongdoing from lawful conduct alone – precisely the type of speculative leap that *Twombly* and *Iqbal* foreclose. *See Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007); *Iqbal*, 556 U.S. at 678.

Plaintiffs also improperly lump together multiple Defendants without alleging specific facts showing that each Defendant personally participated in the challenged conduct. For example, Plaintiffs allege that "Mammoth" has "taken over 140,000 patient records through Carequality and TEFCA" and "falsely assert[ed]" these requests were for treatment purposes. (Complaint ¶¶ 161, 170.) Plaintiffs also allege that the "Mammoth Defendants" (defined to include all Mammoth entities, Defendant Hilton, Defendant Daniel Baker, and Defendant Max Toovey) used "sophisticated camouflaging techniques to cloak their wrongdoing" by "building complex interconnected webs of companies" to "obtain access to sensitive patient records under the false pretense of 'treatment.'" (*Id.* ¶ 141.) But Plaintiffs do not allege which Mammoth entity accessed the interoperability system, which entity made the alleged false misstatements, or which entities used "camouflaging techniques." This is not an oversight; Plaintiffs intentionally lumps together the Mammoth Defendants (and others) to obscure the absence of specific factual allegations as to each of them.

allegations.

A clear example of this is the absence of specific allegations as to Mammoth Rx.  Plaintiffs define "Mammoth" generally as Mammoth Dx and Mammoth Path Solution, LLC, but notably not Mammoth Rx.  (Complaint ¶ 31.)  This is critical because there are no allegations suggesting that Mammoth Rx was even connected to the interoperability frameworks or participated in any wrongdoing.  (*Compare id.* ¶¶ 37-38 (alleging Mammoth Dx and Mammoth Path Solutions are connected to the interoperability frameworks), *with* ¶ 39 (no allegation that Mammoth Rx was connected to the same frameworks).)  In fact, aside from the impermissible group allegations, the only specific allegation as to Mammoth Rx concerns purported functional flaws of its website and its purported connection to Defendant Baker.  (*See, e.g., id.* ¶¶ 164-165.)  The allegations as to Mammoth Rx are wholly inadequate to support a claim for fraud.

Plaintiffs' undifferentiated "group pleadings" are patently insufficient to survive a motion to dismiss.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (explaining that "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme" (quotations omitted)); *see, e.g., Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 407 F. Supp. 3d 1016, 1035 (D. Haw. 2019) (dismissing fraud claims for impermissible group pleading under Rule 9(b)); *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AG (ANx), 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010) (dismissing impermissible "shotgun pleading" that lumped defendants and obscured alleged misconduct, thus depriving defendants of fair notice).

In sum, Plaintiffs fail to provide allegations "specific enough" to give each defendant "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *See Bly-Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001).  By failing to provide the Mammoth Defendants with the specific

factual allegations upon in which Plaintiffs based their claims of fraud, Plaintiffs run afoul of the underlying purpose of Rule 9(b)'s particularity requirement.  *See id.*; *see also Semegen v. Weidner*, 780 F.2d 727, 730 (9th Cir. 1985) (identifying notice to defendants sufficient to respond beyond general denials as the underlying purpose of Rule 9(b)).

## 2.    Plaintiffs Fail to Allege Justifiable Reliance

Plaintiffs also fail to demonstrate justifiable reliance because they fail to allege "when, where, or how [they were] exposed to or accessed" the alleged misrepresentation.  *See Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078-81 (N.D. Cal. 2012) (dismissing plaintiff's fraud claims for failure to sufficiently plead reliance).  Plaintiffs neither specify that they were the recipients of any alleged misrepresentation, nor that they relied on any alleged misrepresentations to their detriment.  Beyond a conclusory statement saying they were "reasonably justified in relying on . . . false statements and omissions," Plaintiffs fail to actually allege *when* and *how* they relied on any false statements to their detriment.  (Complaint ¶ 232.)

For example, Plaintiffs allege they suffered damages "in the form of funds and employee time to investigate the breadth of the harm" (Complaint ¶ 233), yet such damages cannot possibly be the result of their reliance on any alleged misrepresentation.  They cannot point to a single instance of a specific misrepresentation relied on by any individual Plaintiff that resulted in injury to that Plaintiff.  *See, e.g.*, *Gutierrez v. Johnson & Johnson Consumer Inc.*, No. 19-CV-1345 TWR (AGS), 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021), *aff'd sub nom. Gutierrez v. Bausch Health US, LLC*, No. 21-55141, 2024 WL 1854288 (9th Cir. Apr. 29, 2024) (dismissing Plaintiffs' claims of misrepresentation under Rule 9(b) because they failed to identify which specific advertisement they relied on).

