# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc.,

Plaintiffs,

v.

Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100,

Defendants.

Case No. 2:26-cv-00321-FMO-RAO

Assigned to:  Hon. Fernando M. Olguin

**STIPULATED JUDGMENT AND PERMANENT INJUNCTION**

Date Action Filed:        January 13, 2026

STIPULATED JUDGMENT AND
PERMANENT INJUNCTION

On January 13, 2026, Plaintiffs Epic Systems Corporation ("Epic"); OCHIN, Inc. ("OCHIN"); Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc. (collectively, "Plaintiffs"), filed a Complaint Seeking Immediate and Permanent Injunctive Relief [Dkt. 1] (the "Complaint") in the above-captioned action against Defendants Health Gorilla, Inc. ("Health Gorilla"); RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC ("Unit 387"); SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth ("GuardDog"); Hoppr, LLC; Meredith Manak, and DOES 1-100 alleging, among other things, that Defendants Health Gorilla, Unit 387, and GuardDog defrauded Plaintiffs when GuardDog, using connections to the Carequality interoperability framework (the "Carequality Framework") provided by Health Gorilla and Unit 387, obtained thousands of patient medical records from Plaintiffs based on the false assertion that the patient medical records were all being requested for treatment purposes.

Now, Plaintiffs and GuardDog (collectively, and for purposes of this Judgment, the "Parties") have reached an agreement to resolve Plaintiffs' claims for immediate and permanent injunctive relief against GuardDog in the above-captioned action, and as part of that agreement, have agreed to the Stipulated Judgment and Permanent Injunction set forth below (the "Judgment"). The Parties' agreement to resolve the above-captioned action is conditioned upon entry by the Court of this Judgment

THEREFORE, HAVING READ AND CONSIDERED THE STIPULATION RE: JUDGMENT AND PERMANENT INJUNCTION, AND GOOD CAUSE APPEARING THEREFOR, THE COURT HEREBY ORDERS AS FOLLOWS:

## **FINDINGS**

1. This Court has jurisdiction over this matter;

2. The Complaint alleges that GuardDog committed fraud against Plaintiffs (Count III), aided and abetted fraud against Plaintiffs (Count VI), violated California

STIPULATED JUDGMENT AND
PERMANENT INJUNCTION

Business & Professions Code § 17200 et seq. (Count VII), and violated the Computer Fraud and Abuse Act (Count X);

3.     GuardDog neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Judgment;

4.     This Judgment is a compromise of disputed claims only.  The factual stipulations provided herein are made solely for the limited purpose of supporting jurisdiction, entry, and enforcement of this Judgment in this action, and for no other purpose;

5.     GuardDog admits that, since it began operating as a company in 2024, its goal was to provide chronic care management ("CCM") and remote patient monitoring ("RPM") for patients, but that did not happen.  For the duration of its existence, its business instead focused on requesting, reviewing, and summarizing medical records, and providing those medical records to law firms.  GuardDog further admits that its predecessor, Critical Care Nurse Consulting LLC ("CCNC"), provided similar services and medical records to law firms between 2022 and 2024;

6.     GuardDog admits that, pursuant to the business purpose described in Paragraph 5 of requesting, reviewing, and summarizing medical records, and providing those medical records to law firms, GuardDog obtained medical records in 2024 through the Carequality Framework by asserting a treatment purpose for those records.  GuardDog further admits that some of those records may have been medical records of patients of OCHIN's and Epic's healthcare provider customers, including Plaintiffs Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc.;

7.     GuardDog admits that GuardDog's predecessor, CCNC, indirectly accessed the Carequality Framework through Unit 387.  GuardDog further admits that Defendant Meredith Manak of Unit 387 informed CCNC that it was permissible for CCNC to indirectly access the Carequality Framework for the purpose of requesting, reviewing, and summarizing medical records and providing those medical records to law firms.

