**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:  310.229.1000
Facsimile:  310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:  202.887.4000
Facsimile:  202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, <br><br> Defendants. | Case No. 2:26-cv-00321-FMO-RAO <br><br> Assigned to:  Hon. Fernando M. Olguin <br><br> **PLAINTIFFS' OPPOSITION TO THE RAVILLAMED DEFENDANTS' MOTION TO SEVER** <br><br> Date Action Filed:       January 13, 2026 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ......................................................................................... 3

III.  ARGUMENT .............................................................................................. 5

    A.    Plaintiffs Properly Joined All Defendants Pursuant To Rule 20(a)(2). .......... 6

        1.    Plaintiffs' Claims Against Defendants Arise Out Of The Same Transaction Or Occurrence. ............................................................. 6

        2.    Plaintiffs' Claims Raise Questions Of Law And Fact Common To Defendants. ..................................................... 10

    B.    Joinder Comports With Principles Of Fundamental Fairness, And Therefore, Severance Under Rule 20(b) Is Not Warranted. ........................ 12

        1.    Joinder Is Not Prejudicial And Severance Would Prejudice Plaintiffs ................................................................. 12

        2.    Joinder Of The Defendants Promotes Judicial Economy And Severance Would Hinder Judicial Economy. ................................... 15

IV.  IN THE ALTERNATIVE, THE CASES SHOULD BE CONSOLIDATED ....... 16

V.   CONCLUSION ........................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adams Apple, Inc.*,
    829 F.2d 1484 (9th Cir. 1987) ................................................................................16

*Aikins v. St. Helena Hosp.*,
    1994 WL 796604 (N.D. Cal. May 16, 1994)..............................................................6

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
    99 F. Supp. 3d 1110 (C.D. Cal. 2015) .................................................................5, 7

*U.S. ex rel. Anthony v. Burke Eng'g Co.*,
    356 F. Supp. 2d 1119 (C.D. Cal. 2005) ..........................................................6, 9, 10

*Arabia v. CWMBS, Inc.*,
    2013 U.S. Dist. LEXIS 64571 (S.D. Cal. May 3, 2013) .........................................16

*Barrios v. Torres*,
    2023 WL 2696657 (E.D. Cal. Mar. 29, 2023)..........................................................7

*Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*,
    2014 WL 12572955 (E.D. Cal. Dec. 9, 2014)..........................................................17

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
    2013 WL 2631333 (S.D. Cal. June 11, 2013) ....................................12, 13, 14, 15

*Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*,
    2009 WL 3857417 (E.D. Cal. Nov. 17, 2009)..........................................................15

*Collaboration Props., Inc. v. Tandberg ASA*,
    2006 WL 2398762 (N.D. Cal. Mar. 28, 2006) ........................................................10

*Corley v. Google, Inc.*,
    316 F.R.D. 277 (N.D. Cal. 2016)......................................................................14, 15

*Coughlin v. Rogers*,
    130 F.3d 1348 (9th Cir. 1997) ...........................................................................5, 6

*Cuprite Mine Partners LLC v. Anderson*,
    809 F.3d 548 (9th Cir. 2015) .............................................................................5, 7

*Desert Empire Bank v. Ins. Co. of N. Am.*,
  623 F.2d 1371 (9th Cir. 1980) ...................................................................................12

*Garcia v. Sleeley*,
  2018 WL 3303013 (S.D. Cal. July 5, 2018) .....................................................6, 7, 11

*Hard Drive Prods., Inc. v. Does 1-188*,
  809 F. Supp. 2d 1150 (N.D. Cal. 2011) ....................................................................15

*Huene v. United States*,
  743 F.2d 703 (9th Cir. 1984) ...................................................................................16

*Invs. Rsch. Co. v. U.S. Dist. Ct. for C.D. Cal.*,
  877 F.2d 777 (9th Cir. 1989) ...................................................................................16

*Jacques v. Hyatt Corp.*,
  2012 WL 3010969 (N.D. Cal. July 23, 2012) ................................................10, 14, 15

*Jet Aviation Flight Servs. Inc. v. 7BD LLC*,
  2025 WL 1266702 (D. Ariz. May 1, 2025) ................................................................17

*Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*,
  497 F.2d 1151 (2d Cir. 1974) ...................................................................................15

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) .....................................................................................8

*Rubio v. Monsanto Co.*,
  181 F. Supp. 3d 746 (C.D. Cal. 2016) .....................................................................6, 7

*Rush v. Sport Chalet, Inc.*,
  779 F.3d 973 (9th Cir. 2015) .......................................................................................5

*Russo v. Fed. Med. Servs., Inc.*,
  756 F. Supp. 3d 748 (N.D. Cal. 2024) ......................................................................10

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) .................................................................................................5, 7

*United States v. Uriarte*,
  575 F.2d 215 (9th Cir. 1978) .....................................................................................13

