**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:  310.229.1000
Facsimile:   310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:  202.887.4000
Facsimile:   202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services, Inc., Trinity Health Corporation,*
*and UMass Memorial Health Care, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100,<br><br>Defendants. | Case No. 2:26-cv-00321-FMO-RAO<br><br>Assigned to:  Hon. Fernando M. Olguin<br><br>**PLAINTIFFS' OPPOSITION TO THE MAMMOTH DEFENDANTS' MOTION TO DISMISS**<br><br>Date:          April 23, 2026<br>Time:          10:00 A.M.<br>Location:   Courtroom 6D<br><br>Date Action Filed:          January 13, 2026 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ...............................................................................................3

III.  ARGUMENT .....................................................................................................5

    A.    This Court May Adjudicate Plaintiffs' Claims. ....................................5

        1.    Plaintiffs Have Article III Standing. ..........................................5

        2.    The Mammoth Defendants' Attempt To Incorporate Other Defendants' Dispute Resolution Process-Related Arguments Fail......................................................................................................7

    B.    Plaintiffs Have Stated A Fraud Claim Against The Mammoth Defendants....................................................................................................11

        1.    Plaintiffs' Allegations Satisfy Rule 9(b). .................................11

        2.    Plaintiffs Have Alleged Actual, Justifiable Reliance. ...............14

    C.    Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud Against Defendant Ryan Hilton. .......................................................15

    D.    Plaintiffs Adequately Allege That The Mammoth Defendants Violated The CFAA. ...........................................................................19

    E.    Plaintiffs Have Stated A UCL Claim....................................................21

IV.   IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND ...............................................................22

V.    CONCLUSION................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Diabetes Assoc. v. U.S. Dept. of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ..................................................................5

*Berman v. Bank of Am. N.A.*,
  2025 WL 2885491 (C.D. Cal. Sept. 2, 2025) (Olguin, J.)...........................15, 17

*Bhatia v. Silvergate Bank*,
  725 F. Supp. 3d 1079 (S.D. Cal. 2024) ...................................................15, 16, 17

*Calence, LLC v. Dimension Data Holdings, PLC*,
  222 F. App'x 563 (9th Cir. 2007)...............................................................7

*Clapper v. Amnesty International USA*,
  568 U.S. 398 (2013)....................................................................................6

*Cruz v. PacifiCare Health Sys., Inc.*,
  30 Cal. 4th 303 (2003) ...............................................................................9

*Davidson v. Kimberly-Clark Corp.*,
  889 F3d 956 (9th Cir. 2018) ....................................................................11

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ................................................................5, 14

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
  2014 WL 12558848 (C.D. Cal. May 30, 2014)................................................21

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .................................................................22

*Fair Hous. Council of Or. v. Travelers Home and Marine Ins. Co.*,
  2016 WL 7423414 (D. Or. Dec. 6, 2016)..............................................6

*Faucett v. Move, Inc.*,
  2024 WL 2106727 (C.D. Cal. Apr. 22, 2024).................................................10

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015)..................................................................5

PLAINTIFFS' OPPOSITION TO THE MAMMOTH
DEFENDANTS' MOTION TO DISMISS

*Food and Drug Admin. v. All. for Hippocratic Medicine*,
    602 U.S. 367 (2024)................................................................................5

*Ford Motor Warranty Cases*
    17 Cal. 5th 1122 (2025) .......................................................................10

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982).................................................................................5

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
    957 F.3d 1038 (9th Cir. 2020) ...............................................................8

*Ketayi v. Health Enrollment Group*,
    516 F. Supp. 3d 1092 (S.D. Cal. Feb. 2, 2021) ...................................18

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ..............................................................10

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    2008 WL 11411732 (C.D. Cal. Aug. 18, 2008) ....................................5

*LaCourt v. Specific Media, Inc.*,
    2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)......................................20

*Mau v. City & Cnty. of Honolulu*,
    2025 WL 3251168 (S.D. Cal. Apr. 4, 2025) ..........................................7

*Moonlight Mountain Recovery, Inc. v. McCoy*,
    2024 WL 4027972 (D. Idaho Sept. 3, 2024) ........................................21

*NTD Architects v. Baker*,
    950 F. Supp. 2d 1151 (S.D. Cal. 2013) ..........................................18, 19

*Singer v. Ett*,
    2023 WL 6787442 (C.D. Cal. Sept. 18, 2023) (Olguin, J.)..................10

*Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*,
    2025 WL 2853156 (M.D. Fla. Aug. 21, 2025)......................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).................................................................................6

*Sprint Sols. Inc. v. Pacific Cellupage, Inc.*,
    2014 WL 3715122 (C.D. Cal. July 21, 2014)......................................20

PLAINTIFFS' OPPOSITION TO THE MAMMOTH
DEFENDANTS' MOTION TO DISMISS

*Storm Mfg. Grp., Inc. v. Weather Tec Corp.*,
  2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) .......................................................7

*Swanson v. U.S. Forest Serv.*,
  87 F.3d 339 (9th Cir. 1996) .................................................................................7

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., &
  Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................9

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..............................................................................................7

*United Poultry Concerns v. Chabad of Irvine*,
  743 F. App'x 130 (9th Cir. 2018) ........................................................................6

*Van Buren v. United States*,
  593 U.S. 374 (2021).............................................................................................21

*Vernon Fire Fighters v. City of Vernon*,
  107 Cal. App. 3d 802 (1980) ...............................................................................9

**Statutes**

18 U.S.C § 1030(a)(4)...............................................................................................21

18 U.S.C § 1030(c)(4)(A)(i) ....................................................................................19

18 U.S.C § 1030(c)(4)(A)(i)(I) ...............................................................................20

18 U.S.C. § 1030(e)(11).............................................................................................20

18 U.S.C. § 1030(g) .................................................................................................19

**Other Authorities**

C.D. Cal. L.R. 7-3 ...............................................................................................7, 8

Fed. R. Civ. P. 9(b) .......................................................................................*passim*

Fed. R. Civ. P. 12(b)(6).............................................................................................5

iv

## I.    **INTRODUCTION**

The Mammoth Defendants—including those who have moved to dismiss and their separately represented co-Defendants Daniel Baker and Max Toovey—fraudulently and illegally obtained confidential patient records under the false pretenses that they were using those records for the purposes of treating patients.  In reality, the Mammoth Defendants obtained those patient records for the purpose of monetizing them for their own commercial gain.

