**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:  310.229.1000
Facsimile:   310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:  202.887.4000
Facsimile:   202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services, Inc., Trinity Health Corporation,*
*and UMass Memorial Health Care, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, <br><br> Defendants. | Case No. 2:26-cv-00321-FMO-RAO <br><br> Assigned to: Hon. Fernando M. Olguin <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT HEALTH GORILLA, INC.'S MOTION TO DISMISS** <br><br> Date:          April 23, 2026 <br> Time:         10:00 A.M. <br> Location:    Courtroom 6D <br><br> Date Action Filed:        January 13, 2026 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................1

II.     BACKGROUND ..................................................................................3

III.    ARGUMENT .......................................................................................4

    A.      This Court May Adjudicate Plaintiffs' Claims. ..............................5

        1.      Epic Has Article III Standing ..........................................5

        2.      There is No Contractual Bar to Plaintiffs' Claims. ....................6

    B.      Plaintiffs Have Stated A Fraud Claim Against Health Gorilla. ............10

        1.      Plaintiffs Allege Actionable Misrepresentations And Omissions. ...................................................................11

        2.      Plaintiffs Allege Actual, Justifiable Reliance. ..........................13

        3.      Plaintiffs Allege Health Gorilla's Scienter. ..............................14

        4.      Plaintiffs Allege Damages Caused By Health Gorilla's Misconduct. .................................................................15

    C.      Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud. .......15

    D.      Plaintiffs Are Third Party Beneficiaries of the CCA and Common Agreement. ...................................................................17

    E.      Plaintiffs Have Stated A Claim For Breach Of Contract. ..................20

    F.      Health Gorilla Does Not Challenge Plaintiffs' Seventh Claim. ..........21

IV.    PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND ..................21

V.     CONCLUSION ...................................................................................21

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arriagarazo v. BMW of N. Am., LLC*,
64 Cal. App. 5th 742 (2021) ................................................................................8

*Balsam v. Tucows Inc.*,
627 F.3d 1158 (9th Cir. 2010) ...........................................................................20

*Banh v. Epic Systems Corp., et al.*,
3:26-cv-00216 (W.D. Wis.) ..................................................................................6

*Beaudreau v. Epic Systems Corp., et al.*,
3:26-cv-00215 (W.D. Wis.) ..................................................................................6

*Berry v. Epic Systems Corp.*,
2026-CH-02082 (Cook Cty. Ill.) ..........................................................................6

*Bhatia v. Silvergate Bank*,
725 F. Supp. 3d 1079 (S.D. Cal. Mar. 20, 2024)....................................15, 16, 17

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) .............................................................................10

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013).............................................................................................5

*Columbia Cas. Co. v. Cottage Health Sys.*,
2015 WL 4497730 (C.D. Cal. July 17, 2015)................................................7, 10

*Connell v. ByteDance, Inc.*,
2025 WL 1828472 (N.D. Cal. July 1, 2025) ......................................................10

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) .......................................................................4, 15

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...........................................................................21

*Fauceglia v. Univ. of S. Cal.*,
2021 WL 1783228 (C.D. Cal. Mar. 29, 2021) (Olguin, J.) ...............................19

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .....................................................................*passim*

ii

*Fox, et al. v. Epic Systems Corp., et al.*,
  3:26-cv-00214 (W.D. Wis.) ................................................................................6

*Goonewardene v. ADP, LLC*,
  6 Cal. 5th 817 (2019) ...................................................................................17

*Gueyffier v. Ann Summers, Ltd.*,
  43 Cal. 4th 1179 (2008) .................................................................................9

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
  957 F.3d 1038 (9th Cir. 2020) .........................................................................7

*Jackson v. Trinity Health Corp., et al.*,
  No. 2:26-cv-10948 (E.D. Mich.) ....................................................................6

*Jimirro v. Paley Center for Media*,
  2025 WL 2994996 (C.D. Cal. Sept. 17, 2025) ...............................................8

*Jones v. Union Pac. R. Co.*,
  968 F.2d 937 (9th Cir. 1992) ...........................................................................9

*United States ex rel. Lee v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ...................................................................14, 15

*In re Nat'l Century Fin. Enters., Inc.*,
  846 F. Supp. 2d 828 (S.D. Ohio 2012) ........................................................12

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
  112 Cal. App. 5th 519 (2025) .......................................................................20

*Patterson v. UVA Health, et al.*,
  2:26-cv-01938 (C.D. Cal.) ..............................................................................6

*Paya v. Macy's Inc.*,
  793 F. Supp. 3d 1201 (C.D. Cal. 2025) ..........................................................5

*Prouty v. Gores Tech. Grp.*,
  121 Cal. App. 4th 1225 (2004) .....................................................................20

*United States ex rel. Schutte v. SuperValu Inc.*,
  598 U.S. 739 (2023).......................................................................................15

*SEC v. Lyttle*,
  538 F.3d 601 (7th Cir. 2008) .........................................................................12

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS

*Singer v. Ett*,
    2023 WL 6787442 (C.D. Cal. Sept. 18, 2023) (Olguin, J.)................................17

*Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*,
    2025 WL 2853156 (M.D. Fla. Aug. 21, 2025)....................................................8, 9

*Spann v. J.C. Penney Corp.*,
    2015 WL 1526559 (C.D. Cal. Mar. 23, 2025) (Olguin, J.) ...........................10, 11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).................................................................................................6

*Storm Mfg. Grp. Inc. v. Weather Tec Corp.*,
    2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) .......................................................6

*In re Tobacco Cases I*,
    186 Cal. App. 4th 42 (2010) .................................................................................19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., &*
    *Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010)...........................................................9, 10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).................................................................................................6

*Vernon Fire Fighters v. City of Vernon*,
    107 Cal. App. 3d 802 (1980) ..................................................................................9

*Virun, Inc. v. Cymbiotika LLC*,
    2023 WL 12119026 ...............................................................................................15

*In re Woodbridge Invs. Litig.*,
    2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ..................................................16, 17

**Statutes**

California Business and Professions Code § 17200, *et seq.* ...............................4, 21

Health Insurance Portability and Accountability Act ....................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................................................4

Fed. R. Civ. P. 9(b) .......................................................................................................15

iv

## I.    <u>INTRODUCTION</u>

This action arises from Defendants' deliberate disregard of and fraud on the fundamental principles of healthcare interoperability and privacy upon which the modern American health care system depends.  Plaintiffs, trusted leaders in health care delivery and technology, bring this action to remedy concrete, ongoing harms caused by the calculated exploitation of the interoperability frameworks designed to connect and safeguard everyone's most sensitive health information.

