**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:  310.229.1000
Facsimile:  310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:  202.887.4000
Facsimile:  202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., | Case No. 2:26-cv-00321-FMO-RAO |
| | Assigned to:  Hon. Fernando M. Olguin |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO THE RAVILLAMED DEFENDANTS' MOTION TO DISMISS** |
| v. | Date:        April 23, 2026<br>Time:        10:00 A.M.<br>Location:   Courtroom 6D |
| Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, | Date Action Filed:        January 13, 2026 |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION……………………………………………………………………..1

II.     BACKGROUND………………………………………………………………………….3

III.    ARGUMENT…………………………………………………………………………4

        A.      The Dispute Resolution Procedures Are Not A Condition Precedent to Litigation. ...............................................................................................4

        B.      The Dispute Resolution Does Not Apply Because Plaintiffs Seek Immediate Injunctive Relief..............................................................................6

        C.      Even Assuming The Dispute Resolution Process Is A Condition Precedent To Filing Suit, Plaintiffs Are Excused From Compliance Because The Process Is Futile. .......................................................................8

        D.      The Non-Signatory Defendants Lack Standing To Enforce The Dispute Resolution Procedures. ......................................................................10

                1.      Equitable Estoppel Does Not Apply. .....................................................11

                2.      Dr. Ravilla, LlamaLab, and Mr. Saidon Are Not Third Party Beneficiaries To The Agreements. ......................................................14

IV.     IF THE COURT GRANTS THE MOTION, A STAY RATHER THAN DISMISSAL IS APPROPRIATE…………………………………………………..15

V.      CONCLUSION………………………………………………………………………..16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambercroft Trading Ltd. v. Biddy*,
2020 WL 1820599 (N.D. Cal. Apr. 10, 2020)......................................................16

*Arriagarazo v. BMW of N. Am., LLC*,
64 Cal. App. 5th 742 (2021) ................................................................................8

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) ....................................................5, 6

*Beeks v. ALS Lien Servs.*,
2014 WL 7785745 (C.D. Cal. Feb. 18, 2014) .....................................................15

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) ...............................................................................9

*Burch v. California Dep't of Motor Vehicles*,
2017 WL 3537242 (E.D. Cal. Aug. 17, 2017).......................................................8

*Charles J. Rounds Co. v. Joint Council of Teamsters, No. 42*,
4 Cal. 3d 888 (1971) ............................................................................................5

*Connell v. ByteDance, Inc.*,
2025 WL 1828472 (N.D. Cal. July 1, 2025) ......................................................16

*Cruz v. PacifiCare Health Sys., Inc.*,
30 Cal. 4th 303 (2003) .......................................................................................10

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..............................................................................4

*Dominion Transmission, Inc. v. Precision Pipeline, Inc.*,
2013 WL 5962939 (E.D. Va. Nov. 6, 2013) ..............................................5, 6, 16

*Faucett v. Move, Inc.*,
2024 WL 2106727 (C.D. Cal. Apr. 22, 2024)......................................11, 14, 15

*Ford Motor Warranty Cases*,
17 Cal. 5th 1122 (2025) ...........................................................................11, 12

ii

*Goldman v. KPMG, LLP*,
   173 Cal. App. 4th 209 (2009) ................................................................11, 12, 13

*Goonewardene v. ADP, LLC*,
   6 Cal. 5th 817 (2019) ......................................................................................14

*Gueyffier v. Ann Summers, Ltd.*,
   43 Cal. 4th 1179 (2008) ....................................................................................8

*Hirschhorn v. BMW of North America, LLC*,
   2021 WL 602831 (C.D. Cal. Jan. 14, 2021) ....................................................13

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
   957 F.3d 1038 (9th Cir. 2020) ......................................................................4, 5

*Jimirro v. Paley Center for Media*,
   2025 WL 2994996 (C.D. Cal. Sept. 17, 2025) ..................................................7

*Jones v. Union Pac. R. Co.*,
   968 F.2d 937 (9th Cir. 1992) .............................................................................9

*Kim v. City of Santa Clara*,
   448 F. App'x 780 (9th Cir. 2011) (Tashima, J., dissenting)...............................8

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ..............................................................12, 13, 14

*McCarthy v. Toyota Motor Corp.*,
   2020 WL 6156583 (C.D. Cal. Oct. 20, 2020) ..................................................12

*Moreno v. Quemuel*,
   219 Cal. App. 4th 914 (2013) ............................................................................8

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ...................................................................11, 14

*Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula
   Horticulture, Inc.*,
   2019 WL 2569545 (N.D. Cal. June 21, 2019)................................................5, 6

*Singer v. Ett*,
   2023 WL 6787442 (C.D. Cal. Sept. 18, 2023) (Olguin, J.).........................14, 15

*Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*,
   2025 WL 2853156 (M.D. Fla. Aug. 21, 2025)...................................................7

iii

*Sor Tech., LLC v. MWR Life, LLC*,
    2019 WL 4060350 (S.D. Cal. Aug. 28, 2019)......................................................5

