Peter Bronstein (CA Bar No 153611)
Law Office of Peter Bronstein
2121 Avenue of the Stars 8th Floor
Los Angeles, California 90067
Telephone: (310) 203-2249
Email Peterbronz@gmail.com

Attorney for Defendant Daniel Baker

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100,<br><br>Defendants. | CASE NO. 2:26-cv-00321-FMO<br>Assigned to Hon. Fernando M. Olguin<br>Courtroom: 6D<br><br>**DEFENDANT DANIEL BAKER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FRCP 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed Concurrently with Declaration of _____<br><br>Date: May 21, 2026<br>Time 10:00am<br>Courtroom 6D<br><br>Action Filed: January 13, 2026 |

4119552.8

MAMMOTH DEFENDANTS' MOTION TO DISMISS COMPLAINT UNDER FRCP 12(B)(6)

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 21, 2026, at 10:00 a.m. in Courtroom 6D of the above-entitled Court, located at 350 W 1st Street, Los Angeles, CA 90012-4565, Defendant Daniel Baker by and through his attorneys of record herein, will and hereby do move this court to dismiss the Fifth and Seventh Causes of action asserted against Defendant Daniel Baker, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

As a matter of law, Plaintiffs' Complaint fails to state a claim upon which relief may be granted as to Defendant Daniel Baker for several key reasons: First, Plaintiffs' generalized grievances fail to establish Article III standing for the requested relief.  Second, Plaintiffs' fraud and aiding and abetting allegations fail to state a claim and fail to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). Third, Plaintiffs in paragraph 43 of the Complaint lump Defendants alleged acts and omissions together preventing individual defendants from understanding the allegations against them with any specificity.

Defendant Daniel Baker also joins in the arguments made in the motions to dismiss of Defendant Health Gorilla, Inc. (ECF No. 56 (Argument, Section I)), and of Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon and LlamaLab, Inc. (ECF No. 51 (Argument, Section I)) that Plaintiffs failed to exhaust the mandatory contractually-obligated dispute resolution process and the Motion to Dismiss filed by Defendants Unique Medi Tech LLC, d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc. and Ryan Hilton (ECF No. __ )

 This motion will be based on this Notice, the Memorandum of Points and Authorities herein, the Declaration of attorney Peter Bronstein, the facts subject to judicial notice, the Court's file for the above-referenced action, and any other matters properly before the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 26, 2026.  (Declaration of Peter Bronstein, ¶ __.)

BY *Peter Bronstein*  March 30, 2025

[

4119552.8

MAMMOTH DEFENDANTS' MOTION TO DISMISS COMPLAINT UNDER FRCP 12(B)(6)

**Table of Contents**

Memorandum of Points and Authorities……………………………………1

Introduction……………………………………………………………………1

Summary Allegations……………………………………………………….2

Legal Standard………………………………………………………………3

Argument……………………………………………………………………3

Plaintiff states that Daniel Baker is a Founder CTO makes him liable………… 3

Integritort LLC is not a named Defendant and any connection to Defendant Daniel Baker is meaningless since Integritort is not a named Defendant………………………………3

Plaintiffs reference to Mamouth Defendants in Paragraph 43 of the complaint establishes that plaintiff does not know with specificity what alleged acts or omissions were committed and fail to put Defendant Baker on Notice for any acts or omissions……………………………4

Officers are not generally liable for acts or omissions in their capacity something more is necessary and must be alleged Plaintiff has not laid out specific acts making any officer personally liable for any acts or omissions……………………………………………5

Plaintiffs have failed to establish Article III standing…………………………..5

Plaintiffs' alleged Expenditures were voluntary and not outside of their normal business operations……………………………………………………………7

Plaintiffs Cannot allege they have suffered injury absent the diversion of resources..8

Plaintiffs fail to allege their fraud claims with Particularity………………………9

Plaintiffs fail to allege the Who, What, When, Where and How…………………10

Plaintiffs fail to allege Justifiable Reliance……………………………………13

Plaintiffs fail to allege Aiding and Abetting fraud against Defendant Daniel Baker….13

Conclusion…………………………………………………………………14

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

## TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*")……………………………………………..3

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)…………………………...3

Thomsen v. Culver City Motor Co., 4 Cal App. 2d 639, 41 P. 2d 597 (Ed District 1935)……5

Bonfigli v. Strachan, 192 Cal. App. 4th 1302, 122 Cal. Rptr. 3d 447 (1st Dist. 2011)………..5

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)………………………………………5

*Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015)…………………………………6

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)………………………………………………………………………………………6

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)…………………………………..6

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015………………………6

*ATLF v. Lake Forest*, No. SA CV 07-250, 2008 WL 11411732, at *6 (C.D. Cal. Aug. 18, 2008) ("*ATLF I*"), aff'd, 624 F.3d 1083 (9th Cir. 2010)……………………………………………7

