Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Sharon Mayer - State Bar No. 212862
    smayer@birdmarella.com
Melissa C. Decker – State Bar No. 330062
    mdecker@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants Unique Medi
Tech LLC, d/b/a Mammoth Dx, Mammoth
Path Solution, LLC, Mammoth Rx, Inc.
and Ryan Hilton

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, <br><br> Defendants. | CASE NO. 2:26-cv-00321-FMO <br> Assigned to Hon. Fernando M. Olguin <br> Courtroom: 6D <br><br> **DEFENDANTS UNIQUE MEDI TECH LLC, d/b/a MAMMOTH DX, MAMMOTH PATH SOLUTION, LLC, MAMMOTH RX, INC. AND RYAN HILTON'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> Date:      April 23, 2026 <br> Time:      10:00 a.m. <br> Crtrm.:  6D <br><br> Action Filed: January 13, 2026 |

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ................................................................................................1

        A.     Defendants' Joinder Is Procedurally Proper ............................................1

        B.     Plaintiffs Have Failed to Allege Article III Standing ...........................2

        C.     Plaintiffs' Fraud Claim Fails To Satisfy Rule 9(b) as to any Mammoth Defendant ...................................................................6

               1.     Plaintiffs Fail to Plead an Actionable Misrepresentation.............6

               2.     Plaintiffs Fail To Plead Justifiable Reliance ...............................8

        D.     Plaintiffs' Aiding and Abetting Claim Fails ............................................9

        E.     Plaintiffs' CFAA Claim Fails as a Matter of Law ...............................11

               1.     Plaintiffs Fail To Plead Facts Demonstrating the Mammoth Defendants Accessed A Protected Computer Without Authorization ...............................................................11

               2.     The Complaint Fails To Allege Facts Supporting a Cognizable Loss Under the CFAA...............................................14

        F.     Plaintiffs' UCL Claim Fails .................................................................15

III.    CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                 **Page(s)**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................7

*Calendar Rsch. LLC v. StubHub, Inc.*,
    2020 WL 4390391 (C.D. Cal. May 13, 2020).........................................................13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...............................................................................................3, 4

*Davenport v. Seattle Bank*,
    2015 WL 4886393 (C.D. Cal. Aug. 14, 2015).........................................................8

*Env't Prot. Info. Ctr. v. Pac. Lumber Co.*,
    469 F. Supp. 2d 803 (N.D. Cal. 2007)......................................................................6

*Grant v. Aurora Loan Servs., Inc.*,
    736 F. Supp. 2d 1257 (C.D. Cal. 2010)....................................................................9

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022)...........................................................................11, 12

*Huml v. Servis One, Inc.*,
    2021 WL 945255 (C.D. Cal. Jan. 29, 2021).............................................................1

*Jones v. Raymer Metals, Inc.*,
    2017 WL 10560488 (C.D. Cal. May 31, 2017)........................................................3

*Karma Auto. LLC v. Lordstown Motors Corp.*,
    2022 WL 17886045 (C.D. Cal. Nov. 18, 2022).................................................11, 12

*Kearns v. Ford Motor Co.*,
    567 F. 3d 1120 (9th Cir. 2009)...............................................................................15

*Ketayi v. Health Enrollment Grp.*,
    516 F. Supp. 3d 1092 (S.D. Cal. 2021) ..................................................................10

*Konopasek v. Ten Assocs., LLC*
    2018 WL 6177249 (C.D. Cal. Oct. 22, 2018) ..........................................................6

MAMMOTH DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................................3

*LVRC Holdings, LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009)............................................................................ 11, 12

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ....................................................................................3, 5

*Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*,
    2016 WL 7444876 (C.D. Cal. Apr. 6, 2016)...........................................................13

*Moonlight Mountain Recovery, Inc. v. McCoy*,
    2024 WL 4027972 (D. Idaho Sept. 3, 2024)..................................................... 12, 13

*Mostowfi v. i2 Telecom Int'l, Inc.*,
    269 F. App'x 621 (9th Cir. 2008) ...........................................................................6

*MSP Recovery Claims, Series, LLC v. Avanir Pharms., Inc.*,
    2022 WL 17220647 (C.D. Cal. Oct. 20, 2022) ........................................................8

