**NELSON MULLINS RILEY & SCARBOROUGH LLP**
James C. Wald (Bar No. 229108)
Pacific Gateway
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone: 424-221-7459
Email: james.wald@nelsonmullins.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Brook B. Andrews (*Admitted pro hac vice*)
Meridian Building
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: 803-255-5508
Email: brook.andrews@nelsonmullins.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Joshua Redelman (*Admitted pro hac vice*)
Heritage Plaza
1111 Bagby Street, Suite 2100
Houston, TX 77002
Telephone: 346-646-5889
Email: joshua.redelman@nelsonmullins.com

*Attorneys for Defendants RavillaMed PLLC, Avinash Ravilla,*
*Shere Saidon, and LlamaLab, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| Epic Systems Corporation; et al., | Case No. 2:26-CV-00321-FMO-RAO |
| Plaintiffs, | **DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER** |
| v. | |
| Health Gorilla, Inc., et al., | |
| Defendants. | Complaint Filed: January 13, 2026 |

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON,
AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

# **INTRODUCTION**

As Defendants RavillaMed PLLC, LlamaLab, Inc., Dr. Avinash Ravilla, and Shere Saidon (collectively, the "RavillaMed Defendants") explained in their opening brief, the sole thread connecting each distinct defendant group is the use of Health Gorilla, Inc. ("Health Gorilla") as their gateway to the Carequality and TEFCA interoperability frameworks. Under Rule 20, that is not enough. Plaintiffs do not dispute each distinct defendant group has their own personnel, corporate structures, business models, and timeline of alleged improper conduct. Plaintiffs further do not dispute that each defendant group never coordinated with, communicated with, or had any business relationships with each other.

Instead, Plaintiffs claim that because each defendant group signed the same standardized framework agreements when accessing the networks, there exists a "contractual nexus" that satisfies Rule 20's "same transaction or series of transactions" requirement. But these are non-negotiable form contracts that every framework participant must execute as a condition of entry. They establish network access, not a transaction. Whether each defendant group signed the same standardized agreements with the same intermediary is analogous to other circumstances this Court and others have repeatedly held insufficient for joinder. And taken to its logical end, Plaintiffs' theory would impermissibly permit them to sue hundreds, if not thousands, of unrelated parties in the same lawsuit, simply because those parties signed onto the non-negotiable framework access agreements. It is no wonder that this Court has previously ordered severance in other cases involving nearly identical facts.

The absence of a jury to decide Plaintiffs' equitable claims does not eliminate the prejudice of forcing unrelated defendants into a joint proceeding. It simply shifts the burden to this Court, which would be required to simultaneously manage three distinct evidentiary records, with different witnesses, different documents, and

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

different defenses for each group. Severance eliminates that burden while preserving Plaintiffs' ability to litigate each claim on its own merits.

Accordingly, RavillaMed Defendants respectfully request this Court to grant their Motion to Sever.

**ARGUMENT**

## I. PLAINTIFFS' CLAIMS DO NOT ARISE FROM THE SAME TRANSACTION OR OCCURRENCE

Plaintiffs' opposition does not identify any new factual connection among the three distinct defendant groups. Instead, Plaintiffs reframe the same-transaction-or-occurrence requirement of Rule 20(a)(2)(A) under the "logical relationship test." ECF No. 80 at 6.[1] Regardless of how this Court frames the standard, Plaintiffs' joinder argument fails. As discussed below, *Switzer* applied the very test Plaintiffs invoke and still ordered severance, even though the facts there presented a stronger case for joinder than the facts here. Plaintiffs' remaining arguments mistake common legal theories which require proof from individualized facts for "common facts" necessary to withstand Defendants' challenge. The distinction is dispositive.

### A. Plaintiffs Have No Answer to *Switzer*

The RavillaMed Defendants' opening motion discussed *United States ex rel. Switzer v. Wood*, No. CV 18-08118-CJC (ASx), 2023 WL 6370917 (C.D. Cal. May 16, 2023) at length. ECF No. 52 at 8, 9, 11, 12, 15. Plaintiffs' opposition does not cite it, attempt to distinguish it, or even acknowledge it. In *Switzer*, three groups of healthcare fraud defendants operated in different states, with different personnel, over different timeframes, through different entities. The only connection among them was that a single individual, Wood, personally participated in each scheme. The court

---

[1] "The logical relationship test has not yet been explicitly adopted by the 9th Circuit in the context of Rule 20" *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 757 (C.D. Cal. 2016) and is "not the state of the law in the Ninth Circuit as to Rule 20." *Interval Licensing LLC v. AOL, Inc.*, No. C10-1385 MJP, 2011 WL 1655713, at *2 (W.D. Wash. Apr. 29, 2011).

