**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:  310.229.1000
Facsimile:   310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:  202.887.4000
Facsimile:   202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., | Case No. 2:26-cv-00321-FMO-RAO |
| | Assigned to:  Hon. Fernando Olguin |
| Plaintiffs, | **JOINT RULE 26(F) REPORT** |
| v. | Date:        April 23, 2026 |
| Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, | Time:        10:00 a.m.<br>Location:  Courtroom 6D<br><br>Date Action Filed:        January 13, 2026 |
| Defendants. | |

JOINT RULE 26(F) REPORT

Pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and this Court's February 26, 2026 Order Setting Scheduling Conference (ECF No. 59), Plaintiffs Epic Systems Corporation ("Epic"), OCHIN, Inc. ("OCHIN"), Reid Hospital & Health Care Services, Inc. d/b/a Reid Health ("Reid"), Trinity Health Corporation ("Trinity"), and UMass Memorial Health Care, Inc. ("UMass Memorial Health") (collectively, "Plaintiffs") and Defendants Health Gorilla, Inc., RavillaMed PLLC ("RavillaMed"), Avinash Ravilla, Shere Saidon, LlamaLab, Inc. ("LlamaLab") (RavillaMed, Avinash Ravilla, Shere Saidon, and LlamaLab are collectively referred to as the "RavillaMed Defendants"), Unique Medi Tech, LLC, d/b/a Mammoth Dx ("Mammoth Dx"), Mammoth Path Solution, LLC, Mammoth Rx, Inc., Ryan Hilton, (Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc. and Ryan Hilton are collectively referred to as the "Mammoth Defendants"), Daniel Baker, Max Toovey, Unit 387, LLC, ("Unit 387"), Hoppr, LLC ("Hoppr"), Meredith Manak ("Ms. Manak") (Unit 387, Hoppr, and Ms. Manak are collectively referred to as the "Unit 387 Defendants") (collectively, the "Defendants" and, together with Plaintiffs, the "Parties"), by and through their counsel of record, hereby respectfully submit their Joint Rule 26(f) Report and Discovery Plan. Counsel for the Parties conducted the Federal Rule of Civil Procedure 26(f) conference on March 27, 2026.[1]

### A. Statement of the Case

#### 1. Plaintiffs

Plaintiffs allege that Defendants abused their access to the Carequality and the Trusted Exchange Framework and Common Agreement ("TEFCA") interoperability frameworks, which enable the exchange of electronic healthcare records, empowering healthcare providers to make treatment decisions informed by patients' medical histories.

---

[1] SelfRx was served with the Complaint on March 20, 2026 and, pursuant to its Waiver of Service, its response to the Complaint is not due until May 2026. Thus, it is SelfRx's position that it was not able to meaningly become oriented and participate in this Rule 26 case management process. Thus, SelfRx reserves its own rights.

JOINT RULE 26(f) REPORT

Health Gorilla is an Implementer on the Carequality framework and Qualified Health Information Network ("QHIN") on the TEFCA framework.  In these roles, Health Gorilla is obligated to serve as a gatekeeper to the frameworks and is responsible for onboarding parties to the frameworks, validating their eligibility to properly assert exchange purposes on the frameworks, and once onboarded, ensuring compliance with the contractual rules governing the frameworks.

Health Gorilla onboarded or enabled the onboarding of several Co-Defendants to the Carequality and/or TEFCA frameworks, based on the assertion that those Defendants sought access to the frameworks for treatment purposes.  Health Gorilla then enabled these Defendants to query patient records from Plaintiffs Reid, Trinity, UMass Memorial Health, as well as from other healthcare provider customers of Epic and OCHIN.  Each relevant query for patient records—through and/or as enabled by Health Gorilla—was made asserting a "treatment" purpose for the records.  Plaintiffs allege that these treatment assertions were knowingly false, and that Defendants and their affiliated entities and persons used the patient records for their own commercial gain, including by selling those patient records to law firms, rather than for treating patients, as represented.

Plaintiffs assert ten causes of action against Defendants, including fraud, aiding and abetting fraud, breach of contract, violation of California Business and Professions Code § 17200, *et seq.*, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The Complaint seeks immediate and permanent injunctive relief.  Former Defendant Critical Care Nurse Consultants, LLC, d/b/a GuardDog Telehealth ("GuardDog") has stipulated to the entry of a permanent injunction, which this Court ordered on March 23, 2026 (ECF No. 79).

Plaintiffs otherwise dispute Defendants' below characterization of the facts.

### 2.    Defendant Health Gorilla

Health Gorilla denies all material allegations. As a neutral technical infrastructure, Health Gorilla facilitates automated, machine-to-machine exchanges; it does not initiate queries or hold patient records. It performed appropriate due diligence on all CC

JOINT RULE 26(f) REPORT

Defendants and, upon receiving Epic's concerns in late 2024, promptly suspended and investigated every such participant. Plaintiffs filed suit without pursuing the mandatory dispute resolution processes required by the Carequality Connected Agreement (§ 20.1) and TEFCA Common Agreement (§ 15.1). The March 23, 2026 GuardDog stipulation (ECF No. 79) does not trigger any "immediate injunctive relief" exception; it was a voluntary compromise involving no adjudication of the merits. GuardDog's owners have since publicly maintained their services were for proper treatment purposes, and Health Gorilla has released documents confirming they represented the same.

