Nithin Kumar (SBN 300607)
  nithin@kingfisherlawapc.com
KINGFISHER LAW APC
P.O. Box 492415
Los Angeles, CA 90049-9998
Telephone: (408) 930-3580

Attorney for Defendant Max Toovey

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., | Case No. 2:26-cv-00321-FMO-RAO |
| Plaintiffs, | **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| v. | |
| Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, | *[Filed concurrently with Notice of Motion; Declaration of Nithin Kumar; and [Proposed] Order]* |
| Defendants. | Date:    May 21, 2026<br>Time:    10:00 a.m.<br>Dept.:    6D<br>Judge:   Hon. Fernando M. Olguin |

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| **I.** | **INTRODUCTION** …………………………………………….. | 7 |
| **II.** | **RELEVANT FACTUAL ALLEGATIONS** …………………………... | 8 |
| **III.** | **LEGAL STANDARD** ………………………………………….. | 10 |
| **IV.** | **ARGUMENT** …………………………………………………… | 11 |
|   | A.   The Complaint Fails to Plead a Claim for Fraud …………………… | 11 |
|   | 1.   The Only Specific Representation Attributed to Toovey Is Not Alleged to Be False and Cannot Support a Claim for Fraud …... | 11 |
|   | 2.   Toovey's Alleged Omission Is Not Actionable as Plaintiffs Fail to Allege He Owed Any Affirmative Duty of Disclosure ……... | 13 |
|   | 3.   The Generalized Allegations About the Mammoth Defendants Do Not Support a Claim for Fraud Against Toovey …………… | 14 |
|   | 4.   Toovey's Alleged Omission Is Not Actionable as Plaintiffs Fail to Allege He Owed Any Affirmative Duty of Disclosure ……... | 17 |
|   | B.   The Complaint Fails to Plead a Claim Against Toovey for Aiding and Abetting Fraud …………………..……..……..……..……………. | 20 |
|   | C.   The UCL Claim Should Also Be Dismissed ……..…..……..….…... | 22 |
|   | D.   Toovey Joins the Other Defendants Arguments in Support of Dismal of the Complaint ……..…..……..……..……..……..………. | 23 |
| **IV.** | **CONCLUSION** …………………………………………………… | 25 |

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*
    824 F. Supp. 2d 1164 (C.D. Cal. 2011) ........................................................ 18, 20

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ........................................................................... 4, 17, 18

*Axonic Cap. LLC v. Gateway One Lending & Fin., LLC*
    2018 WL 11355034 (C.D. Cal. Dec. 18, 2018) ......................................... 7, 17-20

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ........................................................................... 10, 18

*Bhatia v. Silvergate Bank*
    725 F. Supp. 3d 1079 (S.D. Cal. 2024) ................................................................ 10

*Bly-Magee v. California*
    236 F.3d 1014 (9th Cir. 2001) ............................................................................. 16

*Bodenburg v. Apple Inc.*
    146 F.4th 761 (9th Cir. 2025) .............................................................................. 12

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*
    637 F.3d 1047 (9th Cir. 2011) ............................................................................. 15

*Cal. Inst. of Tech. v. City of Pasadena*
    2024 WL 6938009 (C.D. Cal. Aug. 23, 2024) .................................................... 23

*Casey v. U.S. Bank Nat'l Ass'n*
    127 Cal. App. 4th 1138 (2005) ............................................................................ 20

*Columbia Cas. Co. v. Cottage Health Sys.*
    2015 WL 4497730 (C.D. Cal. July 17, 2015) ..................................................... 25

*Cooper v. Pickett*
    137 F.3d 616 (9th Cir. 1997) ............................................................................... 12

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

*Davis v. Cnty. of Los Angeles*
    2016 WL 10647191 (C.D. Cal. Mar. 9, 2016)......................................................16

*Dix v. Nova Benefit Plans, LLC*
    2015 WL 12859221 (C.D. Cal. Apr. 28, 2015) ...................................................24

*Doe v. Taro Pharm. U.S.A., Inc.*
    2025 WL 3280257 (N.D. Cal. Nov. 25, 2025) ....................................................23

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
    751 F.3d 990 (9th Cir. 2014)..............................................................................18

*Engalla v. Permanente Med. Grp., Inc.*
    15 Cal. 4th 951 (1997).................................................................................11, 12

*Franklin v. Cmty. Reg'l Med. Ctr.*
    998 F.3d 867, (9th Cir. 2021).............................................................................25

*Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*
    2021 WL 4027375 (C.D. Cal. May 27, 2021)....................................................13

*Goodman v. Kennedy*
    18 Cal.3d 335 (1976) .........................................................................................13

*Great Pac. Sec. v. Barclays PLC*
    2016 WL 11502178 (C.D. Cal. Oct. 19, 2016)...................................................13

*Groff v. Keurig Green Mountain, Inc.*
    2024 WL 2335634 (C.D. Cal. Mar. 18, 2024).....................................................10

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*
    485 F.3d 450 (9th Cir. 2007)..............................................................................25

*Howard v. Super. Ct.*
    2 Cal. App. 4th 745 (1992) .................................................................................20

*In re First Alliance Mortg. Co.*
    471 F.3d 977 (9th Cir. 2006)........................................................................20, 21

4

*In re Gilead Scis. Sec. Litig.*
    536 F.3d 1049 (9th Cir. 2008)................................................................... 10

*In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig.*
    867 F. Supp. 2d 407 (S.D.N.Y. 2012).................................................... 17

*In re Nexus 6P Prods. Liab. Litig.*
    293 F. Supp. 3d 888 (N.D. Cal. 2018)............................................... 14, 23

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)................................................................ 10, 11

