**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:   310.229.1000
Facsimile:   310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Laura Hill (*pro hac vice*)
lhill@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:   202.887.4000
Facsimile:   202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, <br><br> Defendants. | Case No. 2:26-cv-00321-FMO-RAO <br><br> Assigned to:  Hon. Fernando M. Olguin <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT DANIEL BAKER'S MOTION TO DISMISS** <br><br> Date:       May 21, 2026 <br> Time:       10:00 A.M. <br> Location:   Courtroom 6D <br><br> Date Action Filed:      January 13, 2026 |

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................3

III. ARGUMENT.........................................................................................................5

    A. This Court May Adjudicate Plaintiffs' Claims. .....................................5

        1. Plaintiffs Have Article III Standing. ...........................................5

        2. Mr. Baker's Attempt To Incorporate Other Defendants' Dispute Resolution Process-Related Arguments Fails. .............7

    B. Plaintiffs Have Stated A Fraud Claim Against Mr. Baker...................10

        1. Plaintiffs' Allegations Satisfy Rule 9(b). .................................10

        2. Plaintiffs Have Alleged Actual, Justifiable Reliance...............13

    C. Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud Against Mr. Baker.................................................................................14

    D. Plaintiffs Have Stated A UCL Claim...................................................18

IV. IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND ....................................................................18

V. CONCLUSION...................................................................................................19

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Diabetes Assoc. v. U.S. Dept. of the Army*,
 938 F.3d 1147 (9th Cir. 2019) ...................................................................................5

*Berman v. Bank of Am. N.A.*,
 2025 WL 2885491 (C.D. Cal. Sept. 2, 2025) (Olguin, J.)............................14, 16

*Bhatia v. Silvergate Bank*,
 725 F. Supp. 3d 1079 (S.D. Cal. 2024)....................................................14, 15, 16

*Calence, LLC v. Dimension Data Holdings, PLC*,
 222 F. App'x 563 (9th Cir. 2007) .............................................................................7

*Clapper v. Amnesty International USA*
 568 U.S. 398 (2013).....................................................................................................6

*Cruz v. PacifiCare Health Sys., Inc.*,
 30 Cal. 4th 303 (2003) .............................................................................................10

*Davidson v. Kimberly-Clark Corp.*,
 889 F3d 956 (9th Cir. 2018) .............................................................................10, 11

*Davis v. HSBC Bank Nev., N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ....................................................................5, 13, 17

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
 2014 WL 12558848 (C.D. Cal. May 30, 2014)..................................................18

*Eminence Cap., LLC v. Aspeon, Inc.*,
 316 F.3d 1048 (9th Cir. 2003) ...............................................................................18

*Fair Hous. Council of Or. v. Travelers Home and Marine Ins. Co.*,
 2016 WL 7423414 (D. Or. Dec. 6, 2016)..............................................................5

*Fair Hous. Council v. Roommate.com, LLC*,
 666 F.3d 1216 (9th Cir. 2012) (overruled by *Ariz All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1178 (9th Cir. 2024)) ...................................................5

*Fair Hous. v. Combs*,
 285 F.3d 899 (9th Cir. 2002) ....................................................................................5

ii

*Faucett v. Move, Inc.*,
  2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) ......................................................8

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ...........................................................................5

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ............................................................................................5

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
  957 F.3d 1038 (9th Cir. 2020) ............................................................................8

*Ketayi v. Health Enrollment Group*,
  516 F. Supp. 3d 1092 (S.D. Cal. Feb. 2, 2021) ................................................17

*Khast v. Wash. Mut. Bank*,
  2010 WL 11684849 (S.D. Cal. Oct. 26, 2010) .................................................12

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ............................................................................7

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  2008 WL 11411732 (C.D. Cal. Aug. 18, 2008) .................................................5

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ............................................................................5

*Mau v. City & Cnty. of Honolulu*,
  2025 WL 3251168 (S.D. Cal. Apr. 4, 2025) ......................................................7

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
  436 F. Supp. 2d 1095 (C.D. Cal. 2006) ............................................................12

*NTD Architects v. Baker*,
  950 F. Supp. 2d 1151 (S.D. Cal. 2013) .............................................................17

*Singer v. Ett*,
  2023 WL 6787442 (C.D. Cal. Sept. 18, 2023) (Olguin, J.) ...............................8

*Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*,
  2025 WL 2853156 (M.D. Fla. Aug. 21, 2025) ...................................................9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................6

iii

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

*Storm Mfg. Grp., Inc. v. Weather Tec Corp.*,
    2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) ......................................................7

*Swanson v. U.S. Forest Serv.*,
    87 F.3d 339 (9th Cir. 1996) ................................................................................7

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...........................................................................12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., &
    Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .............................................................................................6

*United Poultry Concerns v. Chabad of Irvine*,
    743 F. App'x 130 (9th Cir. 2018) .......................................................................5

*Valle de Sol Inc. v. Whitting*,
    732 F.3d 1006 (9th Cir. 2013) ............................................................................5

*Vernon Fire Fighters v. City of Vernon*,
    107 Cal. App. 3d 802 (1980) ..............................................................................9

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................2, 3, 10, 18

Fed. R. Civ. P. 12(b)(6)........................................................................................5

Rule 9(b)'s............................................................................................................12

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

## I.    INTRODUCTION

Daniel Baker fraudulently and illegally obtained confidential patient records under the false pretenses that those records were being used for the purpose of treating patients. In reality, Mr. Baker obtained those patient records for the purpose of monetizing them the benefit of himself and other Defendants in this case.

