**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:  310.229.1000
Facsimile:  310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Laura Hill (*pro hac vice*)
lhill@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:  202.887.4000
Facsimile:  202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc.,
Reid Hospital & Health Care Services, Inc., Trinity Health Corporation,
and UMass Memorial Health Care, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100,<br><br>Defendants. | Case No. 2:26-cv-00321-FMO-RAO<br><br>Assigned to:  Hon. Fernando M. Olguin<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MAX TOOVEY'S MOTION TO DISMISS**<br><br>Date:  May 21, 2026<br>Time:  10:00 A.M.<br>Location:  Courtroom 6D<br><br>Date Action Filed:  January 13, 2026 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................1

II.   BACKGROUND ...............................................................3

III.  ARGUMENT.....................................................................4

    A.    Plaintiffs Have Stated A Fraud Claim Against Mr. Toovey. .................5

        1.    Plaintiffs Allege Misrepresentations And Omissions That Satisfy Rule 9(b). ...........................................................5

        2.    Plaintiffs Allege Mr. Toovey's Scienter. ...................................8

    B.    Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud Against Mr. Toovey. ......................................................10

    C.    Plaintiffs Have Stated A UCL Claim.......................................14

    D.    Mr. Toovey's Attempt To Incorporate Other Defendants' Arguments By Reference Is Improper And Fails......................................14

        1.    Mr. Toovey's Choice Of Law Arguments Fail.........................15

        2.    Plaintiffs Have Article III Standing. ........................................15

        3.    There Is No Contractual Bar To Plaintiffs' Claims....................16

        4.    Plaintiffs Have Alleged Justifiable Reliance. ...........................19

IV.   IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND...............................................21

V.    CONCLUSION...................................................................21

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*625 3rd St. Assocs., L.P. v. Alliant Credit Union*,
   633 F. Supp. 2d 1040 (N.D. Cal. 2009).................................................................7

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   824 F. Supp. 2d 1164 (C.D. Cal. 2011) .........................................................10, 11

*Axonic Cap. LLC v. Gateway One Lending & Fin., LLC*,
   2018 WL 11355034 (C.D. Cal. Dec. 18, 2018).........................................9, 10, 11

*Berman v. Bank of Am. N.A.*,
   2025 WL 2885491 (C.D. Cal. Sept. 2, 2025) (Olguin, J.)..............................10, 13

*Bhatia v. Silvergate Bank*,
   725 F. Supp. 3d 1079 (S.D. Cal. 2024)......................................................10, 11, 13

*Cal. Inst. of Tech. v. City of Pasadena*,
   2024 WL 6938009 (C.D. Cal. Aug. 23, 2024) ...................................................15

*Calence, LLC v. Dimension Data Holdings, PLC*,
   222 F. App'x 563 (9th Cir. 2007) .......................................................................15

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013)......................................................................................15, 16

*Cruz v. PacifiCare Health Sys., Inc.*,
   30 Cal. 4th 303 (2003) .......................................................................................19

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................................5

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ..............................................................................4

*Doe v. Taro Pharm. U.S.A., Inc.*,
   2025 WL 3280257 (N.D. Cal. Nov. 25, 2025) ...................................................15

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................21

*Faucett v. Move, Inc.*,
   2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) ....................................................17

*Ford Motor Warranty Cases*
   17 Cal. 5th 1122 (2025) ....................................................................................17

*Gonzales v. Lloyds TSB Bank, PLC*,
   532 F. Supp. 2d 1200 (C.D. Cal. 2006) ..............................................................7

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
   957 F.3d 1038 (9th Cir. 2020) ..........................................................................17

*Khast v. Wash. Mut. Bank*,
   2010 WL 11684849 (S.D. Cal. Oct. 26, 2010) ....................................................7

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ..........................................................................17

*United States ex rel. Lee v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ..............................................................................9

*Mau v. City & Cnty. of Honolulu*,
   2025 WL 3251168 (S.D. Cal. Apr. 4, 2025) ......................................................14

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
   436 F. Supp. 2d 1095 (C.D. Cal. 2006) ..............................................................7

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................12

*In re Nexus 6P Prods. Liability Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ..............................................................15

*Paya v. Macy's Inc.*,
   793 F. Supp. 3d 1201 (C.D. Cal. 2025) ............................................................15

*United States ex rel. Schutte v. SuperValu Inc.*,
   598 U.S. 739 (2023).............................................................................................9

*Singer v. Ett*,
   2023 WL 6787442 (C.D. Cal. Sept. 18, 2023) (Olguin, J.).................................17

*Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*,
   2025 WL 2853156 (M.D. Fla. Aug. 21, 2025)....................................................18

iii

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS

*Sonneveldt v. Mazda Motor of Am., Inc.*,
2021 WL 4813753 (C.D. Cal. July 29, 2021)....................................................7, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................................16

*Storm Mfg. Grp. Inc. v. Weather Tec Corp.*,
2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) .....................................................16

*Swanson v. U.S. Forest Serv.*,
87 F.3d 339 (9th Cir. 1996) ..................................................................................14

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ...................................................................................7

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., &*
*Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...............................................................................................16

*Vernon Fire Fighters v. City of Vernon*,
107 Cal. App. 3d 802 (1980) .................................................................................18

*Virun, Inc. v. Cymbiotika LLC*,
2023 WL 12119026 (C.D. Cal. July 21, 2023).......................................................9

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018) .................................................................................10

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...............................................................................4

# I.   INTRODUCTION

Defendant Max Toovey knowingly and deliberately engaged in a fraudulent scheme to obtain confidential patient records under the false pretenses that those records were being used for the purposes of treating patients.  In reality, those patient records were obtained for the purpose of monetizing them for the benefit of Mr. Toovey and the rest of the Mammoth Defendants.

The Mammoth Defendants are a web of three entities and three individuals—Mammoth Dx, Mammoth Path Solution, Mammoth Rx, Max Toovey, Ryan Hilton, and Daniel Baker.  Mr. Toovey is the Chief Commercial and Strategy Officer of Mammoth Rx. The three Mammoth entities operate out of the same office and are all part of the same "Mammoth Family."  Mr. Toovey is also the Chief Commercial and Strategy Officer for Nationwide Health Healthcare Provider Corp, an entity that markets access to patient records to lawyers and others representing potential social security claimants, and which shares an address with the Mammoth entity defendants.