Because Plaintiffs have failed to properly plead the elements of fraud, much less to meet the requisite specificity, their fraud claims must be dismissed.

### D.    Plaintiffs Fail to Allege Aiding and Abetting Fraud Against Defendant Hilton

Plaintiffs also fail to allege that Defendant Hilton aided and abetted in any purported fraud.  To allege aiding and abetting of fraud, a plaintiff must show that the defendant knowingly "(1) substantially assisted or encouraged another to breach a duty," or (2) substantially assisted another's tort through an independently tortious act."  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016).

Plaintiffs therefore are required to plead that Defendant Hilton had actual knowledge of the fraud and substantially assisted in it.  *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118, 1129 (C.D. Cal. 2003).  Further, when "a claim alleges the aiding and abetting of a fraud, substantial assistance must be pled in accordance with Rule 9(b)'s heightened specificity requirements." *Shepardson v. U.S. Bank Tr. Nat'l Ass'n as Tr. for Bungalow Series IV Tr.*, No. 23-CV-05497-NC, 2024 WL 3304800, at *8 (N.D. Cal. July 3, 2024).  Although actual knowledge may be averred generally, plaintiffs must nonetheless state "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Allstate Ins. Co. v. Countrywide Fin. Corp.,* 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011).

Here, Plaintiffs fail to adequately plead the existence of a fraudulent scheme, let alone that Defendant Hilton had knowledge of it and substantially assisted it. Plaintiffs rely on bare, formulaic assertions to plead Hilton's knowledge and participation, unsupported by requisite facts allowing the court to draw a "reasonable inference" of Hilton's liability.  *See id*; *see also Su v. Henry Glob. Consulting Grp.*, No. 220CV02235ODW (PLAx), 2022 WL 19392, at *3 (C.D. Cal. Jan. 3, 2022) ("A vague suspicion of wrongdoing is insufficient to satisfy the actual knowledge requirement.").  For example, Plaintiffs appear to erroneously assert that because Defendant Hilton is identified as a CEO of Mammoth Dx and is listed as an owner of an entity which "markets patient records to attorneys," this is sufficient to

allege that Defendant Hilton participated in the fraudulent scheme.  (*See* Complaint ¶¶ 165, 167.)  This guilt-by-association is precisely the type of speculative and inferential leap that *Twombly* and *Iqbal* foreclose.  *See Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1127 (S.D. Cal. 2021) (dismissing aiding-and-abetting fraud claims against individual defendants for failure to specifically allege their role in the allegedly fraudulent scheme and explaining that "directors and officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position").

To the extent Plaintiffs contend that Defendant Hilton's October 2025 statement that Defendant Baker has never been a founder, co-founder, owner or principal of Mammoth constitutes a misrepresentation, they still fail to explain how it supports their aiding and abetting allegations or how they could have relied on such statement to their detriment.  By Plaintiffs' own allegations, Mammoth's alleged conduct ended by October 2025, thus making any alleged reliance of that statement implausible.  (Complaint ¶ 170.)  As such, Plaintiffs' aiding and abetting claim fails to meet Rule 9(b)'s particularity requirements and also fails to allege justifiable reliance.[5]

---

[5]  Plaintiffs' UCL claim similarly fails because it is sounding in fraud, and therefore must likewise satisfy the heightened pleading requirements under Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Groff v. Keurig Green Mountain, Inc.*, No. 5:23-CV-01492-SSS-SPx, 2024 WL 2335634, at *5 (C.D. Cal. Mar. 18, 2024) ("UCL claims that sound in fraud are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b)."); *See Scheibe v. Esupplements, LLC.*, 681 F. Supp. 3d 1101, 1116 (S.D. Cal. 2023) (dismissing plaintiff's CLRA, FAL, UCL, and unjust enrichment claims for failure to plead reliance with the specificity required by Rule (b)); (*see* Complaint ¶¶ 282-84 (describing Defendants' allegedly "unlawful and fraudulent business practices")).

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second, Fifth, Seventh, Ninth, and Tenth Causes of Action with prejudice.

DATED:  March 13, 2026                    Respectfully submitted,

Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By:  _____/s/ Sharon Mayer_____
            Sharon Mayer
Attorneys for Defendants Unique Medi Tech LLC, d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc. and Ryan Hilton

## LOCAL RULE 11.6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this memorandum contains 5,932 words which complies with the word limit set by L.R. 11-6.1.

By:    /s/ Sharon Mayer
       Sharon Mayer
       Attorneys for Defendants Unique Medi
       Tech LLC, d/b/a Mammoth Dx, Mammoth
       Path Solution, LLC, Mammoth Rx, Inc. and
       Ryan Hilton