3

STINDICATEDSMALLCAPS

Throughout this time period, GuardDog understands that Unit 387 was directly accessing the Carequality Framework on behalf of CCNC, except as further explained below;

8. GuardDog further admits that, in 2024, GuardDog obtained direct access to the Carequality Framework through a contractual relationship with Health Gorilla after GuardDog informed Health Gorilla that Unit 387 was impermissibly holding itself out as CCNC and requesting medical records from the Carequality Framework under the false assertion that those medical records were being requested by CCNC, when the medical records were in fact being requested directly by Unit 387 without CCNC's knowledge. GuardDog did not discover the full extent of the number of medical record requests made by Unit 387 under CCNC's credentials without CCNC's knowledge or permission until 2025;

9. GuardDog admits that, at the time GuardDog was connected to the Carequality Framework, GuardDog understood and believed that Health Gorilla was aware of GuardDog's business activities in requesting, reviewing, and summarizing medical records, and providing those medical records to law firms;

10. GuardDog admits that, based on conversations with and representations made by Meredith Manak of Unit 387 and representatives of Health Gorilla, GuardDog understood and believed that it was permissible for GuardDog to request medical records through the Carequality Framework using a "treatment" purpose to fulfill GuardDog's business purposes, including, but not limited to, requesting, reviewing, and summarizing medical records and providing those medical records to law firms;

11. This Judgment is not a judicial determination concerning the amount of Plaintiffs' damages caused by the conduct alleged in the above-captioned action and has no preclusive or conclusive effect on the amount of damages caused by that conduct, provided, however, that Plaintiffs are not seeking and will not seek damages or monetary recompense of any kind from or against GuardDog;

12. This Judgment does not in any way prejudice Plaintiffs' or GuardDog's ability to pursue legal action or obtain any available remedies, including damages, against

4

STIPULATED JUDGMENT AND
PERMANENT INJUNCTION

any persons or entities other than GuardDog based on the conduct alleged in the above-captioned action; and

13.    This Judgment does not affect the rights, claims, defenses and/or other positions of any Defendant to this Action other than GuardDog; and

14.    Entry of this Judgment is in the public interest.

## **ORDER**

15.    Judgment is entered for Plaintiffs and against GuardDog on the Third, Sixth, Seventh, and Tenth causes of action set forth in Plaintiffs' Complaint pursuant to the Stipulation Re: Judgment and Permanent Injunction between Plaintiffs and GuardDog;

16.    The Court determines that there is no just reason for delay and therefore directs the entry of final judgment against GuardDog and in favor of Plaintiffs according to Federal Rule of Civil Procedure 54(b).  All claims and defenses in the above-captioned action against GuardDog are hereby resolved by this Judgment;

17.    GuardDog, including any affiliates, subsidiaries, or entities that now exist or may hereafter be formed, whether by spin-off, merger, consolidation, reorganization, divestiture, or otherwise, that carry on any portion of GuardDog's business are:

a.    Permanently enjoined from requesting records using the TEFCA or Carequality interoperability frameworks;

b.    Required to delete any patient health information or records obtained from the TEFCA or Carequality frameworks within one week of the entry of this Judgment, except as required to preserve documentation necessary for this litigation;

c.    Permanently enjoined from any further use or dissemination of any patient health information or records obtained from the TEFCA or Carequality interoperability frameworks;

18.    Upon entry of this Judgment, Plaintiffs fully and finally release, acquit, and forever discharge GuardDog from any and all claims, causes of action, and relief of any kind that Plaintiffs asserted or could have asserted against GuardDog arising out of or relating to the facts, transactions, occurrences, or conduct alleged in the Complaint

STIPULATED JUDGMENT AND
PERMANENT INJUNCTION

through the date of entry of this Judgment (the "Released Claims").  This Judgment constitutes a full accord, satisfaction, and discharge of all Released Claims;

19.    GuardDog understands and agrees that a violation of the Judgment will expose it to all penalties provided by law;

20.    GuardDog understands and agrees that the violation of the Judgment will constitute immediate and irreparable injury to Plaintiffs and that Plaintiffs shall have the right to enforce this Judgment and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that Plaintiffs may have for a breach or threatened breach of this Judgment;

21.    GuardDog irrevocably and fully waives any and all rights to appeal the Judgment, to have it vacated or set aside, or otherwise to attack in any way, directly or collaterally, its validity or enforceability, but nothing herein waives GuardDog's right to oppose, seek clarification of, or appeal any later order interpreting, modifying, or enforcing this Judgment in a manner inconsistent with its express terms;

22.    GuardDog consents to the continuing jurisdiction of this Court for purposes of enforcement of the Judgment;

23.    The Court will maintain continuing jurisdiction over this action for purposes of enforcing the Judgment; and

24.    The Parties shall bear their own costs and attorneys' fees.

**IT IS SO ORDERED**.

Dated:  March 20, 2026

_____/s/_____
**Hon. Judge Fernando M. Olguin**
**United States District Judge**

6

STIPULATED JUDGMENT AND
PERMANENT INJUNCTION