**Statutes**

California Business and Professions Code §§ 17200, *et seq.* .......................................5, 9

Computer Fraud and Abuse Act .......................................................................................5

Health Information Technology for Economic and Clinical Health Act of 2009 .............4

Health Insurance Portability and Accountability Act of 1996...........................4, 9, 10, 11

**Other Authorities**

Fed. R. Civ. P.
    13.....................................................................................................................6
    20..............................................................................................................*passim*
    21.....................................................................................................................5
    42...................................................................................................................16

## I.    <u>INTRODUCTION</u>

The national health information exchange frameworks at the center of this case—Carequality and the Trusted Exchange Framework and Common Agreement ("TEFCA")—exist to ensure that a patient's medical history follows them to every physician who needs it.  These frameworks function because every participant trusts every other participant to tell the truth about why it is requesting records—that each query made for a "treatment purpose" is from a genuine healthcare provider seeking records for genuine patient care.  When that trust is honored, interoperability saves lives.  When some, like Defendants, violate that trust, the frameworks can become a data mart where Americans' most sensitive health records—genetic histories, mental health diagnoses, reproductive information—can be harvested under false pretenses and sold.

Movants, the "RavillaMed Defendants"—a cell comprised of Dr. Avinash Ravilla, his entity RavillaMed, law firm record retrieval business LlamaLab, and its owner and technical architect Shere Saidon—illustrate perfectly the fraudulent scheme at issue in this case.  Health Gorilla onboarded RavillaMed, the named connection into the Carequality directory, based on and furthering RavillaMed's false representations to the participants in the directory, including Plaintiffs, that RavillaMed was treating patients.  When later confronted with facts indicating connections between RavillaMed and LlamaLab—business cards, public websites, and corporate records—Heath Gorilla and RavillaMed doubled down and submitted a purportedly sworn false statement from Dr. Ravilla denying any relationship with LlamaLab.

After denying any connection pre-suit, the RavillaMed Defendants now jointly ask this Court to sever Plaintiffs' claims against them from the other Defendants in this case, except Health Gorilla.  The RavillaMed Defendants' misjoinder arguments fail, omitting crucial factual allegations and relying on inapposite case law.  Most notably, the RavillaMed Defendants ignore that, along with Health Gorilla, the RavillaMed

1

Defendants, Mammoth Defendants,[1] and Unit 387 Defendants[2] each have within them a Defendant entity or entities that are bound by one or more of the interoperability agreements that govern the Carequality and TEFCA interoperability frameworks:  the Carequality Connected Agreement ("CCA") and the TEFCA Common Agreement (the "Common Agreement").

Plaintiffs' claims arise out of the same transaction or occurrence or series of transactions:  just like the other nests of Defendants in this action, the RavillaMed Defendants, with Health Gorilla, unlawfully accessed patient records from the interoperability frameworks in violation of the law and the governing interoperability agreements.  At issue are Defendants' *identical violations* of the *same laws and contracts* entered through Health Gorilla, *the same gatekeeping intermediary*, for the *same frameworks*, directing their *identical misconduct* at the *same victims*.  Plaintiffs' claims against all of the Defendants all belong in the same case.  Moreover, Plaintiffs' claims raise the same questions of law and common questions of fact as to the Defendants.  Therefore, the RavillaMed Defendants are properly joined.

Joinder of the RavillaMed Defendants also comports with principles of fundamental fairness and promotes judicial economy.  The RavillaMed Defendants' concern about purported jury confusion resulting in their attribution of evidence to the wrong defendant is speculative and not germane at this stage of the proceedings.  Nor is there any risk of this hypothetical fear coming to fruition as the evidence presented at trial will be significantly overlapping due to the common legal and factual questions.  Similarly, the RavillaMed Defendants' judicial economy arguments fall flat, as they too ignore the significant overlap in facts, legal issues, and evidence related to the RavillaMed, Mammoth, and Unit 387 Defendants.  Meanwhile, severance would prejudice Plaintiffs

---

[1] Referring to Unique Medi Tech LLC, d/b/a Mammoth Dx and Mammoth Path Solutions, LLC (together, "Mammoth"), as well as Mammoth Rx Inc., Ryan Hilton, Daniel Baker, and Max Toovey.

[2] Referring to Unit 387 LLC ("Unit 387"), SelfRx, LLC, d/b/a MySelf.Health ("SelfRx"), Hoppr, LLC ("Hoppr"), Critical Care Nurse Consultants, LLC, d/b/a GuardDog Telehealth ("GuardDog"), and Meredith Manak.

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER

by forcing them to present the same evidence in three different cases and hinder judicial economy by multiplying the same proceedings across three different, inextricably intertwined cases.