Plaintiffs' Complaint describes the fraudulent and unlawful scheme in detail.

The Mammoth Defendants are three entities and three individuals—Mammoth Dx, Mammoth Path Solution, Mammoth Rx, Ryan Hilton, Daniel Baker, and Max Toovey. Defendant Hilton is the CEO and owner of each of the Mammoth entities, which all operate out of the same office and which Mr. Hilton concedes are all part of the "Mammoth Family."  Defendant Baker is the Chief Technology Officer of Mammoth Dx and Mammoth Rx, and Defendant Toovey is the Chief Commercial and Strategy Officer of Mammoth Rx.

In July 2024, Defendants Mammoth Dx and Mammoth Path Solution—acting in concert with the rest of the Mammoth Defendants—were onboarded by Defendant Health Gorilla to the Carequality and Trusted Exchange Framework and Common Agreement ("TEFCA") interoperability frameworks, nationwide exchanges through which healthcare providers can exchange patient records with other providers for the purposes of providing treatment to patients.

From the time of their onboarding through at least October 2025, the Mammoth Defendants obtained patient records from the Carequality and TEFCA frameworks based on the assertion that those records were for treatment.  Mammoth obtained over 140,000 patient records from Epic's healthcare provider customers, including thousands of patient records from Plaintiffs Reid, Trinity, and UMass Memorial Health, as well as over 1,500 patient records from Plaintiff OCHIN's healthcare provider customers.  In every case where a patient record was disclosed to Mammoth, it was based on the Mammoth

PLAINTIFFS' OPPOSITION TO THE MAMMOTH
DEFENDANTS' MOTION TO DISMISS

Defendants' assertion (both directly and through Health Gorilla) that the record was being requested for treatment.

After obtaining the patient records, the Mammoth Defendants did not use those records for treatment but instead monetized and sold them to law firms—including through Mammoth Rx and Nationwide Healthcare Provider Corp.  In so doing, the Mammoth Defendants fraudulently and illegally exploited their access to the interoperability frameworks—extracting, disseminating, and selling sensitive and confidential patient records without patients' knowledge or consent—harming Plaintiffs, the privacy rights of individual patients, and the integrity of the interoperability ecosystem.

Against that backdrop, Plaintiffs assert claims against the Mammoth Defendants for their fraudulent and unlawful access to patient records and for breaching the terms of the relevant agreements that govern the exchange of patient records.  The Mammoth Defendants have moved to dismiss, but their arguments fall short.

***First***, the Mammoth Defendants obliquely raise jurisdictional arguments, attempting, with a lone footnote, to incorporate by reference other Defendants' arguments related to certain dispute resolution provisions within the interoperability agreements. That attempt is improper and should be disregarded.  The Mammoth Defendants also argue that Plaintiffs lack Article III standing, but their arguments do not actually account for controlling law, instead relying nearly exclusively on law related to organizational standing (which Plaintiffs do not allege).  Having failed to address Plaintiffs' allegations or the applicable law, there can be no dispute that Plaintiffs have adequately alleged Article III standing through their allegations of monitoring, investigation, mitigation, and storage costs, as well as reputational harm and costs incurred responding to customer complaints—all of which gives rise to Article III standing.

***Second***, the Mammoth Defendants contend that Plaintiffs fail to allege their fraud claim with the specificity required by Rule 9(b) and, further, do not allege reliance.  On both accounts, the Mammoth Defendants are wrong and rely on an unfounded, selective

reinterpretation of Plaintiffs' well-pleaded allegations.  Plaintiffs' allegations make clear the who, what, when, where, and how of the Mammoth Defendants' fraud, detailing a pattern of repeated and knowing misrepresentations and omissions in accessing, disclosing, and monetizing patient records through a web of interconnected entities in order to evade detection.  The Mammoth Defendants' claim that Plaintiffs' Complaint has failed to sufficiently put them on notice borders on the absurd.

*Third*, the Mammoth Defendants try to hide Defendant Hilton behind his corporate "Mammoth Family" shells, arguing that Plaintiffs have not adequately alleged that Mr. Hilton aided and abetted their fraud.  But Plaintiffs allege that Mr. Hilton knowingly and actively participated in the fraud, including, but not limited to, by making or directing Mammoth's false statements that they were seeking patient records for treatment purposes.

*Fourth*, the Mammoth Defendants assert that Plaintiffs fail to state a Computer Fraud and Abuse Act ("CFAA") claim, but they are wrong on both the law and the facts.

*Finally*, the Mammoth Defendants seek dismissal of Plaintiffs' claim under California Business and Professions Code §§ 17200, *et seq.* via a single sentence footnote, which seeks dismissal under Rule 9(b).  In so doing, the Mammoth Defendants do not address that this claim is also independently viable because of the Mammoth Defendants' unlawful conduct.  And even with respect to the portions of the claim where Rule 9(b) does apply (i.e., to the Mammoth Defendants' fraudulent conduct), the Mammoth Defendants' argument fails because Rule 9(b) has been met.

For all of these reasons and as further described below, this Court should deny the Mammoth Defendants' motion to dismiss.

## II.    BACKGROUND[1]

Plaintiffs are long-standing participants in interoperability efforts and reflect the breadth of the country's interoperable health care delivery system.  *See* Compl. ¶¶ 6-7, 28-30, 112-115, 116.  Epic spearheaded treatment-based interoperability over two decades

---

[1] Capitalized terms have the meanings assigned to them in Plaintiffs' Complaint. Exhibits references are to those attached to Plaintiffs' Complaint.

3

ago and is a charter Implementer on the Carequality framework and QHIN on the federal-government sponsored TEFCA framework. *Id.* ¶¶ 112-115. OCHIN is a nonprofit organization supporting thousands of healthcare providers nationwide and operates as a Carequality Connection and TEFCA Participant. *Id.* ¶¶ 27, 116. Reid is a community hospital based in Indiana, *id*. ¶¶ 28, 117, Trinity is a Catholic organization serving patients in 25 states, including California, *id*. ¶¶ 29, 118, and UMass Memorial Health is an academic medical center, *id*. ¶¶ 30, 119. Reid, Trinity, and UMass Memorial Health (collectively, the "Provider Plaintiffs") participate in the frameworks as Carequality Connections and TEFCA Participants. *Id.* ¶¶ 117-121.