Interoperability—the secure exchange of health information across platforms and organizations for lawful purposes including treatment of patients—is essential to providing quality patient care.  The nationwide interoperability frameworks—Carequality and TEFCA—enable the exchange of millions of patient records every day, allowing healthcare providers to better understand their patients' histories, diagnoses, and conditions to provide informed, timely, and life-saving treatment while ensuring that sensitive health information is kept protected.  Health Gorilla and its co-Defendants have placed that in jeopardy.

Health Gorilla is at the center of the scheme.  It has betrayed the trust placed in it as an implementer of these interoperability frameworks and exploited its access to knowingly facilitate the unauthorized extraction, use, and dissemination of confidential patient records for purposes wholly unrelated to patient care.  The Complaint describes in detail how Health Gorilla and its co-Defendants have harmed Plaintiffs, the privacy rights of individual patients, and the integrity of the interoperability ecosystem.  Health Gorilla now seeks to avoid accountability through procedural sleight of hand, selective reinterpretation of facts, and misinterpretation of law.

*First*, Health Gorilla raises jurisdictional arguments, asserting that certain provisions within the interoperability agreements bar this Court's adjudication.  The agreements encourage participation in a non-binding dispute resolution process but do not mandate it.  In addition, the agreements carve out requests for immediate injunctive relief, which Plaintiffs seek here and the Court has ordered with respect to former Defendant

1

GuardDog (ECF 79). The Complaint also traces how Health Gorilla's conduct shows the futility of further participating in a non-binding dispute resolution process, which cannot provide Plaintiffs complete relief.

Health Gorilla also argues that Epic lacks Article III standing, but it fails to account for Epic's allegations or controlling law. Epic alleged monitoring, investigation, mitigation, and storage costs, as well as reputational harm and costs incurred responding to customer complaints, all of which give rise to Article III standing. The harms continue to mount as Epic and other Plaintiffs have been sued in putative class actions alleging data breach claims arising out of the abuses alleged in this case.

*Second*, Health Gorilla attempts to recast the Complaint's allegations as non-actionable, good faith disagreements and to distance itself from both its own conduct and that of its co-Defendants. But the Complaint lays bare a pattern of Health Gorilla's fraudulent misrepresentations and omissions. Health Gorilla misled Plaintiffs about the intended uses of the patient records obtained through the frameworks, facilitated improper access to the frameworks, and repeatedly failed to remedy the misconduct when concerns were raised. These actions were not isolated lapses or technical oversights. They were integral to a business model built on monetizing data at the expense of patient privacy and give rise to Plaintiffs' claims.

*Third*, Health Gorilla attacks Plaintiffs' claims for breach of the interoperability agreements, challenging Plaintiffs' rights to enforce the agreements as third-party beneficiaries and erroneously asserting that Plaintiffs have not alleged that Health Gorilla's breach was willful, reckless, or intentional. Both arguments fail. The frameworks do not work if all participants cannot sue to enjoin other participants from misappropriating patient records and Plaintiffs allege the requisite mind state.

Plaintiffs' claims are rooted in well-established law and supported by detailed factual allegations. This Court should deny Health Gorilla's motion to dismiss.

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS

## II.    BACKGROUND[1]

Plaintiffs are long-standing participants in interoperability efforts and reflect the breadth of the country's interoperable health care delivery system. *See* Compl. ¶¶ 6-7, 28-30, 112-115, 116.  Epic pioneered treatment-based interoperability over two decades ago and is a charter Implementer on the Carequality framework and QHIN on the federal-government sponsored TEFCA framework. *Id.* ¶¶ 112-115.  The Carequality and TEFCA frameworks are governed by written agreements, including the CCA and Common Agreement.  *Id.* ¶¶ 59, 69, 88, 99.  OCHIN is a nonprofit organization supporting thousands of healthcare providers nationwide and operates as a Carequality Connection and TEFCA Participant.  *Id.* ¶¶ 27, 116.  Reid is a community hospital based in Indiana, *id.* ¶¶ 28, 117, Trinity is a Catholic organization serving patients in 25 states including California, *id.* ¶¶ 29, 118, and UMass Memorial Health is an academic medical center, *id.* ¶¶ 30, 119.  Reid, Trinity, and UMass Memorial Health (collectively, the "Provider Plaintiffs") participate in the frameworks as Carequality Connections and TEFCA Participants.  *Id.* ¶¶ 117-121.

Like Epic, Health Gorilla operates as both a Carequality Implementer and a TEFCA QHIN.  *Id.* ¶¶ 58, 86.  In these roles, Health Gorilla must serve as a gatekeeper to the frameworks and is responsible for onboarding connections; validating connections' eligibility to properly assert exchange purposes; and, once onboarded, ensuring compliance with the rules governing permissible use of the frameworks.  *Id.* ¶¶ 54, 56, 59, 84, 88-89.

Health Gorilla onboarded or enabled the onboarding of Co-Defendants RavillaMed, Mammoth, Unit 387, SelfRx, and GuardDog (collectively, the "Framework Defendants") to the Carequality and/or TEFCA frameworks.  *Id.* ¶ 139, 175.  Each time Health Gorilla onboarded a Framework Defendant, it falsely claimed they sought access for treatment purposes.  *Id.* ¶¶ 146, 161, 176-177, 209, 227, 243.  But the Framework Defendants do

---

[1] Capitalized terms have the meanings assigned to them in Plaintiffs' Complaint. Exhibits references are to those attached to Plaintiffs' Complaint.

3

not provide treatment—they monetize patient records. *Id.* ¶¶ 11, 145, 151-157, 162-170, 178-182. Once embedded within the frameworks, Health Gorilla then enabled the Framework Defendants to query patient records from the Provider Plaintiffs as well as Epic's and OCHIN's other healthcare provider customer organizations—and likely many other healthcare providers. *Id.* ¶¶ 63, 93, 139-141, 146, 161, 174, 176-177. Each time the Framework Defendants queried records, they falsely represented—through and/or as enabled by Health Gorilla—that they were seeking patient records for treatment purposes. *Id.* ¶¶ 63-68, 93-98.