*Target Corp. v. Wolters Kluwer Health, Inc.*,
    2015 WL 12646483 (C.D. Cal. Dec. 16, 2015)....................................................5

*Tattoo Art, Inc. v. Tat Int'l, LLC*,
    711 F. Supp. 2d 645 (E.D. Va. 2010) ..........................................................5, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
    *& Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................................9

*Unnamed Physician v. Bd. of Trs. of Saint Agnes Med. Ctr.*,
    93 Cal. App. 4th 607 (2001) ...............................................................................9

*Vernon Fire Fighters v. City of Vernon*,
    107 Cal. App. 3d 802 (1980) ..............................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................................4

iv

## I.  **<u>INTRODUCTION</u>**

RavillaMed PLLC, Avinash Ravilla, Shere Saidon, and LlamaLab, Inc. (the "RavillaMed Defendants") committed fraud on two national health information exchange frameworks—Carequality and the Trusted Exchange Framework and Common Agreement ("TEFCA")—illegally obtaining confidential patient records under the false pretenses that they were using those records to treat patients.  They were not.  As Plaintiffs have alleged, the RavillaMed Defendants took these patient records for the purpose of monetizing them for their own financial benefit.

The RavillaMed Defendants are two entities and two individuals:  Defendants RavillaMed PLLC, LlamaLab, Inc., Avinash Ravilla, and Shere Saidon.  Dr. Avinash Ravilla is the founder of RavillaMed and the Chief Medical Officer of LlamaLab.  Notably, Dr. Ravilla's wife, Ami Sangani, is LlamaLab's Director of Medical Records and Clinical Automation.  Mr. Saidon is the founder and Chief Executive Officer of LlamaLab.  While RavillaMed purports to be a healthcare provider focused on chronic pain management, LlamaLab's own website makes clear that its sole purpose is to sell patient records to law firms.

In October 2024, RavillaMed, acting in concert with the rest of the RavillaMed Defendants, was onboarded to the Carequality and TEFCA interoperability frameworks by Defendant Health Gorilla.  From the time of its onboarding to at least October 2025, RavillaMed illegally accessed patient records based on its false assertion that it was querying these records for treatment purposes—including more than 17,000 patient records from Epic's customers in August 2025 alone and nearly 10,000 patient records from Epic's customers in October 2025.  In each and every instance where RavillaMed queried and obtained a patient record, RavillaMed falsely asserted (both directly and through Health Gorilla) that the record was being requested for purposes of providing treatment to the patient whose record was being requested.

The RavillaMed Defendants were not providing treatment.  Instead, the RavillaMed Defendants were extracting, disseminating, and selling patient records without patients'

1

knowledge or consent for their own commercial gain.  After RavillaMed obtained the patient records through Carequality and TEFCA, it transmitted the records to LlamaLab, which then sold the records to law firms.  In so doing, the RavillaMed Defendants fraudulently and illegally exploited their access to the interoperability frameworks, harming Plaintiffs, the privacy rights of individual patients, and the integrity of the interoperability frameworks themselves.

Against that backdrop, Plaintiffs assert claims against the RavillaMed Defendants for their fraudulent and unlawful access, dissemination, and monetization of patient records and for breaching the terms of the agreements that govern the interoperability frameworks—the CCA and the Common Agreement.  The RavillaMed Defendants attempt to avoid scrutiny of their misdeeds through this public lawsuit by diverting Plaintiffs' claims to a non-binding, contractual dispute resolution process that cannot provide the relief Plaintiffs seek in this action and which three of the four RavillaMed Defendants—LlamaLab, Dr. Ravilla, and Mr. Saidon—cannot invoke as non-signatories to the agreements.

The RavillaMed Defendants' attempts to deflect scrutiny and avoid liability for their misconduct fail.  The agreements to which the RavillaMed Defendants point do not bar this Court from exercising jurisdiction.  The agreements encourage, but do not mandate, the parties to participate in a non-binding dispute resolution process.  In addition, the agreements expressly carve-out requests for immediate injunctive relief, which Plaintiffs are seeking in this action (and have obtained against former Defendant Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth, *see* ECF 79).  Moreover, the RavillaMed Defendants' conduct to date shows the futility in participating in any non-binding dispute resolution process.  And Plaintiffs should not otherwise be required to participate in a process that indisputably cannot provide them the relief they seek in this case.

In addition, Dr. Ravilla, Mr. Saidon, and LlamaLab cannot enforce the dispute resolution provisions because they are not parties or third-party beneficiaries to the relevant agreements.  They attempt to avoid this result by invoking equitable estoppel, but

2

this too fails because Plaintiffs' claims against them do not rely on terms of the agreements.