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019)…………..7

." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013)…………………………8

*Fair Hous. Of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)……………………………8

*United Poultry Concerns v. Chabad of Irvine*, 743 F. App'x 130, 131 (9th Cir. 2018)…………8

, *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216 1219 (9th Cir. 2012………………………………………………………………………………………8

*Fair Housing Council of Or. v. Travelers Home and Marine Ins. Co.*, No. 3:15-cv-00925, 2016 WL 7423414……………………………………………………………………………………9

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997)……………………..9

*Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)……………………………..10

*Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)…………………………10

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010

*Davidson v. Sprout Foods, Inc.*, 106 F. 4th 842, 854 (9th Cir. 2024), *cert. denied*, 145 S. Ct 1922 (2025)……………………………………………………………………………………..11

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001…………………………11

*See Redlands Country Club Inc. v. Cont'l Cas. Co.*, No. CV101905GAFDTBX, 2011 WL 13224843, at *3 (C.D. Cal. Jan. 28, 2011……………………………………………………11

*Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007)………………………………………………11

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)…………………………………..12

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 407 F. Supp. 3d 1016, 1035 (D. Haw. 2019)……………………………………………………………………………………12

*Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010……………………………………………………………………………12

*Bly-Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001)………………………………12

*Semegen v. Weidner*, 780 F.2d 727, 730 (9th Cir. 1985) ……………………………………..13

*Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078 (N.D. Cal. 2012…………………………..13

*Gutierrez v. Johnson & Johnson Consumer Inc.*, No. 19-CV-1345 TWR (AGS), 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021)…………………………………………………………………13

*Scheibe v. Esupplements, LLC.*, 681 F. Supp. 3d 1101, 1116 (S.D. Cal. 2023)……..…………13

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016)…………………………14

*Shepardson v. U.S. Bank Tr. Nat'l Ass'n as Tr. for Bungalow Series IV Tr.*, No. 23-CV-05497-NC, 2024 WL 3304800……………………………………………………………………………14

*Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011)……14

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

I.      INTRODUCTION[1]

This case is part of Plaintiff Epic Systems Corporation's ("Epic") well-documented public and legal campaign to maintain its dominance over the electronic health records ("EHR") ecosystem by labeling legitimate, authorized EHR access by independent healthcare providers as misconduct. Epic, together with several hospital systems it serves (collectively, "Plaintiffs") cloak their Complaint in the rhetoric of protecting patient privacy and interoperability networks, but in reality, this lawsuit seeks to *undermine* nationwide healthcare interoperability and ensure Epic's continued revenue stream.

Defendant Daniel Baker is not associated with any party despite rhetoric in the Complaint. As Health Gorilla confirmed at the conclusion of its extended investigation of Epic's accusations against the Mammoth Defendants in December 2025, the Mammoth Defendants never accessed patient records unlawfully or without proper authorization and never misused patient information. Thus, allegations against Daniel Baker must fail.

In their Complaint, Plaintiffs rely on rank speculation, generalized allegations and rhetorical appeals to "data integrity and privacy issues," rather than on well-pleaded facts showing any unlawful access or misuse of patient information by the other Defendants. Plaintiffs' baseless accusations are untethered by the governing legal standards and are unsupported by the allegations.

*First*, Plaintiffs lack Article III standing to assert their claims because their injury allegations consist of generalized grievances and voluntary expenses, rather than the particularized

---

[1]   Defendant Daniel Baker hereby joins in the argument that Plaintiffs have failed to exhaust the mandatory contractually-obligated dispute resolution process as required by the Carequality and TEFCA network agreements, more fully discussed in the motions to dismiss of Defendant Health Gorilla, Inc., (ECF No. 56 (Argument, Section I)), and Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon and LlamaLab, Inc. (ECF No. 51 (Argument, Section I)). Defendant Daniel Baker do not waive any defenses, objections, or arguments, including those raised herein.

1

MAMMOTH DEFENDANTS' MOTION TO DISMISS COMPLAINT UNDER FRCP 12(B)(6)

injury-in-fact required to confer standing.

*Second*, the fraud allegations rely entirely on speculation, wild inferences and conclusory allegations that fall far short of the heightened pleading standard applicable to fraud claims. Plaintiffs also fail to plead that they relied to their detriment on any alleged misrepresentations by Defendant Daniel Baker.

*Third,* Plaintiffs refer to "Mamouth Defendants" in paragraph 43 when they are represented by separate counsel, make the Complaint uncertain and lacking specificity for the alleged acts and omissions.

The claims against Defendant Daniel Baker  fail as a matter of law and must be dismissed with prejudice.