*NTD Architects v. Baker*,
    950 F. Supp. 2d 1151 (S.D. Cal. 2013) .................................................................10

*Peterfai v. USA Logistics Inc.*,
    2024 WL 4279506 (S.D. Cal. Sept. 24, 2024) .........................................................6

*Shah v. JPMorgan Chase Bank N.A.*,
    2025 WL 882243 (C.D. Cal. Mar. 4, 2025) ...........................................................15

*Sunnyside Dev. Co., LLC v. Opsys Ltd.*,
    2005 WL 1876106 (N.D. Cal. Aug. 8, 2005)...........................................................6

**Federal Statutes**

18 U.S.C.
    § 1030(a)(2)(C)......................................................................................................12
    § 1030(c)(4)(A)(i)(I), (II), (IV) .............................................................................14
    § 1030(e)(6) ...........................................................................................................12

Computer Fraud and Abuse Act ("CFAA") ......................................................*passim*

HIPAA .........................................................................................................................15

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' Opposition to the Mammoth Defendants' Motion to Dismiss ("Opp.") relies on gross mischaracterizations of the allegations in the Complaint and inapposite case law.  But those mischaracterizations cannot cure Plaintiffs' deficient pleading: the Complaint fails to assert that Plaintiffs suffered injury sufficient to confer Article III standing to pursue their claims, and fails to plausibly allege facts stating claims for fraud, aiding and abetting, or violation of the Computer Fraud and Abuse Act ("CFAA").  Plaintiffs cannot escape the fact that their Complaint is premised on rank speculation and wholly conclusory allegations, and does not allege any unlawful access or misuse of patient information by the Mammoth Defendants.[1]

Nor is there any legal basis for Plaintiffs' procedural attacks on the Mammoth Defendants' joinder in the arguments raised by other defendants that Plaintiffs have failed to exhaust the mandatory dispute resolution process before filing this lawsuit. Plaintiffs' claims therefore should be dismissed with prejudice.

### II.    ARGUMENT

#### A.    Defendants' Joinder Is Procedurally Proper

"Courts generally allow [a] joinder when either (1) the parties are so similarly situated that filing an independent motion would be redundant, or (2) the party seeking joinder specifically points out: which parts of the motion apply to the joining party and the factual similarities between the joining party and moving party that give rise to a similar claim or defense." *Huml v. Servis One, Inc.*, 2021 WL 945255, at *28 (C.D. Cal. Jan. 29, 2021) (citing *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1151-52 (C.D. Cal. 2016)).

---

[1]   The Mammoth Defendants include Mammoth Rx ("Rx"), Mammoth Dx ("Dx"), Mammoth Path Solution ("MPS") and Ryan Hilton.

Here, both alternatives are met. *First*, the Mammoth Defendants are so similarly situated to Health Gorilla and the RavillaMed Defendants with respect to Plaintiffs' obligation to exhaust the Carequality and TEFCA dispute resolution process before filing a lawsuit, that filing an independent motion would be redundant. *Compare* Compl. ¶¶ 37-43, *with id*. ¶ 31 and ¶¶ 32-36. Specifically, Plaintiffs allege that the Mammoth Defendants and the RavillaMed Defendants both operate as Carequality Connections ("CCs") and TEFCA participants (and individuals who allegedly aided them) were onboarded to Carequality and TEFCA by Health Gorilla, and agreed to the terms and conditions of those frameworks. *Id.*; *see also id.* ¶¶ 58, 86, 89, 139-141. Thus, with respect to Plaintiffs' obligation to exhaust the mandatory, non-binding dispute resolution process arising from the Carequality Connected Agreement (§ 20.1) and TEFCA Common Agreement (§ 15.1), the Mammoth Defendants' rights and obligations are similar to those of Health Gorilla and the RavillaMed Defendants, and any independent filing by the Mammoth Defendants would be superfluous.