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

found joinder improper because the action did "not assert any claims against all defendants, allege that all defendants worked together, or seek to hold all defendants jointly-and-severally liable," even though the defendants were alleged to have "engaged in separate, but fundamentally similar schemes." *Id.* at \*3.

The case for severance is even stronger here because the three defendant groups in this case do not even share a common individual actor. They only share a common platform. Plaintiffs' "contractual nexus" theory, their reliance on the common HIPAA treatment definition, and their emphasis on Health Gorilla's central role all amount to less than what failed to save joinder in *Switzer*.

### B. Standardized Form Contracts Do Not Create a Transactional Link Between Independent Signatories

Unable to distinguish *Switzer*, Plaintiffs pivot to a connection not found in their own Complaint. Specifically, Plaintiffs argue the framework agreements themselves "tie the relevant Defendant entities together" because each defendant group signed the same CC Terms and ToPs, breached those agreements "in identical ways," and made the same type of misrepresentations about treatment purposes. ECF No. 80 at 8-10. The framework agreements are standardized, non-negotiable contracts that every participant must execute as a condition of entry. ECF No. 1 ¶¶ 59-60, 88-89. Signing them establishes access, not a transaction.

That Plaintiffs, through *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017), characterize the CC Terms and ToPs as incorporated into the CCA and Common Agreement only reinforces the point. Every Carequality Connection and every TEFCA Participant in the country is bound by the same master agreements. That is not a transactional nexus, but rather a description of how the frameworks operate. *See Fashion Avenue Sweater Knits, LLC v. A'Gaci, LLC*, No. CV 20-07165-CJC (JEMx), 2020 WL 13248958, at \*2 (C.D. Cal. Oct. 26, 2020) ("purchasing the allegedly infringing merchandise from a single source is similarly insufficient"). If that were sufficient to establish a transactional link, there is no limit to the number of

4

unrelated parties Plaintiffs could sweep into a single lawsuit simply because they signed on to the same agreements to access the same network.

That the framework agreements create ongoing obligations rather than one-time purchases is no more persuasive. The defendants in *Fashion Avenue* also maintained ongoing purchase relationships with the common distributor, and this Court still found joinder improper. The duration of a relationship with a common intermediary does not create a transactional link between independent signatories who never interacted with each other. Plaintiffs' reliance on *Collaboration Props., Inc. v. Tandberg ASA*, No. C 05-01940 MHP, 2006 WL 2398762, at *4 (N.D. Cal. Mar. 28, 2006), fares no better. That case permitted joinder where counterclaims arose from bilateral agreements already at issue between the same existing parties (or their alter egos) in the same litigation. That is not the case here. The framework agreements are not bilateral agreements. They are standardized form agreements each group independently executed with Health Gorilla.

The Ninth Circuit has already rejected a similar argument to Plaintiffs' joinder argument here where each defendant group allegedly breached an agreement at issue "in identical ways." ECF No. 80 at 9. In *Visendi v. Bank of America, N.A.*, 733 F.3d 863, 870 (9th Cir. 2013), the Ninth Circuit rejected joinder of 160 plaintiffs whose claims arose from over 100 distinct loan transactions with different lenders, secured by different properties across the country. *Id.* The Ninth Circuit held that "[n]othing unites all of these Plaintiffs but the superficial similarity of their allegations" and that claims "each require particularized factual analysis" that do not belong in the same case. *Id.* The contract provisions may be the same. The legal theories may be the same. However, Plaintiffs' own Complaint confirms the facts underlying each group's alleged violations under each claim are different and unrelated to each other. They require proof of different representations, by different people, at different times, to different audiences. *See also Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech. Co.*, No. 22-cv-03054-JSC, 2023 WL 1769189, at *4 (N.D. Cal.