### 3.    CC Defendants

The other Defendants (or "CC Defendants") accessed records through Health Gorilla for patient treatment.  They never accessed the networks unlawfully, never misrepresented their purposes, and never stole, sold, or misused patient information or transmitted records without patient authorization. Their conduct remained consistent with the framework requirements, HIPAA, and applicable law. For example, following a suspension in October 2025, a thorough investigation by Health Gorilla concluded that the Mammoth Defendants did not unlawfully accessed the frameworks and should be reinstated. The RavillaMed Defendants also did not make false statements to Plaintiffs. They obtained HIPPA-compliant patient authorizations and executed applicable access agreements, which they explained to Epic before this lawsuit. And although Epic initiated dispute resolution with RavillaMed, it abandoned this process to file this premature suit. Further, Plaintiffs improperly joined these Defendants in a single action despite broad allegations that did not arise from the same series of transactions or occurrences.  The Unit 387 Defendants likewise made no false or misleading statements regarding the interoperability networks. All records accessed were at the behest of the patient and pursuant to valid authorization. The GuardDog stipulation (ECF No. 79) has no legal effect on other Defendants and does not establish liability. Unit 387 expressly denies unfounded allegations against them.

---

4

JOINT RULE 26(f) REPORT

4.     The Unit 387 Defendants

The Unit 387 Defendants include Defendants Unit 387 LLC, Hoppr LLC, and Ms. Manak. Unit 387 is a candidate implementer under Health Gorilla and onboards downstream connections, including some of the CC Defendants (SelfRx and GuardDog). Unit 387 does not initiate patient record queries. The same is true for Hoppr LLC, which assists in providing health records to personal injury law firms after receiving consent from the patient to access and provide records. Hoppr does not obtain medical or patient records from the Carequality or TEFCA interoperability frameworks Ms. Manak is an individual that founded Unit 387 and Hoppr LLC. Ms. Manak does not make patient record queries nor access Carequality or TEFCA.

The Unit 387 Defendants deny they participated in a fraudulent scheme or made any false representations (or omissions) as alleged by Plaintiffs. Based on the lack of detail and specificity in the Plaintiffs' Complaint, the Unit 387 Defendants are unable to ascertain the exact nature of the allegations against them or what fraudulent statements or omissions Plaintiffs allege against the Unit 387 Defendants.

The Unit 387 Defendants never made any false or misleading statements or omissions to any of the Plaintiffs—nor did they make any false or misleading statements to any person or entity with respect to the Carequality and TEFCA interoperability networks. All patient records that were ever accessed or transmitted by any of the Unit 387 Defendants were done so at the behest of the patient and after receiving patient authorization.

In their Statement of the Case, Plaintiffs reference a stipulation to the entry of a permanent injunction, which this Court ordered on March 23, 2026 (ECF No. 79). This has no legal effect on any other Defendant, is not an adjudication of the merits, and does not establish liability or wrongdoing of any kind. To the contrary, following entry of the stipulation, GuardDog's co-owner, Justine Hanna, publicly stated that GuardDog "always believed and continues to maintain that its services were for treatment purposes," including when patient records were sent to law firms, and GuardDog "always represented

5

to Health Gorilla that our services were for treatment purposes." In addition, GuardDog makes various unfounded allegations as to the Unit 387 Defendants, which are expressly denied. GuardDog's public statement appears to contradict the findings in the stipulation.

## B.    Subject Matter Jurisdiction

Plaintiffs contend that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a) because this action arises under federal law and all related state-law claims derive from a common nucleus of operative fact.  Plaintiffs further contend that the Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 as to each Defendant and there is complete diversity of citizenship between the Parties. Defendants contend that they have filed motions to dismiss that, if granted, might eliminate one or more bases for subject matter jurisdiction, including by disposing of Plaintiffs claims.

## C.    Legal Issues

### 1.    Plaintiffs

The key legal issues in this action are whether Defendants are liable for the claims asserted in Plaintiffs' Complaint, as detailed above.  Certain Defendants have moved to dismiss certain of Plaintiffs' claims, and those motions are set for hearing on April 23 and May 21, 2026.  The RavillaMed Defendants have also moved to sever Plaintiffs' claims against them from Plaintiffs' claims against the remaining Defendants, which motion is also set for hearing on April 23, 2026.  It is Plaintiffs' position that the RavillaMed Defendants were properly joined in this action, but, to the extent the Court is inclined to sever Plaintiffs' claims against them, Plaintiffs request that the resulting matters be consolidated.  Plaintiffs do not believe there are any unusual substantive, procedural, or evidentiary issues, and Plaintiffs otherwise dispute Defendants' below characterization of the facts alleged and claims asserted.

### 2.    Defendants

Defendants identify the following legal issues, in addition to those identified by Plaintiffs:

6

JOINT RULE 26(f) REPORT

1. Whether Plaintiffs were required to exhaust mandatory non-binding dispute resolution under CCA § 20.1 and Common Agreement § 15.1 before commencing litigation, and whether their failure to do so mandates dismissal.

2. Whether any Plaintiff has third-party beneficiary standing to assert breach of contract against Health Gorilla under the CCA (§ 21.6), the CC Terms, or the Common Agreement.