*Kelly v. Beazer Homes USA, Inc.*
    552 F. App'x 666 (9th Cir. 2014) ....................................................... 22

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*
    858 F.2d 509 (9th Cir. 1988)................................................................ 25

*Melrose Place Holdings v. Socotra Opportunity Fund, LLC*
    2022 WL 3013226 (C.D. Cal. May 31, 2022)....................................... 16

*Moore v. Kayport Package Express, Inc.*
    885 F.2d 531 (9th Cir. 1989)............................................................... 14

*Moses v. Innoprise Software*
    2013 WL 6019536 (N.D. Cal. Nov. 13, 2013) ..................................... 17

*MSP Recovery Claims, Series, LLC v. Avanir Pharms., Inc.*
    2022 WL 17220647 (C.D. Cal. Oct. 20, 2022) .................................... 14

*Neilson v. Union Bank of Cal., N.A.*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................... 20, 21

*N.Z. v. Fenix Int'l Ltd.*
    2025 WL 3627591 (C.D. Cal. Dec. 12, 2025)...................................... 25

*Petersen v. Allstate Indem. Co.*
    281 F.R.D. 413 (C.D. Cal. 2012)......................................................... 12

5

*Rasmussen v. Apple Inc.*
 27 F. Supp. 3d 1027 (N.D. Cal. 2014)........................................................13

*Salameh v. Tarsadia Hotel*
 726 F.3d 1124 (9th Cir. 2013)..................................................................11

*Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*
 2019 WL 2569545 (N.D. Cal. June 21, 2019)........................................25

*Semegen v. Weidner*
 780 F.2d 727 (9th Cir. 1985).....................................................................17

*Shah v. JPMorgan Chase Bank N.A.*
 2025 WL 882243 (C.D. Cal. Mar. 4, 2025)...............................................23

*Su v. Henry Glob. Consulting Grp.*
 2022 WL 19392 (C.D. Cal. Jan. 3, 2022).............................................20, 21

*Swartz v. KPMG LLP*
 476 F.3d 756 (9th Cir. 2007)..........................................................1, 5, 8, 10

*United States v. Peterson*
 2012 WL 315443 (E.D. Wash. Feb. 1, 2012) ............................................10

*Vess v. Ciba-Geigy Corp. USA*
 317 F.3d 1097 (9th Cir. 2003)........................................................ 10, 11, 13

*Wanetick v. Mel's of Modesto, Inc.*
 811 F. Supp. 1402 (N.D. Cal. 1992) ..........................................................15

*Webb v. SolarCity Corp.*
 884 F.3d 844 (9th Cir. 2018)...........................................................7, 17-19

**Rules and Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................................22

Fed. R. Civ. P. 12(b)(6) ...................................................................................10

Fed. R. Civ. P. 9(b)................................................................................ *Ibid.*

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

## I.  INTRODUCTION

This sprawling dispute involves some of the largest members of the electronic health records ("EHR") industry and their fight over access to the interoperability networks used by tens of thousands of medical providers nationwide to exchange billions of EHRs every month. (Compl. ¶¶ 4, 6.) It is also a blatant attempt by Epic, the most dominant player in the EHR industry, to use our legal system as a means of stifling innovation, weakening interoperability networks, and attacking its competitors with disingenuous allegations that only tell half the story.

Caught up in this battle—apparently for no other reason than his role as a senior marketing executive and an unremarkable advertising letter he sent—is individual defendant Max Toovey. According to Plaintiffs, Toovey is an "experienced individual in the [EHR] industry," employed by Defendant Mammoth Rx, Inc., and a "leading member[] of the 'Mammoth Family.'" (*Id.* ¶¶ 42, 167, 223.) The Complaint alleges Toovey "acted in concert" with the other Mammoth Defendants, "carried out [] bad acts," "provid[ed] cover for the false representations" and "w[as] critically integral to the success of Mammoth's scheme." (*Id.* ¶¶ 170, 223, 264.)

But the Complaint alleges little else as to Toovey and certainly not any additional facts. As explained in this Motion, Plaintiffs' threadbare, conclusory allegations are clearly insufficient to sustain the claims for fraud asserted against Toovey in his individual capacity. The Complaint does not identify a single misrepresentation attributed to Toovey. Instead, it engages in impermissible group pleading and relies solely on conclusory allegations that both this Court and the Ninth Circuit have repeatedly found to be insufficient in similar circumstances. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *Axonic Capital LLC v. Gateway One Lending & Fin., LLC*, 2018 WL 11355034, *14 (C.D. Cal. Dec. 18, 2018) (citing *Webb v. SolarCity Corp.*, 884 F.3d 844, 855-58 (9th Cir. 2018)).

Accordingly, Toovey respectfully requests that the Court grant his Motion and dismiss each of the three claims Plaintiffs assert against him in the Complaint.

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

## II.    RELEVANT FACTUAL ALLEGATIONS

Plaintiffs Epic Systems Corporation ("Epic"), OCHIN, Inc. ("OCHIN"), Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc. (collectively "Plaintiffs") have sued seventeen defendants and alleged a sprawling fraudulent scheme involving Carequality and Trusted Exchange Framework and Common Agreement ("TEFCA") interoperability frameworks, which enable the electronic exchange of patient health records for permitted purposes such as "treatment." (Compl. ¶¶ 1-2, 53-59, 81-98.) According to Plaintiffs, Health Gorilla and the other defendants—grouped in the Complaint as the "Mammoth Defendants" (which includes Toovey), the "Unit 387 Defendants," and the "RavillaMed Defendants"—gained access to these frameworks by "falsely claiming the treatment purpose" and then sold the patient records to third parties, including law firms soliciting potential claimants in mass-tort and social-security cases. (*Id.* ¶¶ 11-15, 141, 159-162, 170, 167.)