Plaintiffs' Complaint describes the fraudulent and unlawful scheme in detail.

The Mammoth Defendants are three entities and three individuals—Mammoth Dx, Mammoth Path Solution, Mammoth Rx, Daniel Baker, Ryan Hilton, and Max Toovey. Mr. Baker is the Chief Technology Officer of Mammoth Dx and Mammoth Rx. Mr. Hilton is the Chief Executive Officer and owner of each of the Mammoth entities. And Mr. Toovey is the Chief Commercial and Strategy Officer of Mammoth Rx. The three Mammoth entities operate out of the same office and are all part of the same "Mammoth Family."

In July 2024, Defendants Mammoth Dx and Mammoth Path Solution—acting in concert with the rest of the Mammoth Defendants, including Mr. Baker—were onboarded by Defendant Health Gorilla to the Carequality and Trusted Exchange Framework and Common Agreement ("TEFCA") interoperability frameworks, which are nationwide exchanges through which healthcare providers can exchange patient records with other providers for the purposes of providing treatment to patients.

From the time of their onboarding through at least October 2025, the Mammoth Defendants obtained patient records from the Carequality and TEFCA frameworks based on the assertion that those records were for treatment. Mammoth obtained over 140,000 patient records from Epic's healthcare provider customers, including thousands of patient records from Plaintiffs Reid, Trinity, and UMass Memorial Health, as well as over 1,500 patient records from Plaintiff OCHIN's healthcare provider customers. In every case where patient records were disclosed to Mammoth, it was based on Mr. Baker's and the other Mammoth Defendants' assertions (both directly and through Health Gorilla) that the records were being requested for treatment.

1

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

Those assertions were false. After obtaining the patient records, the Mammoth Defendants did not use those records for treatment but instead monetized and sold them to third parties—including through Mammoth Rx and Nationwide Healthcare Provider Corp. In so doing, the Mammoth Defendants fraudulently and illegally exploited their access to the interoperability frameworks—extracting, disseminating, and selling sensitive and confidential patient records without patients' knowledge or consent—harming Plaintiffs, the privacy rights of individual patients, and the integrity of the interoperability ecosystem.

It is on that basis that Plaintiffs assert claims against Mr. Baker. Mr. Baker has moved to dismiss, asserting in part that he is not the "Mammoth Defendants" and citing his representation by separate counsel. Mr. Baker's motion to dismiss is a near word-for-word copy of the Mammoth Defendants' motion to dismiss, and it fails for the same core reasons.

***First***, Mr. Baker attempts to raise jurisdictional arguments, by requesting in a footnote that the Court permit him to incorporate by reference other Defendants' arguments related to certain dispute resolution provisions within the interoperability agreements. That attempt is improper and should be disregarded. Mr. Baker also argues that Plaintiffs lack Article III standing, but like the rest of the Mammoth Defendants, his arguments do not actually account for controlling law, instead relying exclusively on law related to organizational standing (which Plaintiffs do not allege). Having failed to address Plaintiffs' allegations or the applicable law, there can be no dispute that Plaintiffs have adequately alleged Article III standing through their allegations of monitoring, investigation, mitigation, and storage costs, as well as reputational harm and costs incurred responding to customer complaints—all of which gives rise to Article III standing.

***Second***, Mr. Baker contends that Plaintiffs fail to allege their fraud claim with the specificity required by Rule 9(b) and, further, do not allege reliance. On both accounts, Mr. Baker is wrong and relies on an unfounded, selective reinterpretation of Plaintiffs' well-pleaded allegations. Plaintiffs' allegations make clear the who, what, when, where,

2

and how of Mr. Baker's fraud, detailing a pattern of repeated and knowing misrepresentations and omissions in accessing, disclosing, and monetizing patient records through a web of interconnected entities in order to evade detection.

*Third*, Mr. Baker tries to hide behind his Mammoth entities, arguing that Plaintiffs have not adequately alleged that Mr. Baker aided and abetted the Mammoth Defendants' fraud.  But Plaintiffs allege that Mr. Baker knowingly and actively participated in the fraud, including, but not limited to, by making or directing the Mammoth Defendants' false statements that they were seeking patient records for treatment purposes.

*Finally*, Mr. Baker seeks dismissal of Plaintiffs' claim under California Business and Professions Code § 17200, *et seq.* via a single sentence footnote, which seeks dismissal under Rule 9(b).  In so doing, Mr. Baker does not address that this claim is also independently viable because of Mr. Baker's unlawful conduct.  And even with respect to the fraud-based portion of the claim, Mr. Baker's argument fails because Rule 9(b) has been met.

For all of these reasons and as further described below, this Court should deny Mr. Baker's motion to dismiss.

## II.    BACKGROUND[1]

Plaintiffs are long-standing participants in interoperability efforts and reflect the breadth of the country's interoperable health care delivery system.  *See* Compl. ¶¶ 6-7, 28-30, 112-115, 116.  Epic spearheaded treatment-based interoperability over two decades ago and is a charter Implementer on the Carequality framework and QHIN on the federal-government sponsored TEFCA framework.  *Id.* ¶¶ 112-115.  OCHIN is a nonprofit organization supporting thousands of healthcare providers nationwide and operates as a Carequality Connection and TEFCA Participant.  *Id.* ¶¶ 27, 116.  Reid is a community hospital based in Indiana, *id*. ¶¶ 28, 117, Trinity is a Catholic organization serving patients in 25 states, including California, *id*. ¶¶ 29, 118, and UMass Memorial Health is an

---

[1] Capitalized terms have the meanings assigned to them in Plaintiffs' Complaint. Exhibits references are to those attached to Plaintiffs' Complaint.