In July 2024, Defendants Mammoth Dx and Mammoth Path Solution—acting in concert with the rest of their Mammoth affiliates—were onboarded by Defendant Health Gorilla to the Carequality and Trusted Exchange Framework and Common Agreement ("TEFCA") interoperability frameworks, nationwide exchanges through which healthcare providers can exchange patient records with other providers for the purposes of providing treatment to patients.

From the time of their onboarding through at least October 2025, the Mammoth Defendants obtained patient records from the Carequality and TEFCA frameworks based on assertions that those records were for treatment.  Mammoth obtained over 140,000 patient records from Plaintiff Epic's healthcare provider customers, including thousands of patient records from Plaintiffs Reid, Trinity, and UMass Memorial Health, as well as over 1,500 patient records from Plaintiff OCHIN's healthcare provider customers.  In each instance where a patient record was disclosed to Mammoth, it was based on Mr. Toovey's

Plaintiffs' Opposition to Defendant
Max Toovey's Motion to Dismiss

and other Mammoth Defendants' assertions (both directly and through Health Gorilla) that the record was being requested for treatment.

After obtaining the patient records, the Mammoth Defendants did not use those records for treatment but instead monetized and sold them to law firms—including through Mr. Toovey's entities Mammoth Rx and Nationwide Healthcare Provider Corp. Mr. Toovey thus served an integral role in the fraudulent and illegal scheme to exploit Mammoth's access to the interoperability frameworks—extracting, disseminating, and selling sensitive and confidential patient records without patients' knowledge or consent—harming Plaintiffs, the privacy rights of individual patients, and the integrity of the interoperability ecosystem.

Against that backdrop, Plaintiffs assert claims against Mr. Toovey for his fraudulent and unlawful access to patient records, which he facilitated and participated in through the Mammoth entities and Nationwide Healthcare Provider Corp.  Mr. Toovey has moved to dismiss, but his arguments fall short.

*First*, Mr. Toovey contends that Plaintiffs fail to allege their fraud claim with the specificity required by Rule 9(b).  He misleadingly relies on a selective reinterpretation of Plaintiffs' Complaint.  Plaintiffs' allegations make clear the familiar who, what, when, where, and how of Mr. Toovey's fraud, detailing his role in the scheme to access, disclose, and monetize patient records through a network of interconnected entities in order to evade detection.  Mr. Toovey's claim that Plaintiffs' Complaint has failed to sufficiently put him on notice of Plaintiffs' claims against him is untenable.

*Second*, Mr. Toovey argues that Plaintiffs have not adequately alleged that he aided and abetted the Mammoth Defendants' fraud.  But Plaintiffs allege that Mr. Toovey knowingly and actively participated in the fraud, including by making or facilitating the Mammoth Defendants' false statements that they were seeking patient records for treatment purposes and by marketing and selling those patient records to third parties.

*Fourth*, Mr. Toovey seeks dismissal of Plaintiffs' claim under the "fraudulent" prong of California Business and Professions Code § 17200, *et seq.*, on the same grounds

that he seeks dismissal of Plaintiff's fraud and aiding-and-abetting claims. But because Plaintiffs' underlying claims survive, so too, does their claim under the fraudulent prong of Business and Professions Code § 17200. Moreover, Mr. Toovey fails to address that Plaintiffs' claim is also independently viable because of Mr. Toovey's unlawful conduct in violation of HIPAA.

*Finally*, Mr. Toovey attempts to join other Defendants' arguments related to choice of law, Article III standing, certain dispute resolution provisions within the interoperability agreements, and reliance. Those attempts are improper and should be disregarded. Even if considered, these arguments fail substantively.

For these reasons and as further described below, this Court should deny Mr. Toovey's motion to dismiss.

## II. BACKGROUND[1]

Plaintiffs are long-standing participants in interoperability efforts and reflect the breadth of the country's interoperable health care delivery system. *See* Compl. ¶¶ 6-7, 28-30, 112-115, 116. Epic spearheaded treatment-based interoperability over two decades ago and is a charter Implementer on the Carequality framework and QHIN on the federal-government sponsored TEFCA framework. *Id.* ¶¶ 112-115. OCHIN is a nonprofit organization supporting thousands of healthcare providers nationwide and operates as a Carequality Connection and TEFCA Participant. *Id.* ¶¶ 27, 116. Reid is a community hospital based in Indiana, *id*. ¶¶ 28, 117, Trinity is a Catholic organization serving patients in 25 states, including California, *id*. ¶¶ 29, 118, and UMass Memorial Health is an academic medical center, *id*. ¶¶ 30, 119. Reid, Trinity, and UMass Memorial Health (collectively, the "Provider Plaintiffs") participate in the frameworks as Carequality Connections and TEFCA Participants. *Id.* ¶¶ 117-121.

Mammoth Dx operates as a Carequality Connection, while Mammoth Path Solution operates as a Carequality Connection and a TEFCA Participant. *Id.* ¶¶ 37-38. In these

[1] Capitalized terms have the meanings assigned to them in Plaintiffs' Complaint (ECF No. 1). Exhibit references are to those attached to Plaintiffs' Complaint.

3

roles, Mammoth Dx and Mammoth Path Solution query patient records through the Carequality and TEFCA interoperability frameworks, falsely asserting with each query that they are seeking the records for treatment purposes. *Id.* ¶¶ 159-164. Mammoth Dx and Mammoth Path Solution then transmit these patient records to entities such as Mammoth Rx, an entity that monetizes patient data, and Nationwide Healthcare Provider Corp, an entity that sells patient records to law firms and other third parties, for financial gain. *Id.* ¶¶ 39, 159-164, 167, 170. Mammoth Dx, Mammoth Path Solution, Mammoth Rx, and Nationwide Healthcare Provider Corp share the same address, with Mammoth Dx, Mammoth Path Solution, and Mammoth Rx also sharing the same logo. *Id.* ¶¶ 37-39, 167. Indeed, Defendant Ryan Hilton affirmed in an affidavit that Mammoth Dx, Mammoth Path Solution, and Mammoth Rx are all part of the same "Mammoth Family." *Id.* ¶ 39. The Mammoth Defendants use this nest of corporate entities to evade detection.