Because the RavillaMed Defendants are properly joined under Rule 20(a)(2) and their joinder comports with principles of fundamental fairness while severance would not, the Court should deny the RavillaMed Defendants' motion to sever.  In the alternative, if the Court is inclined to grant the RavillaMed Defendants' motion, Plaintiffs respectfully request that the Court consolidate the resulting cases.

## II.    BACKGROUND[3]

Plaintiffs are long-standing participants in interoperability efforts.  *See* Compl. ¶¶ 6-7, 28-30, 112-116.  Epic pioneered interoperability over two decades ago and is an Implementer on the Carequality framework and a QHIN on the TEFCA framework.  *Id.* ¶ 6.  OCHIN is a nonprofit organization supporting thousands of healthcare providers nationwide and operates as a Carequality Connection and TEFCA Participant.  *Id.* ¶ 7.  Reid, Trinity, and UMass Memorial Health (collectively, the "Provider Plaintiffs") are nonprofit healthcare systems that also participate in the frameworks as Carequality Connections and TEFCA Participants.  *Id.* ¶¶ 28-30.

Health Gorilla operates as both a Carequality Implementer and a TEFCA QHIN.  *Id.* ¶¶ 58, 86.  In these roles, Health Gorilla is contractually obligated to serve as a gatekeeper to the frameworks and is responsible for onboarding entities to the frameworks, validating their eligibility, and once onboarded, ensuring their compliance with the contractual rules governing permissible use of the frameworks, as detailed in the CCA and Common Agreement.  *Id.* ¶¶ 54, 56, 59, 84, 88-89.  Health Gorilla also represented that its Carequality Connections and TEFCA Participants would access patient records only for permitted purposes.  *See id.* ¶¶ 20, 31, 59-72, 88-102.

---

[3] All capitalized terms shall have the meaning assigned to them in Plaintiffs' Complaint.  All exhibits referenced herein are those attached to Plaintiffs' Complaint.

3

Health Gorilla onboarded or enabled the onboarding of multiple entities to the Carequality and TEFCA frameworks, including RavillaMed, Mammoth, Unit 387, SelfRx, and GuardDog (the "Framework Defendants"). *See id.* ¶¶ 139, 175. When Health Gorilla onboarded the Framework Defendants, it falsely claimed they sought access to patient records for treatment purposes. *Id.* ¶¶ 146, 161, 176-177, 209, 227, 243. But the Framework Defendants do not provide treatment—they monetize patient records without patients' knowledge or consent, including by marketing them to lawyers. *Id.* ¶¶ 11, 145, 151-157, 162-170, 178-182.

To be onboarded to the Carequality framework, the Framework Defendants each entered into the CC Terms with Health Gorilla. *Id.* ¶ 60. And to be onboarded to the TEFCA framework, RavillaMed and Mammoth entered into Terms of Participation ("ToPs") with Health Gorilla. *Id.* ¶ 89. When entering into these agreements, the Framework Defendants falsely represented that they sought access to patient records for a permitted purpose—namely, for treatment purposes. *Id.* ¶¶ 32, 27-38, 44, 60, 89. Each agreement defines "treatment" by incorporating the definition assigned to the term by the Health Insurance Portability and Accountability Act of 1996 and the Health Information Technology for Economic and Clinical Health ("HITECH") Act of 2009 (together with their implementing regulations, "HIPAA"). *Id.* ¶¶ 59-67, 88-98; Ex. A §§ 7, 21.14; Ex. B § 5; Ex. C § 3.1; Ex. E § 1.1; Ex. G at 3; Ex. H at 3. The CC Terms and ToPs that Health Gorilla entered into with the Framework Defendants are attached as exhibits to and incorporated by reference into the CCA and Common Agreement entered into by and between Health Gorilla and the entities that govern the frameworks. *See* Ex. A §§ 1.8, 21.14; Ex. E § 1.1.

While connected to the Carequality and TEFCA frameworks, despite their obligations and factual assertions, the Framework Defendants, through and with the help of Health Gorilla and others, abused these frameworks to access or allow access to patient records for non-treatment, non-permitted purposes. Compl. ¶¶ 138-183. In doing so, they engaged in the same courses of misconduct identically violating the same contracts. *Id.*

Plaintiffs now bring claims for breach of contract, fraud, aiding and abetting fraud, violation of California Business and Professions Code § 17200, *et seq.*, and violation of the Computer Fraud and Abuse Act based on these misdeeds. *Id.* ¶¶ 198-330.

### III.   <u>ARGUMENT</u>

Federal Rule of Civil Procedure 20(a) permits joinder if: (1) the claims against each defendant arise out of the same transaction or occurrence, or the same "series of transactions or occurrences"; and (2) "there are common questions of law or fact." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); Fed. R. Civ. P. 20(a)(2). By contrast, Rule 21 permits courts to "sever any claim against a party." Fed. R. Civ. P. 21. The standard for severance is drawn from Rule 20. *See Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015).