Mammoth Dx operates as a Carequality Connection, while Mammoth Path Solution operates as a Carequality Connection and a TEFCA Participant. *Id.* ¶¶ 37-38. In these roles, Mammoth Dx and Mammoth Path Solution query patient records through the Carequality and TEFCA interoperability frameworks, falsely asserting with each query that they are seeking the records for treatment purposes. *Id.* ¶¶ 159-164. Mammoth Dx and Mammoth Path Solution then transmit these patient records to entities such as Mammoth Rx, an entity that monetizes patient data, and Nationwide Healthcare Provider Corp, an entity that sells patient records to law firms and other third parties, for financial gain. *Id.* ¶¶ 39, 159-164, 167, 170.

The Mammoth Defendants are closely tied. Mr. Hilton is the Chief Executive Officer and owner of Mammoth Dx, Mammoth Path Solution, and Mammoth Rx, as well as the owner of Nationwide Healthcare Provider Corp. *Id.* ¶¶ 39-40, 167-169. Mr. Toovey is the Chief Commercial and Strategy Officer of Mammoth Rx and Nationwide Healthcare Provider Corp. *Id.* ¶¶ 42, 167. And Mr. Baker is the Chief Technology Officer of Mammoth Dx and co-founder and Chief Technology Officer of Mammoth Rx. *Id.* ¶¶ 41, 165. Mr. Baker and Mr. Hilton are also Chief Executive Officer and Chief Financial Officer, respectively, of Mammoth Global, Inc. *Id.* ¶¶ 41, 165. And, Mammoth Dx, Mammoth Path Solution, Mammoth Rx, and Nationwide Healthcare Provider Corp share the same address, with Mammoth Dx, Mammoth Path Solution, and Mammoth Rx also

4

sharing the same logo. *Id.* ¶¶ 37-39, 167. Indeed, Mr. Hilton affirmed in an affidavit that Mammoth Dx, Mammoth Path Solution, and Mammoth Rx are all part of the same "Mammoth Family." *Id.* ¶ 39. The Mammoth Defendants use this nest of corporate entities to evade detection.

The Mammoth Defendants' scheme amounts to fraud and violates the Health Insurance Portability and Accountability Act ("HIPAA"), California's Business and Professions Code §§ 17200, *et seq.* ("UCL"), and the CFAA. *Id.*, Counts II, V, VII, X. Mammoth Dx and Mammoth Path Solution are also in breach of the CC Terms and ToPs. *Id.*, Count IX.

## III.  ARGUMENT

A motion to dismiss tests the legal sufficiency of the claims asserted. Fed. R. Civ. P. 12(b)(6). The Court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to Plaintiffs. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

### A.  This Court May Adjudicate Plaintiffs' Claims.

#### 1.  Plaintiffs Have Article III Standing.

The Mammoth Defendants' Article III standing arguments rely on inapposite authority related to organizational standing—which Plaintiffs do not allege—and ignore that the harms alleged by Plaintiffs are cognizable injuries that give rise to Article III standing. Mot. at 5-9.

***First***, nearly all of the cases the Mammoth Defendants cite relate to organizational standing. *See* Mot. at 5-9 (citing *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (analyzing organizational standing); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (same); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (same); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 2008 WL 11411732, at *6 (C.D. Cal. Aug. 18, 2008) (same); *Am. Diabetes Assoc. v. U.S. Dept. of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (same); *Food and Drug Admin. v. All. for Hippocratic Medicine*, 602 U.S. 367, 394 (2024)

5

(same); *United Poultry Concerns v. Chabad of Irvine*, 743 F. App'x 130, 131 (9th Cir. 2018) (same); *Fair Hous. Council of Or. v. Travelers Home and Marine Ins. Co.*, 2016 WL 7423414, at *7 (D. Or. Dec. 6, 2016) (same)).  Plaintiffs do not assert organizational standing, so these cases are inapposite.

**Second**, the Mammoth Defendants disregard Plaintiffs' allegations of investigation, monitoring, and mitigation costs.  *See* Compl. ¶¶ 161, 170-171, 189-191, 196-197, 233-234, 267-268.  Plaintiffs incurred these costs based on the Mammoth Defendants' infliction of past harms and the substantial and imminent risk that those harms will continue.  *Id.*  This is sufficient to allege Article III standing, as made clear by *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013)—the only case the Mammoth Defendants cite that does not relate to organizational standing (*see* Mot. at 7-8).  As the *Clapper* Court noted:  "[W]e have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm."  568 U.S. at 414 n.5 (collecting cases); *see also id.* at 418-20 (standing satisfied in cases where harm had already occurred and plaintiff took steps to mitigate or prevent future harm of the same type).[2]

Plaintiffs also alleged increased storage costs and costs in responding to customer complaints.  *See* Compl. ¶¶ 66, 96, 193, 195-196, 233-234, 267-268.  These harms are not self-inflicted or voluntary.  They are "'real' and not 'abstract'" harms that "actually exist" and are "particularized" to Plaintiffs, satisfying Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016).

---

[2] The Supreme Court ultimately found Article III standing was not satisfied in *Clapper* because it involved allegations of a potential injury "at some point in the future" and incurrence of mitigation costs in response to a "risk of harm" that was "not certainly impending." 568 U.S. at 410, 416.  This holding is inapposite because here, Plaintiffs allege that they incurred costs as a result of previously inflicted harms and the substantial and imminent risk that those harms will continue. Compl. ¶¶ 161, 170-171, 189-191, 196-197, 233-234, 267-268.