Health Gorilla and the Framework Defendants knew that because they falsely asserted the requests were for treatment purposes, Plaintiffs were obligated to provide patient records in response. *Id.* ¶¶ 66, 96. Epic and OCHIN enabled their customers to exchange patient records with the Framework Defendants in response to the fraudulent treatment requests. *See id.* ¶¶ 146, 161, 174, 176-177, 209, 212, 227, 230, 243, 246. And the Provider Plaintiffs disclosed patient records in reliance on the fraudulent treatment requests. *Id.*

This is fraud and violates both the Health Insurance Portability and Accountability Act ("HIPAA") and California Business and Professions Code §§ 17200, *et seq.* Compl., Counts I-VII. Health Gorilla is also in breach of the CCA and the Common Agreement. *Id.*, Count VIII.

## III.   ARGUMENT

Motions to dismiss test the legal sufficiency of the claims asserted. Fed. R. Civ. P. 12(b)(6). The Court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to Plaintiffs. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).[2]

---

[2] Health Gorilla seeks dismissal (except for Count Seven) because the Complaint does not include a choice-of-law section. Mot. at 10. The Complaint's numerous and specific references to harms occurring in California concerning California patients' records was sufficient to invoke California law, especially in light of the request for injunctive relief on behalf of the "[g]eneral public of the State of California." *See, e.g.*,

*(Cont'd on next page)*

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS

## A.    This Court May Adjudicate Plaintiffs' Claims.

Health Gorilla's motion is bookended with flawed jurisdictional arguments, arguing that the very framework agreements that Health Gorilla abused preclude the Court from adjudicating the case and that Epic lacks Article III standing.  Epic has Article III standing and the agreements pose no impediment to this Court's adjudication of this case.

### 1.    Epic Has Article III Standing.

Health Gorilla characterizes Epic's harms as "preventative, forward-looking expenditures" and "mitigation costs."  Mot. at 23-24.  Health Gorilla ignores that those are cognizable injuries that give rise to Article III standing, and its argument otherwise fails to address the other well-described injuries alleged by Epic.

***First***, Epic's monitoring, investigation, and mitigation costs are sufficient for Article III standing.  In arguing otherwise, Health Gorilla relies entirely on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013).  *See* Mot. at 23-24.  *Clapper* is inapposite because it involved allegations of a potential injury "at some point in the future," 568 U.S. at 410, and plaintiffs' claim that they "incurred certain costs as a reasonable reaction to a risk of harm" that was "not certainly impending." *Id*. at 416.

Here, Epic alleges that it incurred these costs based on previously inflicted harms and the substantial and imminent risk that those harms will continue.  Compl. ¶¶ 192-197, 124-137, 158, 166, 171, 183.  This is sufficient.  As the Court noted in *Clapper*, "we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm."  568 U.S. at 414 n.5 (collecting cases); *see also id.* at 418-20 (standing met in cases where harm had already occurred and plaintiff took steps to mitigate or prevent future harm of the same type).

***Second***, Health Gorilla ignores Epic's allegations of reputational harm.  Compl. ¶¶ 193 (Epic's "customers have voiced that, because of [Health Gorilla's] abuses, they have

---

Compl. ¶¶ 26-27, 29, 142, 157, 159, 170, 172, 174, 182, 194, 202, 212, 217, 219, 230, 235, 237, 251, 260, 269, 278; *see also Paya v. Macy's Inc.*, 793 F. Supp. 3d 1201, 1211 (C.D. Cal. 2025) (declining to dismiss on this ground).  Health Gorilla concedes as much. Mot. at 10 (admitting the references to California law and thus addressing Plaintiffs' claims under California law).

contemplated limiting their participation in the Carequality and TEFCA frameworks or withdrawing from them entirely."), 196 ("Epic incurred and continues to incur costs . . . to respond to customer concerns and complaints raised by Epic[']s healthcare provider customers."). Reputational harm is an injury-in-fact sufficient to satisfy Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[v]arious intangible harms," including "reputational harms," "can also be concrete"); *Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *6 (C.D. Cal. Sept. 23, 2013) ("The Court determines that plaintiff has adequately alleged constitutional standing" based on its allegations of "loss of business and damage to its reputation."). (And these reputational harms are ongoing as Defendants' interoperability abuses spawn putative data breach class actions—including one filed in this District.[3])

***Third***, Health Gorilla ignores that Epic alleged costs for increased storage and responding to customer complaints. *See* Compl. ¶¶ 195-196. These harms are not self-inflicted and are the but-for result of Health Gorilla's conduct. Epic incurs increased storage costs when Health Gorilla allows and enables the Framework Defendants to request patient records under the false pretense that they seek such records for treatment purposes. *Id.* ¶¶ 66, 96, 195. And Epic incurs costs to respond to customer complaints about Health Gorilla's conduct to maintain Epic's customer relationships. *Id.* ¶¶ 193, 196. These are "'real' and not 'abstract'" costs that "actually exist" and are "particularized" to Epic, satisfying Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-340 (2016).

2.    There is No Contractual Bar to Plaintiffs' Claims.

Health Gorilla asserts that the CCA and Common Agreement contain mandatory dispute resolution procedures that require dismissal of Plaintiffs' claims, raising three arguments.

---

[3] *See Patterson v. UVA Health, et al.*, 2:26-cv-01938 (C.D. Cal.); *Berry v. Epic Systems Corp.*, 2026-CH-02082 (Cook Cty. Ill.); *Banh v. Epic Systems Corp., et al.*, 3:26-cv-00216 (W.D. Wis.); *Beaudreau v. Epic Systems Corp., et al.*, 3:26-cv-00215 (W.D. Wis.); *Fox, et al. v. Epic Systems Corp., et al.*, 3:26-cv-00214 (W.D. Wis.); *Jackson v. Trinity Health Corp., et al.*, No. 2:26-cv-10948 (E.D. Mich.).