The RavillaMed Defendants' motion to dismiss lacks merit and should be denied. However, in the event the Court were to accept the RavillaMed Defendants' argument that the contractual dispute resolution procedures apply to some or all of Plaintiffs' claims, a stay rather than dismissal would be the appropriate course.

## II.    BACKGROUND[1]

Plaintiffs filed this action to put an end to Defendants' exploitation of access to patient records through healthcare information exchange frameworks for profit rather than treatment.  That abuse, in addition to harming Plaintiffs, threatens the viability of healthcare interoperability—networks that enable exchange of electronic healthcare records among participating healthcare providers—to the detriment of providers' ability to provide the best care to patients.  *See*, *e.g.*, Compl. ¶¶ 1-5, 11-25, 192-193.  The exchange of patient records through the interoperability frameworks empowers healthcare providers to make treatment decisions that are informed by a patient's medical history and thereby improves patient outcomes.  *See*, *e.g.*, *id.* ¶¶ 2, 120.  But if healthcare providers cannot trust that exchanged patient records will be used only for treatment, they will be less likely to participate in the frameworks. *See id.* ¶¶ 5, 22.  Without healthcare providers' participation, interoperability cannot function. *See, e.g.*, *id.* ¶¶ 4-5, 23.

The RavillaMed Defendants have engaged in a scheme to obtain tens of thousands of patient records for sale to mass tort law firms, insurance companies, research entities, and other litigation businesses. *Id.* ¶¶ 7, 10, 128, 142-158.  RavillaMed, a Connection on the Carequality framework and a Participant on the TEFCA framework, accesses patient records under the false assertion that it is seeking the records for treatment purposes. *Id.* ¶¶ 13, 58, 86, 142-158.  RavillaMed then transmits large volumes of records to LlamaLab,

---

[1] All capitalized terms shall have the meaning assigned to them in Plaintiffs' Complaint.  All exhibits referenced herein are those attached to Plaintiffs' Complaint.

3

a self-described "Same-Day Patient Record Retrieval for Law Firms," which sells the patient records to trial attorneys. *Id.* ¶ 152.

RavillaMed and LlamaLab are closely tied. Dr. Ravilla owns RavillaMed and is, or was formerly, LlamaLab's Chief Medical Officer. *Id.* ¶¶ 13, 33, 147, 153. Dr. Ravilla is also married to LlamaLab's Director of Medical Records and Clinical Automation and maintains close personal relationships with other LlamaLab officers. *Id.* ¶¶ 153-156. Mr. Saidon is the Chief Executive Officer of LlamaLab and assisted in onboarding RavillaMed to the Carequality and TEFCA frameworks. *Id.* ¶¶ 13, 35, 144. Dr. Ravilla, Mr. Saidon, and LlamaLab are not Implementers, QHINs, Connections, or Participants on the Carequality or TEFCA frameworks.

The RavillaMed Defendants' scheme amounts to fraud and violates the Health Insurance Portability and Accountability Act ("HIPAA"), California Business and Professions Code § 17200, *et seq.*, and the Computer Fraud and Abuse Act ("CFAA"). *Id.*, Counts I, IV, VII, X. RavillaMed is also in breach of the agreements it entered to participate in the interoperability frameworks—the CC Terms and ToPs. *Id.*, Count IX.

## III.  ARGUMENT

A motion to dismiss tests the legal sufficiency of the claims asserted. Fed. R. Civ. P. 12(b)(6). The Court must accept all factual allegations in the Complaint as true and construe the Complaint in the light most favorable to Plaintiffs. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

### A.    The Dispute Resolution Procedures Are Not A Condition Precedent to Litigation.

The RavillaMed Defendants contend that the dispute resolution procedures are mandatory, thus imposing a condition precedent to filing suit that Plaintiffs did not fulfill. Mot. at 19-22. Not so.

Courts are explicit in their interpretation of conditions precedent—they "will neither infer nor construe a condition precedent 'absen[t] . . . language plainly requiring such construction.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043

4

(9th Cir. 2020) (quoting *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969)). "Conditions precedent must be expressed in plain, clear, and unambiguous language[.]" *Id.* at 1043. The CCA and Common Agreement lack the strict, unequivocal language required to establish a condition precedent, in contrast with the decisions cited by the RavillaMed Defendants. *See* Mot. at 19-20 (collecting cases).[2]

In *Sor Tech., LLC v. MWR Life, LLC*, 2019 WL 4060350 (S.D. Cal. Aug. 28, 2019), the agreement required that "[p]rior to filing a lawsuit, the Parties agree to attempt to resolve the dispute in good faith through mediation[.]" *Id.* at *3. In *Target Corporation v. Wolters Kluwer Health, Inc.*, 2015 WL 12646483 (C.D. Cal. Dec. 16, 2015), the agreement required that "[a] party must follow and participate in the processes outlined in Sections 10.1 and 10.2 above [related to informal negotiations, mediation, and arbitration] before pursuing litigation[.]" *Id.* at *2. In *Tattoo Art, Inc. v. Tat International, LLC*, 711 F. Supp. 2d 645 (E.D. Va. 2010), the agreement stated that "[i]n the event of any dispute arising from this Agreement, the parties agree to submit the dispute to mediation in Virginia Beach, Virginia, prior to filing any action to enforce this Agreement." *Id.* at 649-50. And in *Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, 2013 WL 5962939 (E.D. Va. Nov. 6, 2013), "Article 23 of the contract provide[d] that the parties will abide by a multi-tiered, progressive alternative dispute resolution ('ADR') process before commencing litigation." *Id.* at *1.[3] Each of these agreements demonstrates the type of clear and unequivocal language required to create a condition precedent in this context.