## II.    SUMMARY OF ALLEGATIONS

Carequality and the Trusted Exchange Framework and Common Agreement ("TEFCA") are national interoperability frameworks designed to enable the electronic exchange of healthcare information.  (Complaint ¶¶ 53, 81.)  Epic is an electronic health record software developer.  (*Id.* ¶ 6.)  OCHIN, Inc. ("OCHIN") is a corporation that connects healthcare providers to the interoperability frameworks.  (*Id.* ¶ 7.)  Plaintiffs Reid Hospital & Health Care Services, Inc. d/b/a Reid Health ("Reid"), Trinity Health Corporation ("Trinity"), and UMass Memorial Health Care, Inc. ("UMass Memorial Health") (collectively, the "Hospital Plaintiffs") are various nonprofit healthcare providers and systems.  (*Id.* ¶¶ 8-10.)

As an "Implementer," Epic facilitates access to the Carequality interoperability framework for the Hospital Plaintiffs and other "Connections."   It similarly facilitates access to the TEFCA frameworks as a Qualified Health Information Network ("QHIN"), where the Hospital Plaintiffs and other providers accessing the network are referred to as "Participants."  (*Id.* ¶¶ 6-10.)

Like Epic, Defendant Health Gorilla is a Carequality Implementer and a TEFCA QHIN. Plaintiffs allege that Health Gorilla wrongfully provided access to the Mammoth Defendants and others, who supposedly have monetized patient records without the patients' knowledge or consent in violation of various Carequality and TEFCA requirements and agreements.  (*Id.* ¶¶ 11-15.)  According to Plaintiffs, Defendants have used "sophisticated camouflaging techniques" to

"obtain access to sensitive patient records under the false pretense of 'treatment,'" but took patient records for other purposes, including to market them to lawyers searching for potential claimants in mass tort class action lawsuits.  (*Id.* ¶¶ 11, 141, 161.)

Plaintiffs  allege that Defendant Daniel Baker's securities conviction in an entirely unrelated case involving a completely different subject matter somehow implicates the Mammoth Defendants.  Plaintiffs assert, without any support, that Baker is the founder and Chief Technology Officer of Mammoth Rx of Mammoth, but acknowledge that Defendant Ryan Hilton denied it in a sworn affidavit.  (*Id.* ¶¶ 41, 165-166.)

Plaintiffs do not allege any concrete injury from the Mammoth Defendants' purported misconduct.  Without Mammoth defendants being liable there can be no basis for liability to Daniel Baker as all the allegations flow from alleged bad acts of Mammoth.  Notably absent is any specific allegation that any healthcare provider customer has actually left the interoperability frameworks.

## III.   LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*").  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must separate conclusory assertions from specific factual allegations and disregard the former.  *Id.* at 678-79.  Courts do not credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  The remaining factual allegations must state a plausible claim—i.e., contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678-79.  Facts "merely consistent" with liability but also consistent with nonliability fall short of "plausibility."  *Id.*

## IV.   ARGUMENT

### A.   **Plaintiff states that Daniel Baker is a Founder CTO makes him liable.**

Whether Daniel Baker was the Founder or CTO does not establish that Daniel Baker acted or omitted to act in any manner. There is no connection between owning a company and being

liable for actions of the company unless you pierce the corporate veil or commit an intentional act which isn't alleged. As to the alleged fraud claim Plaintiff is required to plead with specificity. Nothing in the lawsuit alleges piercing the corporate veil or any act committed by Daniel Baker. Being listed on the Secretary of State website as a CTO does in 2018 not mean you are the founder or owner. Even if Daniel Baker was the CTO that does not establish the CTO performed any acts or omitted any acts. 2018 is eight years ago and establishes nothing. Even so the statute of limitations or laches would apply to an alleged act eight years ago. Nor does a CTO, if Daniel Baker was the CTO and he was not, mean Daniel Baker would be liable for any acts or omissions. Plaintiff has failed to connect Daniel Baker to any responsibility, liability or any act or omission.

**B.** **INTEGRITORT LLC IS NOT A  NAMED DEFENDANT AND ANY CONNECTION TO DANIEL BAKER IS MEANINGLESS SINCE INTEGRITORT IS NOT NAMED**

Plaintiff attempts to connect Integrito and they aren't even a named defendant! Whether Defendant Daniel Baker was an officer or owner of an unnamed defendant serves no purpose even when taken in light most favorable to Plaintiff.

**C.** **PLAINTIFFS REFERENCE TO MAMOUTH DEFENDANTS IN PARAGRAPGH 43 OF THE COMPLAINT ESTABLISH THATPLAINTIFF DOES NOT KNOW WITH SPECIFICITY WHAT ALLEGED ACTS OR OMMISSIONS WERE COMMITTED AND FAIL TO PUT DEFENDANT BAKER ON NOTICE FOR ANY ACTS OR OMMISSIONS**

Defendant Daniel Baker has separate legal counsel as stated in the record and Declaration of attorney Peter Bronstein, attached hereto and hereby incorporated by reference as Exhibit 1. By lumping Defendant Daniel Baker as "Mamouth Defendants" in paragraph 43, it's impossible for Defendant Daniel Baker to have due process to determine what specific acts or omissions were allegedly committed by Defendant Daniel Baker. Whenever Plaintiff uses "Mamouth Defendants", Defendants including but not limited to Defendant Daniel Baker cannot determine what act or omission was committed. This makes the complaint uncertain, lacking specificity to answer and respond to the allegations. Further by stating "are at times referred to as Mamouth Defendants,

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

how is Defendant Daniel Baker to know if such verbiage applies or any other of the Mamouth Defendants to know if the alleged act or omission is attributable to a specific defendant?