Second, the Mammoth Defendants provided notice of the joinder, specified in which parts of each motion they join, and identified the common argument: that Plaintiffs have failed to exhaust the mandatory contractually-obligated dispute resolution process as required by the Carequality and TEFCA network agreements. *See* Mot. at p. 1 fn. 1. Joinder under these circumstances was not only proper, but also necessary to conserve judicial resources.[2]

**B.      Plaintiffs Have Failed to Allege Article III Standing**

---

[2]   Plaintiffs object that the Mammoth Defendants did not meet and confer regarding the substance of the joinder. This formulaic objection is misguided, as there is no requirement to meet and confer in connection with a joinder, particularly where, as here, Health Gorilla and the RavillaMed Defendants met and conferred with Plaintiffs on this very issue, and Plaintiffs clearly did not change their position, thus necessitating Health Gorilla and the RavillaMed Defendants' motions.

MAMMOTH DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs' Article III standing argument fails because they have not, and cannot, allege any cognizable harm, or that any harm allegedly suffered is fairly traceable to wrongful conduct by the *Mammoth Defendants*.

As more fully discussed in the Mammoth Defendants' Motion to Dismiss (the "Motion"), to establish Article III standing, a plaintiff must "clearly" allege facts demonstrating "an injury in fact" "that is fairly traceable to the challenged conduct of *the defendant*." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 (9th Cir. 2020) (emphasis added); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To adequately plead this prong of Article III standing, the "causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties." *Jones v. Raymer Metals, Inc.*, 2017 WL 10560488 at *10 (C.D. Cal. May 31, 2017) (citing *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000)).

None of the three injuries the Opposition contends Plaintiffs have suffered— reputational harm, increased investigative or monitoring costs, or increased storage costs—satisfies the Article III standing requirement. *See* Opp. (ECF No. 81) at 6-7. First, only Plaintiffs Epic and OCHIN have even attempted to plead reputational harm, and those allegations are wholly insufficient. The allegations speculate that Epic and OCHIN *may* suffer reputational harm in the *future* because some providers or providers' customers have "contemplated" withdrawing or have "reevaluated" their "full participation in" the Carequality and TEFCA frameworks. Compl. ¶ 193. This is precisely the type of "[a]llegation[] of *possible* future injury" that is insufficient to confer Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original). Moreover, the allegations at best concern the purported reputational harm of the Carequality and TEFCA frameworks, who are not parties to this litigation. Plaintiffs do not explain how alleged harm to those frameworks even arguably involves their own reputations.

Plaintiffs' allegation that they have incurred additional costs to "monitor[]" or

"investigat[e]" CCs and implementers is similarly unavailing.  *See* Opp. at 6. Plaintiffs do not plead any facts demonstrating how any monitoring cost is "additional" rather than "routine", given their admission that monitoring the databases is within the normal course of Plaintiffs' businesses.  Compl. ¶ 196.  And, the harm Plaintiffs seek to avoid by *additional* monitoring is entirely speculative and conjectural.  The only "harm" identified in the entire Complaint that the monitoring is seeking to avoid is the "*risk*" that the alleged misconduct, if not stopped, will "ruin[] interoperability altogether for the public at large" because providers will withdraw from the frameworks.  Compl. ¶ 193.  This "risk" is "not certainly impending" but rather merely speculative and hypothetical.  As explained above, Plaintiffs have not identified a single provider or customer who has actually left either framework in the nearly two years the alleged misconduct has been occurring. *See generally id.*; Opp. at 6 n. 2.

Nor have Plaintiffs pleaded facts alleging that such a threat is even plausible: Plaintiffs do not plead facts identifying any alternative frameworks providers can use to exchange or store medical records or that any provider could leave the framework without an adequate alternative for accessing their patients' medical records.  *See id.*  Therefore, any increased expense to "monitor[]" or "investigat[e]" Defendants' alleged conduct for fear that providers might leave in the future is the same type of "manufacture[d]" harm that plaintiffs "inflict[ed]. . . on themselves based on their fears of hypothetical future harm that is not certainly impending" alleged in *Clapper*, and is insufficient to confer standing as a matter of law. *Clapper*, 568 U.S. at 416.

Finally, Plaintiffs contend they adequately alleged injury in the form of "increased storage costs and costs in responding to customer complaints."  Opp. at 6.  The only allegation in the Complaint that addresses storage costs states as follows:

MAMMOTH DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

When CCs in Carequality and Participants in TEFCA request patient records from an Epic or OCHIN customer, the provider customer *almost always retains a copy of the transmitted data*. That requires additional storage, which Epic, OCHIN, and their customers, including Reid, Trinity, and UMass Memorial Health bear the cost of, and each additional request increases storage requirements and expenses. Epic, OCHIN, and their customers, including Reid, Trinity, and UMass Memorial Health thus incur direct costs when connections fraudulently request patient records for non-treatment purposes.