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

Feb. 3, 2023) (applying *Visendi* and denying joinder where "no connective tissue" existed "between the additional alleged infringers other than similar violations of similar protected works").[2]

### C.    Courts Have Consistently Rejected Joinder on These Facts

Courts consistently reject joinder in similar situations. *See Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK (AJWx), 2014 WL 3056081, at *3 (C.D. Cal. June 25, 2014) (severing 29 plaintiffs' claims against same medical device manufacturer where "different surgeons performed the off-label INFUSE procedures at different locations" and "the procedures performed on each of the plaintiffs, the methods of implant, and the surgical sites were not the same"); *see also Heather v. Medtronic, Inc.*, No. 2:14-cv-01595-SVW-FFM, 2014 WL 2736093, at *1 (C.D. Cal. June 9, 2014) (joinder improper because "[t]he fact that the same device was used in each plaintiff's surgery is not sufficient to find that they were part of the same transaction or occurrence" where "claims arise out of separate surgeries, performed by different surgeons, in different states"). If using the same medical device in separate procedures does not create a common transaction or occurrence, using the same intermediary platform in separate schemes cannot either.

The principle holds even where plaintiffs assert identical legal theories against the same defendant. *See Wanke v. Invasix, Inc.*, No. 2:19-cv-02978-RGK-KS, 2019 WL 7997250, at *3 (C.D. Cal. Aug. 7, 2019) (severing three plaintiffs' claims because different medical procedures, physicians, and medical histories required individualized factual determinations); *Corley v. Google, Inc.*, 316 F.R.D. 277, 285-86 (N.D. Cal. 2016) (severing 879 plaintiffs alleging identical Wiretap Act violations

---

[2] Plaintiffs cite *Almont* to argue that the Court should interpret Rule 20 broadly enough to accommodate these differences. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1187-88 (C.D. Cal. 2015). But *Visendi* already accounts for those differences. The "related operative facts" Plaintiffs identify all relate to Health Gorilla and the framework agreements which will remain a defendant in each severed action.

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

against same defendant because, *inter alia*, each educational institution had its own contract with different authorizations and disclosures, requiring individualized analysis). If asserting identical theories against one defendant warrant severance, asserting identical theories against three unrelated defendant groups certainly do as well.

## II. PLAINTIFFS' OPPOSITION CONFIRMS THE ABSENCE OF COMMON FACTUAL QUESTIONS

Plaintiffs' attempt to label the three separate defendant groups under the collective label "Framework Defendants" (ECF No. 80 at 2, 4) does not merge them into one group necessary to satisfy Rule 20(a)(2) "common questions of law or fact" standard. *Cf. Visendi*, 733 F.3d at 870 (holding that "[n]othing unites all of these Plaintiffs but the superficial similarity of their allegations" and that claims "each require particularized factual analysis").[3] Plaintiffs' own terminology, much like the structure of their Original Complaint, confirms the separateness of the three defendant groups. *See* ECF No. 80 at 2 (referring to each defendant group as "nests of defendants").

Plaintiffs' opposition also deviates from the allegations in their own Complaint. *Compare* ECF No. 1 ¶ 184 (alleging "the common thread between Defendants RavillaMed, Mammoth, and Unit 387 ... is Defendant Health Gorilla") *with* ECF No. 80 at 8 (arguing, instead, that the framework agreements themselves "tie the relevant Defendant entities together"). In other words, Plaintiffs manufactured a new "contractual nexus" theory because they cannot dispute that the defendant groups "did

---

[3] Indeed, Plaintiffs attempt to cover up the differences between the entity defendants and individual defendants for purposes of treatment does not work here. For instance, Dr. Ravilla and Mr. Shere Saidon are nowhere interchangeable with Mr. Hilton, Mr. Baker, and Toovey, or Manak. Each individual defendant is alleged to have performed different functions, within different entities, in different states, at different times. The reason for the omission is apparent. Naming the individuals would make it impossible to treat the three groups as interchangeable.

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

not actively work together." ECF No. 80 at 10.  Whether the defendant groups' coordination (or lack thereof) is "subject to discovery" is irrelevant.  *Id.*  This Court must assess joinder based on the complaint as filed, not on what discovery might theoretically reveal.  *See Bravado Int'l Grp. Merch. Servs. v. Cha*, No. CV 09-9066 PSG (CWx), 2010 WL 2650432, at *6 (C.D. Cal. June 30, 2010).