3. Whether Plaintiffs have Article III standing to assert their claims where their alleged injuries consist of voluntary investigative and monitoring costs, and whether Epic and OCHIN, as non-provider entities that do not hold the relevant patient records, can assert a concrete injury for the disclosure of data they do not own.

4. Whether Health Gorilla's role as a passive technical infrastructure provider that did not initiate queries or make representations in connection with individual record exchanges defeats the fraud, aiding-and-abetting, and contract claims as a matter of law, and whether Plaintiffs can establish the requisite reliance and causation.

5. Whether Unit 387's role as a candidate implementer that did not initiate queries or make representations in connection with individual record exchanges defeats Plaintiffs' fraud, aiding-and-abetting, and contract claims as a matter of law, and whether Plaintiffs can establish the requisite reliance and causation.

6. The permissible uses of patient records obtained through the Carequality and TEFCA interoperability frameworks and whether the CC Defendants' queries were made for treatment purposes within the meaning of the Carequality and TEFCA frameworks.

7. Whether Plaintiffs' fraud, aiding-and-abetting, and California Business & Professions Code § 17200 claims satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

8. Whether Plaintiffs fail to state a claim under the Computer Fraud and Abuse Act where Defendants had authorized access to the networks and Plaintiffs allege only a subsequent misuse of data or violations of contractual use restrictions.

JOINT RULE 26(f) REPORT

9. Whether Plaintiffs have alleged sufficient facts to establish the personal liability of the individual Defendants for the alleged conduct of the corporate entities.

10. Whether Plaintiffs properly joined the defendants in this lawsuit under Rule 20 of the Federal Rules of Civil Procedure.

**D.      Parties, Evidence, Etc.**

1.      <u>Plaintiffs</u>

a.      *Entities*

- Plaintiff Epic Systems Corporation and its subsidiary Epic Nexus, Inc.;
- Plaintiff OCHIN, Inc. and the following subsidiaries:
    - OSIS, Inc.; and
    - OCHIN Practice Services;
- Plaintiff Reid Hospital & Health Care Services, Inc.;
    - Reid Health Ambulance, Inc.;
    - Reid Physician Associates, Inc.;
    - Reid Health Properties, LLC;
    - South 37th Street Properties, LLC; and
    - Reid Anesthesia, LLC;
- Plaintiff Trinity Health Corporation and the following subsidiaries:[2]
    - Allegany Franciscan Ministries, Inc.;
    - Global Health Ministry (d/b/a Global Health Volunteers);
    - Holy Cross Health, Inc.;
    - Holy Cross Hospital, Inc.;
    - Loyola University Health System;
    - Maxis Health System;
    - Mercy Care Center;
    - Mercy Health Network, Inc. d/b/a MercyOne;

---

[2] In addition to the subsidiaries identified herein, Trinity Health Corporation has 92 hospitals and at least 100 healthcare facilities, each a separate entity and subsidiary of Trinity Health Corporation, which it can identify for the Court as needed.

- o Mercy Health Services-Iowa, Corp.;

- o Mercy Health System of Chicago;

- o Michigan Co-Tenancy Laboratory;

- o Mount Carmel Health System;

- o Nuco Health LLC;

- o Pittsburgh Mercy Health System, Inc.;

- o Premier Health Holdings, LLC;

- o Saint Agnes Medical Center;

- o Saint Alphonsus Health System, Inc.;

- o Saint Joseph Regional Medical Center, Inc.;

- o Saint Joseph's Health System, Inc.;

- o St. James Mercy Health System (New York);

- o St. Joseph's Health, Inc.;

- o St. Peter's Health Partners;

- o THPH Urgent Care, LLC;

- o Trinity Assurance, LTD;

- o Trinity Continuing Care Services;

- o Trinity Health ACO, Inc.;

- o Trinity Health Georgia, Inc.;

- o Trinity Health Of New England Corporation, Inc.;

- o Trinity Health of the Mid-Atlantic Region;

- o Trinity Health PACE;

- o Trinity Health Pharmacy Services, LLC;

- o Trinity Health-Michigan; and

- o Trinity Home Health Services;

- Plaintiff UMass Memorial Health Care, Inc. and the following subsidiaries[3]:

---

[3] In addition to the subsidiaries identified herein, UMass Memorial Health Care, Inc. holds interests in additional joint ventures in the healthcare space that it can identify for the Court as needed.

JOINT RULE 26(f) REPORT

- o Catalysis, Inc.;
- o Central Mass Health Holdings LLC;
- o Central Mass Health LLC (HMO);
- o Central New England HealthAlliance, Inc.;
- o Community Healthlink, Inc.;
- o Harrington Healthcare Provider Organization, Inc.;
- o Harrington Physician Services, Inc.;
- o HealthAlliance Home Health and Hospice, Inc.;
- o Milford Regional Healthcare Foundation, Inc.;
- o Milford Regional Physician Group, Inc.;
- o Quinsigamond Realty, LLC;
- o UMass Memorial Accountable Care Organization, Inc.;
- o UMass Memorial Community Entities, Inc.;
- o UMass Memorial Health Alliance-Clinton Hospital, Inc.;
- o UMass Memorial Health Care, Inc.;
- o UMass Memorial Health – Harrington Hospital, Inc.;
- o UMass Memorial Health – Harrington, Inc.;
- o UMass Memorial Health – Milford Regional Medical Center, Inc.;
- o UMass Memorial Health Ventures, Inc.;
- o UMass Memorial Medical Center, Inc.;
- o UMass Memorial Medical Group, Inc.; and
- o UMass Memorial Realty, Inc.;
- o Central Massachusetts Comprehensive Cancer Center, LLC;
- o Charlton 10 N. Main St., LLC;
- o UMass Memorial Investment Partnership, LLC; and
- o Commonwealth Professional Assurance Company, Ltd.