Of the nine causes of action in the Complaint, only three are asserted against Defendant Max Toovey: (i) the Second Cause of Action for Fraud, (ii) the Fifth Cause of Action for Aiding and Abetting Fraud, and (iii) the Seventh Cause of Action for Violations of California's Unfair Competition Law.

The Complaint alleges Toovey is the Chief Commercial and Strategy Officer of Mammoth Rx, Inc., as well as Nationwide Healthcare Provider Corp. ("NHPC"), an entity that "markets access to patient records to lawyers and others representing potential social security claimants." (*Id.* ¶ 42.) On that basis, Plaintiffs lump Toovey together with five other defendants—Unique Medi Tech, LLC d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc., Ryan Hilton, and Daniel Baker—and refer to them collectively as the "Mammoth Defendants." (*Id.* ¶ 43.) Plaintiffs allege Ryan Hilton is the CEO and owner of Mammoth Path Solution, LLC, Mammoth Rx, Inc., and Mammoth Dx, and Daniel Baker is the co-founder and CTO of Mammoth RX. (*Id.* ¶¶ 40-41.) The Complaint does not allege that

8

Toovey has any ownership interest in any of the Mammoth Defendants. It also does not allege he has a National Provider Identifier ("NPI") used to request patient records, that he signed any agreement with Carequality or TEFCA, or that he personally submitted any requests for patient records.

With respect to the purported scheme by the Mammoth Defendants to fraudulently obtain and sell patient records, Plaintiffs claim that Ryan Hilton "made or directed the above false statements on Mammoth's behalf as Mammoth's authorized NPI," that he did so while "acting in concert" with Baker and Toovey, and that "Hilton Baker and Toovey knew these assertions were false." (*Id.* ¶¶ 223, 225.) The Complaint alleges that "Hilton, Baker and Toovey carried out these bad acts to benefit the interests of the interconnected business web that these defendants operate." (*Id.* ¶ 170.) The Complaint further alleges that "Hilton, Baker and Toovey provided substantial assistance to Mammoth's fraud by . . . providing cover for the false representations and omissions" and "were critically integral to the success of Mammoth's scheme (*Id.* ¶ 264.)

The Complaint attributes only one specific statement to Toovey personally. Plaintiffs allege that "[i]n a letter advertising [NHPC's] services to social security claimant representatives, Defendant Toovey bragged that 'NHPC's digital system pulls records straight from providers' EHRs and sends them to representative firms. This cuts down wait times from weeks to minutes.'" (*Id.* ¶ 167.) The Complaint does not allege when the letter was sent, to whom it was sent, whether it was communicated to any Plaintiff or any participant in the Carequality or TEFCA frameworks. Instead, it asserts only that, as "an experienced individual in the patient records retrieval industry, Toovey knew or should know that the only conceivable way this could be accomplished would be by falsely claiming the treatment purpose through TEFCA or Carequality." (*Id.*) The only other specific conduct Plaintiffs attribute to Toovey is that he "omitted Defendant Baker's connection to Mammoth," but the Complaint does not indicate when or from whom Toovey withheld such

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

information. (*Id.* ¶ 224.)

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal when a complaint fails to allege sufficient facts to support a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible only when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In conducting that analysis, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "formulaic recitation[s] of the elements of a cause of action." *Id.*; *Twombly*, 550 U.S. at 555. Nor do courts credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Because the three causes of action asserted against Toovey in the Complaint are all premised on allegations of fraud, they are each subject to the heightened pleading standard of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1127 (9th Cir. 2009) (fraud); *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1100 (S.D. Cal. 2024) (aiding and abetting fraud); *Groff v. Keurig Green Mountain, Inc.*, No. 5:23-CV-01492-SSS-SPx, 2024 WL 2335634, at *5 (C.D. Cal. Mar. 18, 2024) (UCL violation). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including by alleging the "who, what, when, where, and how" of the alleged misconduct. *Kearns*, 567 F.3d at 1124 (quoting Fed. R. Civ. P. 9(b)). The complaint must "set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). And where, as here, multiple defendants are sued for fraud, Rule 9(b) does not permit a plaintiff to "lump multiple defendants together"; rather, the complaint must "inform each defendant separately of the allegations

surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation omitted).

## IV.    ARGUMENT

### A.    THE COMPLAINT FAILS TO PLEAD A CLAIM FOR FRAUD AGAINST TOOVEY

To state a claim for fraud under California law, a plaintiff must plead "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)). Because Plaintiffs' claim sounds in fraud, the Complaint must also satisfy Federal Rule of Civil Procedure 9(b), which requires Plaintiffs to state "with particularity the circumstances constituting fraud"—meaning "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Measured against this standard, the fraud claim against Toovey fails at every element.

### 1.    The Only Specific Representation Attributed to Toovey Is Not Alleged to Be False and Cannot Support a Claim for Fraud

Across its 90 pages of allegations and over 300 pages of exhibits, the Complaint identifies exactly one statement allegedly made by Max Toovey. In paragraph 167, Plaintiffs allege that Toovey sent a "letter advertising [NHPC's] services to social security claimant representatives" stating that "'NHPC's digital system pulls records straight from providers' EHRs and sends them to representative firms,'" which "'cuts down wait times from weeks to minutes.'" (Compl. ¶ 167.) There are no other oral or written representations by Toovey alleged anywhere in the Complaint.