3

academic medical center, *id.* ¶¶ 30, 119.  Reid, Trinity, and UMass Memorial Health (collectively, the "Provider Plaintiffs") participate in the frameworks as Carequality Connections and TEFCA Participants.  *Id.* ¶¶ 117-121.

Mammoth Dx operates as a Carequality Connection, while Mammoth Path Solution operates as a Carequality Connection and a TEFCA Participant.  *Id.* ¶¶ 37-38.  In these roles, Mammoth Dx and Mammoth Path Solution query patient records through the Carequality and TEFCA interoperability frameworks, falsely asserting with each query that they are seeking the records for treatment purposes.  *Id.* ¶¶ 159-164.  Mammoth Dx and Mammoth Path Solution then transmit these patient records to entities such as Mammoth Rx, an entity that monetizes patient data, and Nationwide Healthcare Provider Corp, an entity that sells patient records to law firms and other third parties, for financial gain.  *Id.* ¶¶ 39, 159-164, 167, 170.  Mammoth Dx, Mammoth Path Solution, Mammoth Rx, and Nationwide Healthcare Provider Corp share the same address, with Mammoth Dx, Mammoth Path Solution, and Mammoth Rx also sharing the same logo.  *Id.* ¶¶ 37-39, 167.  Indeed, Defendant Ryan Hilton affirmed in an affidavit that Mammoth Dx, Mammoth Path Solution, and Mammoth Rx are all part of the same "Mammoth Family." *Id.* ¶ 39.  The Mammoth Defendants use this nest of corporate entities to evade detection.

Mr. Baker is affiliated with the Mammoth entities and works hand-in-hand with Mr. Hilton and Mr. Toovey.  Mr. Baker is the Chief Technology Officer of Mammoth Dx and co-founder and Chief Technology Officer of Mammoth Rx.  *Id.* ¶¶ 41, 165.  Mr. Hilton is the Chief Executive Officer and owner of Mammoth Dx, Mammoth Path Solution, and Mammoth Rx, as well as the owner of Nationwide Healthcare Provider Corp.  *Id.* ¶¶ 39-40, 167-169.  Mr. Toovey is the Chief Commercial and Strategy Officer of Mammoth Rx and Nationwide Healthcare Provider Corp.  *Id.* ¶¶ 42, 167.  And Mr. Baker and Mr. Hilton are also Chief Executive Officer and Chief Financial Officer, respectively, of Mammoth Global, Inc.  *Id.* ¶¶ 41, 165.

4

Mr. Baker's conduct amounts to fraud and violates the Health Insurance Portability and Accountability Act ("HIPAA") and California Business and Professions Code §§ 17200, *et seq.* ("UCL").  *Id.*, Counts II, V, VII.

### III.   ARGUMENT

A motion to dismiss tests the legal sufficiency of the claims asserted.  Fed. R. Civ. P. 12(b)(6).  The Court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to Plaintiffs.  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

### A.   This Court May Adjudicate Plaintiffs' Claims.

#### 1.   Plaintiffs Have Article III Standing.

Mr. Baker's Article III standing argument (like the Mammoth Defendants' standing argument) relies on inapposite authority related to organizational standing—which Plaintiffs do not allege—and ignores that the harms alleged by Plaintiffs are cognizable injuries that give rise to Article III standing.  Mot. at 5-9.

***First***, every case that Mr. Baker cites relates to organizational standing.  *See* Mot. at 5-9 (citing *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (analyzing organizational standing); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (same); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (same); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 2008 WL 11411732, at \*6 (C.D. Cal. Aug. 18, 2008) (same); *Am. Diabetes Assoc. v. U.S. Dept. of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (same); *Valle de Sol Inc. v. Whitting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (same); *Fair Hous. v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (same); *Fair Hous. Council v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (overruled by *Ariz All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1178 (9th Cir. 2024)) (same); *United Poultry Concerns v. Chabad of Irvine*, 743 F. App'x 130, 131 (9th Cir. 2018) (same); *Fair Hous. Council of Or. v. Travelers Home and Marine Ins. Co.*, 2016 WL 7423414, at \*7 (D. Or. Dec. 6, 2016) (same)).  Plaintiffs do not assert organizational standing, so these cases are inapposite.

***Second***, Mr. Baker disregards Plaintiffs' allegations of investigation, monitoring, and mitigation costs. *See* Compl. ¶¶ 161, 170-171, 189-191, 196-197, 233-234, 267-268. Plaintiffs incurred these costs based on Mr. Baker's (and his related entities and affiliates') infliction of past harms and the substantial and imminent risk that those harms will continue. *Id.* This is sufficient to allege Article III standing, as made clear by the Supreme Court in *Clapper v. Amnesty International USA*: "[W]e have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." 568 U.S. 398, 414 n.5 (2013) (collecting cases); *see also id.* at 418-20 (standing satisfied in cases where harm had already occurred and plaintiff took steps to mitigate or prevent future harm of the same type).[2]

Plaintiffs also alleged increased storage costs and costs in responding to customer complaints. *See* Compl. ¶¶ 66, 96, 193, 195-196, 233-234, 267-268. These harms are not self-inflicted or voluntary. They are "'real' and not 'abstract'" harms that "actually exist" and are "particularized" to Plaintiffs, satisfying Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016).