Mr. Toovey and his Mammoth co-Defendants are closely connected. Mr. Toovey is the Chief Commercial and Strategy Officer of Mammoth Rx and Nationwide Healthcare Provider Corp. *Id.* ¶¶ 42, 167. Mr. Hilton is the Chief Executive Officer and owner of Mammoth Dx, Mammoth Path Solution, and Mammoth Rx, as well as the owner of Nationwide Healthcare Provider Corp. *Id.* ¶¶ 39-40, 167-169. And Mr. Baker is the Chief Technology Officer of Mammoth Dx and co-founder and Chief Technology Officer of Mammoth Rx. *Id.* ¶¶ 41, 165.

Mr. Toovey's conduct amounts to fraud and violates the Health Insurance Portability and Accountability Act ("HIPAA") and California Business and Professions Code § 17200, *et seq.* ("UCL"). *Id.*, Counts II, V, VII.

## III.   ARGUMENT

A motion to dismiss tests the legal sufficiency of the claims asserted. Fed. R. Civ. P. 12(b)(6). The Court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to Plaintiffs. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

**A.    Plaintiffs Have Stated A Fraud Claim Against Mr. Toovey.**

Mr. Toovey raises two challenges to Plaintiffs' fraud claim: whether Plaintiffs allege (1) an actionable misrepresentation or omission by Mr. Toovey that satisfies Rule 9(b) (*see id.* at 11-17) and (2) scienter (*see id.* at 17-20).  Neither warrants dismissal.

          1.    Plaintiffs Allege Misrepresentations And Omissions That Satisfy Rule 9(b).

Mr. Toovey downplays the detailed allegations in Plaintiffs' Complaint, referring to Plaintiffs' allegations as "generalized" (Mot. at 14) and reducing the alleged misrepresentations and omissions to (1) Mr. Toovey's statements marketing patient records to third parties (*id.* at 11-13) and (2) Mr. Toovey's failure to disclose the Mammoth Defendants' ties to Mr. Baker (*id.* at 13-14).  As an initial matter, Plaintiffs' fraud claim is not based on Mr. Toovey's marketing statements and thus his arguments on this point are irrelevant.  *Id.* at 11-13.  More critically, Mr. Toovey ignores the detailed allegations of misrepresentations and omissions that form the basis of Plaintiffs' fraud claim.

Plaintiffs' allegations satisfy Rule 9(b), alleging the "who, what, when, where, and how" (*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018)) of Mr. Toovey's fraud:

- Mr. Toovey (who) made and/or facilitated Mammoth Dx's and Mammoth Path Solution's false representations that they were healthcare providers seeking access to patient records for treatment services (what) in July 2024 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to the Carequality and TEFCA frameworks (where/how).  Compl. ¶¶ 37-39, 42, 161, 170, 219-220, 223-225, 262-265.

- Mr. Toovey (who) failed to disclose that Mammoth Dx and Mammoth Path Solution were not healthcare providers and were not seeking access to patient records for treatment services (what) in July 2024 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to the Carequality and TEFCA frameworks (where/how).  *Id.*

- Mr. Toovey (who) failed to disclose that Mammoth Dx's and Mammoth Path Solution's true purpose in seeking access to patient records was to sell those records to law firms and other third parties (what) in July 2024 (when) when being onboarded to the Carequality and TEFCA frameworks (where/how). *Id.*

- Mr. Toovey (who) facilitated and/or made Mammoth Dx's and Mammoth Path Solution's false statements that they were seeking patient records for treatment services (what) from July 2024 through October 2025 (when) each time they queried patient records through the Carequality and TEFCA frameworks (where/how). *Id.*

- Mr. Toovey (who) failed to disclose the ties between Mammoth Dx and Mammoth Path Solution, on the one hand, and Mammoth Rx and Nationwide Healthcare Provider Corp, on the other (what) from July 2024 through October 2025 (when) when Mammoth Dx and Mammoth Path Solution were onboarded to and querying patient records through the Carequality and TEFCA frameworks (where/how). *Id.* ¶¶ 161, 165, 167, 170.

- Mr. Toovey (who) failed to disclose Mr. Baker's ties to Mammoth Dx and Mammoth Path Solution (what) from July 2024 through October 2025 (when) when they were onboarded to and querying patient records through the Carequality and TEFCA frameworks (where/how). *Id.* ¶¶ 161, 165-166, 170, 224-226.

The allegations are not lacking in specificity, nor are they undifferentiated group pleadings. *See* Mot. at 14-16. Contrary to Mr. Toovey's contentions, Plaintiffs have identified what misrepresentations and omissions Mr. Toovey made, when he made them, and to whom. *Id.* at 16. Plaintiffs also have alleged precisely what Mr. Toovey's role in the fraudulent scheme was, contrary to Mr. Toovey's contention (*see id.* at 14-15):  Mr. Toovey was Chief Commercial and Strategy Officer for Mammoth Rx (Compl. ¶¶ 167, 223) and Nationwide Health Care Provider Corp (*id.* ¶ 167), which sold patient records to third parties (*id.*), and he "facilitate[d] the false representations and omissions . . . by" (a) "making the false representations and omissions" himself, and (b) "providing cover for

the false representations and omissions" through the web of interconnected entities (*id.* ¶ 264). The fact that Mr. Baker and Mr. Hilton made the same misrepresentations and omissions as Mr. Toovey does not equate to the conclusion that Plaintiffs' allegations against Mr. Toovey are insufficient or unspecific. Mot. at 14.