Rule 20's joinder analysis is not a one-size-fits-all or "rigid" inquiry—rather, courts employ a "case-by-case approach" that interprets the requirements of Rule 20 "as broadly as possible whenever doing so is likely to promote judicial economy." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1187-88 (C.D. Cal. 2015) (quoting 7 Wright & Miller's Federal Practice & Procedure § 1653 (3d ed. 2014)); *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 552 (9th Cir. 2015) (Rule 20 "is to be liberally construed to promote the expeditious determination of disputes, and to prevent multiple lawsuits." (citing *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977))); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). Thus, "courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." *Almont*, 99 F. Supp. 3d at 1187 (quoting 7 Wright & Miller's Federal Practice & Procedure § 1653 (3d ed. 2014)).

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER

### A.    Plaintiffs Properly Joined All Defendants Pursuant To Rule 20(a)(2).

#### 1.    Plaintiffs' Claims Against Defendants Arise Out Of The Same Transaction Or Occurrence.

The first prong of the Rule 20 analysis "refers to similarity in the factual background of a claim." *Coughlin*, 130 F.3d at 1350.  When evaluating this prong, courts "assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder." *Garcia v. Sleeley*, 2018 WL 3303013, at *8 (S.D. Cal. July 5, 2018) (citing *Coughlin*, 130 F.3d at 1350), *report and recommendation adopted in relevant part*, 2018 WL 5134281 (S.D. Cal. Oct. 22, 2018). "[A] number of district courts in this circuit have cited to or applied the logical relationship test" in that evaluation. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 757 (C.D. Cal. 2016) (collecting cases).  "The logical relationship test considers 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *U.S. ex rel. Anthony v. Burke Eng'g Co.*, 356 F. Supp. 2d 1119, 1122 (C.D. Cal. 2005) (citation omitted) (drawing on Rules 13 and 20 to interpret the phrase "the same transaction or occurrence" in a statutory context and explaining that the conduct complained of likely satisfied those Rules); *see also Aikins v. St. Helena Hosp.*, 1994 WL 796604, at *2 (N.D. Cal. May 16, 1994) (applying the logical relationship test in the context of plaintiff joinder under Rule 20).  In all, "[a]lthough there might be different occurrences, where the claims involve enough related operative facts, joinder in a single case may be appropriate." *Garcia*, 2018 WL 3303013, at *8 (citations omitted).

The RavillaMed Defendants argue that the claims against them should not be adjudicated alongside the other Defendants in this case, all of whom committed the same abuses of the same interoperability frameworks contributing to the same harms against the same Plaintiffs and patients.  Mot. at 3-11.  Their arguments turn on the misconception that Plaintiffs cannot rely solely on Health Gorilla as the common "hub" of a "wheel-like conspiracy," and in that vein rely on cases holding that defendants were misjoined where

6

their only connection was that they were each separately involved with the same individual, distributor, or industry. *Id.* at 8-13 (collecting cases).

The RavillaMed Defendants' attempt to formulate a rigid test is antithetical to Supreme Court and Ninth Circuit authority affirming that Rule 20 requires a "case-by-case approach" that is applied "flexibl[y]" and reads Rule 20's requirements "as broadly as possible." *Almont*, 99 F. Supp. 3d at 1187-88; *Cuprite Mine*, 809 F.3d at 552 (Rule 20 "is to be liberally construed"); *United Mine Workers*, 383 U.S. at 724 (applying Rule 20 to enable "the broadest scope of action" is "strongly encouraged").  Courts have recognized that even where "there might be different occurrences, where the claims involve enough related operative facts, joinder in a single case may be appropriate." *Rubio*, 181 F. Supp. 3d at 756 (quoting *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 341 (N.D. Cal. 2014)); *see*, *e.g.*, *Almont*, 99 F. Supp. 3d at 1188 (in case involving 14 plaintiffs, hundreds of defendants, and claims implicating over 400 different contracts, the court held that "[w]hile, strictly speaking, each claim line and attendant claims process does implicate a different 'transaction' of sorts," plaintiffs' complaint should not be "read so narrowly"; "each discrete claim is part of the larger systematic behavior alleged" and "[w]hen viewed in this sense, the Counts against each defendant arise out of the same series of transactions or occurrences.").  And, courts have found joinder appropriate even where there is no connection amongst the defendants because of the sufficiency of the related facts.  *See*, *e.g.*, *Barrios v. Torres*, 2023 WL 2696657, at *4-5 (E.D. Cal. Mar. 29, 2023) (joinder was proper even though the claim "involv[ed] employee defendants from three different prison facilities" based on plaintiff's allegation that at each prison facility, "the law library staff interfered with his meaningful access to the courts through a denial of adequate law library services"); *Garcia*, 2018 WL 3303013, at *9 (where two separate facilities undertook medical care of plaintiff at two different times, the court found that it would be "an inordinate waste of judicial time and resources to litigate [plaintiff's] claims separately against the two sets of defendants" because there were enough similar

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER

allegations made against both, even though "not every claim [was] applicable to every defendant").