6

Finally, Epic and OCHIN alleged reputational harm. *See* Compl. ¶¶ 193 ("Epic and OCHIN's . . . customers have voiced that, because of [the Mammoth Defendants'] abuses, they have contemplated limiting their participation in the Carequality and TEFCA frameworks or withdrawing from them entirely."), 196 ("Epic incurred and continues to incur costs . . . to respond to customer concerns and complaints raised by Epic[']s healthcare provider customers."). Reputational harm is an injury in fact sufficient to satisfy Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (recognizing that "various intangible harms," including "reputational harms," "can also be concrete" for Article III standing purposes); *Storm Mfg. Grp., Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *6 (C.D. Cal. Sept. 23, 2013) ("The Court determines that plaintiff has adequately alleged constitutional standing" based on its allegations of "loss of business and damage to its reputation.").

Plaintiffs have adequately alleged Article III standing.

2. <u>The Mammoth Defendants' Attempt To Incorporate Other Defendants' Dispute Resolution Process-Related Arguments Fail.</u>

The Mammoth Defendants' attempt to incorporate Health Gorilla's and the RavillaMed Defendants' arguments related to alternative dispute resolution fails. *See* Mot. at 1 n.1. As an initial matter, the Mammoth Defendants' incorporation by reference is procedurally improper and should be disregarded. *Mau v. City & Cnty. of Honolulu*, 2025 WL 3251168, at *7 n.5 (S.D. Cal. Apr. 4, 2025) ("The Federal Rules of Civil Procedure do not sanction the incorporation of substantive material by reference and courts need not consider such arguments especially since it circumvents the page limits set for in the district court local rules."); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) ("[T]he district court did not abuse its discretion in striking the incorporations."); *Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (similar).

Further, Local Rule 7-3 requires "counsel contemplating the filing of any motion [to] first contact opposing counsel to discuss thoroughly . . . the substance of the

PLAINTIFFS' OPPOSITION TO THE MAMMOTH
DEFENDANTS' MOTION TO DISMISS

contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3; *see also* Initial Standing Order § IV.2. Here, the Mammoth Defendants did not inform Plaintiffs of their intention to raise arguments invoked in filings by other Defendants or inform Plaintiffs that they would be moving to dismiss on the basis of any argument that the interoperability agreements preclude this Court's adjudication of this action. Baker Decl., ¶ 2.

To be clear, the Mammoth Defendants' argument fails.

**The Dispute Resolution Provisions Are Not Conditions Precedent.** Courts "will neither infer nor construe a condition precedent 'absen[t] . . . language plainly requiring such construction.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (quoting *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969)). "Conditions precedent must be expressed in plain, clear, and unambiguous language[.]" *Id.* at 1043. The CCA and Common Agreement lack the strict, unequivocal language required to establish a condition precent. Instead, both encourage—but do ***not*** require—parties to utilize the non-binding dispute resolution process. Ex. A § 20.1; Ex. E § 15.1. Further, both agreements make clear that the dispute resolution process does not preclude litigation. Refusal to participate in the process might be treated as a material breach, permitting Carequality or the RCE to suspend or terminate the agreement (*see* Ex. A § 20.1; Ex. E § 15.1), but the consequence is ***contractual***—potential suspension or termination by signatories—***not a jurisdictional bar*** enforceable by the Mammoth Defendants.

**The Dispute Resolution Provisions Do Not Apply Because Plaintiffs Seek Immediate Injunctive Relief.** The agreements specify that their dispute resolution procedures do not apply where a party believes that it is facing irreparable harm and pursues immediate injunctive relief in a court of competent jurisdiction. Ex. A § 20.2; Ex. B § 9.3; Ex. E § 15.2.1. The Complaint explains Plaintiffs' irreparable harm from the Mammoth Defendants' theft of patient records. Compl. ¶¶ 1-5, 11-25, 192-197. Plaintiffs plainly seek immediate injunctive relief. *Id.*, Caption, Prayer for Relief. And Plaintiffs need not seek that relief through a specific procedural vehicle for this Court to award it. *See, e.g.*, *Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*, 2025 WL 2853156, at

**1, 7–8 (M.D. Fla. Aug. 21, 2025) (granting summary judgment and entering immediate injunctive relief). Thus, Plaintiffs are "relieved" of any obligation to follow the dispute resolution procedures. *See* Ex. A § 20.2.1; Ex. B § 9.3; Ex. E § 15.2.1.

**Plaintiffs Are Excused From Compliance Because The Process Is Futile.** Assuming *arguendo* the existence of a condition precedent to filing suit (and there is none), Plaintiffs are excused from participating because the Mammoth Defendants' conduct demonstrates that it would be futile and Plaintiffs cannot obtain the remedies they seek. *Vernon Fire Fighters v. City of Vernon*, 107 Cal. App. 3d 802, 826 (1980) ("It is an established rule that administrative remedies need not be exhausted where they are inadequate, inapplicable, or futile.").

Plaintiffs attempted—to no avail—to engage with the Mammoth Defendants and Health Gorilla, as the Implementer for Mammoth, to informally resolve the issue. Compl. ¶¶ 158, 166, 187. The Mammoth Defendants' inadequate response makes clear that continued use of the dispute resolution procedures would be futile. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (denying motion to dismiss where plaintiff's allegations regarding defendant's inadequate response to claims indicated that complying with informal dispute settlement procedure would be futile).

Additionally, Plaintiffs seek a binding public injunction that the dispute resolution procedures cannot provide. *See* Compl., Prayer for Relief. Because the agreements' dispute resolution procedures cannot provide binding injunctive relief—let alone a public injunction—they would be futile, and thus Plaintiffs are excused from participating in the process. *See Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315-16 (2003) (declining to enforce arbitration clause where "the request for injunctive relief is clearly for the benefit of health care consumers and the general public").

**Mammoth Rx And Mr. Hilton Lack Standing To Enforce The Dispute Resolution Procedures.** Mammoth Rx and Mr. Hilton are not signatories to the relevant agreements and therefore cannot enforce the agreements' dispute resolution procedures.

9

Nor does equitable estoppel apply to allow them to enforce these provisions. Plaintiffs' claims against do not invoke the duties or obligations under the agreements or otherwise attempt to enforce contractual terms against Mammoth Rx and Mr. Hilton. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1134 (9th Cir. 2013) (equitable estoppel did not apply where "Plaintiffs do not seek to simultaneously invoke the duties and obligations of Toyota under the Purchase Agreement, as it has none, while seeking to avoid arbitration."); *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1136 (2025) ("[T]he essential concern is whether plaintiffs are trying to enforce contractual terms beneficial to them while avoiding their own contractual agreement to arbitrate."). Instead, the fraudulent activity and statutory violations underpinning each of Plaintiffs' claims against Mammoth Rx and Mr. Hilton exist independent of the agreements.