6

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS

***First***, Health Gorilla claims these procedures are mandatory, thus imposing a condition precedent to filing suit that Plaintiffs did not fulfill. Mot. at 10-11. Not so.

Courts "will neither infer nor construe a condition precedent 'absen[t] . . . language plainly requiring such construction.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (quoting *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969)). "Conditions precedent must be expressed in plain, clear, and unambiguous language[.]" *Id.* at 1043. The CCA and Common Agreement lack the strict, unequivocal language required to establish a condition precedent, in contrast with the two district court decisions cited by Health Gorilla: *Chess v. CF Arcis IX LLC*, 2020 WL 4207322 (N.D. Cal. July 22, 2020), and *Columbia Cas. Co. v. Cottage Health Sys.*, 2015 WL 4497730 (C.D. Cal. July 17, 2015).

In *Chess*, the agreement specified that "[n]o litigation or other action shall be commenced against the Notified Party or any applicable party without complying with the procedures described herein[.]" 2020 WL 4207322, at *13. Similarly, in *Columbia Casualty*, the contract expressly stated that "no . . . judicial proceeding shall be commenced until the [alternative dispute resolution] shall have been terminated[.]" 2015 WL 4497730, at *1. These agreements demonstrate the type of clear and unequivocal language required to create a condition precedent in this context.

Here, the CCA and Common Agreement encourage—but do ***not*** require—parties to utilize the non-binding dispute resolution process. The Common Agreement provides only that "Signatory agrees to participate in the Dispute Resolution Process with respect to any Dispute." Ex. E § 15.1. It requires parties—through the use of the term "shall"— to use their "best efforts" to resolve disputes informally but provides that if informal resolution is not achieved, the parties "may"—indicating optionality—"***choose to*** submit the Dispute to the Dispute Resolution Process." *Id*. (emphasis added). The CCA is similar: "Applicant shall submit Disputes to the non-binding dispute resolution process established by Carequality." Ex. A § 20.1. Yet, like the Common Agreement, the CCA makes clear that while the parties "agree[]" to use their "best efforts" to resolve disputes

7

informally, to the extent those efforts are unsuccessful, further participation in the Dispute Resolution Process is optional, providing that the party "***may choose to*** Submit the Dispute to the Dispute Resolution Process." *Id.* (emphasis added).

Importantly, both the CCA and Common Agreement make clear that the dispute resolution process does not preclude litigation. Refusal to participate in the process might be treated as a material breach, permitting Carequality or the RCE to suspend or terminate the agreement (*see* Ex. A § 20.1; Ex. E § 15.1), but the consequence is ***contractual***—potential suspension or termination by signatories—***not a jurisdictional bar*** enforceable by Health Gorilla. This distinction is critical and demonstrates that participation in the dispute resolution process is not a condition precedent to filing suit.

***Second***, Health Gorilla argues that the carve-out in the dispute resolution provisions for immediate injunctive relief does not apply because Plaintiffs have not sought a temporary restraining order nor filed a separate, standalone motion for a preliminary injunction. Mot. at 10. But Health Gorilla cites nothing to support its position that "immediate injunctive relief" can mean only temporary restraining order or preliminary injunction. The agreements do not contain those requirements. *See* Ex. A § 20.2.1; Ex. E § 15.2.1. Health Gorilla should not be permitted to add to or alter the express language of the agreements. *Jimirro v. Paley Center for Media*, 2025 WL 2994996, at \*4 (C.D. Cal. Sept. 17, 2025) ("The Court cannot 'create for Plaintiff a contract which he did not make and cannot insert language which Plaintiff now wishes were there.'" (cleaned up, quoting *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1478 (1998)); *Arriagarazo v. BMW of N. Am., LLC*, 64 Cal. App. 5th 742, 748 (2021) ("Courts must refrain from altering or rewriting a contract, and they must not add a term to a contract about which the agreement is silent." (quotation omitted)).

Plaintiffs' Complaint explains the irreparable harm caused by Health Gorilla. Compl. ¶¶ 25, 192-197. Plaintiffs plainly seek immediate injunctive relief. *Id.*, Caption, Prayer for Relief. And Plaintiffs need not seek that relief through a specific procedural vehicle for this Court to award it. *See, e.g., Six Gun Territory, Inc. v. Six Gun Territory*

8

*Legacy, Inc.*, 2025 WL 2853156, at **1, 7–8 (M.D. Fla. Aug. 21, 2025) (granting summary judgment and entering immediate injunctive relief). Indeed, this Court has entered that relief against GuardDog. ECF 79. Thus, the criteria for Plaintiffs to be "relieved" of any obligation to follow the dispute resolution procedures are satisfied. Ex. A § 20.2.1; Ex. B § 9.3; Ex. E § 15.2.[4]

***Third***, Health Gorilla argues that Plaintiffs cannot invoke any exception to the non-binding dispute resolution process. *See* Mot. at 12. Assuming *arguendo* that the dispute resolution process is a condition precedent to filing suit (and it is not), this argument is not supported in fact or in law.

"It is an established rule that administrative remedies need not be exhausted where they are inadequate, inapplicable, or futile." *Vernon Fire Fighters v. City of Vernon*, 107 Cal. App. 3d 802, 826 (1980); *Gueyffier v. Ann Summers, Ltd.*, 43 Cal. 4th 1179, 1186 (2008) ("California law allows for equitable excusal of contractual conditions causing forfeiture in certain circumstances, including circumstances making performance futile." (citations omitted)); *Jones v. Union Pac. R. Co.*, 968 F.2d 937, 942 (9th Cir. 1992) (failure to exhaust internal union remedies not required when doing so would be a futile effort).

Here, Plaintiffs are excused from the dispute resolution process because Defendants' conduct demonstrates that it would be futile and Plaintiffs cannot obtain the remedies they seek. Plaintiffs attempted to engage with Health Gorilla to informally resolve the issue to no avail. Compl. ¶¶ 158, 166, 171, 183. Health Gorilla made implausible excuses, tendered apparently false and perjured statements, and/or entirely failed to respond. *Id.* Health Gorilla's inadequate response makes clear that continued pursuit of the dispute resolution procedures would be futile. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (denying motion to dismiss where plaintiff's allegations regarding

---

[4] Health Gorilla also asserts that the dispute resolution provision must be enforced so Carequality can determine if Health Gorilla violated Section 15 of the CCA. Mot. at 13. Plaintiffs do not allege a breach of Section 15.