---

[2] The RavillaMed Defendants' citation to *Charles J. Rounds Co. v. Joint Council of Teamsters, No. 42*, 4 Cal. 3d 888 (1971), is inapposite. The RavillaMed Defendants claim this case stands for the proposition that "the failure to complete a contractually required dispute-resolution mechanism bars a plaintiff's claims," Mot. at 19, but instead it stands for the unremarkable proposition that a party faced with a lawsuit filed in contravention of an arbitration agreement has multiple options: submit to the jurisdiction of the court, demur or move for summary judgment, or move to compel arbitration and stay the proceedings. 4 Cal. 3d at 899.

[3] The RavillaMed Defendants' citation to *B & O Manufacturing, Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276 (N.D. Cal. Nov. 1, 2007), and *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, 2019 WL 2569545 (N.D. Cal. June 21, 2019), are likewise unavailing. In *B & O Manufacturing*, plaintiff "d[id] not dispute that the Expense Buying Agreement require[d] mediation as a condition precedent to filing a claim arising under or in connection with the agreement," or that plaintiff "ha[d]

*(Cont'd on next page)*

5

PLAINTIFFS' OPPOSITION TO THE RAVILLAMED
DEFENDANTS' MOTION TO DISMISS

Here, the CCA and Common Agreement encourage—but do ***not*** require—parties to utilize the non-binding dispute resolution process. The Common Agreement provides only that "Signatory agrees to participate in the Dispute Resolution Process with respect to any Dispute." Ex. E § 15.1.  It requires parties—through the use of the term "shall"—to use their "best efforts" to resolve disputes informally, but provides that if informal resolution is not achieved, the parties "***may***"—indicating optionality—"***choose to*** submit the Dispute to the Dispute Resolution Process."  *Id*. (emphasis added).   The CCA is similar: "Applicant shall submit Disputes to the non-binding dispute resolution process established by Carequality."  Ex. A § 20.1.  Yet, like the Common Agreement, the CCA makes clear that while the parties "agree[]" to use their "best efforts" to resolve disputes informally, to the extent those efforts are unsuccessful, further participation in the Dispute Resolution Process is optional, providing that the party "***may choose*** to Submit the Dispute to the Dispute Resolution Process."  *Id.* (emphasis added).

Importantly, both the CCA and Common Agreement make clear that the dispute resolution process does not preclude litigation.  Refusal to participate in the process might be treated as a material breach, permitting Carequality or the RCE to suspend or terminate the agreement, *see* Ex. A § 20.1; Ex. E § 15.1, but the consequence is ***contractual***—potential suspension or termination by signatories—***not a jurisdictional bar*** enforceable by third parties like the RavillaMed Defendants.   This distinction is critical and demonstrates that participation in the dispute resolution process is not a condition precedent to filing suit.

**B.     The Dispute Resolution Does Not Apply Because Plaintiffs Seek Immediate Injunctive Relief.**

As the RavillaMed Defendants recognize, the agreements specify that their dispute resolution procedures do not apply where a party believes that it is facing irreparable harm

---

not yet mediated th[e] dispute."  2007 WL 3232276, at *8.  Similarly, in *Salinas Valley*, the Defendant likewise did not challenge whether the mediation requirement was a condition precedent, and instead only asserted that the provision was inapplicable and the motion raised factual issues.  2019 WL 2569545, at *6.

6

and pursues immediate injunctive relief in a court of competent jurisdiction.  Mot. at 22-26; Ex. A § 20.2.1 ("Applicant may be relieved of its obligation to participate in the Dispute Resolution Process if Applicant (i) believes that another Implementer's or Carequality Connection's act or omission will cause irreparable harm to Applicant or another organization or individual (e.g., Implementer, Carequality Connection, End User or consumer) and (ii) pursues immediate injunctive relief against such Implementer or Carequality Connection in a court of competent jurisdiction"); Ex. B § 9.3 (same in CC Terms); Ex. E § 15.2.1 (similar in Common Agreement).  The Complaint explains Plaintiffs' irreparable harm from the RavillaMed Defendants' theft of patient records.  Compl. ¶¶ 1-5, 11-25, 192-197.  Plaintiffs plainly seek immediate injunctive relief.  *Id.*, Caption, Prayer for Relief.  And Plaintiffs need not seek that relief through a specific procedural vehicle for this Court to award it.  *See*, *e.g.*, *Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*, 2025 WL 2853156, at *1, *7-8 (M.D. Fla. Aug. 21, 2025) (granting summary judgment and entering immediate injunctive relief).  Indeed, this Court has entered that relief against GuardDog.  ECF 79.  Thus, the criteria for Plaintiffs to be "relieved" of any obligation to follow the contractual dispute resolution procedures are satisfied.  *See* Ex. A § 20.2.1; Ex. B § 9.3; Ex. E § 15.2.1.