Plaintiffs refer to "Mamouth Defendants" in paragraph 43 when they are represented by separate counsel, make the Complaint uncertain and lacking specificity for the alleged acts and omissions.

### D. OFFICERS ARE NOT GENERALLY LIABLE FOR ACTS OR OMISSIONS IN THEIR CAPACITY, SOMETHING MORE IS NECESSARY AND MUST BE ALLEGED. PLAINTIFF HAS NOT LAID OUT SPECIFIC ACTS MAKING ANY OFFICER PERSONALLY LIABLE FOR ANY ACTS OR OMISSIONS

Plaintiff alleges that Defendant Daniel Baker was a co-founder and CTO of Integrito LLC, a non-defendant and not a party to this lawsuit. Further Plaintiff alleges that Defendantd Daniel Baker is a co-founder and CTO of Mamouth despite a Declaration from Mr. Hilton, a co-founder of Mamoth. An officer who does not participate in the wrongful act and is guilty of no culpable negligence in permitting it may not be held liable for a corporate tort. Thomsen v. Culver City Motor Co., 4 Cal App. 2d 639, 41 P. 2d 597 (Ed District 1935). Thus, an officer or director will not be liable for torts in which he or she does not personally participate, of which he or she has no knowledge, or to which he or she has not consented. <u>Bonfigli v. Strachan, 192 Cal. App. 4th 1302, 122 Cal. Rptr. 3d 447 (1st Dist. 2011)</u>. Mere title of CTO is insufficient to make a party such as Defendant Daniel Baker liable. Plaintiffs' failure to state facts sufficient for a cause of action require this Court to dismiss.

### E. Plaintiffs Have Failed to Establish Article III Standing

Plaintiffs' generalized grievances fail to establish Article III standing for the requested relief. Article III standing requires that a plaintiff demonstrate (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations omitted). "An injury in fact is an invasion of a legally protected interest that is

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

concrete and particularized and actual or imminent, not conjectural or hypothetical." *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015) (quotation marks and alteration omitted) (citing *Lujan*, 504 U.S. at 560). "Because a generalized grievance is not a particularized injury, a suit alleging only generalized grievances fails for lack of standing." *Id.*

In their Complaint, Plaintiffs rely primarily on their purported "expenditure of resources" and diversion of employee time to investigate Defendants' alleged misconduct. Specifically, the Hospital Plaintiffs assert that they have "incurred operational expenses and have been forced to expend resources in the form of funds and employee time to investigate the breadth of the harm and to address data integrity and privacy issues and have expended resources monitoring and attempting to mitigate the harm." (Complaint ¶ 233.) Similarly, Plaintiffs Epic and OCHIN allege that they have been "harmed in the same way" and they have "incurred costs in connection with responding to fraudulent requests for records, suffered losses in employee time and diversion of resources to investigate and address this fraud and the complaints." (*Id.*) These alleged harms are nothing more than generalized grievances that fail to confer Article III standing.

To "establish an injury," "[a]n organization suing on its own behalf" must show it has "suffered both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) ("*ATLF II*") (citation omitted). In addition, the organization "must . . . show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.* The alleged injury it seeks to counteract must be "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). This means that organizations like Plaintiffs must show that Defendants' actions "perceptibly impaired the organization's ability to provide services," not just that its "mission has been compromised" in the abstract. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted). The organization "cannot manufacture the injury by . . . simply choosing to spend money." *ATLF II*, 624 F.3d at 1088. Plaintiffs' allegations do not meet either part of this standard.

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

**1.    Plaintiffs' Alleged Expenditures Were Voluntary And Not Outside of Their Normal Business Operations.**

A "diversion of resources" exists only when it is "a necessity" for the organization to spend resources on "activities outside of its normal realm," *i.e.*, those not "in line with the organization['s] missions." *ATLF v. Lake Forest*, No. SA CV 07-250, 2008 WL 11411732, at *6 (C.D. Cal. Aug. 18, 2008) ("*ATLF I*"), *aff'd*, 624 F.3d 1083 (9th Cir. 2010).  An organization cannot establish standing based on a diversion of resources theory when it is "merely going about its business as usual." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019).

The Hospital Plaintiffs are in the business of providing health services which necessarily require access to and storage of patient records.  (*See* Complaint ¶¶ 28-30.)  Thus, for the Hospital Plaintiffs, providing and storing patient records accessed through the Carequality and TEFCA networks is "business as usual."