Compl. ¶ 195 (emphasis added).  This allegation implicitly concedes two important points: (1) providers store copies of the transmitted data in the normal course of business; and (2) storing the transmitted data is not inevitable, but something that providers "*almost always*" choose to do.  Coupled with the fact that the entire record retrieval process is automated (Compl. ¶ 68) it follows that for providers, storage costs are voluntary, "business as usual" expenses and not a cognizable injury. Plaintiffs also do not plead any facts which fairly trace any increased storage costs to wrongful conduct by the *Mammoth* Defendants, as opposed to other defendants in this action or otherwise.[3]

As to "costs" incurred to respond to customer complaints, the Complaint does not plead any non-conclusory allegations that any Plaintiff received or responded to a single actual customer complaint, let alone non-conclusory facts alleging any customer complaint received by any plaintiff was the result of wrongful conduct by any *Mammoth* Defendant.  Without such allegations, Plaintiffs fail to demonstrate that this injury is "fairly traceable to the challenged conduct of *the defendant*" as required to adequately allege standing.  *McGee*, 982 F.3d at 705 (emphasis added).

Finally, the Opposition attempts to distinguish most of Defendants' cases on the basis that plaintiffs are not relying on organizational standing, but this is a red herring.  The cases cited in the Motion nonetheless are instructive for the proposition for which they are cited, because "in order to establish organizational

---

[3]   The "storage costs" argument also begs the question whether those costs are not paid to the EHR software providers, *i.e.*, Epic and OCHIN.

standing, 'plaintiffs must meet the same standing test that applies to individuals.'" *Env't Prot. Info. Ctr. v. Pac. Lumber Co.*, 469 F. Supp. 2d 803, 813 (N.D. Cal. 2007). The cases therefore are appropriately cited for their analysis of the general standing test, which Plaintiffs have failed to satisfy here.

### C.    Plaintiffs' Fraud Claim Fails To Satisfy Rule 9(b) as to any Mammoth Defendant

#### 1.    Plaintiffs Fail to Plead an Actionable Misrepresentation

As explained in the Motion, Plaintiffs' failure to distinguish between the differently situated defendants and their decision to combine all the Mammoth Defendants and two additional individuals into a single group, renders their allegations wholly insufficient under Rule 9(b). *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (Complaint did not meet 9(b) standard where "plaintiffs lump[ed] together the defendants without identifying the particular acts or omissions that each defendant committed."); *Peterfai v. USA Logistics Inc.*, 2024 WL 4279506, at *6 (S.D. Cal. Sept. 24, 2024) (complaint's use of group terms like "Defendants" ran afoul of Rule 9(b)'s specificity requirements because those terms suggest that all defendants were involved in nearly all actions).

The Opposition contends that Plaintiffs are entitled to use "group pleading" allegations to overcome Rule 9(b)'s heightened standard because they allege that Mammoth Rx, Mammoth Dx and MPS share a single address and have the same officers and directors. Opp. at 13. Plaintiffs have not pleaded alter ego, but even if they had, they cited no authority supporting the proposition that alter ego allegations circumvent the specificity requirements of Rule 9(b). *See, e.g. Konopasek v. Ten Assocs.,* LLC, 2018 WL 6177249, at *4 (C.D. Cal. Oct. 22, 2018) (dismissing fraud claim holding that alter-ego allegations were "insufficient because they fail[ed] to identify specific conduct involving" the defendants); *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, 2005 WL 1876106, at *4 (N.D. Cal. Aug. 8, 2005) (holding Rule 9(b) heightened pleading standard applies to a plaintiff's alter-ego theory "premised upon

allegations of fraudulent conduct").