Plaintiffs' argument that the defendant groups "sought access to patient records for a permitted purpose" changes nothing.  ECF No. 80 at 4.  The Complaint itself reveals that each of the defendant groups engaged in a wide range of disparate medical practices, not to one common purpose.  More specifically, RavillaMed represented that it was a healthcare provider offering "Comprehensive Chronic Care Management." ECF No. 1 at ¶32.  Mammoth operated as a diagnostic laboratory. ECF No. 1 at ¶160.  Unit 387 represented that it was a "candidate implementer" that "would not be initiating requests for records." ECF No. 1 at ¶44.  These are not identical representations.  They are materially different assertions about different roles within the frameworks, made by different entities, at different times.

That the HIPAA definition of "treatment" provides a common legal standard similarly does not create a common factual question.  Applying that definition to each group's conduct requires entirely different evidence: RavillaMed's chronic care management model, Mammoth's diagnostic laboratory operations, and Unit 387's candidate implementer status each present distinct clinical standards, expert testimony, and regulatory frameworks.  Common legal standards do not create common factual questions when the application is individualized.  *See Visendi*, 733 F.3d at 870 (claims "each require particularized factual analysis").  Every factual dimension of this case, from entity structure to personnel to geography to downstream channels, is distinct across the three groups.  ECF No. 52 at 3-5.  Plaintiffs' opposition does not dispute any of these factual differences.  That Plaintiffs assert the same causes of action against each group does not satisfy the common-questions prong of Rule 20(a)(2) when, as here, each claim requires individualized proof.  "[T]he

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND
LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

superficial similarity of [a plaintiff's] allegations" are insufficient to satisfy Rule 20 when "each [allegation] require[s] particularized factual analysis." *Visendi*, 733 F.3d at 870. "Rule 20(a) requires more." *Id.*

## III. PLAINTIFFS' FAIRNESS ARGUMENTS UNDERMINE THEIR OWN POSITION

Even if Plaintiffs could satisfy Rule 20(a)(2)'s threshold requirements, the Court retains discretion to order severance where joinder would not "comport with the principles of fundamental fairness." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). Plaintiffs' own fairness arguments confirm that severance is warranted.

Plaintiffs assert that concerns about jury confusion are "largely irrelevant, given that Plaintiffs are seeking equitable remedies only." ECF No. 80 at 13. The absence of a jury does not eliminate the prejudice of joint proceedings. It shifts the full burden of sorting through three unrelated fact patterns to this Court alone. This Court will have to simultaneously manage three distinct evidentiary records, with different witnesses, different evidence, and different defenses for each group. Severance eliminates that burden.

Similarly, the prejudice to the RavillaMed Defendants is not speculative. The Mammoth Defendants include Daniel Baker, an individual with a federal criminal conviction for conspiracy to defraud the United States and an SEC enforcement bar. ECF No. 1 at ¶165. The RavillaMed Defendants have no connection to Baker. Plaintiffs cite *United States v. Uriarte*, 575 F.2d 215, 217 (9th Cir. 1978) in support, but *Uriarte* involved criminal joinder under Rule 8(b), which operates under a strong presumption of joint trial that has no analog in civil permissive joinder under Rule 20. Forcing the RavillaMed Defendants to defend in the same proceeding as Baker creates precisely the guilt-by-association risk that Rules 20(b) and 42(b) exist to prevent. The volume disparity compounds the problem. In joint proceedings, the Mammoth

allegations will dominate the record, and the RavillaMed Defendants' distinct conduct will be evaluated in the shadow of a larger scheme to which they have no connection.

Plaintiffs contend that severance would prejudice them by requiring them "to present much of the same evidence" in three separate proceedings. ECF No. 80 at 14 (citing *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2013 WL 2631333, at *6 (S.D. Cal. June 11, 2013)). This judicial economy argument couched as "prejudice to Plaintiffs" appears to rest on the assumption that a single proceeding is always more efficient than multiple proceedings. ECF No. 80 at 15. It is not. *See, e.g., Boston Post Rd. Med. Imaging, P.C. v. Geico Gen. Ins. Co.*, No. 03 CIV. 7390(JCF), 2004 WL 1810572, at *5 (S.D.N.Y. Aug. 12, 2004) (severing 37 claims because "[t]rying all of the claims together in one suit would be unwieldy"); *see also Preferred Med. Imaging, P.C. v. Geico Gen. Ins. Co.*, No. 03 Civ. 8726 NRB, 2004 WL 690735, at *1 (S.D.N.Y. Mar. 31, 2004) ("a joint adjudication of these claims would not be more efficient than separate adjudications, and, if anything, would be exceptionally unwieldy").