10

JOINT RULE 26(f) REPORT

b. *Witnesses*

Based on information currently known to Plaintiffs, Plaintiffs identify the following potential percipient witnesses:

- Plaintiffs and their current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Defendants and their current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Former Defendant GuardDog and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Carequality and its current or former directors, officers, employees, agents, board members, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- The Sequoia Project and its current or former directors, officers, employees, agents, board members, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Nationwide Healthcare Provider Corp. and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- LL Medical Clinic and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Mammoth Global, Inc. and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Integritort and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Metriport and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;

JOINT RULE 26(f) REPORT

- Mass Tort Medical Consultants and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Litigation Operations, Inc. and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Chronicle Bidco Inc. d/b/a Lexitas and its current or former directors, officers, employees, agents, and affiliates with knowledge of the allegations in Plaintiffs' Complaint;
- Kunal Lodaya;
- Ami Sangani;
- Gary Chan;
- Shikha Patel;
- Roshni Sangvi;
- Deena Jarba; and
- Any witnesses identified by Defendants or third parties.

    c. *Key Documents*

- Carequality and TEFCA agreements and policies;
- Documents related to actual or alleged treatment provided by any of the Defendants;
- Documents related to Defendants selling, transferring, or otherwise disclosing patient data or patient records obtained through the Carequality and TEFCA frameworks to any other Defendant or third party;
- Documents evidencing the relationships between the Defendants;
- Documents related to the Defendants' actual, potential, or attempted access to, activities on, and/or participation in the Carequality and TEFCA interoperability frameworks;
- Documents related to the process by which the Defendants were onboarded to the Carequality and TEFCA interoperability frameworks;

JOINT RULE 26(f) REPORT

- Documents related to any auditing, vetting, investigating, and/or monitoring of the Defendants with respect to the Carequality and TEFCA interoperability frameworks;
- Defendants' policies and procedures regarding compliance with HIPAA, privacy laws, and Carequality and TEFCA policies, contracts, and procedures;
- Patient authorizations for patient records obtained by, for, or on behalf of any Defendant through the Carequality and/or TEFCA interoperability frameworks;
- Documents related to actual or alleged misuse of or misconduct related to the Carequality and/or TEFCA interoperability frameworks by or on behalf of any Defendant;
- Documents related to any actual or alleged misuse, mishandling, or unauthorized disclosure of patient data or patient records by or on behalf of any Defendant; and
- Communications between the parties concerning the allegations in Plaintiffs' Complaint; and
- Any Documents identified by Defendants or third parties.

    2.   <u>Defendants</u>

      a.  *Witnesses*

Based on information currently known to Defendants, Defendants identify the following potential percipient witnesses:

- Plaintiffs and their current and former directors, officers, employees, agents, and affiliates with knowledge of the allegations in the Complaint;
- Health Gorilla employees responsible for onboarding, monitoring, and investigating the CC Defendants, and for communicating with Epic, Carequality, and the Sequoia Project regarding those defendants;
- Bob Watson;
- Justine Hanna;
- Representatives of each CC Defendant with knowledge of their representations to Health Gorilla at onboarding and thereafter, and their actual use of patient records;

- Representatives of the Unit 387 Defendants with knowledge of their communications to Plaintiffs, any Defendant, or third party regarding onboarding, implementing any downstream connections, and the receipt, use, and/or distribution of any patient health information or records, including but not limited to Ms. Manak;

- Representatives of Health Gorilla with knowledge of their communications with the CC Defendants;

- Representatives of Carequality and The Sequoia Project with knowledge of the investigation of CC Defendants, the dispute resolution process, and any findings or determinations regarding those defendants;

- Health systems that participated in Health Gorilla's investigation of CC Defendants but are not plaintiffs in this action;

- Representatives of Epic with knowledge of Epic's complaints regarding the CC Defendants and the Unit 387 Defendants, Epic's decision not to participate in Health Gorilla's investigation of those complaints, its communications with Health Gorilla regarding CC Defendants, its communications with healthcare providers and patients regarding the CC Defendants, its communications with Plaintiffs Reid, Trinity, UMass Memorial Health (hereinafter the "Hospital Plaintiffs") regarding this lawsuit, the basis for the costs it claims as damages and for its claim for reputational damages;

- Representatives of OCHIN with knowledge of their communications with Epic regarding Defendants and this lawsuit, the basis for the costs they claim as damages and for their claim for reputational damages;

- Representatives of the Hospital Plaintiffs with knowledge of their communications with Epic an OCHIN regarding this lawsuit, the basis for the costs they claim as damages and for their claim for reputational damages;