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

The Complaint fails to establish a fraud claim against Toovey as Plaintiffs do not allege that any of the representations in Toovey's letter were false. (*See id.*) A fraud claim requires, as its first element, an actual misrepresentation. *Engalla*, 15 Cal.4th at 974; *see Bodenburg v. Apple Inc.*, 146 F.4th 761, 771 (9th Cir. 2025) ("To satisfy [Rule 9(b)], a plaintiff asserting fraud-based claims must set forth what is false or misleading about the defendant's statements, and why they are false."). Plaintiffs do not contend that NHPC's system does not pull records straight from EHRs, that wait times are not reduced, or that anything else stated in Toovey's letter was untrue. *See Cooper v. Pickett*, 137 F.3d 616, 626 (9th Cir. 1997) (explaining that "a complaint must contain allegations that fraudulent statements were false when made"). By Plaintiffs' own description, Toovey's letter merely described NHPC's services; it did not contain any misrepresentations and thus cannot support a claim for fraud.

Plaintiffs attempt to bootstrap Toovey's letter into a fraud claim by alleging that Toovey "knew or should know that the only conceivable way [the reduction of wait times] could be accomplished would be by falsely claiming the treatment purpose through TEFCA or Carequality." (Compl. ¶ 167.) Rather than accusing Toovey of making any misrepresentations himself, Plaintiffs instead assert that he "knew or should know" that wait times could only be reduced if requests were accompanied by false statements about the purpose of the requests. (*Id.*) Even accepting that implausible premise, Plaintiffs' allegations do not establish any fraud or misconduct by Toovey. The Complaint does not allege that Toovey's marketing letter said anything about the purpose of the requests. Toovey's alleged awareness of what statements would need to be made to achieve reduced wait times is not a representation by Toovey, much less a false one. Simply being aware that false statements may be made in the future is not itself fraud. And the phrase "knew or should know" is the language of negligence, not fraud. *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) (distinguishing negligent misrepresentation from fraudulent intent).

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

In summary, paragraph 167—which contains the sole statement specifically attributed to Toovey in the entire Complaint—provides no support for Plaintiffs' claim for fraud. As the Complaint does not allege he made any other representations, Plaintiffs' entire fraud claim against Toovey fails and should be dismissed. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (affirming dismissal of fraud claim under Rule 9(b) where plaintiff "d[id] not identify any specific misrepresentations").

### 2.    Toovey's Alleged Omission Is Not Actionable as Plaintiffs Fail to Allege He Owed Any Affirmative Duty of Disclosure

Plaintiffs also allege that Toovey "omitted Defendant Baker's connection to Mammoth." (Compl. ¶ 224.) But not only does the Complaint not allege from whom, when or how Toovey purportedly concealed such information as Rule 9(b) requires, it also fails to allege any facts that would impose an affirmative duty of disclosure on Toovey such that the omission could form the basis of a fraud claim.

"Ordinarily, nondisclosures are not actionable under California law unless a confidential or fiduciary relationship between the parties gives rise to an affirmative duty to disclose." *Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*, No. 8:20-CV-02114-JLS-ADS, 2021 WL 4027375, at *6 (C.D. Cal. May 27, 2021) (citing *Goodman v. Kennedy*, 18 Cal.3d 335, 346-47 (Cal. 1976); *Great Pac. Sec. v. Barclays PLC*, No. CV 14-1210 DSF (SHX), 2016 WL 11502178, at *3 (C.D. Cal. Oct. 19, 2016), *aff'd* 743 F. App'x 780 (9th Cir. 2018). Plaintiffs do not allege, however, that Toovey was in any confidential or fiduciary relationship, or that he personally owed anyone a duty to disclose Baker's alleged connection to Mammoth. (*Compare* Compl. ¶ 227 (alleging Health Gorilla violated its contractual obligations under Carequality and TEFCA frameworks by denying connection between Baker and Mammoth).) Moreover, unlike other defendants (*see id*. ¶¶ 166, 224, 227), Toovey is not accused of making any false statements about the connection between Baker and Mammoth, that would permit liability even in the absence of a duty of disclosure. *See Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014) ("Where the defendant

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

volunteered information . . . the telling of a half-truth calculated to deceive is fraud." (cleaned up)). Thus, Plaintiffs' allegation that Toovey omitted Baker's connection to Mammoth is insufficient to plead a claim for fraud. *See MSP Recovery Claims, Series, LLC v. Avanir Pharms., Inc.*, No. SA CV 22-01026-DOC-KES, 2022 WL 17220647, at *8 (C.D. Cal. Oct. 20, 2022) (dismissing fraudulent omission claim with prejudice given absence of facts establishing duty to disclose). And in any event, the allegations regarding Toovey's alleged omission do not come close to satisfying Rule 9(b)'s heightened pleading standard, as the Complaint fails to indicate when or from whom Toovey withheld such information.

### 3.    The Generalized Allegations About the Mammoth Defendants Do Not Support a Claim for Fraud Against Toovey

Because the Complaint identifies no actionable misrepresentation by Toovey, it resorts to group pleading—repeatedly lumping him together with "Hilton, Baker, and Toovey" or the broader group of "Mammoth Defendants." (*See, e.g.*, Compl. ¶¶ 43, 159, 170, 223, 225, 226, 263, 264, 267, 268.) The Ninth Circuit squarely forecloses that approach. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotations omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)); *see also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.").