***Finally***, Epic and OCHIN alleged reputational harm. *See* Compl. ¶¶ 193 ("Epic and OCHIN's . . . customers have voiced that, because of [the Mammoth Defendants'] abuses, they have contemplated limiting their participation in the Carequality and TEFCA frameworks or withdrawing from them entirely."), 196 ("Epic incurred and continues to incur costs . . . to respond to customer concerns and complaints raised by Epic[']s healthcare provider customers."). Reputational harm is an injury in fact sufficient to satisfy Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)

---

[2] The Supreme Court ultimately found Article III standing was not satisfied in *Clapper* because it involved allegations of a potential injury "at some point in the future" and incurrence of mitigation costs in response to a "risk of harm" that was "not certainly impending." 568 U.S. at 410, 416. This holding is inapposite because here, Plaintiffs allege that they incurred costs as a result of previously inflicted harms and the substantial and imminent risk that those harms will continue. Compl. ¶¶ 161, 170-171, 189-191, 196-197, 233-234, 267-268.

(recognizing that "various intangible harms," including "reputational harms," "can also be concrete" for Article III standing purposes); *Storm Mfg. Grp., Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *6 (C.D. Cal. Sept. 23, 2013) ("The Court determines that plaintiff has adequately alleged constitutional standing" based on its allegations of "loss of business and damage to its reputation.").

Plaintiffs have adequately alleged Article III standing.

> 2. Mr. Baker's Attempt To Incorporate Other Defendants' Dispute Resolution Process-Related Arguments Fails.

Mr. Baker's attempt to incorporate Health Gorilla's and the RavillaMed Defendants' arguments related to alternative dispute resolution fails. *See* Mot. at 1 n.1. Mr. Baker's incorporation by reference is procedurally improper and should be disregarded. *Mau v. City & Cnty. of Honolulu*, 2025 WL 3251168, at *7 n.5 (S.D. Cal. Apr. 4, 2025) ("The Federal Rules of Civil Procedure do not sanction the incorporation of substantive material by reference and courts need not consider such arguments especially since it circumvents the page limits set for in the district court local rules."); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) ("[T]he district court did not abuse its discretion in striking the incorporations."); *Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (similar).

Mr. Baker's arguments also fail on the merits.

**Mr. Baker Lacks Standing To Enforce The Dispute Resolution Procedures.** Mr. Baker is not a signatory to the relevant agreements and therefore cannot enforce the agreements' dispute resolution procedures.

Nor does equitable estoppel apply to allow him to enforce these provisions. Plaintiffs' claims against Mr. Baker do not invoke the duties or obligations under the agreements or otherwise attempt to enforce contractual terms against Mr. Baker. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1134 (9th Cir. 2013) (equitable estoppel did not apply where "Plaintiffs do not seek to simultaneously invoke the duties and obligations of Toyota under the Purchase Agreement, as it has none, while seeking to avoid

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

arbitration."); *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1136 (2025) ("[T]he essential concern is whether plaintiffs are trying to enforce contractual terms beneficial to them while avoiding their own contractual agreement to arbitrate."). The fraudulent activity and statutory violations underpinning each of Plaintiffs' claims against Mr. Baker exist independent of the agreements.

Mr. Baker also cannot avail himself of third-party beneficiary arguments. "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Singer v. Ett*, 2023 WL 6787442, *5 (C.D. Cal. Sept. 18, 2023) (Olguin, J.) (citation omitted). The agreements were made for the benefit of the signatories, as well as other parties on the frameworks. *See* Exs. A, B, E. Mr. Baker is thus not a "member[] of a class for whose benefit the contract was made." *Singer*, 2023 WL 6787442, at *5 (citation omitted). The agreements do not contain any provisions that benefit Mr. Baker or any language evidencing that a motivating purpose of the signatories was to benefit him. *See generally* Exs. A, B, E. Allowing him to enforce the agreements is inconsistent with the objectives of the agreements and the reasonable expectations of the signatories. *See, e.g.*, *Faucett v. Move, Inc.*, 2024 WL 2106727, *4 (C.D. Cal. Apr. 22, 2024) (declining to allow non-signatory to enforce arbitration clause where contract made no mention of third party and gave no indication of a motivating purpose of benefiting the non-signatory).

**The Dispute Resolution Provisions Are Not Conditions Precedent.** Courts "will neither infer nor construe a condition precedent 'absen[t] . . . language plainly requiring such construction.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (quoting *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969)). "Conditions precedent must be expressed in plain, clear, and unambiguous language[.]" *Id.* at 1043. The CCA and Common Agreement lack the strict, unequivocal language required to establish a condition precent. Instead, both encourage—but do ***not*** require—parties to utilize the non-binding dispute resolution process. Ex. A § 20.1; Ex. E § 15.1. Further, both agreements make clear that the dispute resolution process does not preclude litigation.

8

Refusal to participate in the process might be treated as a material breach, permitting Carequality or the RCE to suspend or terminate the agreement (*see* Ex. A § 20.1; Ex. E § 15.1), but the consequence is *contractual*—potential suspension or termination by signatories—*not a jurisdictional bar* enforceable by Mr. Baker (who regardless, has no standing to enforce the agreements).