This is particularly true given "[i]n cases of corporate fraud," Rule 9(b)'s "pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual." *Khast v. Wash. Mut. Bank*, 2010 WL 11684849, at *3 (S.D. Cal. Oct. 26, 2010) (citing *625 3rd St. Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1049-50 (N.D. Cal. 2009)); *see also Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006) (holding Rule 9(b)'s particularity requirement "relaxed in instances of corporate fraud" if facts supporting fraud allegations are "exclusively within the defendants' possession"). To be sure, Plaintiffs have, but need not, attribute "specific conduct" to Mr. Toovey, and instead may "'identify the role of each defendant in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)). Plaintiffs' allegations go well beyond these requirements.[2]

With respect to Mr. Toovey's challenges to Plaintiffs' contention that Mr. Toovey's fraud was based, in part, on his failure to disclose Mr. Baker's connection to Mammoth Dx and Mammoth Path Solution, Mr. Toovey's arguments fail. *See* Mot. at 13-14. A "confidential or fiduciary relationship" is not required for an actionable omission. *See Sonneveldt v. Mazda Motor of Am., Inc.*, 2021 WL 4813753, at *4 (C.D. Cal. July 29, 2021). Rather, a duty to disclose also exists "when the defendant had exclusive knowledge of material facts not known to plaintiff" and "when the defendant actively conceals a

---

[2] Additionally, the fact that the fraudulent scheme spans over one year does not condemn Plaintiffs' temporal allegations as fatally unspecific, despite Mr. Toovey's contention to the contrary (Mot. at 15). *See Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1211-12 (C.D. Cal. 2006) ("Plaintiffs provide a time frame" for the alleged fraud, "but no specific dates are given. Based on the on-going nature of the fraud alleged by Plaintiffs, this is not a fatal flaw.").

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS

material fact from plaintiff." *Id.*  Here, Plaintiffs allege that Mr. Toovey had exclusive knowledge of Mr. Baker's involvement with the Mammoth Defendants and that this fact was material because Mr. Baker's involvement with the Mammoth Defendants bars them from participating in the Carequality interoperability network.  Compl. ¶¶ 134-135, 170, 224-226.  Plaintiffs also allege that Mr. Toovey actively concealed Mr. Baker's involvement with the Mammoth Defendants in order to enable the Mammoth Defendants to continue accessing patient records on the Carequality framework.  *Id.*  Plaintiffs have thus adequately alleged an omission by Mr. Toovey that he was obligated to disclose.

> 2.   Plaintiffs Allege Scienter.

Plaintiffs allege that Mr. Toovey knew his representations and omissions were false, or at a minimum, acted recklessly and without regard for the truth of his statements, because he:

- Knew that Mammoth was misstating its true purpose (*id.* ¶¶ 167, 225, 263-264);
- Knew that Mammoth's treatment-purpose requests were false (*id.*);
- Knew Mammoth's true purposes for seeking patient records were to sell them through Mammoth Rx, Nationwide Healthcare Provider Corp, and other intermediaries to law firms and other third parties (*id.*);
- Knew that Mammoth was not providing medical treatment to all of the persons for whom it requested patient records (*id.*);
- Facilitated or made the false statements of Mammoth Dx and Mammoth Path Solutions (*id.* ¶¶ 42, 223-225, 264);
- Is the Chief Commercial and Strategy Officer of Mammoth Rx, which monetizes patient data (*id.* ¶ 42);
- Is the Chief Commercial and Strategy Officer of Nationwide Healthcare Provider Corp, which sells patient records to third parties (*id.* ¶ 42);
- Knows that Mammoth Rx, Nationwide Healthcare Provider Corp, Mammoth Dx, and Mammoth Path Solution all share the same address (*id.* ¶¶ 37-39, 167);

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS

- Knew that Mr. Baker and any entity owned or operated by him were banned from the Carequality framework (*id.* ¶ 135);
- Knew that Mammoth's connection with Mr. Baker disqualified Mammoth from participating in the Carequality framework and knew Mammoth needed to hide Mr. Baker's involvement in order to obtain patient records (*id.* ¶¶ 166, 225);
- Was informed by Epic of its concerns (*id.* ¶ 166); and
- Took steps to attempt to cover up the Mammoth Defendants' suspicious activity and to hide the connections between himself, Mr. Baker, the Mammoth entities, and Nationwide Healthcare Provider Corp (*id.* ¶¶ 166, 170).

Plaintiffs' allegations satisfy Rule 9(b), which requires only that knowledge be alleged generally. Fed. R. Civ. P. 9(b); *see United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (under Rule 9(b), scienter "can be alleged generally"). Indeed, in keeping with Rule 9(b), courts have found it "is often enough to establish scienter for fraud" that a defendant "made [a] false statement 'without belief in its truth or recklessly, careless of whether it is true or false,'" or "knows that [it] 'lacks an honest belief' in the statement's truth." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 752 (2023) (quoting Restatement (Second) of Torts, § 526, cmts. e, d); *see also Virun, Inc. v. Cymbiotika LLC*, 2023 WL 12119026, at *3 (C.D. Cal. July 21, 2023) ("To plead fraud, a party must plead facts showing," among other things, "knowledge of falsity or reckless disregard for the truth[.]"). This is exactly what Plaintiffs have done here.

*Axonic Cap. LLC v. Gateway One Lending & Fin., LLC*, 2018 WL 11355034 (C.D. Cal. Dec. 18, 2018)—cited by Mr. Toovey (*see* Mot. at 18-19)—is inapposite. Mr. Toovey relies exclusively on the court's discussion of scienter under the federal securities laws, which applies a different and higher standard than common law fraud. *Id.* at *16-17 (the pleading standard for common law fraud is "more forgiving" and "lower" than the pleading standard for federal securities law violations). To that end, the court found scienter was adequately alleged with respect to common law fraud, despite finding it was not adequately alleged in connection with the federal securities law claims. *Compare id.*

9

at *17 ("Plaintiffs have adequately pleaded scienter as to Gateway" with respect to common law fraud, which permits scienter to "be alleged generally under Rule 9(b)"), *with id.* at *12-13 ("the complaint does not allege Gateway's scienter with particularity as required under the PSLRA."). The same conclusion applies here: Plaintiffs have adequately alleged scienter to state a claim for common law fraud.