Moreover, unlike in the cases cited by the RavillaMed Defendants, Plaintiffs here do not allege that Health Gorilla is the sole connection among the RavillaMed Defendants, Mammoth Defendants, and Unit 387 Defendants. Instead, in addition to the fact that Health Gorilla sits at the center of the fraud in this case, Plaintiffs tie the relevant Defendant entities together through the CCA and Common Agreement. *See* Compl. ¶¶ 54-111. Health Gorilla entered into these agreements to join the Carequality and TEFCA frameworks, respectively. *Id.* ¶¶ 59, 88. To be onboarded to the Carequality framework, the Framework Defendants entered into CC Terms with Health Gorilla. *Id.* ¶ 60. To be onboarded to the TEFCA framework, RavillaMed and Mammoth entered into ToPs with Health Gorilla. *Id.* ¶ 89. The CCA and Common Agreement that Health Gorilla entered into with the entities that govern the frameworks include the CC Terms and ToPs, respectively, as exhibits incorporated by reference. *See* Ex. A §§ 1.8, 21.14; Ex. E § 1.1. Stated simply, at least one Defendant within each of the groups of Defendants—including the RavillaMed Defendants, the Mammoth Defendants, and the Unit 387 Defendants— has signed onto precisely the same two contracts—Health Gorilla's CCA and Common Agreement. *See, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017) ("Under California law, a contract and a document incorporated by reference into the contract are read together as a single document.").[4]

The CCA and the CC Terms govern the relationships and interactions between Health Gorilla and the Framework Defendants, as well as their relationships and interactions with others on the Carequality framework, including Plaintiffs. *See generally* Exs. A, B. Likewise, the Common Agreement and the ToPs govern the relationships and interactions between Health Gorilla and RavillaMed and Mammoth Defendants, as well

---

[4] The RavillaMed Defendants apply California law to Plaintiffs' breach of contract claim. *See generally* RavillaMed Defendants' Mot. to Dismiss (ECF 51) (arguing the Court should dismiss Plaintiffs' claims against it based on dispute resolution provision in the interoperability agreements and exclusively applying California law).

8

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER

as their relationships and interactions with others on the TEFCA framework, including Plaintiffs. *See generally* Exs. E, H.  Therefore, the CCA and Common Agreement present operative facts common to Health Gorilla and the RavillaMed Defendants, Mammoth Defendants, and Unit 387 Defendants. *Cf. Anthony*, 356 F. Supp. 2d at 1122 (explaining that defendants using "the same computerized system" and their administration of that system were common "operative facts" as to all claims and defendants at issue).

Plaintiffs' breach of contract claims arise from RavillaMed, Mammoth, and Unit 387 breaching the CC Terms and RavillaMed and Mammoth breaching the ToPs in identical ways—that is, by requesting patient records for non-treatment purposes. *See* Compl. ¶¶ 302-317.  Plaintiffs' fraud claims are based in part on the Framework Defendants falsely asserting that they sought patient records for treatment purposes. *See id.* ¶¶ 199-205, 219-222, 237-240. (To be sure, they are also based on false assertions and material omissions made by Ravilla, LlamaLab, Saidon, Hilton, Baker, Toovey, Manak, Unit 387, and Hoppr made to support the misrepresentations that the Framework Defendants sought patient records for treatment purposes.  *See id.* ¶¶ 199-201, 206-210, 223-226, 241-242.)  Similarly, Plaintiffs' aiding and abetting fraud claims are based on Ravilla, Saidon, Hilton, Baker, Toovey, and the Unit 387 Defendants facilitating, or making the false representations or omissions that their related entities sought patient records for treatment purposes.  *See id.* ¶¶ 253-255, 262-264, 271-273.  And what is—or is not—a proper treatment purpose will be determined based on the same definition of "treatment," as defined by HIPAA. *See id.* ¶¶ 67, 97, 121; Ex. C § 3.1 (defining treatment by incorporating HIPAA's definition); Ex. G at 3 (same); Ex. H at 3 (same).  Moreover, Plaintiffs' allegation that their reliance on Defendants' misrepresentations was reasonably justified is based, in part, on the terms of the contracts that govern Defendants' relationships and interactions with others, including Plaintiffs, with respect to the interoperability frameworks.  *See* Compl. ¶¶ 214, 232, 248, 253, 262, 271.  Finally, Plaintiffs' Computer Fraud and Abuse Act and California Business and Professions Code § 17200, *et seq.*, claims similarly arise from these same misrepresentations that rely on

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER

HIPAA to define "treatment," just as the relevant contracts do. *See id.* ¶¶ 67, 97, 121, 282-283, 323.