Mammoth Rx and Mr. Hilton also cannot avail themselves of third-party beneficiary arguments. "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Singer v. Ett*, 2023 WL 6787442, *5 (C.D. Cal. Sept. 18, 2023) (Olguin, J.) (citation omitted). The agreements were made for the benefit of the signatories, as well as other parties on the frameworks. *See* Exs. A, B, E. Mammoth Rx and Mr. Hilton are thus not "members of a class for whose benefit the contract was made." *Singer*, 2023 WL 6787442, at *5 (citation omitted). The agreements do not contain any provisions that benefit Mammoth Rx or Mr. Hilton or any language evidencing that a motivating purpose of the signatories was to benefit them. *See generally* Exs. A, B, E. Allowing them to enforce the agreements is inconsistent with the objectives of the agreements and the reasonable expectations of the signatories. *See, e.g., Faucett v. Move, Inc.*, 2024 WL 2106727, *4 (C.D. Cal. Apr. 22, 2024) (declining to allow non-signatory to enforce arbitration clause where contract made no mention of third party and gave no indication of a motivating purpose of benefiting the non-signatory).

///

10

PLAINTIFFS' OPPOSITION TO THE MAMMOTH
DEFENDANTS' MOTION TO DISMISS

**B.    Plaintiffs Have Stated A Fraud Claim Against The Mammoth Defendants.**

The Mammoth Defendants raise two limited challenges to Plaintiffs' fraud claim: whether Plaintiffs' allegations (1) satisfy Rule 9(b) (*see* Mot. at 13-17) and (2) demonstrate justifiable reliance (*see id.* at 17).

### 1.    Plaintiffs' Allegations Satisfy Rule 9(b).

The Mammoth Defendants attempt to downplay the detailed allegations in Plaintiffs' Complaint, but these arguments are misguided.  Plaintiffs' allegations satisfy Rule 9(b), alleging the who, what, when, where, and how (*Davidson v. Kimberly-Clark Corp.*, 889 F3d 956, 966 (9th Cir. 2018)) of the Mammoth Defendants' fraud:

- Mammoth Dx and Mammoth Path Solution (who) falsely asserted that they were healthcare providers seeking access to patient records for treatment services (what) in July 2024 (when) when they were onboarded to the Carequality and TEFCA frameworks (where/how).  *See* Compl. ¶¶ 37-38, 161, 219-221.

- Mr. Hilton (who) made or directed Mammoth Dx's and Mammoth Path Solution's false statements that they were healthcare providers seeking access to patient records for treatment services (what) in July 2024 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to the Carequality and TEFCA frameworks (where/how).  *See id.* ¶¶ 37-38, 161, 168, 223.

- Mammoth Dx, Mammoth Path Solution, and Mr. Hilton (who) failed to disclose that their true purpose in seeking access to patient records was to sell those records to law firms and other third parties (what) in July 2024 (when) when being onboarded to the Carequality and TEFCA frameworks (where/how).  *See id.* ¶¶ 37-38, 161, 219-221.

- Mammoth Dx and Mammoth Path Solutions (who) falsely asserted that they were seeking patient records for treatment services (what) from July 2024 through October 2025 (when) each time they queried patient records through the Carequality and TEFCA frameworks (where/how).  *See id.* ¶¶ 159-170, 219-221.

11

PLAINTIFFS' OPPOSITION TO THE MAMMOTH
DEFENDANTS' MOTION TO DISMISS

- Mr. Hilton (who) made or directed Mammoth Dx's and Mammoth Path Solution's false statements that they were seeking patient records for treatment services (what) from July 2024 through October 2025 (when) as Mammoth Dx's and Mammoth Path Solution's NPI authorized official each time they queried patient records through the Carequality and TEFCA frameworks (where/how). *See id.* ¶¶ 159-170, 219-221.

- Mammoth Dx, Mammoth Path Solution, Mammoth Rx, and Mr. Hilton (who) failed to disclose the ties between Mammoth Dx and Mammoth Path Solution, on the one hand, and Mammoth Rx and Nationwide Healthcare Provider Corp, on the other (what) from July 2024 through October 2025 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to and querying patient records through the Carequality and TEFCA frameworks (where/how). *Id.* ¶¶ 161, 165, 167, 170.

- Mammoth Dx, Mammoth Path Solution, Mammoth Rx, and Mr. Hilton (who) failed to disclose their ties to Mr. Baker (what) from July 2024 through October 2025 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to and querying patient records through the Carequality and TEFCA frameworks (where/how). *Id.* ¶¶ 165, 166, 170, 224-226.

Plaintiffs further allege that Mammoth actually retrieved records for persons to whom it was not providing treatment. *See id.* ¶¶ 159-170, 219-233.

The above detailed allegations are not lacking in specificity, nor are they undifferentiated group pleadings. *See* Mot. at 15-16. Plaintiffs allege which of the Mammoth Defendant entities accessed the interoperability frameworks (Mammoth Path Solution accessed both the Carequality and TEFCA frameworks while Mammoth Dx accessed only the Carequality framework, *see* Compl. ¶¶ 37-38), which of the Mammoth Defendants made each of the misrepresentations and omissions (all of them, as detailed in the bullets above), and which of the Mammoth Defendants participated in the camouflaging efforts (all of them, *see id.* ¶¶ 159-170).

Nor does the Mammoth Defendants' "group pleading" argument with reference to Mammoth Rx hold water.  *See* Mot. at 16.  Plaintiffs allege that Mammoth Rx, Mammoth Dx, and Mammoth Path Solution share a single address, logo, and officers and directors (Messrs. Hilton, Baker, and Toovey), and that the CEO and owner of the entities, Mr. Hilton, has confirmed that they are all part of the same "Mammoth Family." Compl. ¶¶ 37-42, 164, 167.  Plaintiffs further allege that the Mammoth Family shares the common financial interest in obtaining and selling patient records that they take from the interoperability frameworks under the false pretense of providing "treatment" to patients. *Id.* ¶¶ 164-170, 220-221, 223-226.  Simply put, the Mammoth Defendants used their web of connected entities to enable their fraud and evade detection in perpetrating it, such that failing to disregard their separate identities would only further their fraudulent purpose. *Id.* ¶¶ 166, 170, 223-226.