9

defendant's inadequate response to claims allowed for inference that compliance with informal dispute settlement procedure would be futile).

Additionally, Plaintiffs seek a binding public injunction that the dispute resolution procedures cannot provide. Compl., Prayer for Relief; *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (explaining that public injunctions "prohibit[] unlawful acts that threaten future injury to the general public" (citation and quotation marks omitted)). Because the agreements' dispute resolution procedures cannot provide binding injunctive relief—let alone a public injunction—they would be futile and should not be required.

*      *      *

This Court can and should adjudicate Plaintiffs' claims. There is nothing in the text of the agreements that requires dismissal, nor does the "structure" of the agreements dictate a contrary result. Mot. at 13. To the contrary, a lawsuit seeking injunctive relief is expressly contemplated by the agreements. To the extent the Court determines otherwise, Plaintiffs submit that a stay—not dismissal—is appropriate.[5] This is particularly true where, as here, claims will continue against those Defendants who are not signatories nor third party beneficiaries to the agreements, including Defendants Baker, Toovey, Saidon, LlamaLab, Mammoth Rx, and Hoppr, and against Defendants who did not invoke (or properly invoke) the dispute resolution procedures, including GuardDog and the remaining Mammoth Defendants. *Connell v. ByteDance, Inc.*, 2025 WL 1828472, at *28 (N.D. Cal. July 1, 2025) (compelling arbitration as to certain parties and staying matter as to party not subject to arbitration).

## B.    Plaintiffs Have Stated A Fraud Claim Against Health Gorilla.

Fraud has five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *9 n.13 (C.D. Cal. Mar. 23, 2025) (Olguin, J.) (internal

---

[5] Health Gorilla cites *Columbia Casualty* for the proposition that dismissal is appropriate. Mot. at 11. But as set forth above, that case is inapposite.

10

citations and quotations omitted). Health Gorilla challenges four of them.

### 1. Plaintiffs Allege Actionable Misrepresentations And Omissions.

Health Gorilla attempts to narrowly construe Plaintiffs' fraud claim, contending that "[t]he only Health Gorilla representations Plaintiffs identify are those it made when onboarding each of [the Framework] Defendants." Mot. at 18. This is inaccurate and irrelevant. Plaintiffs identify multiple false representations and omissions made by Health Gorilla, including, but not limited to, those made in onboarding the Framework Defendants.

As it relates to onboarding, Plaintiffs do not "speculate about what Health Gorilla 'would have affirmed' about each [Framework] Defendant." Mot. at 18. Rather, Plaintiffs allege that Health Gorilla made false assertions regarding the purpose for which each Framework Defendant was onboarded to the frameworks. Compl. ¶¶ 209, 227, 243. These allegations are not "conditional," Mot. at 18, but instead identify who (Health Gorilla), what (the Framework Defendants were joining the framework for legitimate treatment purposes), when (October 7, 2024 for RavillaMed, *id.* ¶ 146, July 2024 for Mammoth, *id.* ¶ 161, September 2022 for Unit 387, *id.* ¶ 174, September 2022 for SelfRx, *id.* ¶ 176, and September 2024 for GuardDog, *id.* ¶ 177), and where/how (during onboarding to the frameworks, *id.* ¶¶ 209, 227, 243). Plaintiffs received and relied upon Health Gorilla's false onboarding representations, which were incorporated into the Carequality and TEFCA directories. Compl. ¶¶ 146, 161, 174, 176, 177.

Plaintiffs also affirmatively allege that Health Gorilla made other actionable misrepresentations and omissions, including that:

- It would perform vetting and diligence of the Framework Defendants (Compl. ¶¶ 56, 184-85, 209, 227, 243);
- It would ensure the Framework Defendants complied with the interoperability agreements (*id.* ¶¶ 71, 100, 184-85, 209, 227, 243);

11

- The Framework Defendants sought access to and were querying patient records for legitimate treatment purposes (*id.* ¶¶ 20, 139-40, 146, 161, 174, 176-77, 209, 227, 243);

- RavillaMed and Mammoth were using their AI tools for purported treatment purposes (*id.* ¶¶ 187.c, 209, 227);

- The spikes in RavillaMed's August and October 2025 records requests were due to technical glitches (*id.* ¶¶ 185, 209); and

- There was no connection between Defendants Daniel Baker and Mammoth (*id.* ¶¶ 166, 227).

Finally, Health Gorilla asserts that it is not liable "for the [Framework Defendants'] allegedly fraudulent statements about individual health record queries." Mot. at 18. But Plaintiffs do not seek to hold Health Gorilla liable only for the Framework Defendants' false statements in each query. As shown above, Plaintiffs' fraud claim is premised upon Health Gorilla's misrepresentations and omissions (1) that allowed the Framework Defendants to access and maintain access to the Carequality and TEFCA frameworks (see Compl. ¶¶ 20, 56, 71, 100, 139-140, 146, 161, 166, 174, 176-177, 184-185, 187, 209, 227, 243) and (2) falsely claiming a treatment purpose when making queries on the Framework Defendants' behalf on the TEFCA framework (*see id.*; *see also id.* at ¶ 98; Mot. at 18 (conceding Health Gorilla "shuttle[s] queries to other QHINs")). To be sure, Health Gorilla is also liable for knowingly conveying the Framework Defendants' fraudulent statements claiming a treatment purpose. *See*, *e.g.*, *SEC v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008) ("One doesn't have to be the inventor of a lie to be responsible for knowingly repeating it to a dupe."); *In re Nat'l Century Fin. Enters., Inc.*, 846 F. Supp. 2d 828, 862 (S.D. Ohio 2012) ("It is fraud to knowingly provide false information to another person, regardless of who originally drafted the words.").[6]

---

[6] Health Gorilla also asserts it did not have to "sign off on every treatment query." Mot. at 18. That is a red herring. Health Gorilla concedes it is "obligated to ensure its Connections' compliance" with the agreements, *id.* at 19, which includes ensuring the Framework Defendants have a legitimate treatment purpose when making queries.