The RavillaMed Defendants cite cases describing a temporary restraining order and preliminary injunction as forms of immediate injunctive relief.  Mot. at 23-24.  But they identify no authority supporting a conclusion that Plaintiffs ***must*** seek one of those forms of relief to satisfy the agreements' requirement of seeking immediate injunctive relief.  Indeed, the agreements do not on their face require a party to file either a motion for temporary restraining order or for a preliminary injunction.  *See* Ex. A § 20.2.1; Ex. B § 9.3; Ex. E § 15.2.1.  The RavillaMed Defendants should not be permitted to add to or alter the express language of the agreements.  *Jimirro v. Paley Center for Media*, 2025 WL 2994996, at *4 (C.D. Cal. Sept. 17, 2025) ("The Court cannot 'create for Plaintiff a contract which he did not make and cannot insert language which Plaintiff now wishes were there.'" (cleaned up, quoting P*rincipal Mutual Life Ins. Co. v. Vars, Pave, McCord*

7

*& Freedman*, 65 Cal. App. 4th 1469, 1478 (1998)); *Arriagarazo v. BMW of N. Am., LLC*, 64 Cal. App. 5th 742, 748 (2021) ("Courts must refrain from altering or rewriting a contract, and they must not add a term to a contract about which the agreement is silent." (quotation omitted)).

Moreover, none of the cases cited in the RavillaMed Defendants' Motion suggest that a complaint's request for immediate injunctive relief does not satisfy a contractual exception where immediate injunctive relief is sought. In fact, several of the cases they do cite involve vastly different scenarios. *See Kim v. City of Santa Clara*, 448 F. App'x 780, 783 (9th Cir. 2011) (Tashima, J., dissenting) (addressing whether use of deadly force by police was reasonable and discussing the immediacy of the threat posed to the officer); *Moreno v. Quemuel*, 219 Cal. App. 4th 914, 918 (2013) (concerning whether a police officer was in immediate pursuit); *Burch v. California Dep't of Motor Vehicles*, 2017 WL 3537242, at *8 (E.D. Cal. Aug. 17, 2017) (addressing whether adverse retaliatory action occurred immediately after filing complaint).

Because Plaintiffs brought this action seeking immediate injunctive relief to prevent irreparable harm, *see* Compl. ¶¶ 25, 192-197, they are "relieved" of any obligation to employ the dispute resolution procedures provided by the agreements. Ex. A § 20.2.1; Ex. B § 9.3; Ex. E § 15.2.1.

**C.    Even Assuming The Dispute Resolution Process Is A Condition Precedent To Filing Suit, Plaintiffs Are Excused From Compliance Because The Process Is Futile.**

Assuming, *arguendo*, that the dispute resolution process is a condition precedent to filing suit (and it is not), Plaintiffs are excused from the dispute resolution process because the RavillaMed Defendants' conduct demonstrates that it would be futile and Plaintiffs cannot obtain the remedies they seek.

"It is an established rule that administrative remedies need not be exhausted where they are inadequate, inapplicable, or futile." *Vernon Fire Fighters v. City of Vernon*, 107 Cal. App. 3d 802, 826 (1980); *see also Gueyffier v. Ann Summers, Ltd.*, 43 Cal. 4th 1179,

8

1186 (2008) ("California law allows for equitable excusal of contractual conditions causing forfeiture in certain circumstances, including circumstances making performance futile." (citations omitted)); *Jones v. Union Pac. R. Co.*, 968 F.2d 937, 942 (9th Cir. 1992) (failure to exhaust internal union remedies not required when doing so would be a futile effort); *Unnamed Physician v. Bd. of Trs. of Saint Agnes Med. Ctr.*, 93 Cal. App. 4th 607, 620-21 (2001) (declining to dismiss plaintiff's claim under the exhaustion doctrine where administrative remedy was inadequate).