Similarly, Plaintiffs' alleged expenditure of resources to "monitor CCs and Implementers" or develop monitoring tools to prevent improper disclosures of patient records" (*id.* ¶¶ 193, 196, 233) is "business as usual" for Implementers, QHINs and healthcare providers who are required to maintain certain practices and measures to protect patient privacy and safeguard patient information while providing and storing patient records.  At best, those expenditures reflect voluntary, self-directed operational responses to perceived risks within the broader interoperability ecosystem.

Nor can Plaintiffs' allegations that they expended resources to investigate the alleged harm satisfy the standing requirements.  Courts in the Ninth Circuit have consistently held that voluntary expenditure of resources on investigation or litigation costs cannot manufacture standing, and that abstract allegations of harm to system integrity constitute impermissible generalized grievances.  "An organization cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006,

1018 (9th Cir. 2013) (quoting *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (internal quotation marks omitted).

Organizational standing requirement was satisfied, for example, when an organization designed and disseminated literature to redress the effects of the challenged discrimination, *Fair Hous. Of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002), or when an organization started new campaigns targeting discriminatory roommate preference practices, *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216 1219 (9th Cir. 2012). Both of these activities constituted a concrete and particularized diversion of resources from the organization's normal activities.

Here, in contrast, Plaintiffs' allegations about investigating "the breadth of the harm" and responding to complaints are properly characterized as pre-litigation investigation costs. Similarly, "losses in employee time and diversion of resources to investigate and address" the alleged fraud" and "its effects on data integrity, privacy, and the interoperability frameworks as a whole" are insufficient. (Complaint ¶¶ 215, 233, 239, 258, 267, 276, 284, 299, 316, 328.) Simply put, these "harms" are voluntary investigations conducted in anticipation of unspecified future harm rather than forced resource diversions to counteract concrete injuries.

### 2. Plaintiffs Cannot Allege They Would Have Suffered Injury Absent the Diversion of Resources.

The second prong requires plausible allegations that the alleged conduct impaired plaintiff's ability to provide services and thus absent the diversion of resources its mission would have been harmed. *United Poultry Concerns v. Chabad of Irvine*, 743 F. App'x 130, 131 (9th Cir. 2018) (holding no standing after reasoning that had plaintiff not chosen to divert time to investigate the defendant, its mission "would have been totally unaffected" by defendant's actions).

Plaintiffs' allegations fall short on this prong too. Plaintiffs identify only their "data integrity and privacy issues," which allegedly were harmed by Defendants' conduct. (Complaint ¶¶ 215, 233.) Viewed favorably, this purported injury at best might qualify as a "setback to the organization's abstract social interests" that the Supreme Court in *Havens* characterized as

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

insufficient for organizational standing. 455 U.S. 379; *see also Fair Housing Council of Or. v. Travelers Home and Marine Ins. Co.*, No. 3:15-cv-00925, 2016 WL 7423414, at \*7 (D. Or. Dec. 2, 2015) (allegations that companies engaged in housing discrimination described only "abstract social interests" of fair housing organization insufficient for standing).

In short, Plaintiffs cannot manufacture an Article III injury by "choosing to spend money" on efforts to investigate vague and abstract concerns for patient privacy when the alleged conduct did not impair their ability to provide services. *ATLF II*, 624 F.3d at 1088. Epic's and OCHIN's mission to provide electronic health record software to healthcare providers, and the Hospital Plaintiff's mission to provide healthcare services to patients "would have been totally unaffected" but for Plaintiffs' voluntary investigations into Defendants' purported wrongdoing. Accordingly, despite Plaintiffs' exaggerated characterization, the alleged "direct costs" associated with responding to purportedly fraudulent requests for records do not reflect any specific, non-speculative harm sufficient for Article III standing, and as such, each of Plaintiffs' causes of action against the Mammoth Defendants should be dismissed.[2]

### F.    Plaintiffs Fail to Allege Their Fraud Claims with Particularity

Under California law, the tort of deceit or fraud requires "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard, expressly requiring that a party alleging fraud "state with particularity the circumstances constituting fraud," while permitting malice, intent, and knowledge to be alleged generally. Fed. R. Civ. P. 9(b). To

---

[2]    Plaintiffs Epic and OCHIN also allege that "some of Epic and OCHIN's healthcare provider customers have voiced that, because of the abuses, they have contemplated limiting their participation in the Carequality and TEFCA frameworks or withdrawing from them entirely." (Complaint ¶ 193.) Notably absent is any specific allegation that any healthcare provider customer has actually left the interoperability frameworks.

9

meet this standard, Plaintiffs' complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  Plaintiffs' fraud allegations fall well short of Rule 9(b)'s heightened pleading standard.