The Opposition provides a bullet point list purporting to show the Complaint contains allegations specifying which Mammoth Defendant engaged in which conduct. But a closer look confirms that the cited allegations are the same generalized group allegations that do not identify which Mammoth Defendant engaged in what purportedly wrongful conduct. *See e.g.,* Opp. at 13 citing Compl. ¶ 162 ("***Mammoth*** exhibits highly abnormal patient-record exchange patterns"); *see id.* ¶ 163 ("Records received from ***Mammoth*** lack basic clinical information"); *see id.* ¶ 170 ("[f]rom July 2024 to October 2025, ***Mammoth*** obtain sensitive patient records" that "***Mammoth*** has disclosed. . . for sale or profit"); *see id.* ¶ 219 ("***Mammoth*** obtained those patient records based on the assertion that the patient records were all being sought for treatment purposes"); *see id.* ¶ 221 ("***Mammoth*** knew that the treatment representations were false") (emphasis added)). Plaintiffs cannot use their Opposition brief to cure the Complaint's non-specific and deficient group pleading allegations.

Nor does the Opposition identify factual allegations that "nudge" Plaintiffs' fraud claim "across the line from conceivable to plausible" as required to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Opposition contends that Mammoth Dx and MPS "falsely asserted that they were healthcare providers seeking access to patient records for treatment services" when in actuality "their true purpose in seeking access to patient records was to sell those records to law firms and other third parties" (Opp. at 11), these general assertions do not allege with specificity any facts that make them plausible as to the Mammoth Defendants, as evidenced by the fact that the same general allegations are made against *all* the CC Defendants. To compensate for lack of specificity, the Complaint heavily relies on speculation and inferences from various statistical data, but does not identify any patient record that was supposedly obtained without consent and not for treatment purposes, or sold to a third party by any Mammoth Defendant. The

7

Complaint lacks any factual, non-conclusory allegations that any representation by any Mammoth Defendant was false at the time it was made.

Moreover, the Opposition cannot cure the absence of any plausible allegations that either Mammoth Rx or Mr. Hilton themselves accessed the frameworks or made any misrepresentation at all. Recognizing this defect, Plaintiffs attempt to rely on a new concealment theory, arguing that these defendants "failed to disclose the ties between" certain Mammoth Defendants and themselves when MPS and Mammoth Dx were onboarded to the frameworks. Opp. at 12. But in order to state a concealment claim, the plaintiff must plead facts demonstrating a duty to disclose. *MSP Recovery Claims, Series, LLC v. Avanir Pharms., Inc.*, 2022 WL 17220647, at *8 (C.D. Cal. Oct. 20, 2022) (citation omitted) (dismissing fraudulent omission claim with prejudice). Plaintiffs have not pleaded any facts, nor cited any authority, which give rise to a duty by the Mammoth Defendants to disclose any omitted fact to any Plaintiff. Plaintiffs' fraud claim against Mammoth Rx and Mr. Hilton fails for these additional reasons.

## 2. Plaintiffs Fail To Plead Justifiable Reliance

Nor have Plaintiffs adequately pleaded justifiable reliance on any misrepresentation by the Mammoth Defendants. "A specific pleading of reliance is necessary to establish a complete causal relationship between the alleged misrepresentation and the harm claimed to have resulted therefrom." *Davenport v. Seattle Bank*, 2015 WL 4886393, at *4 (C.D. Cal. Aug. 14, 2015) (internal citation omitted) (cleaned up). "Reliance exists where 'the misrepresentation . . . was an immediate cause of the plaintiffs conduct which altered . . . her legal relations, and when without such misrepresentation . . . she would not, in all reasonable probability, have entered into the contract or other transaction." *Id.* Here, there is no immediate causal relationship between any alleged misrepresentation and Plaintiffs' conduct.

While Plaintiffs contend the Complaint alleges they either allowed the

8

Mammoth Defendants to obtain patient records or actually provided the Mammoth Defendants records, the Complaint concedes that when a CC makes a query for a patient record, the records are compiled and delivered "machine-to-machine", and that "no person is in the middle reviewing each request."  Compl. ¶ 68.  No Plaintiff actually had any interaction with any Mammoth Defendant, and thus no Plaintiff could have taken any action in "reliance" on any representation by those entities. *See Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1271-72 (C.D. Cal. 2010) (dismissing promissory fraud claim where plaintiff failed to plead justifiable reliance).