Plaintiffs' reliance on *Brighton*, 2013 WL 2631333, at *5-6, underscores the point. *Brighton* denied severance because the defendants shared the same distribution chain, overlapping witnesses, and jointly retained experts. *Id.* at *4-6. Every factor that kept the parties together in *Brighton* is absent here. The three defendant groups share no witnesses, no experts, no distribution chain, and no overlapping evidence of their own conduct. Any burden on Plaintiffs from presenting Health Gorilla-related evidence in three proceedings is the ordinary consequence of having sued three unrelated groups of defendants. That burden does not outweigh the prejudice to the RavillaMed Defendants from being tried alongside unrelated parties with whom they have no connection.

Plaintiffs' remaining cases fare no better. Each, *Jacques v. Hyatt Corp.*, No. C 11-05364 WHA, 2012 WL 3010969, at *3-4 (N.D. Cal. July 23, 2012), *Garcia v. Sleeley*, No. 3:14-cv-01525-JLS-PCL, 2018 WL 3303013 (S.D. Cal. July 5, 2018),

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

and *Barrios v. Torres*, No. 1:20-cv-01234-ADA-CDB (PC), 2023 WL 2696657 (E.D. Cal. Mar. 29, 2023), involved a single plaintiff with causally linked injuries or sequential experiences at related facilities. Here, there is no causal chain, no sequential treatment, and no connection between any defendant group's conduct and any other's. The "protective measures" and prejudice-balancing analysis in *Jacques* presupposed genuinely interconnected facts that simply do not exist in this case. See 2012 WL 3010969, at *5-6. Moreover, Plaintiffs' attempt to distinguish the RavillaMed Defendants' authorities as involving "massive numbers of joined parties and claims with far less commonality" (ECF No. 80 at 15) is unpersuasive. The court in *Coalition for a Sustainable Delta* severed claims involving only four federal agencies because each agency's conduct was "separate and distinct" and did "not involve common questions of law or fact." No. 1:09-CV-480 OWW GSA, 2009 WL 3857417, at *5-7 (E.D. Cal. Nov. 17, 2009). The number of parties is irrelevant when the conduct is unrelated.

Plaintiffs themselves recognize this. Their request for consolidation in the alternative (ECF No. 80 at 16-17) acknowledges that the cases can function as separate proceedings. If the Court determines some coordination is warranted, severance with consolidation for limited pretrial purposes would preserve each group's right to a focused proceeding while addressing any residual efficiency concerns, precisely the approach taken in *Coalition for a Sustainable Delta*, 2009 WL 3857417, at *8-9. That approach gives this Court the flexibility to manage Health Gorilla-related discovery without forcing unrelated defendant groups into a joint proceeding on the merits.

## **CONCLUSION**

The RavillaMed Defendants respectfully request that this Court sever the claims against the RavillaMed Defendants from the claims against the Mammoth Defendants and the Unit 387 Defendants pursuant to Federal Rules of Civil Procedure 20(a)(2) and 21.

11

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

Dated:  April 9, 2026          Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:   /s/ James C. Wald
JAMES C. WALD (Bar No. 229108)
Pacific Gateway
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone: 424-221-7459
Email: james.wald@nelsonmullins.com

BROOK B. ANDREWS (*Admitted pro hac vice*)
Meridian Building
1320 Main Street, 17th Floor
Columbia, SC 29201
Telephone: 803-255-5508
Email: brook.andrews@nelsonmullins.com

JOSHUA REDELMAN (*Admitted pro hac vice*)
Heritage Plaza
1111 Bagby Street, Suite 2100
Houston, TX 77002
Telephone: 346-646-5889
Email: joshua.redelman@nelsonmullins.com

*Attorneys for Defendants RavillaMed PLLC, Avinash Ravilla, Shere Saidon, and LlamaLab, Inc.*

12

DEFENDANTS RAVILLAMED PLLC, AVINASH RAVILLA, SHERE SAIDON, AND LLAMALAB, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

*/s/ James C. Wald*
James C. Wald

CERTIFICATE OF SERVICE