14

- Representatives of law firms and other third parties alleged to have received patient records from CC Defendants and the Unit 387 Defendants, regarding the purpose of those transfers;
- Any witnesses identified by Plaintiffs

    b.    *Key Documents*

- Onboarding applications, representations, due diligence materials, and agreements between Health Gorilla and each CC Defendant, including each CC Defendant's representations regarding treatment purpose;
- Communications between Health Gorilla and each CC Defendant regarding their services, treatment purposes, and patient record queries;
- Health Gorilla's policies and procedures governing vetting, onboarding, monitoring, and suspension of Carequality Connections and TEFCA Participants;
- Documents reflecting Health Gorilla's investigation of CC Defendants beginning October 2025, including communications with Carequality and the Sequoia Project;
- Epic's Communications regarding its concerns about CC Defendants from October 2024 to January 2026, including Epic's decision not to participate in Health Gorilla's investigation;
- Carequality and Sequoia Project records relating to their investigation of CC Defendants and any findings or determinations;
- Documents reflecting the CC Defendants' actual business purposes and their communications with law firms or other third parties alleged to have received patient records;
- Documents reflecting Epic's commercial interests in the Carequality and TEFCA frameworks and the basis for the costs it claims as damages;
- Any communications regarding the drafting or interpretation of the dispute resolution provisions of the CCA and Common Agreement, including Epic's involvement in drafting those provisions;

15

- Epic's communications with healthcare providers and patients regarding the CC Defendants;
- Communications between Epic and the Hospital Plaintiffs regarding this lawsuit;
- Documents relating to Plaintiffs' claimed damages;
- Any applicable HIPPA waiver forms and business associates agreements;
- Any documents identified by Plaintiffs

**E.    Insurance**

Neither Plaintiffs nor Defendants are currently aware of any applicable insurance policies.  Defendants' investigation is ongoing.

**F.    Magistrate Judge**

Neither Plaintiffs nor Defendants consent to a Magistrate Judge presiding over this action.

**G.    Discovery**

  1.    Plaintiffs

**Current State of Discovery.**  The first motion to dismiss in this action was filed on February 26, 2026 (ECF No. 56).  Pursuant to Paragraph 5 of the Court's February 26, 2026 Order Setting Scheduling Conference and Section II.A of the Court's Initial Standing Order (ECF No. 27), on March 3, 2026, Plaintiffs served their first set of Requests for Production on all Defendants except SelfRx, who had not yet been served as of that date. Plaintiffs subsequently served SelfRx with Plaintiffs' first set of Requests for Production on March 31, 2026 (after SelfRx waived service of the summons and Complaint).  The deadline for all Defendants except SelfRx to respond to Plaintiffs' first set of Requests for Production was April 2, 2026.  SelfRx's deadline to respond to Plaintiffs' first set of Requests for Production is April 30, 2026.

On March 11, 2026, Plaintiffs also served third-party subpoenas for documents on Nationwide Healthcare Provider Corp., Litigation Operations, Inc., and Chronicle Bidco Inc. d/b/a Lexitas.  The deadline for responses to Plaintiffs' third-party subpoenas was March 31, 2026.

**Current Discovery Issues.** Plaintiffs' position is that discovery should not be stayed pending Defendants' motions to dismiss and that, pursuant to Paragraph 5 of the Court's February 26, 2026 Order Setting Scheduling Conference and Section II.A of the Court's Initial Standing Order, Defendants should be required to participate in discovery. Defendants did not move for a stay of discovery despite being served with discovery in early March and their receipt of this Court's February 26, 2026 Order Setting Scheduling Conference. Defendants should not now be granted a discovery stay.

Former Defendant GuardDog has produced documents in this action, and Plaintiffs understand that GuardDog has additional documents that it is willing to produce in response to Plaintiffs' document requests. On March 22, 2026, GuardDog informed Plaintiffs' counsel that GuardDog would not produce those documents in view of objections raised by Defendants Health Gorilla and Unit 387 that the documents are protected from disclosure by two separate non-disclosure agreements ("NDAs") between (1) Health Gorilla and GuardDog and (2) Unit 387 and GuardDog's predecessor entity, Critical Care Nurse Consulting. Plaintiffs understand that Defendants Health Gorilla and Unit 387 believe these documents should not be produced without a protective order and not until the Court resolves the currently pending motions to dismiss. Accordingly, if the parties are unable to informally resolve the issue with the NDAs, Plaintiffs anticipate seeking Magistrate Judge Oliver's assistance in resolving this dispute, hopefully via Magistrate Judge Oliver's Informal Discovery Conference procedures.

**Plaintiffs' Proposed Detailed Discovery Plan.** Plaintiffs propose the following discovery deadlines:

- ***Fact Discovery***. The Parties will substantially complete their document productions by **November 23, 2026**, and fully complete their document productions by **December 18, 2026**. The Parties will complete fact discovery, including depositions of parties and fact witnesses, by **May 6, 2027**.

17

- ***Expert Discovery***.  The Parties will disclose initial expert reports on **May 27, 2027**, and rebuttal expert reports on **July 1, 2027**.  The Parties will complete expert discovery, including expert depositions, by **August 5, 2027**.

Plaintiffs' Proposed Schedule of Pretrial and Trial Dates, which includes the above proposed deadlines, is appended hereto as **Exhibit A**.