The Complaint's collective allegations regarding the "Mammoth Defendants" do not identify any specific conduct by Toovey with the particularity Rule 9(b)

14

demands. For example, Plaintiffs allege that "Mammoth obtained sensitive patient records" by "falsely asserting that the requests were for treatment purposes" and then "disclosed [them] . . . in violation of the law," and that "the individual Mammoth Defendants, Hilton, Baker, and Toovey, carried out these bad acts to benefit the interests of the interconnected business web." (Compl. ¶ 170.) The vague and imprecise allegation that "Hilton, Baker, and Toovey[] carried out these bad acts" is fatally deficient. (*Id.* ¶ 170.) "This type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011). It does not identify who among Hilton, Baker, and Toovey is alleged to have made any particular "treatment purpose" assertion. (*See id.* ¶ 264 (same).)[1] It also does not identify to whom any such assertion was made, how it was communicated, or what specifically was said. And as to the critical "when" element, the Complaint alleges only that the conduct occurred "[f]rom July 2024 to October 2025" (*id.*)—a sixteen-month window that is plainly inadequate. *See Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1405 (N.D. Cal. 1992) ("Aside from narrowing the series of misrepresentations to a period of ten months, Plaintiff does not identify the time or place of the allegedly fraudulent communications.").

Similarly, the conclusory allegations that Toovey "act[ed] in concert" with the Mammoth Defendants, "provided cover" that "enabl[ed] Mammoth to make the fraudulent requests," and "knowingly facilitat[ed] the false representations and omissions that were essential to the scheme" are insufficient to state a claim for fraud against Toovey. (Compl. ¶¶ 159, 223, 264.) Other than Toovey's routine marketing letter discussed above, the Complaint contains no facts describing any conduct by

---

[1] In fact, the Complaint later clarifies that it was ***not*** Toovey who made any statements regarding the treatment purpose, but rather that "Defendant Hilton made or directed the above false statements on Mammoth's behalf as Mammoth's authorized NPI." (Compl. ¶ 223.)

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Toovey that constitute "acting in concert," "provid[ing] cover," or "facilitating the false representations." (*Id.*) These are precisely the type of boilerplate allegations that courts in the Ninth Circuit have repeatedly held to be conclusory and insufficient to state a claim. *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 765 ("Conclusory allegations that [other defendants] . . . 'were acting in concert with KPMG and B&W' and 'were acting as agents of KPMG and B&W' and were 'active participants in the conspiracy' without any stated factual basis are insufficient as a matter of law." (cleaned up)); *Melrose Place Holdings v. Socotra Opportunity Fund, LLC*, No. CV 22-01329 MWF (PDX), 2022 WL 3013226, at *3 (C.D. Cal. May 31, 2022) (allegations that defendants "were acting in concert" "are nothing but boilerplate legal conclusions"); *United States v. Peterson*, No. CV-11-5137-EFS, 2012 WL 315443, at *3 (E.D. Wash. Feb. 1, 2012) ("the Complaint must provide Mr. Peterson with more information about when, where, and how he participated in or facilitated these schemes" committed by his employer and colleagues); *accord. Davis v. Cnty. of Los Angeles*, No. CV 15-09343-GHK (DTB), 2016 WL 10647191, at *5 (C.D. Cal. Mar. 9, 2016) (allegation that individual defendants collectively "helped cover up the illegal acts" was "vague and conclusory" and "insufficient" to state a claim). As discussed below in further detail, Plaintiffs' conclusory allegations amount to nothing more than a cynical and legally improper attempt to hold Toovey liable for fraud (and aiding and abetting fraud) based solely on his status as an employee and alleged officer of Mammoth.

The practical result of Plaintiffs' impermissibly vague and conclusory allegations is that Toovey has no way to defend against the fraud claim. He cannot know which specific statements he is supposed to have made, when he is supposed to have made them, or to whom. That is precisely the harm Rule 9(b) is designed to prevent. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (Rule 9(b) requires allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

against the charge and not just deny that they have done anything wrong"); *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (same).

### 4.    Plaintiffs Do Not Allege Facts Sufficient to Plead Scienter

Plaintiffs' claim for fraud independently fails because the scienter allegations as to Toovey are wholly conclusory. Plaintiffs assert that Toovey "knew these assertions were false" (Compl. ¶¶ 225, 263) and "intended for Plaintiffs to rely" on them (*id.* ¶ 226)—nothing more than mere recitations of the elements of fraud. Although Rule 9(b) permits knowledge and intent to be alleged generally, Plaintiffs still must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Webb v. SolarCity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018).

The Complaint provides no such factual content or basis showing that Toovey knew Mammoth's representations were false. At most, the Complaint alleges that Toovey holds the title of Chief Commercial and Strategy Officer at Mammoth Rx and NHPC, and is a "closely connected and leading member[] of the 'Mammoth Family' of companies." (Compl. ¶¶ 42, 223.) But the mere fact that Mammoth employed Toovey as an officer does not make it plausible that he had knowledge of any and all fraudulent conduct that allegedly took place. *See Moses v. Innoprise Software*, No. C-12-05271 EDL, 2013 WL 6019536, at *8 (N.D. Cal. Nov. 13, 2013) ("Ann Harward's status as an Innoprise officer and Harward Investments shareholder, however, even if true, does not render her liable for fraud in the absence of any allegations against her specifically."). Additionally, Plaintiffs' allegations that Toovey is "an experienced individual in the patient records retrieval industry" and thus "knew or should know " that Mammoth was violating "TEFCA or Carequality" requirements (Compl. ¶ 167) are precisely the type of allegations that this Court has held "are, as a matter of law, insufficient to establish scienter." *Axonic Cap. LLC v. Gateway One Lending & Fin., LLC*, No. CV 18-5127 PSG (SSX), 2018 WL 11355034, at *14 (C.D. Cal. Dec. 18, 2018) (citing *In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig.*, 867 F. Supp. 2d

17

407, 424-25 (S.D.N.Y. 2012)).