**The Dispute Resolution Provisions Do Not Apply Because Plaintiffs Seek Immediate Injunctive Relief.**  The agreements specify that their dispute resolution procedures do not apply where a party believes that it is facing irreparable harm and pursues immediate injunctive relief in a court of competent jurisdiction.  Ex. A § 20.2; Ex. B § 9.3; Ex. E § 15.2.1.  The Complaint explains Plaintiffs' irreparable harm from Mr. Baker's theft of patient records.  Compl. ¶¶ 1-5, 11-25, 192-197.  Plaintiffs plainly seek immediate injunctive relief.  *Id.*, Caption, Prayer for Relief.  And Plaintiffs need not seek that relief through a specific procedural vehicle for this Court to award it.  *See, e.g.*, *Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*, 2025 WL 2853156, at **1, 7–8 (M.D. Fla. Aug. 21, 2025) (granting summary judgment and entering immediate injunctive relief).  Thus, Plaintiffs are "relieved" of any obligation to follow the dispute resolution procedures.  *See* Ex. A § 20.2.1; Ex. B § 9.3; Ex. E § 15.2.1.

**Plaintiffs Are Excused From Compliance Because The Process Is Futile.**  Assuming *arguendo* the existence of a condition precedent to filing suit (and there is none), Plaintiffs are excused from participating because Mr. Baker's and his entities' and affiliates' conduct demonstrates that it would be futile and Plaintiffs cannot obtain the remedies they seek.  *Vernon Fire Fighters v. City of Vernon*, 107 Cal. App. 3d 802, 826 (1980) ("It is an established rule that administrative remedies need not be exhausted where they are inadequate, inapplicable, or futile.").

Plaintiffs attempted—to no avail—to engage with the Mammoth Defendants (Mr. Baker's entities) and Health Gorilla, as the Implementer for Mammoth Dx and Mammoth Path Solution, to informally resolve the issue.  Compl. ¶¶ 158, 166, 187.  The Mammoth Defendants' inadequate response makes clear that continued use of the dispute resolution

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

procedures would be futile.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (denying motion to dismiss where plaintiff's allegations regarding defendant's inadequate response to claims indicated that complying with informal dispute settlement procedure would be futile).

Additionally, Plaintiffs seek a binding public injunction that the dispute resolution procedures cannot provide.  *See* Compl., Prayer for Relief.  Because the agreements' dispute resolution procedures cannot provide binding injunctive relief—let alone a public injunction—they would be futile, and thus Plaintiffs are excused from participating in the process.  *See Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315-16 (2003) (declining to enforce arbitration clause where "the request for injunctive relief is clearly for the benefit of health care consumers and the general public").

**B.      Plaintiffs Have Stated A Fraud Claim Against Mr. Baker.**

Mr. Baker raises two challenges to Plaintiffs' fraud claim:  whether Plaintiffs' allegations (1) satisfy Rule 9(b) (*see* Mot. at 9-13) and (2) demonstrate justifiable reliance (*see id.* at 13).

1.      Plaintiffs' Allegations Satisfy Rule 9(b).

Mr. Baker attempts to downplay the detailed allegations in Plaintiffs' Complaint, but Plaintiffs' allegations satisfy Rule 9(b), alleging the requisite who, what, when, where, and how of the fraud (*Davidson v. Kimberly-Clark Corp.*, 889 F3d 956, 966 (9th Cir. 2018):

- Mr. Baker (who) made or directed Mammoth Dx's and Mammoth Path Solution's false statements that they were healthcare providers seeking access to patient records for treatment services (what) in July 2024 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to the Carequality and TEFCA frameworks (where/how).  *See id.* ¶¶ 37-41, 161, 170, 219-220, 223-225, 264-265.
- Mr. Baker (who) failed to disclose that Mammoth Dx's and Mammoth Path Solution's true purpose in seeking access to patient records was to sell those records

to law firms and other third parties (what) in July 2024 (when) when being onboarded to the Carequality and TEFCA frameworks (where/how). *See id.*

- Mr. Baker (who) made or directed Mammoth Dx's and Mammoth Path Solution's false statements that they were seeking patient records for treatment services (what) from July 2024 through October 2025 (when) each time they queried patient records through the Carequality and TEFCA frameworks (where/how). *See id.*

- Mr. Baker (who) failed to disclose the ties between Mammoth Dx and Mammoth Path Solution, on the one hand, and Mammoth Rx and Nationwide Healthcare Provider Corp, on the other (what) from July 2024 through October 2025 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to and querying patient records through the Carequality and TEFCA frameworks (where/how). *Id.* ¶¶ 161, 165, 167, 170.

- Mr. Baker (who) failed to disclose his ties to Mammoth Dx and Mammoth Path Solution (what) from July 2024 through October 2025 (when) they were onboarded to and querying patient records through the Carequality and TEFCA frameworks (where/how). *Id.* ¶¶ 161, 165-166, 170, 224-226.

Plaintiffs similarly allege the who, what, when, where, and how of the other Mammoth Defendants' fraud. *See id.* ¶¶ 37-38, 159-170, 161, 168, 219-226. And Plaintiffs allege that Mr. Baker and his Mammoth entities actually retrieved records for persons to whom they were not providing treatment. *See id.* ¶¶ 159-170, 219-233.