Mr. Toovey's citations to *Webb v. Solarcity Corp.*, 884 F.3d 844 (9th Cir. 2018) and *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011) and (*see* Mot. at 17-19) fare no better. *Webb* addresses only violations of the federal securities laws and therefore the court's holding, which applies a different pleading standard, is irrelevant. 884 F.3d at 851 (discussing pleading standard under the Private Securities Litigation Reform Act). In *Allstate*, contrary to Mr. Toovey's contention, the court found that scienter was adequately alleged. 824 F. Supp. 2d at 1186-87, 1188 (finding scienter was adequately alleged and denying motion to dismiss state law fraud claims; "Allstate has met its requirement to plead facts giving rise to an inference that Countrywide knew that the representations in its Offering Documents were false").[3]

**B.     Plaintiffs Have Stated A Claim For Aiding And Abetting Fraud Against Mr. Toovey.**

Mr. Toovey contends that Plaintiffs' aiding and abetting allegations suffer from the same purported shortcomings as their fraud claim. Mot. at 20. Not so. To plead a claim for aiding and abetting fraud, Plaintiffs must allege that Mr. Toovey (1) "knew the other's conduct constituted a breach of duty" and (2) "gave substantial assistance or encouragement to so act." *Berman v. Bank of Am. N.A.*, 2025 WL 2885491, at *12 (C.D. Cal. Sept. 2, 2025) (Olguin, J.) (cleaned up, quoting *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113 (S.D. Cal. 2024)).

---

[3] Rather than cite the court's holding in *Allstate* as to scienter in connection with the plaintiff's common law fraud claim, Mr. Toovey cites the court's holding with respect to Plaintiff's aiding and abetting fraud claim, which requires proof of actual knowledge. *See* Mot. at 18. Plaintiffs discuss their aiding and abetting fraud claim, which is also adequately alleged, in the following section.

10

**Actual Knowledge.**   As Mr. Toovey recognizes (Mot. at 18), actual knowledge "may be averred generally." *Bhatia*, 725 F. Supp. 3d at 1114.  A "direct allegation (really, assertion) of actual knowledge" satisfies the first step of the inquiry.  *Id.* (quoting *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *4 (N.D. Cal. Apr. 7, 2020)).  Here, Plaintiffs directly allege that "[a]t all relevant times, . . . Toovey knew that Mammoth was misstating its true purpose and that its treatment requests were false[.]"  Compl. ¶ 263.

The next question is whether the complaint "pleads sufficient facts to make that allegation plausible[.]"  *Bhatia*, 725 F. Supp. 3d at 1114 (quoting *Chang*, 2020 WL 1694360, at *4).  Here, as outlined in the bullet points above, Plaintiffs' Complaint contains detailed and specific factual allegations that plausibly support that Mr. Toovey had actual knowledge that the Mammoth Defendants were falsely asserting a treatment purpose.  *See* Section. III.A.2, *supra*.

Mr. Toovey's arguments to the contrary fail.

*First*, Mr. Toovey again relies on *Axonic* and its application of the PLSRA's pleading standard, which does not apply here.  *See* Mot. at 20 (citing *Axonic*, 2018 WL 11355034, at *17).

*Second*, Mr. Toovey's reliance on *Allstate* (*see* Mot. at 20) is inapposite because there, the plaintiff did not plead "plead[] any facts that would suggest" that the defendants "had actual knowledge of the misrepresentations" made by the primary perpetrators of the fraud that they were alleged to have aided and abetted.  *Id.* at 20.  Here, Plaintiffs allege facts showing Mr. Toovey had actual knowledge of the fraud perpetrated by the Mammoth Defendants, as well as the specific misrepresentations and omissions they made.  As detailed above, Mr. Toovey made and/or facilitated the misrepresentations and omissions himself (Compl. ¶¶ 37-39, 42, 161, 170, 219-220, 223-225, 262-265) and knew that the Mammoth Defendants' misrepresentations and omissions were false (*id.* ¶¶ 167, 225, 263-264) because he also knew the Mammoth Defendants' true purpose for seeking medical records was to monetize patient data for commercial gain (*id.*).  Indeed, it was Mr. Toovey who was marketing the patient records to third parties for sale.  *Id.* ¶¶ 39, 42, 167, 223.

11

As recognized by the court in *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003)—cited by Mr. Toovey (*see* Mot. at 20-21)—these allegations are sufficient to allege actual knowledge because Plaintiffs, at minimum, "allege generally that [Mr. Toovey] had actual knowledge of the primary violation" by the other Mammoth Defendants. 290 F. Supp. 2d 1120 (finding actual knowledge adequately alleged).

*Finally*, Mr. Toovey's focus on a singular "knew or should know" allegation (Mot. at 21) blatantly ignores the numerous allegations of actual knowledge throughout Plaintiffs' Complaint. *See* Compl. ¶¶ 225 ("Toovey ***knew*** these assertions were false. [Toovey] ***knew*** that the treatment representations were false at the time they were made for all patient records relating to persons who were not under Mammoth's medical care and for which Mammoth sought access to the patient records for their and Mammoth's own commercial purposes and the monetary gain of themselves and Mammoth, and not for the treatment purposes that were asserted in connection with the patient records requests. And [Toovey] ***knew*** that Mammoth's connection with Baker should have disqualified Mammoth from the Carequality framework entirely and that the same underlying logic would apply equally to the TEFCA framework, in view of the serious patient privacy concerns.") (emphasis added), 226 ("Toovey ***knew*** that neither [he] nor Mammoth could obtain the patient records if [he] and Mammoth misrepresented their true purpose for seeking patient records, in violation of the requirements of Carequality, TEFCA, and the law, including without limitation, HIPAA. . . . Toovey also ***knew*** that [he] had to falsely represent and omit the fact that Baker was deeply connected with Mammoth in order to obtain the patient records, in light of Baker's prior misconduct.") (emphasis added), 263 ("Toovey ***knew*** that Mammoth was misstating its true purpose and that its treatment-purpose requests were false because Mammoth's true purposes for seeking those patient records was to further the Mammoth Defendants' commercial interests by selling the patient records, either directly to undisclosed law firms and other third parties, or to and through an intermediary such as Defendant Mammoth Rx.") (emphasis added).

12

**Substantial Assistance.** "Pleading the element of 'substantial assistance requires a significant and active, as well as a knowing participation in the wrong, and a plaintiff must also allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff.'" *Berman*, 2025 WL 2885491, at *13 (cleaned up, quoting *Chang*, 2020 WL 1694360, at *6). Under the law, "'ordinary business transactions' can satisfy the substantial assistance element of an aiding and abetting claim if the defendant actually knew those transactions were assisting the principal in committing a specific tort." *Bhatia*, 725 F. Supp. 3d at 1120 (collecting cases).