Thus, the claims against the RavillaMed Defendants, Mammoth Defendants, and Unit 387 Defendants all have a tie to the same agreements, and the same operative facts form crucial parts of the basis for each claim such that the RavillaMed Defendants, Mammoth Defendants, and Unit 387 Defendants are properly joined. *See Collaboration Props., Inc. v. Tandberg ASA*, 2006 WL 2398762, at *4 (N.D. Cal. Mar. 28, 2006); *cf. Anthony*, 356 F. Supp. 2d at 1122. These commonalities are sufficient to satisfy the "same transaction or occurrence" requirement even assuming, *arguendo*, that the RavillaMed Defendants, Mammoth Defendants, and Unit 387 Defendants did not actively work together to facilitate each other's misdeeds (a fact that is subject to discovery in this action). *See, e.g.*, *Jacques v. Hyatt Corp.*, 2012 WL 3010969, at *3-4 (N.D. Cal. July 23, 2012) (finding that plaintiff's claims against a medical provider and a hotel arose from the same transaction or occurrence even though defendants did not work together to cause plaintiff's harms).

### 2. Plaintiffs' Claims Raise Questions Of Law And Fact Common To Defendants.

The second prong of Rule 20(a)(2) notably "does not require that all questions of law and fact raised by the dispute be common." *Russo v. Fed. Med. Servs., Inc.*, 756 F. Supp. 3d 748, 754 (N.D. Cal. 2024) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974)). There need only be "at least one common question of law or fact." *Jacques*, 2012 WL 3010969, at *4.

Here, Plaintiffs' claims raise a multitude of questions of law and fact common to the RavillaMed, Mammoth, and Unit 387 Defendants, including, but not limited to, the following:

- What the CCA, CC Terms, Common Agreement, and ToPs require (*see* Compl. ¶¶ 69-80, 99-111, 289-298, 304-315);
- What representations these agreements contain (*see id.*);

10

- What is and is not a proper treatment purpose pursuant to HIPAA's definition of treatment (*see id.*);

- Whether falsely asserting a treatment purpose is a breach of the CCA, CC Terms, Common Agreement, and ToPs (*see id.*);

- What Defendants were required to affirm when being onboarded to the Carequality and TEFCA frameworks (*see id.* ¶¶ 69-80, 99-111, 146, 161, 174-177, 201-212, 219-230, 237-248, 289-298, 304-315);

- What representations Defendants made when initiating queries for patient records (*see id.*);

- Whether Defendants provided treatment (*see id.* ¶¶ 138-140, 148-152, 157, 160-164, 170, 178-182); and

- What representations Plaintiffs relied on when engaging with the Carequality and TEFCA interoperability frameworks (*see id.* ¶¶ 69-80, 99-111, 146, 161, 174-177, 201-212, 219-230, 237-248, 289-298, 304-315).

The RavillaMed Defendants argue that the issue of what kind of "treatment" RavillaMed, Mammoth, SelfRx, and GuardDog purport to provide presents individualized questions of fact. Mot. at 17. But the RavillaMed Defendants ignore that "the 'treatment' question," as they call it, *id.*, is also a common question to all Defendants in this case. Specifically, treatment has a singular legal definition that is assigned to it by HIPAA. *See* Compl. ¶¶ 59-67, 69, 88-98, 121. That definition and its contours thus present legal questions common to the RavillaMed Defendants, Mammoth Defendants, and Unit 387 Defendants. Similarly, what qualifies as a misrepresentation and what qualifies as a material omission are questions of law raised in this action that are common to the Defendants. Moreover, generally, where, as here, plaintiffs bring "identical claims" against different groups of defendants, "the second prong of Rule 20(a) joinder is clearly met." *Garcia*, 2018 WL 3303013, at *8. Because Plaintiffs' claims arise out of the same transaction or occurrence and raise questions of law and fact common to the RavillaMed

Defendants, Mammoth Defendants, and Unit 387 Defendants, those defendants are all properly joined.

## B. Joinder Comports With Principles Of Fundamental Fairness, And Therefore, Severance Under Rule 20(b) Is Not Warranted.

Where, as here, Rule 20's requirements are satisfied, "a trial court must also examine the other relevant factors in a case in order to determine whether permissive joinder . . . comport[s] with the principles of fundamental fairness." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980). "These factors include judicial economy, prejudice and whether separate claims require different witnesses and documentary proof." *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2013 WL 2631333, at *4 (S.D. Cal. June 11, 2013) (citing *Jacques*, 2012 WL 3010969, at *2); *see also* Fed. R. Civ. P. 20(b) ("The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party."). Despite the RavillaMed Defendants' arguments to the contrary, joinder of all Defendants in a single action comports with principles of fundamental fairness. In fact, severing the cases would significantly prejudice Plaintiffs and hinder judicial economy.