Further, the Mammoth Defendants' contentions that Plaintiffs' allegations are "speculative" or insufficient "to support an inference of unlawful conduct" fail.  *See* Mot. at 14-15.  The unlawful conduct alleged is accessing patient records under the false pretense of providing treatment.  Compl. ¶¶ 159-170, 219-233.  Plaintiffs allege facts that plausibly support the inference that the Mammoth Defendants were not actually providing treatment, despite their representations, and were instead monetizing patient records:

- Mammoth Dx and Mammoth Path Solution exhibit abnormal patient record exchange patterns (*id.* ¶ 162);

- Mammoth Dx and Mammoth Path Solutions returned patient records that lacked the basic clinical information that would be expected if they were providing treatment (*id.* ¶ 163);

- Mammoth Path Solution has no public website (*id.* ¶ 164);

- Mammoth Dx and Mammoth Path Solution share an address with Mammoth Rx and Nationwide Healthcare Provider Corp, entities that monetize patient data and market patient records to attorneys (*id.* ¶ 167);

13

- Hilton executed a sworn affidavit attesting that Mammoth Dx, Mammoth Path Solution, and Mammoth Rx are part of the same "Mammoth Family" (*id.* ¶ 166); and

- Mammoth Dx and Mammoth Path Solutions are affiliated with Mr. Baker, who is banned from the Carequality framework for selling patient records to law firms (*id.* ¶¶ 134-135, 165).

The Mammoth Defendants' attempts to explain away their abnormal patient record exchange patterns, sharing back of junk data, and disclosure of patient records to Nationwide Healthcare Provider Corp (*see* Mot. at 14-15) raise fact disputes that do not control at this stage. *Davis*, 691 F.3d at 1159 (factual allegations in complaint must be accepted as true at pleading stage).

### 2. Plaintiffs Have Alleged Actual, Justifiable Reliance.

The Mammoth Defendants assert that Plaintiffs do not allege that they were recipients of any misrepresentations or omissions. Mot. at 17. In reality, Plaintiffs allege that they received the misrepresentations made by the Mammoth Defendants when Mammoth Dx and Mammoth Path Solutions were being onboarded to the Carequality and TEFCA frameworks because these statements were incorporated into the Carequality and TEFCA directories. Compl. ¶¶ 53, 55, 63, 93, 161. The Provider Plaintiffs further allege that they received the misrepresentations made by the Mammoth Defendants in connection with their queries for patient records. *Id.* ¶¶ 161, 170, 230. And, Plaintiffs allege that, on the TEFCA framework, Epic received queries from Health Gorilla that originated from the Mammoth Defendants containing misrepresentations and omissions. *Id.* ¶¶ 98, 230.

The Mammoth Defendants next contend that Plaintiffs do not allege reliance. Mot. at 17. This, too, is false. Plaintiffs allege that Epic and OCHIN allowed and enabled their customers to exchange patient records with the Mammoth Defendants in reliance on their misrepresentations and omissions. *See* Compl. ¶¶ 55, 63, 66, 68, 94, 96, 98, 161, 170, 227-232, 265-266. Further, Plaintiffs allege that the Provider Plaintiffs exchanged patient records with the Mammoth Defendants in reliance on their misrepresentations and

14

omissions. *See id.* And, on the TEFCA framework, in reliance on their misrepresentations and omissions, Epic received queries from Health Gorilla that originated from the Mammoth Defendants, sent those queries to its customers, and provided its customers' patient records to Health Gorilla to transmit back to the Mammoth Defendants. *Id.* ¶ 98. Thus, Plaintiffs have alleged reliance on the Mammoth Defendants' misrepresentations and omissions, including when and how they did so.

To the extent the Mammoth Defendants also contend that Plaintiffs have not alleged that they suffered damages as a result of the Mammoth Defendants' fraud, *see* Mot. at 17, this is likewise false. As detailed above, *see* Section III.A.1, *supra*, Plaintiffs incurred increased storage costs when the Mammoth Defendants requested patient records under false pretenses. *Id.* ¶¶ 66, 96, 195, 233-234, 267-268. Plaintiffs also incurred investigation, monitoring, and mitigation costs; reputational harm; and costs in responding to customer complaints. Compl. ¶¶ 161, 170-171, 189-197, 219, 233-234, 267-268. Plaintiffs incurred these costs based on the Mammoth Defendants' infliction of past harms and the substantial and imminent risk that those harms will continue. *Id.*

**C.    Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud Against Defendant Ryan Hilton.**

The Mammoth Defendants contend that Plaintiffs' aiding and abetting allegations are "bare" and "formulaic." Not so. To plead a claim for aiding and abetting fraud, Plaintiffs must allege that Mr. Hilton (1) "knew the other's conduct constituted a breach of duty" and (2) "gave substantial assistance or encouragement to so act." *Berman v. Bank of Am. N.A.*, 2025 WL 2885491, at \*12 (C.D. Cal. Sept. 2, 2025) (Olguin, J.) (cleaned up, quoting *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113 (S.D. Cal. 2024)).

**Actual Knowledge.** As the Mammoth Defendants recognize (Mot. at 18), actual knowledge "may be averred generally." *Bhatia*, 725 F. Supp. 3d at 1114. A "direct allegation (really, assertion) of actual knowledge" satisfies the first step of the inquiry. *Id.* (quoting *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at \*4 (N.D. Cal. Apr. 7, 2020)). Here, Plaintiffs directly allege that "[a]t all relevant times, Hilton . . . knew that

15

Mammoth was misstating its true purpose and that its treatment requests were false[.]" Compl. ¶ 263.