12

2.      Plaintiffs Allege Actual, Justifiable Reliance.

Health Gorilla does not dispute that Plaintiffs justifiably relied on Health Gorilla's misrepresentations and omissions. Mot. at 19-20. Instead, Health Gorilla argues only that (1) the CCA contains a provision disclaiming Plaintiffs' reliance, and (2) Plaintiffs did not take any *action* as a result of their justifiable reliance. *Id*. Both arguments fail.

**Plaintiffs Did Not Disclaim Reliance.** Health Gorilla asserts that Plaintiffs disclaimed reliance, pointing to Section 19 of the CCA and Section 15 of the CC Terms. Mot. at 19. Both provisions state that Plaintiffs "acknowledge[] that other Implementers and Carequality Connections may be added to or removed from the Carequality Directory at any time; therefore, [Plaintiffs] may not rely upon the inclusion in the Carequality Directory of a particular Implementer or Carequality Connection." Ex. A § 19; Ex. E § 15.

Health Gorilla's specious disclaimer argument does not apply to TEFCA on its face, so it cannot obtain dismissal for its conduct on that framework. The argument also fails with respect to Carequality. All that is disclaimed is reliance on any Implementer's or Connection's indefinite participation in the Carequality framework. *Id.* In other words, Implementers and Connections can come and go. The CCA does not purport to disclaim reliance on representations made by Implementers and Connections while they are members of the Carequality directory or to shield Implementers or Connections from complying with all of the relevant rules during their participation in the Carequality Framework. Plaintiffs simply did not disclaim any relevant reliance.

**Plaintiffs Allege Reliance on Health Gorilla's Misrepresentations and Omissions.** Health Gorilla also claims that Plaintiffs did not take any action as a result of their reliance on Health Gorilla's misrepresentations. Mot. at 20. Plaintiffs' Complaint alleges the opposite. Plaintiffs allege that Epic and OCHIN allowed and enabled their customers to exchange patient records with the Framework Defendants in reliance on Health Gorilla's misrepresentations and omissions. Compl. ¶¶ 209-214, 227-232, 243-248, 256-257, 265-266, 274-275. Further, Plaintiffs allege that the Provider Plaintiffs disclosed patient records with the Framework Defendants in reliance on Health Gorilla's

13

misrepresentations and omissions. *See id.* And, on the TEFCA framework, in reliance on Health Gorilla's misrepresentations and omissions, Epic received queries from Health Gorilla that originated from the Framework Defendants, sent those queries to its customers, and provided its customers' patient records to Health Gorilla. *Id.* ¶ 98. Plaintiffs have sufficiently alleged reliance on Health Gorilla's misrepresentations.[7]

### 3. Plaintiffs Allege Health Gorilla's Scienter.

Plaintiffs allege that Health Gorilla knew its representations and omissions were false, or at a minimum, acted recklessly and without regard for the truth of its statements, because Health Gorilla:

- Knew the Framework Defendants were not providing treatment (Compl. ¶¶ 146, 210, 228, 244);

- Was obligated to vet the Framework Defendants (*id*. ¶¶ 56, 185);

- Was obligated to ensure the Framework Defendants' compliance with the relevant agreements (*id*. ¶¶ 60, 71, 88, 100, 104, 110);

- Was aware of red flags related to the Framework Defendants' activities (*id.* ¶¶ 201, 227, 243);

- Was informed by Epic of its concerns (*id*. ¶¶ 158, 184-191);

- Knew that healthcare provider customer audit logs would bear clear indicia of the Framework Defendants' misconduct (*id*. ¶¶ 185, 210, 228, 244, 256, 274); and

- Ignored and attempted to cover up the Framework Defendants' suspicious activity (*id*. ¶¶ 158, 166, 183, 185, 187-191, 209).

Plaintiffs' allegations satisfy Rule 9(b), which requires only that knowledge be alleged generally. Fed. R. Civ. P. 9(b); *see United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (under Rule 9(b), scienter "can be alleged generally"). Indeed, in keeping with Rule 9(b), courts have found it "is often enough to establish

---

[7] Health Gorilla repeats its argument that it cannot be liable for actions that the Plaintiffs took in reliance upon the Framework Defendants' statements that Health Gorilla relayed to Plaintiffs and that the Provider Plaintiffs did not see, rely on, or send records in response to Health Gorilla's onboarding statements. Mot. at 20. Both are incorrect. *See* Section III.B.1, *supra.*

scienter for fraud" that defendant "made [a] false statement 'without belief in its truth or recklessly, careless of whether it is true or false," or "knows that [it] 'lacks an honest belief' in the statement's truth." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 752 (2023) (quoting Restatement (Second) of Torts, § 526, cmts. e, d); *see also Virun, Inc. v. Cymbiotika LLC*, 2023 WL 12119026, at *3 ("To plead fraud, a party must plead facts showing," among other things, "knowledge of falsity or reckless disregard for the truth[.]").

Health Gorilla addresses virtually none of Plaintiffs' allegations. It instead argues that "a good-faith disagreement . . . is not fraudulent intent." Mot. at 21. Pleadings motions are not the time to resolve "disagreement[s]"—Plaintiffs' allegations control. *Davis*, 691 F.3d at 1159 (factual allegations in complaint must be accepted as true at pleading stage). The question is whether Plaintiffs alleged Health Gorilla knew its representations were false—and they have.

4.     <u>Plaintiffs Allege Damages Caused By Health Gorilla's Misconduct</u>.

Health Gorilla argues that any damage to Plaintiffs was caused by the Framework Defendants, not Health Gorilla. Mot. at 21-22. But again, Health Gorilla ignores that Plaintiffs' claim is based on Health Gorilla's misconduct and actions undertaken by Plaintiffs in reliance on the same. *See* Sections III.B.1-2, *supra*. And, again, Health Gorilla disregards that it is liable for harm caused by it knowingly relaying the Framework Defendants' false statements. *See id.* Accordingly, Health Gorilla's arguments that it did not cause harm to Plaintiffs fail. To be sure, Plaintiffs clearly allege damages as a result of Health Gorilla's conduct. *See* Compl. ¶¶ 192-197, 215-216, 233-234, 249-250.

**C.     Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud.**

The only element of Plaintiffs' aiding and abetting claim that Health Gorilla challenges is knowledge. Mot. at 22-23.