Plaintiffs attempted to engage with RavillaMed and Health Gorilla, as the Implementer for RavillaMed, to informally resolve the issue to no avail. Compl. ¶¶ 158, 166, 187. Instead of taking Plaintiffs' concerns seriously, Health Gorilla—on behalf of RavillaMed—continued the deception and made implausible excuses for and false statements related to the RavillaMed Defendants' conduct, including blaming a computer glitch and sending Epic what purported to be an "executed sworn statement" signed by Dr. Ravilla where he disclaimed a relationship between RavillaMed and LlamaLab. *Id.* This sworn statement was intentionally misleading, if not outright false. *Id.* RavillaMed's inadequate response makes clear that continued use of the dispute resolution procedures would be futile. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (denying motion to dismiss where allegations regarding defendant's inadequate response to claims indicated that complying with informal dispute settlement procedure would be futile).

Additionally, Plaintiffs seek a binding public injunction that the dispute resolution procedures cannot provide. *See* Compl., Prayer for Relief. A public injunction is "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017)). Plaintiffs' requested injunctive relief is primarily for the public benefit because it would put an end to Defendants' fraudulent and unlawful practices that put patient data and privacy at risk and threaten the viability of the nationwide healthcare interoperability frameworks. *See,*

9

*e.g.*, Compl. ¶¶ 25, 193, 217, 260, 286, 318, 327, 330.  Indeed, the injunctive relief Plaintiffs seek with respect to their UCL claims is "by definition . . . primarily 'for the benefit of the general public.'"  *Id.* (quoting *McGill*, 2 Cal. 5th at 961).  Because the agreements' dispute resolution procedures cannot provide binding injunctive relief—let alone, a public injunction—they would be futile and thus Plaintiffs are excused from participating in the process.  *See Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315-16 (2003) (declining to enforce arbitration clause where "the request for injunctive relief is clearly for the benefit of health care consumers and the general public").

**D.  The Non-Signatory Defendants Lack Standing To Enforce The Dispute Resolution Procedures.**

Dr. Ravilla, Mr. Saidon, and LlamaLab are not Implementers, QHINs, Connections, or Participants on the Carequality or TEFCA frameworks.  *See* Compl. ¶¶ 142-158.  As a result, as the RavillaMed Defendants concede, "Dr. Ravilla, Mr. Saidon, and LlamaLab . . . are not signatories to the Carequality and TEFCA operating agreements"—i.e., the CCA, CC Terms, Common Agreement, and ToPs.[4]  Mot. at 26.  Therefore, they cannot enforce the agreements' dispute resolution procedures.

In an attempt to evade this, these non-signatories assert that Plaintiffs are somehow equitably estopped from preventing them from enforcing the dispute resolution procedures against Plaintiffs.  Mot. at 26-30.  This argument fails as Plaintiffs' fraud, aiding and abetting fraud, and UCL claims against Dr. Ravilla, Mr. Saidon, and LlamaLab do not rely upon, and exist independently of, the agreements, as detailed below.  Nor can they avail themselves of any third-party beneficiary arguments, as they failed to raise this in their Motion and regardless do not meet the test to be treated as third-party beneficiaries to the agreements.

---

[4] The only RavillaMed Defendant that is on the Carequality and TEFCA frameworks is RavillaMed itself.  RavillaMed is a Connection on the Carequality framework and a Participant on the TEFCA framework.  Compl. ¶¶ 58, 86, 146.

10

### 1. Equitable Estoppel Does Not Apply.

Equitable estoppel prevents a plaintiff from selectively enforcing portions of a contract against a defendant while simultaneously disavowing the contract's arbitration provision. *See Faucett v. Move, Inc.*, 2024 WL 2106727, at *5 (C.D. Cal. Apr. 22, 2024) ("[A] signatory to an agreement with an arbitration clause cannot . . . on the one hand, seek to hold [a] non-signatory liable pursuant to duties imposed by the agreement . . . [while] on the other hand, deny arbitration's applicability because the defendant is a non-signatory." (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009) (alterations in original)). "[T]he essential concern is whether plaintiffs are trying to enforce contractual terms beneficial to them while avoiding their own contractual agreement to arbitrate." *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1136 (2025).

When asserted by a non-signatory to a contract, equitable estoppel will apply only if the claim against the non-signatory is "'intimately founded in and intertwined with' the underlying [] contract." *Id.* at 1131 (quoting *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1717 (2003)); *see also Faucett*, 2024 WL 2106727, at *4 ("[W]hen a nonsignatory seeks to enforce arbitration through the doctrine of equitable estoppel, the doctrine is narrowly construed." (citing *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)). "[U]nless a party to an arbitration agreement has used the substantive terms of that agreement as the foundation for his claims against a nonsignatory, there is no reason in equity why he should be forced to arbitrate his claims against the nonsignatory." *Ford Motor Warranty Cases*, 17 Cal. 5th at 1137 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 235 (2009)); *Faucett*, 2024 WL 2106727, at *4 (citing *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 264 (11th Cir. 2015) (a party's claims rely on a contract's terms when the party seeks to hold a nonsignatory to those terms)); *Murphy*, 724 F.3d at 1230 ("In California, equitable estoppel is inapplicable where a plaintiff's 'allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [] agreements'") (quoting *Goldman*, 173 Cal. App. 4th at 230).