### 1.     Plaintiffs Fail to Allege the Who, What, When, Where and How

Plaintiffs' allegations consist of broad, conclusory assertions that Mammoth made unspecified false "assertions" about its treatment purposes in obtaining patient records. (Complaint ¶¶ 219-220.)  Plaintiffs purport to limit any allegations of fraud against Mammoth to their alleged misrepresentations "for all patient records relating to persons who were not under Mammoth's medical care" (*id.* ¶¶ 221, 223), but that allegation does not provide any more specificity.  Plaintiffs' claims are deficient because they fail to identify any specific statements or factual basis underlying the allegation that Mammoth or Daniel Baker *ever* retrieved data for patients *not* under their medical care, let alone that any of the treatment descriptions were false. *See Davidson v. Sprout Foods, Inc.*, 106 F. 4th 842, 854 (9th Cir. 2024), *cert. denied*, 145 S. Ct 1922 (2025) (holding that plaintiffs' harm allegations were insufficient under Rule 9(b) where their only product-specific sugar content allegations lacked contextual explanations as to why those specific sugar levels were harmful, and the remaining allegations were speculative, hypothetical, and failed to allege that defendant's products actually caused any harm).  Plaintiffs' allegations patently fail to identify the "who, what, when, where, and how" required to plead fraud.  *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (dismissing claims as fatally deficient under Rule 9(b) where the complaint failed to allege with particularity when during a decade-long period the plaintiff encountered the alleged misrepresentations, where she purchased the product, or which version of the packaging or statements she relied upon).

Furthermore, Plaintiffs' allegations are premised on pure speculations and wild inferences. As one example, Plaintiffs allege that an increase in patient-record requests in September 2025 by Mammoth is "a clear red flag that the patient records were accessed for nontreatment purposes."

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

(Complaint ¶ 162.)  That conclusory assertion does not plausibly support an inference of unlawful conduct.  Courts are not required to accept as true speculative and conclusory allegations like this.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").  Variations in patient query volume are commonplace and entirely lawful, and Plaintiffs plead no facts showing that an increase in queries reflects improper access rather than routine operational activity.  Where, as here, lawful explanations are at least as plausible as the misconduct Plaintiffs hypothesize, the Complaint fails to state a claim under Rule 12(b)(6).  *See Redlands Country Club Inc. v. Cont'l Cas. Co.*, No. CV101905GAFDTBX, 2011 WL 13224843, at *3 (C.D. Cal. Jan. 28, 2011) (explaining that, under *Twombly*, "[a]llegations that are equally consistent with lawful and unlawful conduct are insufficient" to state a claim).  At a minimum, the speculative assertions that predominate Plaintiffs' Complaint fail to meet the heightened pleading standard for fraud.[3]

Aside from their speculative conclusions based on supposed "red flags," Plaintiffs include no factual assertions or details supporting the conclusion that the Mammoth Defendants or Daniel Baker obtained patient records for non-treatment purposes—rather than for legitimate clinical or laboratory services.  Although they purport that "Mammoth has disclosed the patient records to NHPC and/or other entities for sale for profit" (Complaint ¶ 170), that allegation does not negate the lawful retrieval of patient records for treatment purposes; nor does it suggest that treatment was not provided to patients.  The Complaint therefore asks the Court to infer wrongdoing from lawful conduct alone --  precisely the type of speculative leap that *Twombly* and *Iqbal* foreclose.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007); *Iqbal*, 556 U.S. at 678.

---

[3]    Plaintiffs other "red flag" allegations are similarly conclusory and impermissibly speculative.  For example, they allege that Mammoth's share-back information constitutes "junk data" because the records purportedly contain "vague clinical notes" lacking "basic information such as a date, a clinical assessment, a plan, or clinical recommendations." (Complaint ¶ 163.)  Again, Plaintiffs ask the Court to infer wrongdoing from their characterization of the records as "junk data," without plausible factual allegations supporting the alleged wrongful conduct.

11

Plaintiffs also improperly lump together multiple defendants without alleging specific facts showing that each Defendant personally participated in the challenged conduct. For example, Plaintiffs allege that "Mammoth" has "taken over 140,000 patient records through Carequality and TEFCA" and "falsely assert[ed]" these requests were for treatment purposes. (Complaint ¶¶ 161, 170.) Plaintiffs also allege that the "Mammoth Defendants" (defined to include all Mammoth entities, Defendant Hilton, Defendant Daniel Baker, and Defendant Max Toovey) used "sophisticated camouflaging techniques to cloak their wrongdoing" by "building complex interconnected webs of companies" to "obtain access to sensitive patient records under the false pretense of 'treatment.'" (*Id.* ¶ 141.) But Plaintiffs do not allege which Mammoth entity accessed the interoperability system, which entity made the alleged false misstatements, or which entities used "camouflaging techniques." This is not an oversight; Plaintiffs intentionally lump together the Mammoth Defendants that their complaint inlcused Daniel Baker(and others) to obscure the absence of specific factual allegations as to each of them.