The Complaint similarly fails to allege any causal connection between the Mammoth Defendants' alleged conduct and the claimed damages.  Plaintiffs pay for storage costs and "monitor" bad behavior on the frameworks in their regular course of business, and would do so even in the absence of fraud.  *See* Compl. ¶ 196 (Epic's "usual costs" include "monitor[ing] CCs and Implementers connected" to the frameworks); ¶¶ 194-95 (Plaintiffs "store data containing patient records" which incurs costs in the regular course of business).  Therefore, Plaintiffs failed to plead an immediate causal connection between any alleged misrepresentation and the alleged harm suffered.  Plaintiffs' fraud claim should be dismissed.

**D.    Plaintiffs' Aiding and Abetting Claim Fails**

Plaintiffs' Opposition does not identify any non-conclusory allegation supporting an inference that Mr. Hilton authorized or encouraged any alleged fraud. Instead, the Opposition points to conclusory allegations that simply state that Mr. Hilton "knew" the statements were false, without identifying any factual allegations to support that assertion.  *See* Opp. at 16.  The Opposition also points to allegations that Mr. Hilton was an "authorized official for multiple Mammoth-entity NPIs" and was the owner or CEO of certain entities.  *Id.*  As pointed out in the Motion, however, Mr. Hilton's title or other affiliation with these companies is insufficient to state an aiding and abetting claim.  *See* Mot. at 18-19.

MAMMOTH DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs cite to *NTD Architects v. Baker* for the proposition that "clear, active participation" can be demonstrated by pleading that the person "specifically authorized, directed or participated in the allegedly tortious conduct" or "knew about and allowed the tortious conduct to occur." Opp. at 18 (quoting *NTD Architects v. Baker*, 950 F. Supp. 2d 1151, 1159 (S.D. Cal. 2013)). In *NTD Architects*, however, the court was not assessing a fraud claim under a heightened 9(b) standard. Instead, the court was assessing a breach of fiduciary claim under Rule 8(a)). *See id.* at 1155. As the court noted in *Ketayi*, applying the 9(b) standard, a plaintiff asserting fraud must set forth "the time, place, and specific content of the false representations." *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1121 (S.D. Cal. 2021) (citing *Odom v. Microsoft Corp.*, 486 F. 3d 541, 553 (9th Cir. 2007)). Thus, for an aiding and abetting fraud claim against individual corporate defendants, Plaintiffs must go beyond a guilt-by-association argument. *See Ketayi*, 516 F. Supp. 3d at 1127.

The only allegedly fraudulent statements that are specifically attributed to Mr. Hilton in the Complaint are those contained in an affidavit he provided on November 18, 2025 in connection with the Health Gorilla investigation. Plaintiffs assert that in this affidavit Mr. Hilton "describe[d] Defendants Mammoth Path Solution, Mammoth Dx, and Mammoth Rx as the 'Mammoth Family'; affirmed that Baker 'has never been a founder, co-founder, or principal of any entity within the Mammoth Family"; and denied that Baker had ever "held any financial interest – directly or indirectly – in any of the collective companies, nor has he participated in the management, governance, operations, or strategic decision-making in any capacity." Compl. ¶ 166. These statements, however, are insufficient to demonstrate either knowledge of the fraud or substantial assistance as required to state a claim for aiding and abetting fraud, as they were made *after* the alleged misconduct took place, and *after* Mammoth access to the frameworks had been suspended. Plaintiffs do not explain how they could have relied upon statements

10

made after Mammoth was no longer accessing the frameworks, or how those statements served to aid and abet an alleged fraud that had ended.

In sum, Plaintiffs do not allege any facts supporting that Hilton substantially participated in the alleged fraudulent scheme, aside from his role as the NPI for Mammoth and statements he made in an affidavit after the fact. Plaintiffs' aiding and abetting claim should therefore be dismissed.

### E. Plaintiffs' CFAA Claim Fails as a Matter of Law

#### 1. Plaintiffs Fail To Plead Facts Demonstrating the Mammoth Defendants Accessed A Protected Computer Without Authorization

Plaintiffs have not, and cannot, plead a CFAA claim against any Mammoth Defendant. First, there are no allegations in the Complaint that Defendants Mammoth Rx or Ryan Hilton ever accessed either database, and therefore this claim fails as to those defendants at the outset. *See Karma Auto. LLC v. Lordstown Motors Corp.*, 2022 WL 17886045, at *4 (C.D. Cal. Nov. 18, 2022) ("[T]he CFAA creates liability only for those who violate its terms—it makes no mention of vicarious liability or liability for those who should have known of its violations.") (internal citations omitted). The Opposition does not even address this point.