**Other Discovery Issues Pursuant to Rule 26.**  Plaintiffs provide the following information as required by Rule 26, including proposed modifications to the discovery limits set out in Rule 26 and responses to Defendants' proposed modifications:

- Plaintiffs propose that the parties exchange initial disclosures on **April 23, 2026**.  Plaintiffs do not anticipate any changes to the timing, form, or requirement for such disclosures.

- Plaintiffs propose that the parties agree to meet and confer in good faith regarding a stipulated protocol for discovery of electronically stored information.

- Plaintiffs propose that the parties agree to meet and confer in good faith regarding a stipulated protective order for the disclosure of any confidential information in this case and that non-confidential information can and should be produced prior to the entry of the protective order, contrary to Defendants' position.

- Plaintiffs propose that the parties agree to meet and confer in good faith regarding the timing for production and form of privilege logs.  Plaintiffs propose that an initial privilege log be served on **November 30, 2026**, a week after the date for substantial completion of document productions, with supplemental privilege logs served on **January 4, 2027**.

- Plaintiffs propose that no privilege log should be required for attorney-client communications or work product material that post-dates the commencement of this action.

- Besides the orders identified herein, Plaintiffs do not believe that any other orders need to be entered by the Court under Rule 26(c), Rule 16(b), or Rule 16(c) at this time.

18

- Plaintiffs request that the number of depositions permitted per side be expanded from 10 depositions per side to 30 fact depositions per side, and as many expert depositions as necessary to permit depositions of all proposed experts in this action. Plaintiffs believe that this change is necessary due to the number of parties and witnesses (party and non-party) with relevant information.

- Plaintiffs do not agree with Defendants' proposed limitation on the number of interrogatories (25 per side, rather than per party), which is unwarranted and prejudicial.  Plaintiffs also believe that the one-sided requirement that Plaintiffs serve all of their interrogatories in a single shot (i.e., all 25 interrogatories in one set) is unwarranted, unnecessary, and prejudicial.  The parties should each be given 25 interrogatories to be served in the order and at the time that they each deem appropriate.

  2.    Defendants

**Agreed Matters.** The parties agree on the following discovery matters: (a) the parties will meet and confer in good faith on a stipulated ESI protocol; (b) the parties will meet and confer on a stipulated protective order, and no confidential documents will be produced absent its entry; (c) no privilege log will be required for attorney-client communications or work product generated after commencement of this action; (d) initial privilege logs will be served one week after substantial completion of productions, with supplemental logs one week after full completion; and (e) this case cannot be handled on an expedited basis.

**Timing Issues.** The core procedural dispute on discovery at this time is whether it should continue at all until the Court rules on the various motion to dismiss. As detailed below, Defendants respectfully request that the scheduling order and the initiation of merits discovery be deferred until after the Court's ruling on the pending motions to dismiss, currently set for hearing April 23, 2026 and May 21, 2026. The pending motions explain how Plaintiffs are attempting to circumvent mandatory, contractually-obligated dispute resolution procedures established by both the Carequality Connected Agreement

JOINT RULE 26(f) REPORT

(§ 20.1) and the TEFCA Common Agreement (§ 15.1). By proceeding here, Plaintiffs are cutting out the very networks they purport to protect and preventing them from overseeing the exchange of information and ultimate determination of whether or not any Defendant violated the respective network rules.

Indeed, the filing of this litigation is explicitly a material breach of the very agreements on which Plaintiffs rely. Thus, it would be highly prejudicial and unfair to impose the substantial burdens and costs of broad merits discovery across 15 defendants for a case that should never have been filed in this forum. The pending motions thus raise unique threshold jurisdictional and standing issues that are atypical of the ordinary case and which are capable of narrowing or eliminating nearly all claims and parties.

Given these unique issues, Defendants propose the following schedule, which is keyed to the Court's ruling on the motions to dismiss to ensure the benefit of those threshold legal determinations. In case the Court instead prefers to review a schedule involving set dates, however, Defendants propose such a schedule in the alternative below. However, if the case is not dismissed, one or more Defendants may assert counterclaims, which may materially affect this schedule.

**<u>Defendants' Proposed Schedule With Motion to Dismiss-Dependent Deadlines</u>**

- Protective Order and ESI Protocol: To be negotiated and filed within 30 days of any ruling on the motions to dismiss
- Initial Disclosures: 14 days after entry of the protective order
- Substantial Completion of Document Productions and Service of Initial Privilege Logs: 7 months after the ruling on the motions to dismiss
- Full Completion of Document Productions and Service of Supplemental Privilege Logs: 8 months after the ruling on the motions to dismiss
- Fact Discovery Cutoff: 9 months after the ruling on the motions to dismiss
- Expert Disclosures (Opening): 10 months after the ruling on the motions to dismiss
- Expert Disclosures (Rebuttal): 12 months after the ruling on the motions to

JOINT RULE 26(f) REPORT

dismiss

- Expert Discovery Cutoff: 13 months after the ruling on the motions to dismiss

- Dispositive Motion Cutoff: 15 months after the ruling on the motions to dismiss

**Defendants' Alternative Proposed Schedule**

- Protective Order and ESI Protocol: July 16, 2026

- Initial Disclosures: July 30, 2026

- Substantial Completion of Document Productions and Service of Initial Privilege Logs: January 16, 2027

- Full Completion of Document Productions and Service of Supplemental Privilege Logs: February 16, 2027

- Fact Discovery March 16, 2027

- Expert Disclosures (Opening): April 16, 2027

- Expert Disclosures (Rebuttal): June 16, 2027

- Expert Discovery Cutoff: July 16, 2027

- Dispositive Motion Cutoff: September 16, 2027

**Number of Depositions.** Defendants believe that the default limit of 10 depositions per side is appropriate and sufficient.