Without any other facts alleged, it is equally if not more plausible that Toovey, acting in a commercial and marketing role, communicated advertising points about Mammoth's products and services without knowledge of any false statements or intent to defraud. (*See id.* ¶¶ 42, 167.) And where factual allegations are "merely consistent with" liability, and an "obvious alternative explanation" is equally plausible, the pleading has not crossed the *Twombly*/*Iqbal* threshold. *Iqbal*, 556 U.S. at 678, 682; *Twombly*, 550 U.S. at 556, 567; *see Webb v. SolarCity Corp.*, 884 F.3d at 858 ("Webb's narrative of fraud is simply not as plausible as a nonfraudulent alternative"); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (same).

Thus, although Rule 9(b) allows knowledge to pled generally, absent any factual allegations supporting an inference of knowledge, the Complaint does not "allow[] the court to draw the reasonable inference that [Toovey] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."). "[B]are legal assertions" of a defendant's knowledge that "mirror the legal standard for liability, but [] provide no facts, particular or general, which would allow the Court to draw an inference of liability" are insufficient to "establish knowledge of or participation in the alleged fraud." *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011). Thus, notwithstanding allegations in *Allstate* that "Defendants knew that the information being distributed to the public was false and misleading" and "intended to facilitate the wrongful conduct," this Court dismissed the complaint for failure to plead any facts supporting an inference of actual knowledge of fraud. *Id.* ("[T]he complaint has not set forth a factual basis to reasonably infer [the other defendants'] actual knowledge of Gateway's misconduct.").

This Court's discussion of scienter and the individual defendants in *Axonic Capital LLC*, 2018 WL 11355034, is highly instructive. Judge Gutierrez found that

18

the plaintiffs "ha[d] not sufficiently alleged scienter against [senior executives]" based on allegations that closely resemble Plaintiffs' allegations against Toovey:

> "Plaintiffs rely on the fact that the MacInnises held executive positions at Gateway and that they were 'longtime auto loan ABS industry insiders with decades of auto loan ABS experience.' They argue that the MacInnises were familiar with industry standards on what information investors expect and receive and that their decision to operate Gateway in violation of such standards means they had scienter. However, allegations of violations of an industry standard are, as a matter of law, insufficient to plead scienter."

*Id.* at *14. In fact, the *Axonic* allegations were even more detailed than those against Toovey, as they identified "management's exposure to [important] factual information," and noted that senior executives had spoken with investors about the allegedly fraudulent figures. *Id.* Nonetheless, this Court declined to infer from these facts that the individual defendants had knowledge of fraud "without any specific allegations about what was discussed during investor communications." *Id.* at *14. Finding that "the Ninth Circuit's 2018 decision in *SolarCity* is fatal to Plaintiffs' scienter allegations against senior management," the Court explained that more specific allegations would be necessary, including for example, that "senior executives had actual access to the [fraudulent] calculations" or "were involved in accounting decisions as minute as the calculations at issue." *Id.* at *14-*15; *see Webb v. SolarCity Corp.*, 884 F.3d at 855-58 (affirming dismissal of complaint and holding that allegations regarding senior executives' knowledge, experience, and alleged motives "do not give rise to an inference of scienter that is at least as compelling as the inference of an honest mistake").

In summary, Plaintiffs' conclusory allegations that Toovey "knew that the

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

treatment representations were false" and "intended for Plaintiffs to rely on [them]" (Compl. ¶¶225, 263), are no different than those held to be insufficient in *Allstate*, *Axonic Capital* and *SolarCity*, as there are no supporting facts pled in the Complaint that support a reasonable inference of scienter as to Toovey.

**B.    THE COMPLAINT FAILS TO PLEAD A CLAIM AGAINST TOOVEY FOR AIDING AND ABETTING FRAUD**

The claim for aiding and abetting fraud against Toovey fails for substantially the same reasons as Plaintiffs' fraud claim. To state an aiding and abetting claim under California law, Plaintiffs must plead that Toovey (1) had actual knowledge of fraud and (2) substantially assisted or encouraged that fraud. *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005). The Complaint satisfies neither requirement.

***Actual knowledge.*** An aiding and abetting fraud claim requires that "the defendant must have "actual knowledge of the specific primary wrong the defendant substantially assisted." *Su v. Henry Glob. Consulting Grp.*, No. 2:20-cv-02235-ODW (PLAx), 2022 WL 19392, at *5 (C.D. Cal. Jan. 3, 2022) (citing *Casey*, 127 Cal. App. 4th at 1145). Aiding and abetting liability "necessarily requires a defendant to reach a *conscious decision* to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119, 1133 (C.D. Cal. 2003) (emphasis in original) (quoting *Howard v. Super. Ct.*, 2 Cal. App. 4th 745, 749, (1992)).

As already discussed in the previous section on scienter, *supra* § IV.A.4, the Complaint contains only conclusory allegations that Toovey "knew that Mammoth was misstating its true purpose" and "that the treatment representations were false." (Compl. ¶¶ 225, 263.) These are formulaic recitations of the elements, not factual allegations that support a reasonable inference of actual knowledge of fraud. *See Allstate*, 824 F. Supp. 2d at 1189; *Axonic*, 2018 WL 11355034, at *17. Nothing in the Complaint even remotely suggests that Toovey made a "conscious decision" to assist

20

others to engage in fraud, *Neilson*, 290 F. Supp. 2d at 1119, 1133, let alone that he had any actual knowledge of fraud. *See In re First Alliance Mortg. Co.*, 471 F.3d at 993 n.4 (explaining that "the actual knowledge standard does require more than a vague suspicion of wrongdoing" and noting the California Court of Appeal's holding in *Casey* that the "'kitchen sink' allegation" that "the banks knew [others] were involved in 'wrongful or illegal conduct' . . . did 'not constitute sufficient pleading that the banks had actual knowledge'" of any wrongdoing).