The above detailed allegations are not lacking in specificity, nor are they undifferentiated group pleadings, as Mr. Baker argues. *See* Mot. at 4-5, 12-13. Plaintiffs allege which of the Mammoth Defendant entities accessed the interoperability frameworks (Mammoth Path Solution accessed both the Carequality and TEFCA frameworks while Mammoth Dx accessed only the Carequality framework, *see* Compl. ¶¶ 37-38), which of the Mammoth Defendants made each of the misrepresentations and omissions (all of them, including Mr. Baker, as detailed in the bullets above), and which of the Mammoth

11

Defendants participated in the camouflaging efforts (all of them, including Mr. Baker, *see id.* ¶¶ 159-170).

This is particularly true given "[i]n cases of corporate fraud," Rule 9(b)'s "pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual." *Khast v. Wash. Mut. Bank*, 2010 WL 11684849, at *3 (S.D. Cal. Oct. 26, 2010) (citing *625 3rd St. Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1049-50 (N.D. Cal. 2009)); see also *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006) (holding Rule 9(b)'s particularity requirement "relaxed in instances of corporate fraud" if facts supporting fraud allegations are "exclusively within the defendants' possession.") To be sure, Plaintiffs have, but need not, attribute "specific conduct" to Mr. Baker, and instead may "'identify the role of each defendant in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.3d 531, 541 (9th Cir. 1989)). Plaintiffs' allegations go well beyond these requirements.

Further, Mr. Baker's contentions that Plaintiffs' allegations are "speculative" or insufficient "to support an inference of unlawful conduct" fail. *See* Mot. at 10-11. The unlawful conduct alleged is accessing patient records under the false pretense of providing treatment. Compl. ¶¶ 159-170, 219-233. Plaintiffs allege facts that plausibly support the inference that Mr. Baker and his Mammoth entities were not actually providing treatment, despite their representations, and were instead monetizing patient records:

- Mammoth Dx and Mammoth Path Solution exhibit abnormal patient record exchange patterns (*id.* ¶ 162);

- Mammoth Dx and Mammoth Path Solution returned patient records that lacked the basic clinical information that would be expected if they were providing treatment (*id.* ¶ 163);

- Mammoth Path Solution has no public website (*id.* ¶ 164);

12

- Mammoth Dx and Mammoth Path Solution share an address with Mammoth Rx and Nationwide Healthcare Provider Corp, entities that monetize patient data and market patient records to attorneys and other third parties (*id.* ¶ 167);

- Mr. Hilton executed a sworn affidavit attesting that Mammoth Dx, Mammoth Path Solution, and Mammoth Rx are part of the same "Mammoth Family" (*id.* ¶ 166); and

- Mammoth Dx and Mammoth Path Solution are affiliated with Mr. Baker, who is banned from the Carequality framework for selling patient records to law firms (*id.* ¶¶ 134-135, 165).

Mr. Baker's attempts to explain away his Mammoth entities' abnormal patient record exchange patterns, sharing back of junk data, and disclosure of patient records to Nationwide Healthcare Provider Corp (*see* Mot. at 10-11) raise fact disputes that are not ripe for resolution. *Davis*, 691 F.3d at 1159 (factual allegations in complaint must be accepted as true at pleading stage).

### 2.    Plaintiffs Have Alleged Actual, Justifiable Reliance.

Mr. Baker asserts that Plaintiffs do not allege that they were recipients of any misrepresentations or omissions. Mot. at 13. Plaintiffs however allege that they received the misrepresentations made by Mr. Baker through his Mammoth entities when Mammoth Dx and Mammoth Path Solution were being onboarded to the Carequality and TEFCA frameworks because these statements were incorporated into the Carequality and TEFCA directories. Compl. ¶¶ 53, 55, 63, 93, 161. The Provider Plaintiffs further allege that they received the misrepresentations made by Mr. Baker through his Mammoth entities in connection with their queries for patient records. *Id.* ¶¶ 161, 170, 230. And, Plaintiffs allege that, on the TEFCA framework, Epic received queries from Health Gorilla that originated from Mr. Baker through his Mammoth entities containing misrepresentations and omissions. *Id.* ¶¶ 98, 230.

Mr. Baker next contends that Plaintiffs do not allege reliance. Mot. at 13. This, too, is false. Plaintiffs allege that Epic and OCHIN allowed and enabled their customers

to exchange patient records with Mr. Baker's Mammoth entities in reliance on Mr. Baker's misrepresentations and omissions made through his Mammoth entities. *See* Compl. ¶¶ 55, 63, 66, 68, 94, 96, 98, 161, 170, 227-232, 265-266. Further, Plaintiffs allege that the Provider Plaintiffs exchanged patient records with the Mr. Baker's Mammoth entities in reliance on their misrepresentations and omissions. *See id.* And, on the TEFCA framework, in reliance on their misrepresentations and omissions, Epic received queries from Health Gorilla that originated from Mr. Baker through his Mammoth entities, sent those queries to its customers, and provided its customers' patient records to Health Gorilla to transmit back to Mr. Baker's Mammoth entities. *Id.* ¶ 98. Thus, Plaintiffs have alleged reliance on Mr. Baker's misrepresentations and omissions, including when and how they did so.