Plaintiffs have alleged substantial assistance, alleging that Mr. Toovey:

- Made or facilitated the false statements on Mammoth's behalf with knowledge that Mammoth was not providing treatment to the patients whose records Mammoth sought (Compl. ¶¶ 37-39, 42, 161, 170, 219-220, 223-225, 262-265);

- Participated in the sale of patient records to law firms and other third parties through his involvement with Mammoth Rx and Nationwide Healthcare Provider Corp, including via a letter advertising Nationwide Healthcare Provider Corp's services to social security claimant representatives that boasted Nationwide Healthcare Provider Corp's ability to "pull records straight from providers' EHRs and sen[d] them to representative firms" (*id*. ¶¶ 39, 42, 167, 223);

- Took steps to hide the connections between Mammoth Dx, Mammoth Path Solution, and Mammoth Rx (*id*. ¶ 170); and

- Took steps to hide Mammoth's connection to Mr. Baker with knowledge that this relationship would disqualify Mammoth from participating in the Carequality framework and prevent Mammoth from obtaining patient records (*id*. ¶ 225).

As Plaintiffs' allegations make clear, Mr. Toovey provided substantial assistance by actively participating in the fraud to benefit his own interests and the interests of the interconnected business web that he operates for the improper purpose of obtaining patient records taken from the interoperability frameworks under the false pretense of providing

13

"treatment" to patients. *Id.* ¶¶ 37-42, 159-170, 219-225, 263-264. Mr. Toovey's assistance was instrumental to causing harm to Plaintiffs. *See id.*

### C.      Plaintiffs Have Stated A UCL Claim.

Mr. Toovey asserts that Plaintiffs' claim pursuant to the "fraudulent" prong of the UCL fails because Plaintiffs' underlying fraud and aiding abetting fraud claims purportedly fail. *See* Mot. at 22. Mr. Toovey is wrong, as detailed above. Plaintiffs' fraud and aiding abetting fraud claims are adequately alleged, and so too is Plaintiffs' UCL claim.

Mr. Toovey also contends that Plaintiffs' claim under the "unlawful" prong of the UCL fails because Plaintiffs purportedly do not allege "any other unlawful conduct against [him]" beyond fraud and aiding abetting fraud. *Id.* Mr. Toovey is incorrect. Plaintiffs' UCL claim is also predicated upon Mr. Toovey's HIPAA violations, which Mr. Toovey fails to address. *See* Compl. ¶ 283. Accordingly, Plaintiffs' UCL unlawful claim survives.

### D.      Mr. Toovey's Attempt To Incorporate Other Defendants' Arguments By Reference Is Improper And Fails.

Mr. Toovey purports to join Health Gorilla's, the Mammoth Defendants', the Unit 387 Defendants', and Defendant Baker's choice of law, Article III, dispute resolution, and justifiable reliance-related arguments. *See* Mot. at 23-25. As an initial matter, Mr. Toovey's attempt to incorporate other Defendants' arguments by reference is procedurally improper and should be disregarded. *Mau v. City & Cnty. of Honolulu*, 2025 WL 3251168, at *7 n.5 (S.D. Cal. Apr. 4, 2025) ("The Federal Rules of Civil Procedure do not sanction the incorporation of substantive material by reference and courts need not consider such arguments especially since it circumvents the page limits set for in the district court local rules."); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) ("[T]he district

14

court did not abuse its discretion in striking the incorporations."); *Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (similar).[4]

Regardless, these arguments fail.

### 1.   Mr. Toovey's Choice Of Law Arguments Fail.

Mr. Toovey's contention that Plaintiffs have failed to apprise him of the law that governs Plaintiffs' common law claims fails. *See* Mot. at 23. The Complaint makes numerous and specific references to harms occurring in California concerning California patients' records, which is sufficient to invoke California law, especially in light of the request for injunctive relief on behalf of the "[g]eneral public of the State of California." *See, e.g.*, Compl. ¶¶ 26-27, 29, 140, 159, 161, 170, 194, 219, 230, 235, 269, 278; *see also Paya v. Macy's Inc.*, 793 F. Supp. 3d 1201, 1211 (C.D. Cal. 2025) (declining to dismiss on this ground).[5] Mr. Toovey concedes as much, relying exclusively on California law to address Plaintiffs' claims. *See generally* Mot.

### 2.   Plaintiffs Have Article III Standing.

Mr. Toovey's Article III arguments also fail.

***First***, Plaintiffs' monitoring, investigation, and mitigation costs are sufficient for Article III standing. *See* Compl. ¶¶ 161, 170-171, 189-191, 196-197, 233-234, 267-268. Plaintiffs incurred these costs based on Mr. Toovey's infliction of past harms and the substantial and imminent risk that those harms will continue. *Id.* This is sufficient to allege Article III standing, as made clear by the Supreme Court in *Clapper v. Amnesty Int'l USA*: "[W]e have found standing based on a 'substantial risk' that the harm will occur,

---

[4] Mr. Toovey's reliance on *Doe v. Taro Pharm. U.S.A., Inc.*, 2025 WL 3280257 (N.D. Cal. Nov. 25, 2025), and *Cal. Inst. of Tech. v. City of Pasadena*, 2024 WL 6938009 (C.D. Cal. Aug. 23, 2024) is unpersuasive. *See* Mot. at 23. In both *Taro* and *Cal. Inst. of Tech.*, the defendants filed joinders to other defendants' motions to dismiss, without filing their own supplemental motions to dismiss. *Doe*, 2025 WL 3280257, at *1; *Cal. Inst. of Tech.*, 2024 WL 6938009, at *4. Thus, unlike here, the joinder was not a means of evading page limits, which courts have found to be improper, as detailed above.

[5] Defendant Toovey's invocation of *In re Nexus 6P Prods. Liability Litig.*, 293 F. Supp. 3d 888 (N.D. Cal. 2018) is unavailing. The *Nexus* court dismissed an unjust enrichment cause of action when it was premised on "universal principles in equity" for a *nationwide class* rather than any references to state laws. *Id.* at 933. Plaintiffs here are not bringing claims on behalf of a nationwide class. *See generally* Compl.