### 1. Joinder Is Not Prejudicial And Severance Would Prejudice Plaintiffs.

The RavillaMed Defendants argue that joinder here is prejudicial because "[t]he risk that evidence admitted against one group would 'spill over' and prejudice another is substantial." Mot. at 15. They assert that this risk is concrete and not speculative because the Mammoth Defendants' scheme involved more patient records than the RavillaMed Defendants' scheme; Health Gorilla provided differing explanations "about each group['s]" misconduct; and as a convicted felon, Defendant Baker's presence will "creat[e] an inevitable inference of guilt by association" even though the RavillaMed Defendants are not associated with Baker. *Id.* at 15-16.

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER

These assertions are speculative and not germane at this stage of the case. *Brighton*, 2013 WL 2631333, at *5-6 (explaining that the risk of prejudice from the jury being confused by factual distinctions in the cases against the defendants and from holding other defendants' bad acts against the group of defendants moving to sever was "speculative"). And to be clear, even in the criminal context, a co-defendant's outsized role and prior criminal conviction are not sufficiently prejudicial to justify severance. *United States v. Uriarte*, 575 F.2d 215, 217 (9th Cir. 1978) (holding that joinder was not prejudicial and severance was not warranted even though the co-defendant at issue had previously been convicted of a crime and was more significantly involved in the criminal behavior alleged).

The RavillaMed Defendants further argue that jury instructions would not cure the prejudice they assert because "the three defendant groups' alleged conduct is so factually distinct that there is no overlapping evidence." Mot. at 16. This is simply untrue and largely irrelevant, given that Plaintiffs are seeking equitable remedies only. In any event, the common questions of law and fact discussed above will result in significant overlapping evidence, including, among other things, evidence related to:

- How the Carequality and TEFCA interoperability frameworks function and Defendants' participation on the frameworks;
- The Defendants' relationships with Heath Gorilla and how and on what basis Health Gorilla onboarded the Defendants to the frameworks;
- The terms of the CCA, Common Agreement, and their incorporated exhibits, including the CC Terms and ToPs;
- Health Gorilla's platform and its functionality;
- Health Gorilla's practices for complying with its contractual obligations; and
- Health Gorilla's practices for responding to complaints about the entities it onboards to the Carequality and TEFCA frameworks.

Courts have otherwise held that "proper jury instructions" will be sufficient to address the concerns of the type that the RavillaMed Defendants raise. *See Brighton*, 2013

13

WL 2631333, at *5-6; *see also Jacques*, 2012 WL 3010969, at *5 (finding that "protective measures such as careful jury instructions w[ould] be sufficient to separate the allegations and evidence related to each claim, to the extent . . . necessary").

In arguing otherwise, the RavillaMed Defendants rely on inapposite caselaw. *See* Mot. at 16 (citing *Corley v. Google, Inc.*, 316 F.R.D. 277, 289 (N.D. Cal. 2016)). In *Corley*, the court found that jury instructions could not cure the prejudice to the defendants because 879 plaintiffs were joined, their claims involved many different contracts with unique terms, and the central issue in the case was consent—an inherently individualized, fact-specific inquiry "requir[ing] an examination of many different transactions or occurrences." 316 F.R.D. at 284-86, 289-90. This case does not involve a similarly unmanageable number of defendants, and the claims against them all should be tried together given the numerous overlapping issues.

Further, because the facts and legal issues overlap so significantly here, severing the RavillaMed Defendants would cause prejudice to Plaintiffs outweighing any purported prejudice to the RavillaMed Defendants by "requir[ing] [Plaintiffs] to present much of the same evidence" in three separate trials. *See Brighton*, 2013 WL 2631333, at *5-6 (finding that the "speculative" risk that the jury would be confused by the parties presenting somewhat factually distinct cases against multiple groups of defendants, leading it to misattribute evidence to the incorrect defendants, was "outweighed by the greater prejudice to the remaining parties," including being forced "to present much of the same evidence to two separate juries" and declining to sever); *see also Jacques*, 2012 WL 3010969, at *5-6. Moreover, while the Court could alleviate the speculative risk of prejudice the RavillaMed Defendants identify with "protective measures," the Court would not be able to employ "similarly effective safeguards" against the prejudice to Plaintiffs. *Jacques*, 2012 WL 3010969, at *6; *see also Brighton*, 2013 WL 2631333, at *5-6. This prejudice to Plaintiffs weighs in favor of denying the RavillaMed Defendants' motion to sever. *Jacques*, 2012 WL 3010969, at *5-6; *Brighton*, 2013 WL 2631333, at *5-6.