The next question is whether the complaint "pleads sufficient facts to make that allegation plausible[.]" *Bhatia*, 725 F. Supp. 3d at 1114 (quoting *Chang*, 2020 WL 1694360, at *4). Here, Plaintiffs' Complaint contains detailed facts that Hilton:

- Knew that Mammoth was misstating its true purpose (Compl. ¶ 263);
- Knew that Mammoth's treatment-purpose requests were false (*id.*);
- Knew Mammoth's true purposes for seeking patient records was to sell them through Mammoth Rx, Nationwide Healthcare Provider Corp, and other intermediaries to law firms and other third parties (*id.*);
- Knew that Mammoth was not providing medical treatment to all of the persons that it requested patient records related to (*id.* ¶ 264);
- Was the authorized official for multiple Mammoth-entity NPIs (*id.* ¶¶ 167-169, 223);
- Made or directed the false statements as the authorized official for Mammoth's NPI, which Mammoth held out as evidence of treatment purposes (*id.* ¶ 223);
- Is the CEO, owner, and co-founder of Mammoth Rx, which monetizes patient data (*id.* ¶ 39);
- Is an owner of Nationwide Healthcare Provider Corp, which markets patient records to attorneys (*id.* ¶ 167);
- Knows that Mammoth Rx, Nationwide Healthcare Provider Corp, Mammoth Dx and Mammoth Path Solution all share the same address (*id.* ¶¶ 37-39, 167);
- Knows that Mammoth Dx, Mammoth Path Solution, and Mammoth Rx share a logo (*id.* ¶ 39);
- Affirmed in an affidavit that Mammoth Rx is part of the "Mammoth Family" (*id.*);
- Knew that Mammoth's connection with Mr. Baker disqualified Mammoth from participating in the Carequality framework and knew it had to hide Mr. Baker's involvement in order to obtain patient records (*id.* ¶¶ 166, 225);

16

- Falsely claimed in an affidavit that Mr. Baker was not involved with any entity in the "Mammoth Family" and did not hold any financial interest in any entity in the "Mammoth Family" (*id.* ¶¶ 166, 224);

- Was informed by Epic of its concerns (*id.* ¶ 166); and

- Took steps to attempt to cover up the Mammoth Defendants' suspicious activity and to hide the connections between himself, his entities, and the Mammoth Defendants generally (*id.* ¶¶ 166, 170).

These detailed and specific allegations are a far cry from "bare, formulaic assertions" as the Mammoth Defendants contend, *see* Mot. at 18, and are more than sufficient to allege actual knowledge.

**Substantial Assistance.** "Pleading the element of 'substantial assistance requires a significant and active, as well as a knowing participation in the wrong, and a plaintiff must also allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff.'" *Berman*, 2025 WL 2885491, at *13 (cleaned up, quoting *Chang*, 2020 WL 1694360, at *6). Even "'ordinary business transactions' can satisfy the substantial assistance element of an aiding and abetting claim if the defendant actually knew those transactions were assisting the principal in committing a specific tort." *Bhatia*, 725 F. Supp. 3d at 1120 (collecting cases).

Plaintiffs have alleged substantial assistance, alleging that Hilton:

- Made or directed the false statements on Mammoth's behalf as Mammoth's NPI authorized official with knowledge that Mammoth was not providing treatment to the patients whose records Mammoth sought (*id.* ¶ 223);

- Held out those false statements as evidence of treatment purposes (*id.*);

- Participated in the sale of patient records to law firms and other third parties through his involvement with Mammoth Rx and Nationwide Healthcare Provider Corp (*id.* ¶¶ 37-39, 167-169, 223);

17

- Founded the entities that allowed Mammoth Dx and Mammoth Path Solution to sell patient records to law firms and other third parties while evading detection (*id*. ¶¶ 37-39, 167-170, 223);
- Took steps to hide the connections between Mammoth Dx, Mammoth Path Solution, and Mammoth Rx (*id*. ¶¶ 166, 170); and
- Took steps to hide Mammoth's connection to Mr. Baker with knowledge that this relationship would disqualify Mammoth from participating in the Carequality framework and prevent Mammoth from obtaining patient records, including by making false statements in sworn affidavits regarding the relationship between Mr. Baker and the Mammoth Defendants (*id*. ¶¶ 166, 225).

As Plaintiffs' allegations make clear, Mr. Hilton provided substantial assistance by actively participating in the fraud to benefit his own interests and the interests of the interconnected business web that he operates for the improper purpose of obtaining and selling patient records that he takes from the interoperability frameworks under the false pretense of providing "treatment" to patients. *Id.* ¶¶ 37-40, 159-170, 223-227, 263-264. Mr. Hilton's assistance was essential to the Mammoth Defendants harming Plaintiffs. *Id.*

*Ketayi v. Health Enrollment Group*, 516 F. Supp. 3d 1092 (S.D. Cal. Feb. 2, 2021)—cited by the Mammoth Defendants (*see* Mot. at 19)—is inapposite. In *Ketayi*, the court recognized that directors and officers of a corporation "can be held liable if they 'specifically authorized, directed or participated in the allegedly tortious conduct'" but found the plaintiffs "d[id] not allege with particularity any facts to show that [individual defendants] themselves participated in the scheme." *Id.* at 1127 (quoting *NTD Architects v. Baker*, 950 F. Supp. 2d 1151, 1159 (S.D. Cal. 2013)). As *NTD Architects*, quoted in *Ketayi*, makes clear, active participation can be shown either by showing the person "specifically authorized, directed or participated in the allegedly tortious conduct" or "knew about and allowed the tortious conduct to occur." *NTD Architects*, 950 F. Supp. at 1159 (quoting *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1380 (2000)). Here, and as detailed above, Plaintiffs have alleged particular facts showing that Mr. Hilton authorized,

18

PLAINTIFFS' OPPOSITION TO THE MAMMOTH
DEFENDANTS' MOTION TO DISMISS

directed, and participated in the fraud and, further, that he knew about and allowed the fraud to occur.  Accordingly, Plaintiffs have alleged substantial assistance.

**D.      Plaintiffs Adequately Allege That The Mammoth Defendants Violated The CFAA.**

The CFAA provides a civil action for "[a]ny person who suffers damage or loss by reason of a violation" involving one of five statutory factors.  18 U.S.C. § 1030(g) (referencing "subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)").  The Mammoth Defendants mischaracterize the statute as requiring "conduct caus[ing] a 'loss' aggregating at least $5,000."  Mot. 9-10.  That is one of the five factors.  18 U.S.C. § 1030(g); *id.* § 1030(c)(4)(A)(i).