Actual knowledge "may be averred generally." *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1114 (S.D. Cal. Mar. 20, 2024). A "direct allegation (really, assertion) of actual knowledge" satisfies the first step of the inquiry. *Id.* (quoting *Chang v. Wells Fargo*

*Bank, N.A.*, 2020 WL 1694360, at *4 (N.D. Cal. Apr. 7, 2020)).  Here, Plaintiffs directly allege that Health Gorilla knew that the Framework Defendants' treatment-purpose representations were false.  Compl. ¶¶ 210, 228, 244, 256, 265, 274.

The next question is whether the complaint "pleads sufficient facts as required to make that allegation plausible."  *Bhatia*, 725 F. Supp. 3d at 1114-15 (quoting *Chang*, 2020 WL 1694360, at *4).  Here, Plaintiffs' Complaint contains detailed facts that Health Gorilla:

- Knew the Framework Defendants were not providing treatment (Compl. ¶¶ 146, 210, 228, 244);
- Was obligated to vet the Framework Defendants (*id*. ¶¶ 56, 185);
- Was obligated to ensure the Framework Defendants' compliance with the relevant agreements (*id*. ¶¶ 60, 71, 88, 100, 104, 110);
- Had the red flag of Metriport's actions as it relates to the RavillaMed Defendants (*id*. ¶ 201);
- Had the red flag of Defendant Baker's involvement as to the Mammoth Defendants (*id*. ¶ 227);
- Had the red flag of Defendant Manak's involvement as to the Unit 387 Defendants (*id*. ¶ 243);
- Was informed by Epic of its concerns (*id*. ¶¶ 158, 184-191);
- Knew that healthcare provider customer audit logs would bear clear indicia of the Framework Defendants' misconduct (*id*. ¶¶ 185, 210, 228, 244, 256, 274); and
- Ignored and attempted to cover up the Framework Defendants' suspicious activity (*id*. ¶¶ 158, 166, 183, 185, 187-191, 209).

This is more than sufficient.  The Ninth Circuit has affirmed that ignoring suspicious activity or "red flags" is "enough to establish actual knowledge under the California aiding and abetting standard."  *In re First All. Mortg. Co.*, 471 F.3d 977, 999 (9th Cir. 2006); *see also In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020) (recognizing that the Ninth Circuit has found that "ignor[ing] suspicious activity or red

16

flags is sufficient to demonstrate actual knowledge"); *Bhatia*, 725 F. Supp. 3d at 1116 ("Plaintiffs allege that numerous red flags were visible to Defendants, which they ignored . . . [T]his alone is sufficient to demonstrate actual knowledge.").

**D.  Plaintiffs Are Third-Party Beneficiaries of the CCA and Common Agreement.**

Health Gorilla argues that Plaintiffs cannot assert claims against it for breaches of Sections 9.1 and 9.2 of the Common Agreement because there is no third-party beneficiary provision and the common law test is not met. Mot. at 16. As for the CCA, there is a third party beneficiary provision, but Health Gorilla argues that it applies only to the enumerated sections and Section 16.2 is not one of them. *Id.* at 14-15.

"The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Singer v. Ett*, 2023 WL 6787442, at *5 (C.D. Cal. Sept. 18, 2023) (Olguin, J.) (citation omitted). This requires three elements: (1) the third party would "in fact benefit" from the contract, (2) one of the "motivating purpose[s]" of the contracting parties was to "provide a benefit to the third party," and (3) allowing them to enforce the contract would be "consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019). The interoperability framework agreements are a textbook example of how third party beneficiary law works.

**Plaintiffs Benefit From The Agreements.**  Plaintiffs are "members of [] class[es] for whose benefit the contract was made"—Implementers, Connections, QHINs, and Participants. *Singer*, 2023 WL 6787442, at *5 (citation omitted). Both agreements are replete with provisions that directly benefit Plaintiffs, including provisions prohibiting Health Gorilla from (1) "us[ing] the information in the Carequality [and TEFCA] Director[ies] in a manner that would be reasonably expected to have a detrimental effect on" other Implementers, QHINs, Connections, and Participants, Ex. A § 16.2; Ex. E § 8.2; and (2) "unfairly or unreasonably limit[ing] exchange or interoperability" or otherwise

17

engaging in exchange in a discriminatory manner as to other Implementers, QHINs, Connections, or Participants, Ex. A § 8; Ex. E § 8.2. Further, the agreements require Health Gorilla to cooperate with other Implementers, QHINs, Connections, and Participants in connection with the exchange and interoperability. Ex. A § 11; Ex. E § 6.1.

**Benefiting Plaintiffs Was A Motivating Purpose Of The Contracting Parties.** The CCA and Common Agreement both provide that their directories and the information contained therein are "intended" to be used by all Implementers, QHINs, Connections, and Participants "to create and maintain operational connectivity under the [agreements]." Ex. A § 16.2; Ex. E § 4.1 & p. 8. Both agreements thus give Health Gorilla "access to, and the right to use, the Carequality [and TEFCA] Director[ies] on the express condition that [it] only use and disclose information contained in the Carequality [and TEFCA] Director[ies] as necessary to advance the intended use of the Carequality [and TEFCA] Director[ies]," which is connectivity and exchange between all Implementers, QHINs, Connections, and Participants. Ex. A § 16.2; Ex. E § 4.1. Moreover, Health Gorilla was required to affirm that it "understands and acknowledges that numerous activities with respect to this Agreement shall likely involve other Implementers [or QHINs] and their Carequality Connections [or Participants] . . ." Ex. A § 11; Ex. E § 6.1. These provisions, combined with the above-referenced provisions, make clear that benefiting other Implementers, QHINs, Connections, and Participants—including Plaintiffs—was a motivating purpose of the contracting parties.

**Enforcement Of Agreements Comports With Expectations.** The CCA and Common Agreement are explicit that Health Gorilla's breaches of the agreement may harm Plaintiffs, *see* Ex. A §§ 16.2, 5.3.1; Ex. E §§ 8.2, 6.1, and that Health Gorilla is responsible for those harms. Ex. A § 10.1.3; Ex. E § 7.4.3.[8] Both allow Implementers, QHINs, Connections, and Participants to pursue immediate injunctive relief against

---

[8] Plaintiffs assert that Section 7.4.3 does not confer third party beneficiary status on Epic because Epic did not suffer any harm as a result of Health Gorilla's breach of the Common Agreement. Mot. at 16. But Epic has alleged harm as a direct result of Health Gorilla's breach of the Common Agreement. *See* Section III.B.1, *supra*.