11

Here, Plaintiffs do not seek to "invoke the duties and obligations" under the agreements, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1134 (9th Cir. 2013), or otherwise attempt "to enforce contractual terms," *Ford Motor Warranty Cases*, 17 Cal. 5th at 1136, as to these non-signatories.  Indeed, Plaintiffs do not use any of the agreements' provisions as a foundation for any of their claims against Dr. Ravilla, Mr. Saidon, or LlamaLab.  *See* Compl. ¶¶ 198-217, 252-260, 279-286.  Instead, the fraudulent activity and statutory violations underpinning each of the claims against them—fraud, aiding and abetting fraud, and violations of the UCL—exist independently of the agreements because they are based on the RavillaMed Defendants' misrepresentations and omissions, theft of patient records, and failure to adhere to statutory requirements, including requirements imposed by HIPAA.  *See id.*

Even so, the RavillaMed Defendants claim that "[i]f a finder of fact determines that contractual interpretation against the RavillaMed Defendants is wrong, Plaintiffs' claims against the Non-Signatory Defendants collapse." Mot. at 28.  The RavillaMed Defendants are incorrect.   Plaintiffs' claims against these non-signatories do not rely on any interpretation of the agreements.  *See* Compl. ¶¶ 203-204, 206-208, 215, 253-258, 282-284; *see McCarthy v. Toyota Motor Corp.*, 2020 WL 6156583, at *4 (C.D. Cal. Oct. 20, 2020) (equitable estoppel was inapplicable where "none of Plaintiffs' claims [] reference or rely on the terms of the agreements" and "[i]nstead, Plaintiffs allege fraudulent, deceptive, and/or misleading conduct"); *Kramer*, 705 F.3d at 1130-31 (claims premised on UCL and common law tort did not intimately rely on existence of contracts, and equitable estoppel did not apply).  Plaintiffs' fraud claim makes only limited reference to the agreements, solely to lend support to Plaintiffs' allegation of justified reliance on RavillaMed's misrepresentations and omissions, but even this allegation is not dependent upon the agreements and Plaintiffs' reasonable reliance exists even without the agreements.  Compl. ¶¶ 205, 208.

Both *Kramer* and *Goldman*—cited by the RavillaMed Defendants (*see* Mot. at 27-29)—illustrate why equitable estoppel does not apply here.  In *Kramer*, the vehicle

12

manufacturer, Toyota, sought to compel arbitration of plaintiffs' breach of warranty claim, relying on an arbitration clause in the purchase agreements between plaintiffs and the dealerships. 705 F.3d at 1124-25. In affirming the district court's denial of the motion, the Ninth Circuit held that Toyota was not a party to the purchase agreements and equitable estoppel did not apply, as plaintiffs' warranty claims arose independently from the purchase agreements. *Id.* at 1128. The court explained that "[i]n order for Toyota's equitable estoppel argument to succeed, Plaintiffs' claims themselves must ***intimately rely*** on the existence of the Purchase Agreements, ***not merely reference them***." *Id.* at 1132 (emphasis added); *see also Hirschhorn v. BMW of North America, LLC*, 2021 WL 602831, at *5 (C.D. Cal. Jan. 14, 2021) (following *Kramer* in rejecting equitable estoppel argument where the plaintiffs' claims did not "rely on" the lease agreement and "ar[o]se independently from" the agreement).

In *Goldman*, the court held that the non-signatories to an agreement could not enforce the agreement's arbitration clause as to Plaintiffs' claims for breach of fiduciary duty, fraud, fraudulent nondisclosure, negligent misrepresentation, negligent nondisclosure, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty—claims akin to those Plaintiffs assert against Dr. Ravilla, LlamaLab, and Mr. Saidon. 173 Cal. App. 4th at 215-16, 229-35. The court explained that "the allegations depend solely on the actions of [the defendants], not on the terms of the operating agreements, for their success." *Id*. at 230.

The reasoning of the courts in *Kramer* and *Goldman* applies equally here. Plaintiffs' claims against Dr. Ravilla, LlamaLab, and Mr. Saidon depend solely on those defendants' actions, not the specific terms of the agreements, for their success. And mere reference to the agreements for purposes of showing justifiable reliance as to Plaintiffs' claims against RavillaMed—not Dr. Ravilla, LlamaLab, and Mr. Saidon—is insufficient to establish that Plaintiffs' claims against Dr. Ravilla, LlamaLab, and Mr. Saidon intimately rely on the agreements. Likewise, that Plaintiffs' claims presume the existence of the agreements and Plaintiffs allege that RavillaMed violated its contractual obligations, as the RavillaMed

13

Defendants emphasize, *see* Mot. at 28, is insufficient. *See Murphy*, 724 F.3d at 1230 ("Even if [the nonsignatory] is correct that Plaintiffs' claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel.").