Plaintiffs' undifferentiated "group pleadings" are patently insufficient to survive a motion to dismiss. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (explaining that "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme" (quotations omitted)); *see, e.g.*, *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 407 F. Supp. 3d 1016, 1035 (D. Haw. 2019) (dismissing fraud claims for impermissible group pleading under Rule 9(b)); *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010) (dismissing impermissible "shotgun pleading" that lumped defendants and obscured alleged misconduct, thus depriving defendants of fair notice).

In sum, Plaintiffs fail to provide allegations "specific enough" to give each defendant "notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge and not just deny that they have done anything wrong." *See Bly-Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001). By failing to provide Defendant Daniel Baker with the specific circumstances upon in which Plaintiffs based their claims of fraud, Plaintiffs run afoul of the underlying purpose of Rule 9(b)'s particularity requirement. *See id.*; *see also*

12

*Semegen v. Weidner*, 780 F.2d 727, 730 (9th Cir. 1985) (identifying notice to defendants sufficient to respond beyond general denials as the underlying purpose of Rule 9(b)).

### 2.    Plaintiffs Fail to Allege Justifiable Reliance

Plaintiffs also fail to demonstrate justifiable reliance because they fail to allege "when, where, or how [they were] exposed to or accessed" the alleged misrepresentation. *See Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078 (N.D. Cal. 2012) (dismissing plaintiff's fraud claims for failure to sufficiently plead reliance). Plaintiffs neither specify that they were the recipients of any alleged misrepresentation, nor that they relied on any alleged misrepresentations to their detriment. Beyond a conclusory statement saying they were "reasonably justified in relying on . . . false statements and omissions," Plaintiffs fail to actually allege *when* and *how* they relied on any false statements to their detriment. (Complaint ¶ 232.)

For example, Plaintiffs allege they suffered damages "in the form of funds and employee time to investigate the breadth of harm" (Complaint ¶ 233), yet such damages cannot possibly be the result of their reliance on any alleged misrepresentation. They cannot point to a single instance of a specific misrepresentation relied on by any individual Plaintiff that resulted in injury to that Plaintiff. *See, e.g.*, *Gutierrez v. Johnson & Johnson Consumer Inc.*, No. 19-CV-1345 TWR (AGS), 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021), *aff'd sub nom. Gutierrez v. Bausch Health US, LLC*, No. 21-55141, 2024 WL 1854288 (9th Cir. Apr. 29, 2024) (dismissing Plaintiffs' claims of misrepresentation under Rule 9(b) because they failed to identify which specific advertisement they relied on).

Because Plaintiffs have failed to properly plead the elements of fraud, much less to meet the requisite specificity, their claims must be dismissed. *See Scheibe v. Esupplements, LLC.*, 681 F. Supp. 3d 1101, 1116 (S.D. Cal. 2023) (dismissing plaintiff's CLRA, FAL, UCL, and unjust enrichment claims for failure to plead reliance with the specificity required by Rule (b)).

### G.    Plaintiffs Fail to Allege Aiding and Abetting Fraud Against Defendant Daniel Baker

Plaintiffs also fail to allege that Defendant Daniel Baker aided and abetted in any purported fraud. To allege aiding and abetting of fraud, a plaintiff must show that the defendant knowingly

13

"(1) substantially assisted or encouraged another to breach a duty," or (2) substantially assisted another's tort through an independently tortious act." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016) (internal citations and quotations omitted).

Plaintiffs therefore are required to plead that Defendant Daniel Baker "had actual knowledge of the fraud and substantially participated in it." *See id.* Further, when "a claim alleges the aiding and abetting of a fraud, substantial assistance must be pled in accordance with Rule 9(b)'s heightened specificity requirements." *Shepardson v. U.S. Bank Tr. Nat'l Ass'n as Tr. for Bungalow Series IV Tr.*, No. 23-CV-05497-NC, 2024 WL 3304800, at *8 (N.D. Cal. July 3, 2024). Although actual knowledge may be averred generally, plaintiffs must nonetheless state "factual knowledge that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allstate Ins. Co. v. Countrywide Fin. Corp.,* 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011).

Here, Plaintiffs fail to adequately plead the existence of a fraudulent scheme, let alone that Defendant Daniel Baker had knowledge of it and substantially assisted it. Plaintiffs rely on bare, formulaic assertions to plead Daniel Baker's knowledge and participation, unsupported by requisite facts allowing the court to draw a "reasonable inference" of Daniel Baker's liability. *See id.* For example, Plaintiffs appear to erroneously assert that because Defendant Daniel Baker was at some time listed as a CTO and alleged founder which "markets patient records to attorneys," this is sufficient to allege that Defendant Daniel Baker participated in the fraudulent scheme. (*See* Complaint ¶¶ 165, 167.) This guilt-by-association is precisely the type of speculative and inferential leap that *Twombly* and *Iqbal* foreclose.