Second, the Opposition cannot cure the fact that the Complaint fails to allege that Mammoth Dx or MPS accessed the systems without authorization. Authorization for purposes of the CFAA means, "permission or power granted by an authority." *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009). A defendant accessing a protected computer does so without "authorization" only if the conduct is tantamount to "hacking" or "breaking and entering." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196-97 (9th Cir. 2022). Here, it is undisputed that Health Gorilla, an "Implementer," granted permission to Mammoth Dx and MPS to access the frameworks "so that they could obtain patient records." Compl. ¶ 31. Neither defendant "hacked" their way into these databases, nor is the alleged conduct analogous to breaking and entering. The Opposition fails to distinguish any

11

case cited in the Motion, because it cannot.

The Complaint's allegations that Mammoth Dx and MPS ultimately used patient records for an improper purpose based on the terms of the governing contracts are similarly insufficient to state a CFAA claim. "[C]ontract-based provisions limiting scope of access does not equate to 'without authorization.'" *Karma Auto. LLC*, 2022 WL 17886045, at *4 (C.D. Cal. Nov. 18, 2022); *see also hiQ Labs, Inc.*, 31 F.4th at 1197 (citing *Van Buren v. United States*, 593 U.S. 374, 390 n.8 (2021)); *LVRC Holdings*, 581 F.3d at 1133.  Plaintiffs *concede* that Health Gorilla gave permission to these defendants to access the patient records.  Therefore, neither Defendant acted "without authorization" for purposes of the CFAA.  Compl. ¶ 16; *See LVRC Holdings*, 581 F.3d at 1133.

Nor do Plaintiffs' allegations state a claim that Mammoth Dx or MPS "exceed[ed] authorized access" to the Frameworks.  *See* 18 U.S.C. § 1030(a)(2)(C). "[T]he term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  There are no factual allegations that either defendant obtained anything other than the patient records they were authorized to obtain, accessed portions of the framework to which they did not have authorization, or that they impermissibly altered any data without permission.  *See Karma Auto. LLC*, 2022 WL 17886045 at *4.

The Opposition ignores this authority and argues instead that permission to access the frameworks was invalid because it was obtained through fraud.  Opp. at 20.  For this proposition, Plaintiffs cite to a single case from the District of Idaho, but that case does nothing to support their argument.  *See* Opp. at 21 (citing *Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972 (D. Idaho Sept. 3, 2024) ("McCoy").  *McCoy* did not involve permission to access a computer that was obtained through a fraudulent representation.  Instead, in *McCoy*, a former employee of a health organization used his username and password to remotely access the

12

former employer's database after he was fired. *Id.* at *2. The court found the continued access to the records was "unauthorized" because the defendant's termination meant that defendant's prior authorization had been revoked. *Id.* at *3. Here, Plaintiffs do not allege that Mammoth Dx or MPS' authorization to access either framework was revoked at the time of access. There is simply no support for Plaintiffs' argument that the allegations against the Mammoth Defendants are actionable under the CFAA.

Plaintiffs' argument has also been directly rejected by at least one court, holding that when authority to access was obtained through allegedly fraudulent means, access was not "unauthorized" under the CFAA. *See Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*, 2016 WL 7444876, at *6 (C.D. Cal. Apr. 6, 2016) (rejecting the argument that access becomes unauthorized under the CFAA merely because credentials were obtained with alleged fraudulent intent).

Moreover, Plaintiffs' framing rests on a fundamental conflation of two distinct processes. One is the onboarding process by which an entity is connected to the Carequality or TEFCA framework. The other is the exchange-level process, under which a participant must specify a permitted purpose for each individual records request. The former involves gaining authority to access the networks; the latter involves the use of that access and thus has no bearing on CFAA liability. *See Calendar Rsch. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *16 (C.D. Cal. May 13, 2020) ("If the defendant is authorized [to] access the protected computers, accessing the computers for an improper purpose does violate the CFAA."). Plaintiffs identify no misrepresentation by the Mammoth Defendants in connection with the onboarding process. In fact, the Carequality Guidelines make clear that Implementers and CCs may access the network for various permitted purposes other than treatment. *See* Ex. C. to Compl., § 4.2 Other Permitted Purposes. Plaintiffs themselves acknowledge that Health Gorilla is an approved Implementer for queries for multiple permitted purposes, including, *inter alia*, "treatment," "patient request,"

13

and "other authorization-based disclosures." *See* Compl. at ¶ 64. Thus, even if a fraudulent representation could void otherwise authorized access, which it cannot, the alleged fraud here had nothing to do with gaining authority to access the networks.