**Limits on Written Discovery.** To ensure discovery is proportional to the needs of the case, Defendants propose a symmetrical limit on interrogatories: each side (Plaintiffs and Defendants) may serve a single set of 25 interrogatories to be answered by the opposing side. This prevents duplicative and unnecessary requests across the numerous combined entities while focusing discovery on the core legal issues.

**H.    Motions**

1.    <u>Plaintiffs</u>

Plaintiffs may seek to add parties or claims, depending on the information revealed in discovery.  Plaintiffs would seek to amend their Complaint to the extent that is required following this Court's resolution of the currently pending motions to dismiss.

2.    <u>Defendants</u>

Several Defendants' Motions to Dismiss pursuant to Rule 12(b)(6) are fully briefed and set for hearing on April 23, 2026. Unit 387 and Daniel Baker recently filed Rule 12(b)(6) motions set for hearing on May 21 2026, and Max Toovey will move to dismiss by April 15, 2026. The RavillaMed Defendants have also filed a motion to sever.

Defendants may file motions for summary judgment following the close of fact discovery on any surviving claims. Defendants reserve the right to move to sever, add parties or assert cross-claims as discovery develops, including with respect to representations made to Health Gorilla by the CC Defendants at onboarding and thereafter.

### I.      Class Certification

Not applicable.

### J.      Dispositive Motions

#### 1.      Plaintiffs

Plaintiffs propose the following deadline for filing dispositive motions: **September 9, 2027**.   *See* Plaintiffs' Proposed Schedule of Pretrial and Trial Dates Worksheet submitted herewith (Ex. A).  At present, Plaintiffs anticipate that the following issues may be capable of resolution via dispositive motion:  (1) the permissible uses of patient records obtained through the Carequality and TEFCA interoperability frameworks; (2) the purpose for which patient records were obtained through the Carequality and TEFCA interoperability frameworks; and (3) the existence and meaning of the relevant contractual terms.

#### 2.      Defendants

Defendants anticipate that the following issues may be capable of resolution via dispositive motion following the close of fact discovery: (1) whether this Court or a jury in this case can determine what is a permissible use of patient records obtained through Carequality and TEFCA interoperability frameworks, given that the concept of what qualifies as a permissible use is defined and enforced by Carequality and the TEFCA RCE, and all parties here have agreed that only those entities can make that determination; (2) whether Plaintiffs materially breached the Carequality and TEFCA agreements by filing

JOINT RULE 26(f) REPORT

this lawsuit; (3) whether Health Gorilla's role as a technical infrastructure provider defeats liability as a matter of law on the fraud and aiding-and-abetting claims; (4) whether any Plaintiff can establish the reliance and causation elements of its fraud claims against Defendants; (5) whether the Unit 387 Defendants' and CC Defendants' access of the interoperability networks was consistent with the requirements of Carequality and TEFCA; (6) whether Plaintiffs can establish cognizable injury in fact; (7) whether Plaintiffs can establish the various factual predicates of their claims; and (8) whether the individual Defendants can be held personally liable for the alleged conduct of the corporate entities. Defendants propose that the deadline for dispositive motions be set consistent with the schedule set forth in Section G above.

### K. Settlement / Alternative Dispute Resolutions (ADR)

#### 1. <u>Plaintiffs</u>

Prior to the filing of Plaintiffs' Complaint, Plaintiffs attempted to resolve the Defendants' misuses of the Carequality and TEFCA interoperability frameworks on which Plaintiffs' claims are based. Since the action was filed, the Parties have not engaged in settlement discussions. Plaintiffs' settlement preference is private mediation.

#### 2. <u>Defendants</u>

Defendants have not engaged in settlement discussions with Plaintiffs. Defendants note that the Carequality Connected Agreement (§ 20.1) and the TEFCA Common Agreement (§ 15.1) each require mandatory non-binding dispute resolution as a precondition to litigation; Plaintiffs bypassed these processes before filing this action. Defendants reserve all rights with respect to those obligations. If the case is not dismissed for the contractually required dispute resolution processes, Defendants' ADR preference is to conduct private mediation.

### L. Pretrial Conference and Trial

#### 1. <u>Plaintiffs</u>

Plaintiffs propose a pre-trial conference date of **October 28, 2027**, and a trial date of **November 15, 2027**.

2.    Defendants

Defendants propose that pretrial conference and trial dates be set following resolution of the pending dispositive motions. Defendants' proposed schedule, if the case proceeds past the pending motions to dismiss, is set forth in Section G above.

**M.    Trial Estimate**

1.    Plaintiffs

Plaintiffs anticipate approximately three (3) weeks will be needed for trial. Plaintiffs presently anticipate calling approximately 30 witnesses; however, these numbers are subject to change as discovery and investigation continue.

2.    Defendants

Defendants estimate a jury trial of approximately two weeks, assuming all current claims and parties proceed. The appropriate trial length will depend materially on the outcome of the pending motions to dismiss and any subsequent summary judgment practice, as well as any counterclaims asserted and the Ravilla Defendants' motion to sever.

**N.    Trial Counsel**

1.    Plaintiffs

Plaintiffs' case will be tried by Anthony T. Pierce (*pro hac vice*), Marshall L. Baker, Caroline L. Wolverton (*pro hac vice*), Laura Hill (*pro hac vice* application forthcoming), and Lauren E. Huennekens.  Plaintiffs reserve the right to modify these designations.

2.    Defendants

Health Gorilla's case will be tried by Adam Wolfson, Ryan Landes, David M. Elihu, and Julia S. Choe of Quinn Emanuel Urquhart & Sullivan, LLP.

The RavillaMed Defendants will be represented at trial by Brook B. Andrews (*pro hac vice*), James C. Wald, and Joshua Redelman (*pro hac vice*) of Nelson Mullins Riley & Scarborough LLP.

24

JOINT RULE 26(f) REPORT

The Mammoth Defendants will be represented at trial by Ekwan Rhow, Sharon Mayer, Alex Tran and Melissa Decker of Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP.

Max Toovey will be represented at trial by Nithin Kumar of Kingfisher Law APC.

The Unit 387 Defendants will be represented at trial by Mark L. Johansen, Neakzaad L. Horriat, Chris Petersen, and Alycia Tulloch of Blank Rome LLP.

Daniel Baker will be represented at trial by Peter Bronstein of The Law Office of Peter C. Bronstein.

Defendants reserve the right to update and modify these designations.

### O.    Independent Expert or Master

The Parties do not anticipate the need for an independent expert or special master at this time.

### P.    Other Issues

Several Defendants may assert counterclaims. The Parties do not anticipate any other case-specific issues or complexities at this time.

Dated:  April 9, 2026

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: */s/ Lauren E. Huennekens*
　　Lauren E. Huennekens
　　Marshall L. Baker
　　Anthony T. Pierce (*pro hac vice*)
　　Mark R. Herring (*pro hac vice*)
　　Caroline L. Wolverton (*pro hac vice*)

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services, Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

[*Additional signatures listed on following page*]

25

Dated:  April 9, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:  */s/ Danielle Schrader-Frechette*
      Danielle Shrader-Frechette
      Adam Wolfson
      Ryan Landes
      David M. Elihu
      Julia S. Choe
      Jenny Braun

*Attorneys for Defendant*
*Health Gorilla, Inc.*

Dated:  April 9, 2026

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:  */s/ James C. Wald*
      James C. Wald
      Brook B. Andrews
      Joshua Redelman

*Attorneys for Defendants*
*RavillaMed PLLC, Avinash Ravilla, Shere Saidon, and LlamaLab, Inc.*

Dated:  April 9, 2026

**BIRD, MARELLA, RHOW, LINCENBERG, BROOKS & NESSIM, LLP**

By:  */s/ Sharon Meyer*
      Sharon Mayer
      Ekwan E. Rhow
      Alexander H. Tran
      Melissa C. Decker

*Attorneys for Defendants*
*Unique Medi Tech LLC d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc., and Ryan Hilton*

Dated:  April 9, 2026

**LAW OFFICE OF PETER BRONSTEIN**

By:  */s/ Peter Bronstein*
      Peter Bronstein

*Attorneys for Defendant*
*Daniel Baker*

[*Additional signatures listed on following page*]

JOINT RULE 26(f) REPORT

Dated:  April 9, 2026              **KINGFISHER LAW APC**

                                   By:  */s/ Nithin Kumar*
                                         Nithin Kumar

                                   *Attorneys for Defendant*
                                   *Max Toovey*


Dated:  April 9, 2026              **BLANK ROME LLP**

                                   By:  */s/ Mark L. Johansen*
                                         Mark L. Johansen
                                         Christopher Petersen
                                         Alycia S. Tulloch
                                         Neakzaad Horriat

                                   *Attorneys for Defendants*
                                   *Unit 387, LLC, Hoppr, LLC, and Meredith Manak*

JOINT RULE 26(f) REPORT

## **Exhibit A**

Plaintiffs' Proposed Schedule of Pretrial and Trial Dates

| Event | Date |
|---|---|
| Deadline to Substantially Complete Document Productions | November 23, 2026 |
| Deadline to Complete Document Productions | December 18, 2026 |
| Fact Discovery Cutoff, Including Deadline to Complete Fact Depositions | May 6, 2027 |
| Expert Disclosure Deadline (Initial) | May 27, 2027 |
| Expert Disclosure Deadline (Rebuttal) | July 1, 2027 |
| Expert Discovery Cutoff, Including Deadline to Complete Expert Depositions | August 5, 2027 |
| Last Date to File Dispositive Motions | September 9, 2027 |
| Final Pretrial Conference | October 28, 2027 |
| Trial | November 15, 2027 |

28

JOINT RULE 26(f) REPORT

## <u>ATTORNEY ATTESTATION</u>

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatures listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: April 9, 2026         By: */s/ Lauren E. Huennekens*
                                       Lauren E. Huennekens
                                       **AKIN GUMP STRAUSS HAUER & FELD LLP**

*Counsel for Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services Inc. Trinity Health Corporation, and UMass Memorial Health Care, Inc.*