The Complaint makes a fatal misstep by alleging that Toovey "***knew or should know*** that the only conceivable way" Mammoth's advertising claims could be achieved "would be by falsely claiming the treatment purpose through TEFCA or Carequality." (*Id.* ¶ 167 (emphasis added).) The allegation that Toovey merely "should know" about fraud given his "experience[]" in the industry directly contradicts Plaintiffs' other conclusory allegations that Toovey had actual knowledge of fraud. Critically, "federal courts have found that the phrase 'knew or should have known' does not plead actual knowledge." *Neilson*, 290 F. Supp. 2d at 1119; *see Neilson v. Union Bank of Cal., N.A.*, No. CV 02-06942 MMM (CWx), 2003 WL 27374137, at *10 (C.D. Cal. Feb. 20, 2003) (collecting cases and rejecting argument that "constructive knowledge is sufficient"). The inconsistency in Plaintiffs' allegations as to whether Toovey had actual or constructive knowledge thus provides yet another basis to dismiss Plaintiffs' claim for aiding and abetting fraud against Toovey.

***Substantial assistance.*** The Complaint also fails to plead with sufficient specificity any conduct by Toovey that constitutes substantial assistance or encouragement to others engaged in fraud. "Rule 9(b) requires that the complaint inform the defendant what he did that constituted substantial assistance." *Neilson*, 290 F. Supp. 2d at 1131 (cleaned up). "Generalized and conclusory allegations that a defendant aided and abetted the principal wrongdoers will not suffice." *Su v. Henry Global Consulting Grp.*, 2022 WL 19392, at *5.

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

As described above in the section on group pleading, *supra* § IV.A.3, Plaintiffs do not describe with any degree of particularity how Toovey substantially assisted in Mammoth's alleged fraudulent scheme. Plaintiffs allege generally that Toovey "provided substantial assistance to Mammoth's fraud by knowingly facilitating the false representations and omissions," was "critically integral to the success of Mammoth's scheme," and was a "leading member[] of the 'Mammoth Family' of companies." (Compl. ¶¶ 223, 264). The Complaint does not, however, describe any particular act, communication, or decision Toovey himself undertook in furtherance of the alleged fraud. In short, Plaintiffs fail to allege *any* form of assistance by Toovey in the alleged scheme, much less substantial assistance with the requisite degree of particularity required by Rule 9(b).

Because the Complaint pleads neither actual knowledge nor substantial assistance with the particularity Rule 9(b) demands, the aiding and abetting fraud claim against Toovey must be dismissed.

## C.    THE UCL CLAIM SHOULD ALSO BE DISMISSED

The final claim asserted against Toovey for violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200, rests on the same allegations of fraudulent conduct on which the common law fraud and aiding and abetting claims are founded. (*See* Compl. ¶¶ 279-286.) Because Plaintiffs have not adequately alleged fraud or any other unlawful conduct against Toovey, they have failed to allege a predicate "fraudulent" or "unlawful" practice to support the UCL claim. Accordingly, the UCL claim should also be dismissed. *See Kelly v. Beazer Homes USA, Inc.*, 552 F. App'x 666, 668 (9th Cir. 2014) ("Because Plaintiffs fail to state a claim for any 'predicate violations,' they fail to state a claim for unlawful conduct under the UCL"); *Shah v. JPMorgan Chase Bank N.A.*, No. 2:24-cv-08601-AH (Ex), 2025 WL 882243, at *5 (C.D. Cal. Mar. 4, 2025) (dismissing UCL claim under the unlawful prong where the "predicate claim" had been dismissed).

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

## D.    TOOVEY JOINS THE OTHER DEFENDANTS' ARGUMENTS IN SUPPORT OF DISMISSAL OF THE COMPLAINT

In addition to the foregoing arguments for dismissal of the three claims asserted against him personally, Toovey also joins in several of the arguments set forth in the other Defendants' respective motions to dismiss that support dismissal of every fraud claim and/or the entire Complaint as a whole. (*See* ECF No. 97 (Toovey joinder).) "Joinders are an accepted practice that help courts avoid having to read duplicative arguments, and are not improper." *Doe v. Taro Pharm. U.S.A., Inc.*, No. 25-CV-07815-RFL, 2025 WL 3280257, at *1 (N.D. Cal. Nov. 25, 2025); *see Cal. Inst. of Tech. v. City of Pasadena*, No. 2:23-CV-07681-AB-AJR, 2024 WL 6938009, at *4 (C.D. Cal. Aug. 23, 2024) (allowing joinder to motion to dismiss and noting courts grant "requests to join arguments as long as it, at the very least, is efficient").

***Choice of Law.*** As an initial matter, Toovey joins in the argument by Health Gorilla and the Unit 387 Defendants (ECF Nos. 56-1 at 10, 85-1 at 11 n.1) that the Complaint should be dismissed due to its "failure to allege which state law governs [the] common law claim[s]." *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018).

***Justifiable Reliance.*** Toovey joins in the arguments by the Mammoth Defendants and Baker—as well as the similar arguments asserted by Health Gorilla and the Unit 387 Defendants—that the Complaint does not "demonstrate justifiable reliance because [Plaintiffs] fail to allege 'when, where, or how they were exposed to or accessed' the alleged misrepresentation." (ECF No. 77 at 17 (citation omitted)).) While they address different allegations, the gravamen of these arguments is all the same:  Plaintiffs have not shown they received, much less detrimentally relied on, any alleged misrepresentations made by any specific Defendant.[2] Toovey also joins in the

_____

[2] *See, e.g.*, ECF No. 85-1 ("[T]his disclosure was not in reliance on any particular statement by Unit 387, Hoppr, or Ms. Manak, because the allegations show none of these Defendants made any representations in connection with record queries."); ECF No. 86 at 13 (Plaintiffs "cannot point to a single instance of a specific misrepresentation relied on by any individual Plaintiff that resulted in injury to that

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

argument that "[s]ince neither Epic nor OCHIN provided any records . . . they cannot establish reliance" (ECF No. 55-1 at 20; *see* ECF No. 85-1 at 18), and the argument that contractual disclaimers foreclose the possibility of justifiable reliance. (ECF Nos. 56-1 at 19, 85-1 at 17, 95 at 14; *see Dix v. Nova Benefit Plans*, CV 14-08678-AB (FFMx), 2015 WL 12859221, at *7 (C.D. Cal. Apr. 28, 2015))

***Article III Standing, Causation, and Damages.*** Toovey also joins in the other Defendants' arguments regarding Plaintiffs' failure to plead a cognizable injury and damages resulting from the alleged misconduct. First, Health Gorilla, the Mammoth Defendants, the Unit 387 Defendants and Baker each assert in their respective motions that Epic and OCHIN lack Article III standing based on their allegations of hypothetical future harm, self-imposed monitoring costs, and reputational harm to the Carequality and TEFCA frameworks. (*See* ECF Nos. 56-1 at 22-23, 77 at 5-9, 85-1 at 23-24, 86 at 5-9, 91 at 2-6.) Second, the other Defendants also argue that, for the same reasons Plaintiffs have not established justifiable reliance, Plaintiffs have also not established any damages flowing from the alleged misrepresentations. (*See* ECF Nos. 56-1 at 21-22, 85-1 at 19-20, 77 at 9, 95 at 13.) Both sets of arguments apply with equal force to the fraud claims asserted against Toovey, and their dismissal is warranted for the same reasons.

***Exhaustion of Mandatory Dispute Resolution Process.*** Lastly, Toovey joins in the arguments made by every other Defendant moving to dismiss that this action is barred by Plaintiffs' breach of their contractual obligations to engage in the mandatory dispute resolution process. (*E.g.*, ECF No. 51 at 12-16 (quoting Compl., Ex. A at § 20.1, Ex. B at § 9.1, Ex. E § 15.1).) The contracts governing the Carequality and TEFCA frameworks each mandate non-judicial dispute resolution—a process that Plaintiffs concede they did not complete before filing this lawsuit. (*See* Compl., Ex.

---

Plaintiff"); ECF No. 91 at 13 ("No Plaintiff actually had any interaction with any Mammoth Defendant, and thus no Plaintiff could have taken any action in 'reliance' on any representation by those entities."); ECF No. 95 at 13 ("No Plaintiff alleges it took any discrete action specifically in reliance on a Health Gorilla statement").

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

A, § 20.1 (providing "if Applicant refuses to participate in the Dispute Resolution Process, such refusal shall constitute a material breach of this Agreement"); *but see* Compl. ¶ 17 (alleging "the dispute resolution process is insufficient to prevent the misconduct at issue" as apparent justification for Plaintiffs' noncompliance).) Because Plaintiffs failed to exhaust the mandatory dispute resolution process, dismissal is appropriate. *See Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-CV-07076-LHK, 2019 WL 2569545, at *4–6 (N.D. Cal. June 21, 2019); *Columbia Cas. Co. v. Cottage Health Sys.*, 2015 WL 4497730, at *2 (C.D. Cal. July 17, 2015).[3]

## V.    CONCLUSION

For the foregoing reasons, Defendant Max Toovey respectfully requests that the Court grant this Motion and dismiss the Second, Fifth and Seventh Causes of Action asserted against him in the Complaint.

DATED:  April 15, 2026             KINGFISHER LAW APC

By:      */s/ Nithin Kumar*
                   Nithin Kumar
         Attorney for Defendant Max Toovey

---

[3] Although Toovey is not a party to the agreements, the doctrine of equitable estoppel permits a nonsignatory like Toovey to invoke the dispute resolution provisions because Plaintiffs' allegations of a fraudulent scheme are "intimately founded in and intertwined with" the Carequality and TEFCA agreements, and because the Complaint asserts substantially the same allegations against both signatories like Health Gorilla, RavillaMed, and Mammoth Dx and non-signatories like Llama Lab, Mammoth Rx, Toovey, and all the other individual defendants. *See Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021) ("California law . . . allows a nonsignatory to invoke arbitration under the doctrine of equitable estoppel even when a signatory "attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants."). Indeed, this Court recently applied the equitable estoppel doctrine to hold that several nonsignatories were entitled to invoke the protection of a forum selection clause found in online terms of service because "Plaintiffs' claims are logically or causally connected to the Terms of Service, and thus the claims are covered by the forum selection clause." *N.Z. v. Fenix Int'l Ltd.*, No. 8:24-CV-01655-FWS-SSC, 2025 WL 3627591, at *17 (C.D. Cal. Dec. 12, 2025) (citing *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)).

25

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Defendant Max Toovey certifies that this brief contains 6,499 words, which complies with the word limit of L.R. 11-6.1. Pursuant to section IV.A.1.5 of Judge Olguin's Initial Standing Order, Toovey's undersigned counsel further certifies that he has reviewed all source materials cited and verified the accuracy of any AI-generated content.

DATED:  April 15, 2026          KINGFISHER LAW APC


By: _____*/s/ Nithin Kumar*_____
                  Nithin Kumar
          Attorney for Defendant Max Toovey

MEMORANDUM IN SUPPORT OF MAX TOOVEY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)