To the extent Mr. Baker contends that Plaintiffs have not alleged that they suffered damages as a result of Mr. Baker's fraud, *see* Mot. at 13, this is also wrong. As detailed above, *see* Section III.A.1, *supra*, Plaintiffs incurred increased storage costs when Mr. Baker requested, through his Mammoth entities, patient records under false pretenses. *Id.* ¶¶ 66, 96, 195, 233-234, 267-268. Plaintiffs also incurred investigation, monitoring, and mitigation costs; reputational harm; and costs in responding to customer complaints. Compl. ¶¶ 161, 170-171, 189-197, 219, 233-234, 267-268. Plaintiffs incurred these costs based on Mr. Baker's infliction of past harms and the substantial and imminent risk that those harms will continue. *Id.*

## C. Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud Against Mr. Baker.

Mr. Baker contends that Plaintiffs' aiding and abetting allegations are "bare" and "formulaic." Mot. at 14. Not so. To plead a claim for aiding and abetting fraud, Plaintiffs must allege that Mr. Baker (1) "knew the other's conduct constituted a breach of duty" and (2) "gave substantial assistance or encouragement to so act." *Berman v. Bank of Am. N.A.*, 2025 WL 2885491, at *12 (C.D. Cal. Sept. 2, 2025) (Olguin, J.) (cleaned up, quoting *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113 (S.D. Cal. 2024)).

14

**Actual Knowledge.**  As Mr. Baker recognizes (Mot. at 14), actual knowledge "may be averred generally." *Bhatia*, 725 F. Supp. 3d at 1114.  A "direct allegation (really, assertion) of actual knowledge" satisfies the first step of the inquiry. *Id.* (quoting *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *4 (N.D. Cal. Apr. 7, 2020)).  Here, Plaintiffs directly allege that "[a]t all relevant times, . . . Baker . . . knew that Mammoth was misstating its true purpose and that its treatment requests were false[.]"  Compl. ¶ 263.

The next question is whether the complaint "pleads sufficient facts to make that allegation plausible[.]"  *Bhatia*, 725 F. Supp. 3d at 1114 (quoting *Chang*, 2020 WL 1694360, at *4).  Here, Plaintiffs' Complaint contains detailed facts that Mr. Baker:

- Knew that Mammoth was misstating its true purpose (Compl. ¶ 263);
- Knew that Mammoth's treatment-purpose requests were false (*id.*);
- Knew Mammoth's true purposes for seeking patient records was to sell them through Mammoth Rx, Nationwide Healthcare Provider Corp, and other intermediaries to law firms and other third parties (*id.*);
- Knew that Mammoth was not providing medical treatment to all of the persons that it requested patient records related to (*id.* ¶ 264);
- Made or directed the false statements as Chief Technology Officer of Mammoth Dx (*id.* ¶¶ 41, 165, 223-225);
- Is the co-founder and Chief Technology Officer of Mammoth Rx, which monetizes patient data (*id.* ¶ 41);
- Knows that Mammoth Rx, Nationwide Healthcare Provider Corp, Mammoth Dx and Mammoth Path Solution all share the same address (*id.* ¶¶ 37-39, 167);
- Knows that Mammoth Dx, Mammoth Path Solution, and Mammoth Rx share a logo (*id.* ¶ 39);
- Knew that he (and any entity owned or operated by him) were banned from the Carequality framework (*id.* ¶ 135)

15

- Knew that Mammoth's connection with him disqualified Mammoth from participating in the Carequality framework and knew Mammoth needed to hide his involvement in order to obtain patient records (*id.* ¶¶ 166, 225);

- Was informed by Epic of its concerns (*id.* ¶ 166); and

- Took steps to attempt to cover up the Mammoth Defendants' suspicious activity and to hide the connections between himself, his entities, and the Mammoth Defendants generally (*id.* ¶¶ 166, 170).

These detailed and specific allegations are not "bare, formulaic assertions" as Mr. Baker contends, *see* Mot. at 14, and are more than sufficient to allege actual knowledge.

**Substantial Assistance.** "Pleading the element of 'substantial assistance requires a significant and active, as well as a knowing participation in the wrong, and a plaintiff must also allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff.'" *Berman*, 2025 WL 2885491, at *13 (cleaned up, quoting *Chang*, 2020 WL 1694360, at *6). Even "'ordinary business transactions' can satisfy the substantial assistance element of an aiding and abetting claim if the defendant actually knew those transactions were assisting the principal in committing a specific tort." *Bhatia*, 725 F. Supp. 3d at 1120 (collecting cases).

Plaintiffs have alleged substantial assistance, alleging that Mr. Baker:

- Made or directed the false statements on Mammoth's behalf as Mammoth's Chief Technology Officer with knowledge that Mammoth was not providing treatment to the patients whose records Mammoth sought (*id.* ¶¶ 41, 165, 223-225, 263-264);

- Held out those false statements as evidence of treatment purposes (*id.*);

- Participated in the sale of patient records to law firms and other third parties through his involvement with Mammoth Rx (*id.* ¶¶ 40-41, 164-165, 223);

- Founded Mammoth Rx, one of the entities through which Mammoth Dx and Mammoth Path Solution sold patient records to law firms and other third parties while evading detection (*id.* ¶¶ 37-39, 167-170, 223);

16

- Took steps to hide the connections between Mammoth Dx, Mammoth Path Solution, and Mammoth Rx (*id*. ¶¶ 166, 170); and

- Took steps to hide Mammoth's connection to him with knowledge that this relationship would disqualify Mammoth from participating in the Carequality framework and prevent Mammoth from obtaining patient records (*id.* ¶¶ 166, 225).

As Plaintiffs' allegations make clear, Mr. Baker provided substantial assistance by actively participating in the fraud to benefit his own interests and the interests of the interconnected business web that he operates for the improper purpose of obtaining and selling patient records that he takes from the interoperability frameworks under the false pretense of providing "treatment" to patients. *Id.* ¶¶ 37-41, 159-170, 223-227, 263-264. Mr. Baker's assistance was essential to the Mammoth Defendants harming Plaintiffs. *Id.*

Mr. Baker remaining arguments fail:

***First***, Mr. Baker asserts that his role as Chief Technology Officer of Mammoth Dx and co-founder and Chief Technology Officer of Mammoth Rx do not establish that he is liable. Mot. at 3-5. But directors and officers of a corporation, like Mr. Baker, "can be held liable if they 'specifically authorized, directed or participated in the allegedly tortious conduct.'" *Ketayi v. Health Enrollment Group*, 516 F. Supp. 3d 1092, 1127 (S.D. Cal. Feb. 2, 2021); *NTD Architects v. Baker*, 950 F. Supp. 2d 1151, 1159 (S.D. Cal. 2013) (active participation by a director or officer can be shown either by showing the person "specifically authorized, directed or participated in the allegedly tortious conduct" or "knew about and allowed the tortious conduct to occur"). Here, as detailed above, Plaintiffs have alleged particular facts showing that Mr. Baker authorized, directed, and participated in the fraud and, further, that he knew about and allowed the fraud to occur. Accordingly, Plaintiffs have alleged substantial assistance.[3]

---

[3] Mr. Baker also apparently disputes that he was the founder and Chief Technology Officer of any of the Mammoth Entities, despite being identified as such publicly. Mot. at 4. But Plaintiffs' allegations are accepted as true at this stage. *Davis*, 691 F.3d at 1159 (factual allegations in complaint must be accepted as true at pleading stage).

17

***Second***, Mr. Baker contends that his connection to Integritort is "meaningless." Mot. at 4. Not so. The fact that Mr. Baker was banned from the Carequality framework due to his activities through his prior entity Integritort—namely, selling medical records to law firms—is directly relevant to Plaintiffs allegations that Mr. Baker was repeating this conduct, with knowledge of its impropriety, through the Mammoth entities.

## D.    Plaintiffs Have Stated A UCL Claim.

In the same single-sentence footnote that appears in the Mammoth Defendants' motion, Mr. Baker asserts that Plaintiffs' UCL claim fails because it must satisfy Rule 9(b). *See* Mot. at 15 n.5. Mr. Baker does not elaborate on what precisely is missing from Plaintiffs' UCL claim or how it lacks the requisite specificity. *Id.*

Mr. Baker is incorrect that the whole of Plaintiffs' UCL claim sounds in fraud and thus Rule 9(b) applies to Plaintiffs' UCL claim in full. *See Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2014 WL 12558848, at *9-11 (C.D. Cal. May 30, 2014) (Plaintiffs' UCL claims under the unlawful and unfair prongs of the UCL did not sound in fraud and therefore Rule 9(b) did not apply). Here, Plaintiffs' UCL claims under the unlawful prong related to Mr. Baker's violations of HIPAA. *See* Compl. ¶ 283. As to the portions of Plaintiffs' UCL claim that do sound in fraud, Mr. Baker's argument fails because, as detailed above, Plaintiffs' allegations satisfy Rule 9(b). *See* Section III.B.1, *supra*.

## IV.    <u>IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND</u>

To the extent the Court grants any portion of Mr. Baker's Motion, Plaintiffs respectfully request leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment). Mr. Baker does not present any argument that leave to amend would be futile, and thus leave to amend is proper.

///

///

18

V.    **<u>CONCLUSION</u>**

Plaintiffs respectfully request that the Court deny Mr. Baker's Motion.

Dated:  April 30, 2026            By:    */s/ Marshall L. Baker*
                                         Marshall L. Baker
                                         Lauren E. Huennekens
                                         **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                         1999 Avenue of the Stars, Suite 600
                                         Los Angeles, CA  90067-6022

                                         - and -

                                         Anthony T. Pierce (*pro hac vice*)
                                         Mark R. Herring (*pro hac vice*)
                                         Caroline L. Wolverton (*pro hac vice*)
                                         Laura Hill (*pro hac vice*)
                                         **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                         Robert S. Strauss Tower
                                         2001 K Street, N.W.
                                         Washington, DC  20006-1037

                                         *Attorneys for Plaintiffs*
                                         *Epic Systems Corporation, OCHIN, Inc.,*
                                         *Reid Hospital & Health Care Services Inc.,*
                                         *Trinity Health Corporation, and UMass Memorial*
                                         *Health Care, Inc.*

19

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Epic System Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc., certifies that this brief contains 5,986 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 30, 2026       By:   */s/ Marshall L. Baker*
                                   Marshall L. Baker
                                   Lauren E. Huennekens
                                   **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                   1999 Avenue of the Stars, Suite 600
                                   Los Angeles, CA  90067-6022

                                   - and -

                                   Anthony T. Pierce (*pro hac vice*)
                                   Mark R. Herring (*pro hac vice*)
                                   Caroline L. Wolverton (*pro hac vice*)
                                   Laura Hill (*pro hac vice*)
                                   **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                   Robert S. Strauss Tower
                                   2001 K Street, N.W.
                                   Washington, DC  20006-1037

                                   *Attorneys for Plaintiffs*
                                   *Epic Systems Corporation, OCHIN, Inc.,*
                                   *Reid Hospital & Health Care Services Inc.,*
                                   *Trinity Health Corporation, and UMass Memorial*
                                   *Health Care, Inc.*

PLAINTIFFS' OPPOSITION TO DEFENDANT
DANIEL BAKER'S MOTION TO DISMISS