15

which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." 568 U.S. 398, 414 n.5 (2013) (collecting cases); *see also id.* at 418-20 (standing satisfied in cases where harm had already occurred and plaintiff took steps to mitigate or prevent future harm of the same type).

**Second**, Plaintiffs also alleged increased storage costs and costs in responding to customer complaints. *See* Compl. ¶¶ 66, 96, 193, 195-196, 233-234, 267-268. Plaintiffs incur increased storage costs when Mr. Toovey makes or facilitates the Mammoth Defendants' requests for patient records under the false pretense that the Mammoth Defendants seek such records for treatment purposes. *Id.* ¶ 195. And Plaintiffs incur costs to respond to customer complaints about the Mammoth Defendants' conduct—performed or facilitated by Mr. Toovey—in order to maintain Plaintiffs' customer relationships. *Id.* ¶¶ 193, 196. These harms are not self-inflicted or voluntary. They are "'real' and not 'abstract'" harms that "actually exist" and are "particularized" to Plaintiffs, satisfying Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016).

**Finally**, Epic and OCHIN allege reputational harm. Compl. ¶¶ 193 (Epic's "customers have voiced that, because of [the Mammoth Defendants'] abuses, they have contemplated limiting their participation in the Carequality and TEFCA frameworks or withdrawing from them entirely."), 196 ("Epic incurred and continues to incur costs . . . to respond to customer concerns and complaints raised by Epic[']s healthcare provider customers."). Reputational harm is an injury-in-fact sufficient to satisfy Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[v]arious intangible harms," including "reputational harms," "can also be concrete"); *Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *6 (C.D. Cal. Sept. 23, 2013) ("The Court determines that plaintiff has adequately alleged constitutional standing" based on its allegations of "loss of business and damage to its reputation.").

3.    <u>There Is No Contractual Bar To Plaintiffs' Claims</u>.

Mr. Toovey asserts that the CCA and Common Agreement contain mandatory dispute resolution procedures that require dismissal of Plaintiffs' claims.

16

**Mr. Toovey Cannot Enforce The Dispute Resolution Procedures.**  Mr. Toovey concedes he is not a signatory to the Carequality and TEFCA agreements.  Mot. at 25 n.3.  Therefore, Mr. Toovey cannot enforce the agreements' dispute resolution procedures.

Nor does equitable estoppel apply.  Plaintiffs' claims against Mr. Toovey are neither "intimately founded in [nor] intertwined with" the agreements.  *Id.*  Plaintiffs do not invoke the obligations under the Carequality and TEFCA agreements or otherwise attempt to enforce contractual terms against Mr. Toovey.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1134 (9th Cir. 2013) (equitable estoppel did not apply where "Plaintiffs do not seek to simultaneously invoke the duties and obligations of Toyota under the Purchase Agreement, as it has none, while seeking to avoid arbitration."); *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1136 (2025) ("[T]he essential concern is whether plaintiffs are trying to enforce contractual terms beneficial to them while avoiding their own contractual agreement to arbitrate.").  Instead, the fraudulent activity and statutory violations underpinning each of Plaintiffs' claims against Mr. Toovey exist independent of the agreements.[6]

**The Dispute Resolution Provisions Are Not Conditions Precedent.**  Courts "will neither infer nor construe a condition precedent 'absen[t] . . . language plainly requiring such construction.'"  *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (quoting *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969)).  "Conditions precedent must be expressed in plain, clear, and unambiguous language[.]"  *Id.* at 1043.  The CCA and Common Agreement lack the strict, unequivocal language required to establish a

---

[6] Mr. Toovey also cannot avail himself of third-party beneficiary arguments.  "The agreements were made for the benefit of the signatories, as well as other parties on the frameworks.  *See* Exs. A, B, E.  Mr. Toovey is thus not a "member[] of a class for whose benefit the contract was made."  *Singer v. Ett*, 2023 WL 6787442, at *5 (C.D. Cal. Sept. 18, 2023) (Olguin, J.).  The agreements do not contain any provisions that benefit Mr. Toovey or any language evidencing that a motivating purpose of the signatories was to benefit him.  *See generally* Exs. A, B, E.  Allowing him to enforce the agreements is inconsistent with the objectives of the agreements and the reasonable expectations of the signatories.  *See, e.g., Faucett v. Move, Inc.*, 2024 WL 2106727, at *4 (C.D. Cal. Apr. 22, 2024) (declining to allow non-signatory to enforce arbitration clause where contract made no mention of non-signatory and gave no indication of a motivating purpose of benefiting the non-signatory).

17

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS

condition precedent.  Instead, both encourage—but do ***not*** require—parties to utilize the non-binding dispute resolution process.  Ex. A § 20.1; Ex. E § 15.1.  Further, both agreements make clear that the dispute resolution process does not preclude litigation.  Refusal to participate in the process might be treated as a material breach, permitting Carequality or the Recognized Coordinating Entity to suspend or terminate the agreement (*see* Ex. A § 20.1; Ex. E § 15.1), but the consequence is ***contractual***—potential suspension or termination by signatories—***not a jurisdictional bar*** enforceable by Mr. Toovey.

**The Dispute Resolution Provisions Do Not Apply Because Plaintiffs Seek Immediate Injunctive Relief.**  The agreements specify that their dispute resolution procedures do not apply where a party believes that it is facing irreparable harm and pursues immediate injunctive relief in a court of competent jurisdiction.  Ex. A § 20.2; Ex. B § 9.3; Ex. E § 15.2.1.  The Complaint explains Plaintiffs' irreparable harm from Mr. Toovey's actions.  Compl. ¶¶ 1-5, 11-25, 192-197.  Plaintiffs plainly seek immediate injunctive relief.  *Id.*, Caption, Prayer for Relief.  And Plaintiffs need not seek that relief through a specific procedural vehicle for this Court to award it.  *See, e.g.*, *Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*, 2025 WL 2853156, at *1, *7-8 (M.D. Fla. Aug. 21, 2025) (granting summary judgment and entering immediate injunctive relief).  Thus, Plaintiffs are "relieved" of any obligation to follow the dispute resolution procedures.  *See* Ex. A § 20.2.1; Ex. B § 9.3; Ex. E § 15.2.1.

**Plaintiffs Are Excused From Compliance Because The Process Is Futile.**  Assuming *arguendo* the existence of a condition precedent to filing suit (and there is none), Plaintiffs are excused from participating because Mr. Toovey's conduct demonstrates that it would be futile and Plaintiffs cannot obtain the remedies they seek.  *Vernon Fire Fighters v. City of Vernon*, 107 Cal. App. 3d 802, 826 (1980) ("It is an established rule that administrative remedies need not be exhausted where they are inadequate, inapplicable, or futile.").

Plaintiffs attempted—to no avail—to engage with the Mammoth Defendants, and Health Gorilla as the Implementer for Mammoth Dx and Mammoth Path Solution, to

18

informally resolve the issue.  Compl. ¶¶ 158, 166, 187.  The Mammoth Defendants' inadequate response makes clear that continued use of the dispute resolution procedures would be futile.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (denying motion to dismiss where plaintiff's allegations regarding defendant's inadequate response to claims indicated that complying with informal dispute settlement procedure would be futile).

Additionally, Plaintiffs seek a binding public injunction that the dispute resolution procedures cannot provide.  *See* Compl., Prayer for Relief.  Because the agreements' dispute resolution procedures cannot provide binding injunctive relief—let alone a public injunction—they would be futile, and thus Plaintiffs are excused from participating in the process.  *See Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315-16 (2003) (declining to enforce arbitration clause where "the request for injunctive relief is clearly for the benefit of health care consumers and the general public").

### 4. Plaintiffs Have Alleged Justifiable Reliance.

**Plaintiffs Did Not Disclaim Reliance.**  Mr. Toovey asserts that Plaintiffs disclaimed reliance, pointing to Section 19 of the CCA and Section 15 of the CC Terms. Mot. at 23.  Both provisions state that Plaintiffs "acknowledge[] that other Implementers and Carequality Connections may be added to or removed from the Carequality Directory at any time; therefore, [Plaintiffs] may not rely upon the inclusion in the Carequality Directory of a particular Implementer or Carequality Connection."  Ex. A § 19; Ex. E § 15. As with Health Gorilla, Mr. Toovey's specious disclaimer argument does not apply to TEFCA on its face, so it cannot obtain dismissal for its conduct on that framework.  The argument also fails with respect to Carequality.  All that is disclaimed is reliance on any Implementer's or Connection's indefinite participation in the Carequality framework. *Id.* In other words, Implementers and Connections can come and go.  The CCA does not purport to disclaim reliance on representations made by Implementers and Connections while they are members of the Carequality directory or to shield Implementers or

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS

Connections from complying with all of the relevant rules during their participation in the Carequality Framework.  Plaintiffs simply did not disclaim any relevant reliance.

**Plaintiffs Allege Reliance On Mr. Toovey's Misrepresentations And Omissions.** Despite Mr. Toovey's claim otherwise (Mot. at 23), Plaintiffs allege when, where, and how they were exposed to Mr. Toovey's misrepresentations and omissions.  *See* Section III.A.1, *supra*.   Specifically, Plaintiffs allege that they received the misrepresentations and omissions made by Mr. Toovey and the Mammoth Defendants when Mammoth Dx and Mammoth Path Solution were being onboarded to the Carequality and TEFCA frameworks because these statements were incorporated into the Carequality and TEFCA directories.  Compl. ¶¶ 53, 55, 63, 93, 161.  The Provider Plaintiffs further allege that they received these misrepresentations in connection with their queries for patient records.  *Id.* ¶¶ 161, 170, 230.  And, Plaintiffs allege that, on the TEFCA framework, Epic received queries from Health Gorilla that originated from Mr. Toovey and the Mammoth Defendants containing misrepresentations and omissions.  *Id.* ¶¶ 98, 230.

Plaintiffs also allege justifiable reliance.  Plaintiffs allege that Epic and OCHIN allowed and enabled their customers to exchange patient records with the Mammoth entities in reliance on Mr. Toovey's and the other Mammoth Defendants' misrepresentations and omissions.  *See id.* ¶¶ 55, 63, 66, 68, 94, 96, 98, 161, 170, 227-232, 265-266.  Further, Plaintiffs allege that the Provider Plaintiffs exchanged patient records with the Mammoth entities in reliance on those same misrepresentations and omissions.  *See id.*  And, on the TEFCA framework, in reliance on their misrepresentations and omissions, Epic received queries from Health Gorilla that originated from Mr. Toovey and the Mammoth Defendants, sent those queries to its customers, and provided its customers' patient records to Health Gorilla to transmit back to Mr. Toovey and the Mammoth Defendants.  *Id.* ¶ 98.  Thus, Plaintiffs have alleged reliance on Mr. Toovey's and the Mammoth Defendants' misrepresentations and omissions, including when and how they did so.

## IV.   **IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND**

To the extent the Court grants any portion of Mr. Toovey's Motion, Plaintiffs respectfully request leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment). Mr. Toovey does not present any argument that leave to amend would be futile, and thus leave to amend is proper.

## V.   **CONCLUSION**

Plaintiffs respectfully request that the Court deny Mr. Toovey's Motion.

Dated:  April 30, 2026          By:   */s/ Marshall L. Baker*

Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022

\- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
Laura Hill (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Epic System Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc., certifies that this brief contains 6,922 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 30, 2026          By:    */s/ Marshall L. Baker*
                                       Marshall L. Baker
                                       Lauren E. Huennekens
                                       **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                       1999 Avenue of the Stars, Suite 600
                                       Los Angeles, CA  90067-6022

                                       - and -

                                       Anthony T. Pierce (*pro hac vice*)
                                       Mark R. Herring (*pro hac vice*)
                                       Caroline L. Wolverton (*pro hac vice*)
                                       Laura Hill (*pro hac vice*)
                                       **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                       Robert S. Strauss Tower
                                       2001 K Street, N.W.
                                       Washington, DC  20006-1037

                                       *Attorneys for Plaintiffs*
                                       *Epic Systems Corporation, OCHIN, Inc.,*
                                       *Reid Hospital & Health Care Services Inc.,*
                                       *Trinity Health Corporation, and UMass Memorial*
                                       *Health Care, Inc.*

PLAINTIFFS' OPPOSITION TO DEFENDANT
MAX TOOVEY'S MOTION TO DISMISS