14

## 2. Joinder Of The Defendants Promotes Judicial Economy And Severance Would Hinder Judicial Economy.

The RavillaMed Defendants argue that "[t]he only common discovery will relate to Health Gorilla." Mot. at 17. They further argue that given the purported factual distinctions between the other Defendants, joinder "will force all parties to manage [discovery] simultaneously, at greater cost and complexity." *Id.* Finally, they argue that the factual distinctions between these groups of defendants would render "[t]he supposed efficiencies of a joint proceeding . . . illusory," forcing the Court to conduct "mini-trials" to adjudicate distinct facts related to each group of defendants' misconduct. *Id.* at 17-18.

Here again, the RavillaMed Defendants downplay the extent of overlapping facts and claims. As explained above, Health Gorilla is one important common thread linking the Defendants. But it is not the only one. The CCA, Common Agreement, CC Terms, and ToPs are all common, as is much of the evidence to be presented at trial. Case management and discovery will be far more efficient if the parties proceed in a single action with a single set of case deadlines. *Jacques*, 2012 WL 3010969, at *5-6; *Brighton*, 2013 WL 2631333, at *4-5.

The RavillaMed Defendants' cases are inapposite as they are based largely on massive numbers of joined parties and claims with far less commonality than the groups of defendants at issue have here. *See Corley*, 316 F.R.D. at 284-86, 289-90 (879 joined plaintiffs with claims based on a multitude of different contracts with different terms); *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1165 (N.D. Cal. 2011) (over 180 different joined defendants whose only commonality was using the same BitTorrent); *Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154-55 (2d Cir. 1974) (164 joined defendants that separately engaged in similar misconduct with no overlap); *Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, 2009 WL 3857417, at *6-8 (E.D. Cal. Nov. 17, 2009) (disparate claims against four agencies with four separate administrative records).

15

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER

Because Plaintiffs properly joined the Defendants, and their joinder comports with principles of fundamental fairness while severance would prejudice Plaintiffs and hinder judicial economy, the Court should deny the RavillaMed Defendants' motion to sever.

## IV.    IN THE ALTERNATIVE, THE CASES SHOULD BE CONSOLIDATED

In the event that the Court grants the RavillaMed Defendants' motion to sever, Plaintiffs respectfully request that the Court consolidate the severed cases because they involve common questions of law and fact.  Fed. R. Civ. P. 42(a).  Rule 42 provides that district courts may consolidate "actions before the court involv[ing] a common question of law or fact."  *Id.*  District courts have "broad discretion under this rule to consolidate cases pending in the same district."  *Invs. Rsch. Co. v. U.S. Dist. Ct. for C.D. Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).  Thus, as part of their broad discretion to manage their caseloads, district courts may even consolidate cases *sua sponte*.  *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) (citing 9 Wright & Miller's Federal Practice & Procedure § 2383 n.37 (3d ed. 1998)).  Consolidation "should be employed as 'a valuable and important tool of judicial administration.'"  *Arabia v. CWMBS, Inc.*, 2013 U.S. Dist. LEXIS 64571, at *3-4 (S.D. Cal. May 3, 2013) (quoting *Devlin v. Transp. Commcn's Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)).  Courts "weigh[] the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause," in addition to any prejudice that may result from consolidation.  *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984).

Here, as explained above, the claims against Defendants involve multiple overlapping questions of fact and law.  Considering claims against the Defendants together would save both the parties and the Court significant time and effort by streamlining discovery that would otherwise be duplicated and allowing consideration of identical facts and issues at the same time.  Thus, consolidation would, in fact, minimize the inconvenience, delay, and expense of redundant discovery and consideration of identical facts and issues in three separate cases that severance would otherwise cause.  Moreover, adjudicating the claims against Defendants together would not prejudice the RavillaMed

16

Defendants whereas severing the cases and considering them entirely separately would prejudice Plaintiffs, as explained above. Therefore, consolidation here is appropriate. *See Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*, 2014 WL 12572955, at *2-3 (E.D. Cal. Dec. 9, 2014) (consolidating cases involving, among other things, the same contract when doing so "would aid in the efficient and economic disposition of the actions"); *Jet Aviation Flight Servs. Inc. v. 7BD LLC*, 2025 WL 1266702, at *1 (D. Ariz. May 1, 2025) (consolidating cases when "the breach of contract and fraudulent inducement claims in both cases ar[o]se from the parties' same contracts and agreements").

### V.    CONCLUSION

Plaintiffs respectfully request that the Court deny the RavillaMed Defendants' motion. In the alternative, Plaintiffs request that the Court consolidate the resulting cases.

Dated:  March 26, 2026     By:  */s/ Marshall L. Baker*
Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

17

# <u>L.R. 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs Epic System Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc., certifies that this brief contains 5,494 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 26, 2026     By:   */s/ Marshall L. Baker*

Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO SEVER