Plaintiffs allege the presence of three of the factors:  "(I) 'loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value'; (II) 'the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals'; and (IV) 'a threat to public health or safety.'"  Compl. ¶ 321 (quoting 18 U.S.C § 1030(c)(4)(A)(i)); *see also id.* ¶¶ 326-328.  The Mammoth Defendants address only factor (I), *see* Mot. at 10-12, leaving undisputed that Plaintiffs have alleged that the Mammoth Defendants' conduct involves factors (II) and (IV).

Further, and contrary to the Mammoth Defendants' argument, the Complaint adequately alleges at least $5,000 in losses, satisfying factor (I).

> The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

*LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *6 (C.D. Cal. Apr. 28, 2011) (quoting 18 U.S.C. § 1030(e)(11)).  "[D]istrict courts in the Ninth Circuit and other circuits have found that costs associated with investigating intrusions into a computer network and taking subsequential remedial measures are losses within the meaning of the [CFAA]."

19

*Sprint Sols. Inc. v. Pacific Cellupage, Inc.*, 2014 WL 3715122, at *5 (C.D. Cal. July 21, 2014) (citations omitted).

Plaintiffs do not allege merely costs of internal investigation. *See* Mot. at 11-12. The Complaint instead details Plaintiffs' substantial costs in responding to Defendants' misconduct. Plaintiffs incurred costs to investigate and respond to Defendants' improper requests, including costs to develop and implement specialized tools and monitoring systems. Compl. ¶¶ 196, 326. Plaintiffs incurred operational expenses and resources in the form of funds and employee time to investigate the abuse, address the associated data integrity and privacy issues, and monitor and attempt to mitigate the harm Defendants caused. *Id.* ¶ 328. Plaintiffs Epic and OCHIN expended employee time and resources to investigate and address customer complaints as a result of Defendants' conduct. *Id.* And Plaintiffs incurred expenses for additional storage necessitated by Defendants' fraudulent requests for patient records. *Id.* ¶ 195. All of these expenditures qualify as "loss" for purposes of 18 U.S.C § 1030(c)(4)(A)(i)(I). *See Sprint Sols.*, 2014 WL 3715122 at *5; *LaCourt*, 2011 WL 1661532, at *6.

The Mammoth Defendants also mischaracterize the Complaint as "conced[ing] that Mammoth lawfully accessed the interoperability frameworks." Mot. at 10; *see also id.* at 11. The Complaint alleges the opposite—namely, that the Mammoth Defendants' access was "without authorization" because the Mammoth Defendants misrepresented their purpose in order to join the frameworks. Compl. ¶¶ 323-324 ("By fraudulently obtaining access to the Carequality Framework and TEFCA based on false assertions of 'treatment', . . . Mammoth . . . gained access to protected computers used to store sensitive patient records."); *see also id.* ¶ 161. Plaintiffs thus do not allege that Defendants "misuse[d] data [they were] permitted to access," as the Mammoth Defendants erroneously suggest. Mot. at 10. Nor do Plaintiffs rely on a theory that the Mammoth Defendants "exceeded authorization." *Id.* at 11. The Complaint paragraph the Mammoth Defendants cite in asserting otherwise simply quotes 18 U.S.C § 1030(a)(4) but relies on the provision's description of access "without authorization" as a violation. Compl. ¶¶ 322-323.

20

*Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972 (D. Idaho Sept. 3, 2024), is instructive. There, the court denied a motion to dismiss a CFAA claim that alleged the defendant gained access to a computer system containing patient data through impermissible means. Following the "'gates-up-or-down inquiry'" described in *Van Buren v. United States*—"one either can or cannot access a computer system, and one either can or cannot access certain areas within the system,"—the court reasoned that, as alleged there, "the gates were up, so to speak, because [the defendant] impermissibly raised them." *Moonlight Mountain*, 2024 WL 4027972, at *4 (quoting *Van Buren v. United States*, 593 U.S. 374, 390 (2021)). Similarly, here, "the gates were up" to the interoperability frameworks because the Mammoth Defendants "impermissibly raised" them by fraudulently asserting "treatment" purposes. Compl. ¶¶ 323-324. And questions concerning the Mammoth Defendants' authorization to access patient data are "fact-intensive inquiries" not appropriate for resolution on a motion to dismiss. *Moonlight Mountain*, 2024 WL 4027972 at *4 (quoting *Leitner v. Morsovillo*, 2021 WL 2669547, at *4 (W.D. Mo. June 29, 2021)).

### E.    Plaintiffs Have Stated A UCL Claim.

In a single-sentence footnote, the Mammoth Defendants assert that Plaintiffs' UCL claim fails because it sounds in fraud and therefore must satisfy Rule 9(b). *See* Mot. at 19 n.5. The Mammoth Defendants do not elaborate on what precisely is missing from Plaintiffs' UCL claim or how it lacks the requisite specificity. *Id.*

The Mammoth Defendants are incorrect that the whole of Plaintiffs' UCL claim sounds in fraud and thus Rule 9(b) applies to Plaintiffs' UCL claim in full. *See Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2014 WL 12558848, at *9-11 (C.D. Cal. May 30, 2014) (determining that Plaintiffs' UCL claims under the unlawful and unfair prongs of the UCL did not sound in fraud and therefore Rule 9(b) did not apply). Here, Plaintiffs' UCL claims under the unlawful prong related to the Mammoth Defendants' violations of HIPAA and the CFAA. *See* Compl. ¶ 283. As to the portions of Plaintiffs' UCL claim that

21

do sound in fraud, the Mammoth Defendants' argument fails because, as detailed above, Plaintiffs' allegations satisfy Rule 9(b).  *See* Section III.B.1, *supra*.

## IV.    IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

To the extent the Court grants any portion of the Mammoth Defendants' Motion, Plaintiffs respectfully request leave to amend.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment).  The Mammoth Defendants do not present any argument that leave to amend would be futile, and thus leave to amend is proper.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny the Mammoth Defendants' Motion.

Dated:  March 26, 2026          By:  */s/ Marshall L. Baker*

Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

22

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Epic System Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc., certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 26, 2026     By:   */s/ Marshall L. Baker*
Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

23