18

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS

Health Gorilla when their "act[s] or omission[s] will cause irreparable harm," as Plaintiffs have done here. Ex. A § 20.2.1; Ex. E § 15.2.1. As for the CCA, Health Gorilla admits that "Epic can . . . sue for breach of CCA Section 13." Mot. at 13-14; *see also id.* at 16. And the frameworks depend on all Implementers, QHINs, Connections, and Participants following the rules and complying with all contractual obligations. Compl. ¶¶ 4-5. Accordingly, Plaintiffs suing Health Gorilla for injunctive relief based on their breaches of the CCA and Common Agreement is consistent with the contracts.

*        *        *

There are three loose ends.

***First***, Health Gorilla argues that Epic may not enforce Section 16.2 of the CCA because the CCA's third party beneficiary section (21.6) does not enumerate Section 16.2. Mot. at 15. But Health Gorilla misreads Section 21.6.[9] The first sentence of Section 21.6 provides a ***non***-exclusive list of sections for which Epic, as an Implementer, is an express third party beneficiary. This is shown by the use of the term "solely" in the second sentence of Section 21.6. The Court "must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage." *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 49 (2010); *Fauceglia v. Univ. of S. Cal.*, 2021 WL 1783228, at *6 (C.D. Cal. Mar. 29, 2021) (Olguin, J.) (rejecting reading of contract that would render term surplusage).

***Second***, Health Gorilla argues that Section 21.6 bars the Provider Plaintiffs from being third party beneficiaries, arguing that the second sentence of Section 21.6 provides the exclusive circumstances under which the Provider Plaintiffs can be third party beneficiaries. But the sentence states only that if certain factual circumstances are met,

---

[9] Section 21.6 states: "Each Implementer shall be deemed a third party beneficiary of this Agreement for purposes of enforcing Applicant's compliance with Sections 7, 8, 10.1, 10.1.3, 11, 12, 13, 19 and 20 of this Agreement. In the event that Applicant does not designate any Carequality Connections or that Applicant engages in exchange directly with other Implementers' Carequality Connections in a specific Carequality Use Case even though it has Carequality Connections for that specific Carequality Use Case, then each Implementer's Carequality Connections shall be deemed a third party beneficiary of this Agreement solely for the purpose of enforcing Applicant's compliance with Section 10.1.4 of this Agreement."

19

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS

then a Connection, such as one of the Provider Plaintiffs, is a third party beneficiary "*solely*" for purposes of enforcing Health Gorilla's compliance with Section 10.1.4. Ex. A § 21.6 (emphasis added). The provision is silent as to Connections' third party beneficiary status in all other circumstances. And because the factual circumstances described are not present, the limitation on the Provider Plaintiffs' third party beneficiary status to enforcement of Section 10.1.4 only does not apply.

*Third*, Health Gorilla argues that Plaintiffs cannot be third party beneficiaries of the Common Agreement because it does not expressly name third party beneficiaries. Mot. at 16. But "a third party need not be expressly named or identified in a contract" to be a third party beneficiary. *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010). Even a "No Third Party Beneficiaries" provision is not conclusive as to the parties' intent, *id.*, and must be looked beyond to determine the parties' intent. *See*, *e.g.*, *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1232-37 (2004); *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 112 Cal. App. 5th 519, 562-64 (2025). Here, the Common Agreement as a whole reflects an intent to benefit Plaintiffs.

### E. Plaintiffs Have Stated A Claim For Breach Of Contract.

Plaintiffs' breach of contract claim is based on Health Gorilla's breaches of Sections 13 and 16.2 of the CCA and Sections 9.1 and 9.2 of the Common Agreement. Compl. ¶¶ 294, 295, 298.

Health Gorilla does not argue that it complied with any of those sections. It instead argues only that Epic cannot assert a claim for breach of Section 13 of the CCA because Plaintiffs have not sufficiently alleged that Health Gorilla's breach was willful, reckless, or intentional, selectively quoting Plaintiffs' Complaint, attempting to misdirect allegations against it onto other Defendants, and flatly ignoring Plaintiffs' numerous allegations of Health Gorilla's willful, reckless, and intentional misconduct. Mot. at 16-17 (quoting Ex. A § 10.1.3). But Plaintiffs allege that Health Gorilla (1) made false assertions, Compl. ¶¶ 20, 56, 71, 100, 139-140, 146, 161, 166, 174, 176-77, 184-185, 187, 209, 227, 243; (2) failed to perform its contractual obligations, including failing to ensure

the Framework Defendants were using the framework legitimately, *id.* ¶¶ 56, 71, 100, 184-185, 209, 227, 243; (3) knew its statements were false, *id.* ¶¶ 56, 60, 71, 88, 100, 104, 110, 146, 158, 166, 183, 184-191, 210, 228, 244, 256, 265, 274; and (4) intended for Plaintiffs to rely on its knowingly false statements, *id.* ¶¶ 211, 229, 245.  The Court should reject Health Gorilla's argument.

**F.    Health Gorilla Does Not Challenge Plaintiffs' Seventh Claim.**

Health Gorilla does not challenge Plaintiffs' Business and Professions Code § 17200 claim (Compl. ¶¶ 279-286), so it should proceed.  *See generally* Mot.

## IV.    PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

If the Court grants any portion of the Motion, Plaintiffs respectfully request leave to amend.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding leave to amend is proper unless it is clear that the complaint could not be saved by any amendment).  Health Gorilla does not argue otherwise.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny Health Gorilla's Motion.

Dated:  March 26, 2026    By:  */s/ Marshall L. Baker*
Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

- and –

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

21

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Epic System Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc., certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 26, 2026    By:    */s/ Marshall L. Baker*
Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

\- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

22

PLAINTIFFS' OPPOSITION TO DEFENDANT
HEALTH GORILLA, INC.'S MOTION TO DISMISS