As a result, the inequities underlying equitable estoppel are not present and the doctrine does not apply. *See Kramer*, 705 F.3d at 1134 ("Plaintiffs do not seek to simultaneously invoke the duties and obligations of Toyota under the Purchase Agreement, as it has none, while seeking to avoid arbitration. Thus, the inequities that the doctrine of equitable estoppel is designed to address are not present."); *Faucett*, 2024 WL 2106727, at *4 ("Faucett does not seek to simultaneously enforce Nations Info's Terms or Consent Form against Move while attempting to avoid the arbitration provision."). Accordingly, Dr. Ravilla, LlamaLab, and Mr. Saidon cannot enforce the agreements' dispute resolution provisions.

2.  <u>Dr. Ravilla, LlamaLab, and Mr. Saidon Are Not Third Party Beneficiaries To The Agreements.</u>

Dr. Ravilla, LlamaLab, and Mr. Saidon do not contend that they are third party beneficiaries of the agreements, and therefore have waived any argument to the contrary. But even if they belatedly raise this argument (which should not be permitted), they are not third party beneficiaries to the agreements.

"The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Singer v. Ett*, 2023 WL 6787442, at *5 (C.D. Cal. Sept. 18, 2023) (Olguin, J.) (citation omitted). This requires three elements: (1) the third party would "in fact benefit" from the contract, (2) one of the "motivating purpose[s]" of the contracting parties was to "provide a benefit to the third party," and (3) allowing them to enforce the contract would be "consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019).

14

Here, the agreements were made for the benefit of the signatories, as well as other parties on the frameworks—i.e., other Implementers, QHINs, Connections, and Participants. *See* Exs. A, B, E. Dr. Ravilla, LlamaLab, and Mr. Saidon thus are not "members of [] class[es] for whose benefit the contract was made." *Singer*, 2023 WL 6787442, at *5 (citation omitted). The agreements do not contain any provisions that directly benefit them. *See* Exs. A, B, E. Nor is there any language in the agreements evidencing that a motivating purpose of the signatories to the contracts was to benefit them. *See id.* Indeed, the agreements make no mention of Dr. Ravilla, LlamaLab, and Mr. Saidon at all. *Id.* And any incidental benefit that may flow to them from the agreements is insufficient to establish third-party beneficiary status. *See Beeks v. ALS Lien Servs.*, 2014 WL 7785745, at *13 (C.D. Cal. Feb. 18, 2014) (Olguin, J.) ("[A] third party cannot sue on a contract to which he or she is merely an incidental beneficiary." (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1553 (2007))). Further, allowing Dr. Ravilla, LlamaLab, and Mr. Saidon to enforce the agreements is entirely inconsistent with the objectives of the agreements and the reasonable expectations of the signatories.

Because Dr. Ravilla, LlamaLab, and Mr. Saidon are not third-party beneficiaries to the agreements, they cannot enforce the agreements' dispute resolution procedures. *See, e.g., Faucett*, 2024 WL 2106727, at *4 (declining to allow non-signatory to enforce arbitration clause where contract made no mention of the non-signatory and gave no indication of a motivating purpose of benefiting the non-signatory).

## IV.    IF THE COURT GRANTS THE MOTION, A STAY RATHER THAN DISMISSAL IS APPROPRIATE

The RavillaMed Defendants argue that "[c]hoosing to grant dismissal without prejudice – as opposed to a stay of litigation – is the appropriate remedy in cases like this." Mot. at 20. But a stay—not dismissal—is appropriate. This is particularly true where, as here, claims will continue against those Defendants who are neither signatories nor third-party beneficiaries to the agreements, including Defendants Baker, Toovey, Saidon,

15

LlamaLab, Mammoth Rx, and Hoppr, and against Defendants who did not invoke (or properly invoke) the dispute resolution procedures, including GuardDog, Mammoth Dx, and Mammoth Path Solution.[5] *Connell v. ByteDance, Inc.*, 2025 WL 1828472, at \*28 (N.D. Cal. July 1, 2025) (compelling arbitration as to certain parties and staying matter as to party not subject to arbitration); *Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599, at \*7 (N.D. Cal. Apr. 10, 2020) (same).

## V.   CONCLUSION

For these reasons, the Court should deny the RavillaMed Defendants' motion to dismiss.

Dated:  March 26, 2026       By:   */s/ Marshall L. Baker*
Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

---

[5] As detailed above, the RavillaMed Defendants' citations to *Dominion Transmission* and *Tattoo Art* (*see* Mot. at 20) are inapposite. *See* Section III.A, *supra*. The agreements in both cases involved unambiguous language requiring mediation prior to commencing litigation. *Id.* No similar language is found in the CCA or Common Agreement that would require dismissal for failure to satisfy a condition precedent. *Id.*

16

## <u>L.R. 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs Epic System Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc., certifies that this brief contains 5,347 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 26, 2026   By:   */s/ Marshall L. Baker*
Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

17