To the extent Plaintiffs contend that Defendant Hilton's October 2025 statement about Defendant Baker constitutes a misrepresentation, they still fail to explain how it supports their aiding and abetting allegations or how they could have relied on such statement to their detriment. By Plaintiffs' own allegations, Baker's alleged conduct ended by October 2025, thus making any alleged reliance implausible. (Complaint ¶ 170.) As such, Plaintiffs' aiding and abetting claims

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

fail to meet Rule 9(b)'s particularity requirements and also fail to allege justifiable reliance.[4]

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims with prejudice.

DATED: March 30, 2026                     Respectfully submitted


By:   ___*Peter Bronstein*_____
        Peter Bronstein Attorney for Defendant Daniel Baker

---

[4]   Plaintiffs' UCL claim similarly fails because Plaintiffs did not satisfy the heightened pleading requirements under Rule 9(b), which applies to UCL claims sounding in fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Groff v. Keurig Green Mountain, Inc.*, No. 5:23-CV-01492-SSS-SPX, 2024 WL 2335634, at *5 (C.D. Cal. Mar. 18, 2024) ("UCL claims that sound in fraud are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b)."); (*see* Complaint ¶¶ 282-84 (describing Defendants' allegedly "unlawful and fraudulent business practices")).

MOTION TO DISMISS EPIC COMPLAINT UNDER FRCP 12(B)(6)

**<u>EXHIBIT 1</u>**

4119552.8

## <u>DECLARATION OF ATTORNEY PETER C BRONSTEIN</u>

1. I am an attorney at law duly licensed to practice in the State of California.  I have personal knowledge of the following facts and if called to testify I will testify to the facts stated herein.

2. On March 26, 2026 I met and conferred, after emailing and calling Plaintiffs attorney Marshall Baker about filing a motion to dismiss pursuant to Local rules

3. In our telephone conference we did not come to an agreement on dismissal and Marshall Baker informed me that we need seven (7) days not four days. Mr. Baker informed me he didn't have an issue with the notice time.

I declare under penalty of perjury that the foregoing is true and correct.

Dated March 30, 2026                    By    *Peter Bronstein*

_____            Peter C. Bronstein, Attorney

4119552.8

### PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, 8th Floor, Los Angeles, CA 90067-2561.

On March 30, 2026, I served the following document(s) described as **DEFENDANTS DANIEL BAKER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FRCP 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address ssmall@birdmarella.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 30, 2026, at Los Angeles, California.

*Peter Bronstein*

_____
Peter Bronstein

4119552.8

**ATTACHED LIST**

Adam B. Wolfson    adamwolfson@quinnemanuel.com, abbyvalenzuela@quinnemanuel.com, calendar@quinnemanuel.com, jacquelindavis@quinnemanuel.com, jennybraun@quinnemanuel.com

Alexander H. Tran    atran@birdmarella.com, ssmall@birdmarella.com

Alycia S. Tulloch    alycia.tulloch@blankrome.com, arc@blankrome.com

Anthony T Pierce    apierce@akingump.com, AGSearch-Lit@akingump.com, EastDocketing@akingump.com

Brook B Andrews    brook.andrews@nelsonmullins.com

Caroline Lewis Wolverton    cwolverton@akingump.com

Christopher J Petersen    chris.petersen@blankrome.com, ashley.mwilliams@blankrome.com, heather.lamb@blankrome.com

David M. Elihu    davidelihu@quinnemanuel.com

Ekwan E. Rhow    erhow@birdmarella.com, brl@birdmarella.com, docket@birdmarella.com, eer@birdmarella.com

Elizabeth Anne Mitchell    elizabeth@umklaw.com, calendaring@umklaw.com, jon@umklaw.com

James C Wald    james.wald@nelsonmullins.com, carolyn.orphey@nelsonmullins.com

Joshua A Redelman    josh.redelman@nelsonmullins.com

Julia Sun Choe    juliachoe@quinnemanuel.com

Lauren E. Huennekens    lhuennekens@akingump.com, cdoubroff@akingump.com, svasquez@akingump.com, westdocketing@akingump.com

Mark L Johansen    mark.johansen@blankrome.com, jmcfaul@ghjhlaw.com

Mark R. Herring    mherring@akingump.com

Marshall L. Baker    mbaker@akingump.com, abautista@akingump.com, cdoubroff@akingump.com, svasquez@akingump.com, westdocketing@akingump.com

Matthew Donald Umhofer    matthew@umklaw.com, calendaring@umklaw.com, jon@umklaw.com

Melissa C Decker    mdecker@birdmarella.com, lcruz@birdmarella.com

Neakzaad Layne Horriat    Neak.horriat@blankrome.com

Nithin Kumar    nithin@kingfisherlawapc.com

Ryan S. Landes    ryanlandes@quinnemanuel.com, calendar@quinnemanuel.com, pamdavis@quinnemanuel.com

Sharon Ben-Shahar Mayer    sbs@birdmarella.com, dbeatty@birdmarella.com, dlb@birdmarella.com, docket@birdmarella.com

4119552.8

**2:26-cv-00321-FMO-RAO Notice has been delivered b**

4119552.8

**SERVICE LIST**

4119552.8