### 2.      The Complaint Fails To Allege Facts Supporting a Cognizable Loss Under the CFAA

Plaintiffs contend they have adequately alleged three types of cognizable "loss" sufficient to support its CFAA claim. Opp. at 19. Specifically, Plaintiffs contend they have pleaded that Mammoth's conduct impaired the medical diagnosis, treatment or care of one or more individuals, created a threat to public health and caused Plaintiffs to incur at least $5,000 in value over a one year period (18 U.S.C. § 1030(c)(4)(A)(i)(I), (II), (IV).) But the Complaint does not contain any non-conclusory allegations of such alleged loss. The only allegations relating to those factors cited by the Opposition are Complaint paragraphs 321, 326 and 327 which merely quote *the wording of the CFAA*. The Complaint does not identify one patient whose records were modified such that treatment or diagnosis was impaired, and has not pleaded any facts demonstrating an actual threat to public safety. This is insufficient.

Plaintiffs' contention that the Complaint adequately alleges that they have suffered at least $5,000 in costs is similarly unavailing. The *only* allegations cited by the Opposition in support of this alleged loss relates to Plaintiff Epic only, and contends that "***Epic*** has incurred additional costs well beyond their usual costs to further monitor CCs. . . additional costs of developing searches specific to the ***Defendants'*** prior inappropriate taking of patient data and monitoring tools" (Compl. ¶ 196), and that "***Epic*** was forced to expend money in excess of $5,000 dollars. . . implementing specialized tools. . . to mitigate the unauthorized queries initiated by RavillaMed, Mammoth, SelfRx and GuardDog." (Compl. ¶ 326) (emphasis added). These allegations do not demonstrate harm suffered by any

plaintiff other than Epic, and do not demonstrate that Epic suffered $5,000 *due to conduct by the Mammoth Defendants* as opposed to conduct by other defendants in this action or otherwise. Moreover, given that the Complaint alleges that Mammoth's misconduct took place over a 15-month period, the Complaint has not adequately alleged that Epic incurred $5,000 in cognizable losses over a one year period. *See* Compl. ¶170. For these additional reasons, Plaintiffs' CFAA claim must be dismissed.

### F.    Plaintiffs' UCL Claim Fails

As explained in the Motion and *supra*, Plaintiffs' UCL claim collapses along with their claims for fraud and CFAA violation to the extent the UCL claim is premised on them. *Shah v. JPMorgan Chase Bank N.A.*, 2025 WL 882243, at *5 (C.D. Cal. Mar. 4, 2025) (dismissing UCL claim under the unlawful prong where the "predicate claim" had been dismissed). The Opposition contends that Plaintiffs' UCL claim is also based on Defendants' alleged violation of HIPAA, but any such violation relies on the same purported conduct underlying Plaintiffs' fraud claim, and fails for the same reasons. *Id.; see Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1125 (9th Cir. 2009) (when a UCL claim is based on a unified course of fraudulent conduct, the claim sounds in fraud and must be pleaded with particularity under Rule 9(b)). Plaintiffs' UCL claim therefore must be dismissed.

## III.    CONCLUSION

For the reasons stated above and in the Motion, the Mammoth Defendants respectfully request that the Court dismiss Plaintiffs' claims against the Mammoth Defendants with prejudice.

MAMMOTH DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

DATED:  April 9, 2026

Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP

By: _____/s/ Sharon Mayer_____

Sharon Mayer

Attorneys for Defendants Unique Medi Tech LLC, d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc. and Ryan Hilton

16

## LOCAL RULE 11.6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this memorandum contains 4,794 words which complies with the word limit set by L.R. 11-6.1.

By:    _/s/ Sharon Mayer_
    Sharon Mayer
    Attorneys for Defendants Unique Medi Tech LLC, d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc. and Ryan Hilton

MAMMOTH DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS