**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:   310.229.1000
Facsimile:   310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Laura Hill (*pro hac vice*)
lhill@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:   202.887.4000
Facsimile:   202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., | Case No. 2:26-cv-00321-FMO-RAO |
| | Assigned to:  Hon. Fernando M. Olguin |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO THE UNIT 387 DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, | Date:         May 21, 2026<br>Time:         10:00 A.M.<br>Location:   Courtroom 6D<br><br>Date Action Filed:        January 13, 2026 |
| Defendants. | |

# **TABLE OF CONTENTS**

                                                                                  **Page**

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ...................................................................................... 2

III.    ARGUMENT............................................................................................ 4

        A.      This Court May Adjudicate Plaintiffs' Claims. .................................5

                1.      Epic And OCHIN Have Article III Standing. .....................................5

                2.      The Dispute Resolution Procedures Are Not A Condition Precedent To Litigation. ........................................................................6

                3.      The Dispute Resolution Process Does Not Apply Because Plaintiffs Seek Immediate Injunctive Relief. ....................................7

                4.      Plaintiffs Are Excused From Compliance With The Dispute Resolution Procedures Because The Process Is Futile. .....................8

                5.      Ms. Manak And Hoppr Lack Standing To Enforce The Dispute Resolution Procedures. ........................................................................10

        B.      Plaintiffs Have Stated A Fraud Claim Against The Unit 387 Defendants. ...........................................................................................11

                1.      Plaintiffs Allege Actionable Misrepresentations And Omissions. .........................................................................................11

                2.      Plaintiffs Allege Actual, Justifiable Reliance. .................................14

                3.      Plaintiffs Allege The Unit 387 Defendants' Scienter......................16

                4.      Plaintiffs Allege Damages Caused By The Unit 387 Defendants' Misconduct. .................................................................17

        C.      Plaintiffs State A Claim For Aiding And Abetting Fraud............................17

        D.      Plaintiffs State A Breach Of Contract Claim...............................................19

                1.      Plaintiffs Are Third-Party Beneficiaries of the CC Terms................19

                2.      Plaintiffs Allege that Unit 387 Breached The CC Terms..................20

        E.      Plaintiffs State A UCL Claim. ......................................................................20

IV.     IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND........................................................................ 21

V.      CONCLUSION............................................................................................. 21

PLAINTIFFS' OPPOSITION TO THE UNIT 387
DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arriagarazo v. BMW of N. Am., LLC*,
64 Cal. App. 5th 742 (2021) ...................................................................................8

*Berman v. Bank of Am. N.A.*,
2025 WL 2885491 (C.D. Cal. Sept. 2, 2025) (Olguin, J.)............................17, 18

*Bhatia v. Silvergate Bank*,
725 F. Supp. 3d 1079 (S.D. Cal. 2024)........................................................17, 18

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) ...........................................................................9, 10

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013)................................................................................................5

*Cruz v. PacifiCare Health Sys., Inc.*,
30 Cal. 4th 303 (2003) .........................................................................................10

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) .................................................................................8

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ........................................................................4, 20

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................21

*Faucett v. Move, Inc.*,
2024 WL 2106727 (C.D. Cal. Apr. 22, 2024)....................................................11

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .......................................................................*passim*

*Ford Motor Warranty Cases*,
17 Cal. 5th 1122, 1136 (2025)..............................................................................10

*Gueyffier v. Ann Summers, Ltd.*,
43 Cal. 4th 1179 (2008) .........................................................................................9

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
 957 F.3d 1038 (9th Cir. 2020) ..................................................................................6

*Jimirro v. Paley Center for Media*,
 2025 WL 2994996 (C.D. Cal. Sept. 17, 2025) ........................................................7

*Jones v. Union Pac. R. Co.*,
 968 F.2d 937 (9th Cir. 1992) ....................................................................................9

*Khast v. Wash. Mut. Bank*,
 2010 WL 11684849 (S.D. Cal. Oct. 26, 2010).......................................................13

*Kramer v. Toyota Motor Corp.*,
 705 F.3d 1122 (9th Cir. 2013) ................................................................................10

*Labbe v. Dometic Corp.*,
 2022 WL 846972 (E.D. Cal. Mar. 22, 2022)..........................................................15

*United States ex rel. Lee v. Corinthian Colleges*,
 655 F.3d 984 (9th Cir. 2011) ..................................................................................16

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
 436 F. Supp. 2d 1095 (C.D. Cal. 2006)..................................................................13

*In re Nexus 6P Prods. Liability Litig.*,
 293 F. Supp. 3d 888 (N.D. Cal. 2018)......................................................................5

*Paya v. Macy's Inc.*,
 793 F. Supp. 3d 1201 (C.D. Cal. 2025) ....................................................................5

*United States ex rel. Schutte v. SuperValu Inc.*,
 598 U.S. 739 (2023).................................................................................................17

*Singer v. Ett*,
 2023 WL 6787442 (C.D. Cal. Sept. 18, 2023) (Olguin, J.)...................................10

*Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*,
 2025 WL 2853156 (M.D. Fla. Aug. 21, 2025)..........................................................8

*Sonneveldt v. Mazda Motor of Am., Inc.*,
 2021 WL 4813753 (C.D. Cal. July 29, 2021)..........................................................13

*Spann v. J.C. Penney Corp.*,
 2015 WL 1526559 (C.D. Cal. Mar. 23, 2025) (Olguin, J.) ....................................11

iii

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).............................................................................................6

*Storm Mfg. Grp. Inc. v. Weather Tec Corp.*,
    2013 WL 5352698 (C.D. Cal. Sept. 23, 2013) ...................................................5

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...........................................................................13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
    *& Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................................9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).............................................................................................5

*Unnamed Physician v. Bd. of Trs. of Saint Agnes Med. Ctr.*,
    93 Cal. App. 4th 607 (2001) ...............................................................................9

*Vernon Fire Fighters v. City of Vernon*,
    107 Cal. App. 3d 802 (1980) ..............................................................................9

*Virun, Inc. v. Cymbiotika LLC*,
    2023 WL 12119026 ...........................................................................................17

*In re Woodbridge Invs. Litig.*,
    2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ....................................................18

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* .................................................................2, 4

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................11, 13, 16

Fed. R. Civ. P. 12(b)(6)...............................................................................................4

iv

# I.   <u>INTRODUCTION</u>

The Unit 387 Defendants exploited the Carequality interoperability framework to knowingly facilitate the unauthorized extraction, use, and dissemination of confidential patient records for commercial gain.  In September 2022, Unit 387, acting in concert with the other Unit 387 Defendants, was onboarded to the Carequality interoperability framework by Defendant Health Gorilla.  From the time of its onboarding to at least October 2025, Unit 387 and its customers, including Defendant SelfRx, LLC d/b/a Myself.Heath ("SelfRx") and former Defendant Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth ("GuardDog"), illegally and fraudulently accessed or enabled access to patient records based on the false assertion that Unit 387 and its customers queried these records for treatment purposes.  Unit 387 and its customers obtained over 100,000 patient records from Epic's healthcare provider customers, including nearly 1,000 from OCHIN's healthcare provider customers.

Instead of using those records to treat patients, the Unit 387 Defendants monetized and sold those patient records to third parties without patients' knowledge or consent.  This was accomplished, at least in part, by transmitting the records to Defendant Hoppr, which, in turn, sold the records to law firms and insurance companies.  In so doing, the Unit 387 Defendants fraudulently and illegally exploited the Carequality interoperability frameworks by extracting, disseminating, and selling patient records without patients' knowledge or consent, thereby harming Plaintiffs, the privacy rights of individual patients, and the integrity of the interoperability frameworks themselves.

Plaintiffs assert claims against the Unit 387 Defendants for this misconduct.  The Unit 387 Defendants' motion to dismiss fails in multiple respects.

*First*, the Unit 387 Defendants raise jurisdictional arguments, asserting that certain provisions within the Carequality agreements prevent this Court from adjudicating this dispute.  That argument fails because the plain language of these agreements encourages participation in a non-binding dispute resolution process but does not mandate it.  In addition, the agreements carve out requests for immediate injunctive relief, which

Plaintiffs seek here.  Indeed, this Court has already granted a permanent injunction with respect to one of Unit 387's customers—GuardDog.  The Complaint also details the futility of further participating in a closed-door and non-binding dispute resolution process, which cannot provide Plaintiffs complete relief.

The Unit 387 Defendants also argue that Epic and OCHIN lack Article III standing, but they fail to account for Epic and OCHIN's allegations and controlling law.  Epic and OCHIN allege monitoring, investigation, mitigation, and storage costs, as well as reputational harm and costs incurred responding to customer complaints, all of which give rise to Article III standing.

*Second*, the Unit 387 Defendants argue that Plaintiffs fail to state their fraud claim. This argument, however, overlooks and mischaracterizes the clear allegations in the Complaint, which describe a pattern of fraudulent misrepresentations and omissions by the Unit 387 Defendants on which the Plaintiffs relied.

*Third*, the Unit 387 Defendants attack Plaintiffs' contract claims, arguing that Plaintiffs are not third-party beneficiaries and the Unit 387 Defendants purportedly did not request or exchange patient records.  But the Unit 387 Defendants' argument misconstrues the contracts and ignores the clear allegations in Plaintiffs' Complaint.

*Fourth*, the Unit 387 Defendants argue that Plaintiffs fail to state their Business and Professions Code § 17200, *et seq.* claim because their fraud and breach of contract claims fail.  The Unit 387 Defendants are incorrect, and they fail to address Plaintiffs' "unlawful" claim predicated on the Unit 387 Defendants' HIPAA violations.

This Court should deny the Unit 387 Defendants' motion to dismiss.

## II.   BACKGROUND[1]

Plaintiffs are long-standing participants in interoperability efforts and reflect the breadth of the country's interoperable health care delivery system.  *See* Compl. ¶¶ 6-7, 28-30, 112-115, 116.  Epic spearheaded treatment-based interoperability over two decades

---

[1] All capitalized terms shall have the meaning assigned to them in Plaintiffs' Complaint.  All exhibits referenced herein are those attached to Plaintiffs' Complaint.

2

ago and, as relevant here, is a charter Implementer on the Carequality framework. *Id.* ¶¶ 112-115. OCHIN is a nonprofit organization supporting thousands of healthcare providers nationwide and, as relevant here, operates as a Carequality Connection. *Id.* ¶¶ 27, 116. Reid is a community hospital based in Indiana, *id*. ¶¶ 28, 117; Trinity is a Catholic organization serving patients in 25 states, including California, *id*. ¶¶ 29, 118; and UMass Memorial Health is an academic medical center, *id*. ¶¶ 30, 119. As relevant here, Reid, Trinity, and UMass Memorial Health (collectively, the "Provider Plaintiffs") are Carequality Connections. *Id.* ¶¶ 117-121.

Unit 387 is a Carequality Connection and Candidate Implementer on the Carequality framework. *Id.* ¶¶ 44, 58, 175. In this role, Unit 387 onboards connections to the Carequality framework through its Implementer, Defendant Health Gorilla. *Id.* As a Candidate Implementer, Unit 387 serves as a gatekeeper to the frameworks and is responsible for validating connections' eligibility to properly assert exchange purposes and, once connections are onboarded, ensuring their compliance with the rules governing permissible use of the frameworks. *Id.*

The Unit 387 Defendants are closely connected. Ms. Manak is the founder and Chief Executive Officer of both Unit 387 and Hoppr. *Id.* ¶¶ 45-46, 173. Both Unit 387 and Hoppr are small entities, the sole employees of which are either Ms. Manak or Ms. Manak and one other person. *Id.* ¶ 173. Ms. Manak and Hoppr are not Implementers, Candidate Implementers, Connections, QHINs, or Participants on the Carequality or TEFCA frameworks. *Id.* ¶¶ 45-46.

Unit 387 onboarded SelfRx and GuardDog to the Carequality framework. *Id.* ¶¶ 44, 58, 175-177. When Unit 387 onboarded SelfRx and GuardDog, it made material representations of fact claiming those companies sought access for treatment purposes. *Id.* ¶¶ 44, 174-177. But SelfRx and GuardDog do not provide treatment. *Id.* ¶¶ 11, 175-182. Nevertheless, Unit 387 enabled SelfRx and GuardDog to query patient records from the Provider Plaintiffs as well as Epic's and OCHIN's other healthcare provider customer organizations. *Id.* ¶¶ 172-182. Each time SelfRx and GuardDog queried records, they

falsely represented—through and/or as enabled by Unit 387—that they were seeking patient records for treatment purposes. *Id.* ¶¶ 44, 58, 63-68. Unit 387 also itself queried patient records, falsely representing that it was seeking the records for treatment purposes. *Id.* ¶ 311.

The Unit 387 Defendants knew that Plaintiffs and other healthcare provider organizations on the Carequality framework were obligated to provide patient records in response to the false treatment queries. *Id.* ¶¶ 66. Epic and OCHIN's technology enabled their customers to transmit patient records to Unit 387's customers SelfRx and GuardDog in response to these fraudulent treatment requests. *See id.* ¶¶ 174, 176-177, 237, 240-242, 246. And the Provider Plaintiffs disclosed patient records in reliance on the fraudulent treatment requests. *Id.*

The Unit 387 Defendants then knowingly transmitted the improperly accessed patient data to Hoppr for sale to third parties, including law firms and insurance companies. *Id.* ¶ 182. Hoppr accessed this data with knowledge that it was fraudulently and illegally obtained. *Id.*

The Unit 387 Defendants' scheme amounts to fraud and violates the Health Insurance Portability and Accountability Act ("HIPAA") and California Business and Professions Code § 17200, *et seq.* ("UCL"). *Id.*, Counts III, VI, VII. Unit 387 also breached the CC Terms. *Id.*, Count IX.

### III.   ARGUMENT

A motion to dismiss tests the legal sufficiency of the claims asserted. Fed. R. Civ. P. 12(b)(6). The Court must accept all factual allegations in the Complaint as true and construe the Complaint in the light most favorable to Plaintiffs. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).[2]

---

[2] The Unit 387 Defendants seek dismissal because the Complaint does not include a choice-of-law section. Mot. at 11, n.1. The Complaint's numerous and specific references to harms occurring in California concerning California patients' records was sufficient to invoke California law, especially in light of the request for injunctive relief on behalf of the "[g]eneral public of the State of California." *See, e.g.,* Compl. ¶¶ 26-27, 29, 142, 157, 159, 170, 172, 174, 182, 194, 202, 212, 217, 219, 230, 235, 237, 251, 260,

*(Cont'd on next page)*

### A.    This Court May Adjudicate Plaintiffs' Claims.

#### 1.    Epic And OCHIN Have Article III Standing.

The Unit 387 Defendants mischaracterize Epic and OCHIN's harms as "generalized" and "self-imposed, preventative expenditures," Mot. at 23-24, ignoring the numerous cognizable injuries that give rise to Article III standing.

***First***, Epic and OCHIN's monitoring, investigation, and mitigation costs are sufficient for Article III standing.  In arguing otherwise, the Unit 387 Defendants rely only on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013).  *See* Mot. at 24.  *Clapper* is inapposite because it involved allegations of a potential injury "at some point in the future," 568 U.S. at 410, and the plaintiffs' claim that they "incurred certain costs as a reasonable reaction to a risk of harm" that was "not certainly impending."  *Id*. at 416.

Here, Epic and OCHIN allege that they incurred these costs based on previously inflicted harms and the substantial and imminent risk that those harms will continue.  Compl. ¶¶ 124-137, 158, 166, 171, 183, 192-197.  This is sufficient.  As the Court noted in *Clapper*, "we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." 568 U.S. at 414 n.5 (collecting cases); *see also id.* at 418-20 (standing met in cases where harm had already occurred and plaintiff took steps to mitigate or prevent future harm of the same type).

***Second***, the Unit 387 Defendants ignore Epic and OCHIN's allegations of reputational harm.  Compl. ¶¶ 193, 196.  Reputational harm is an injury-in-fact sufficient to satisfy Article III.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[v]arious intangible harms," including "reputational harms," "can also be concrete"); *Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *6 (C.D. Cal. Sept. 23, 2013)

---

269, 278; *see also Paya v. Macy's Inc.*, 793 F. Supp. 3d 1201, 1211 (C.D. Cal. 2025) (declining to dismiss on this ground).

The Unit 387 Defendants' citation to *In re Nexus 6P Prods. Liability Litig.*, 293 F. Supp. 3d 888 (N.D. Cal. 2018), is unavailing.  The *Nexus* court dismissed an unjust enrichment cause of action premised on "universal principles in equity" for a ***nationwide class***.  *Id.* at 933.  Plaintiffs are not bringing claims on behalf of a nationwide class.  *See generally* Compl.

("plaintiff has adequately alleged constitutional standing" based on its allegations of "loss of business and damage to its reputation").

*Third*, the Unit 387 Defendants ignore that Epic and OCHIN each alleged costs for increased storage and responding to customer complaints. *See* Compl. ¶¶ 195-196. These harms are not self-inflicted and are the but-for result of the Unit 387 Defendants' conduct. Epic and OCHIN incur increased storage costs when Unit 387 allows and enables its Connections to request patient records under the false pretense that they seek such records for treatment purposes. *Id.* ¶¶ 66, 96, 195. And Epic and OCHIN incur costs to respond to customer complaints about the Unit 387 Defendants' conduct to maintain Epic and OCHIN's customer relationships. *Id.* ¶¶ 193, 196. These are "'real' and not 'abstract'" costs that "actually exist" and are "particularized" to Epic and OCHIN, satisfying Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-340 (2016).

> ### 2. The Dispute Resolution Procedures Are Not A Condition Precedent To Litigation.

The Unit 387 Defendants contend that the dispute resolution procedures in the CCA and the Common Agreement are mandatory, thus imposing a condition precedent to filing suit that Plaintiffs did not fulfill. Mot. at 12-13. As an initial matter, the Unit 387 Defendants are not participants in the TEFCA interoperability framework. *See id.* at 4-5; Compl. ¶¶ 45-46. Therefore, they are not parties to the Common Agreement and lack standing to enforce it. As to the CCA, the dispute resolution provisions are not a condition precedent.

Courts "will neither infer nor construe a condition precedent 'absen[t] . . . language plainly requiring such construction.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (quoting *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969)). "Conditions precedent must be expressed in plain, clear, and unambiguous language[.]" *Id.* at 1043. The CCA lacks the strict, unequivocal language required to establish a condition precedent, in contrast with the one district court decision the Unit 387 Defendants cite. *See* Mot. at 16 (citing *Columbia Cas. Co. v. Cottage Health Sys.*, 2015

WL 4497730, at *1 (C.D. Cal. July 17, 2015) (contract expressly stated that "no . . . judicial proceeding shall be commenced until the [alternative dispute resolution] shall have been terminated[.]")).

Here, the CCA encourages—but does **not** require—parties to utilize the non-binding dispute resolution process. The CCA provides only that "Applicant shall submit Disputes to the non-binding dispute resolution process established by Carequality." Ex. A § 20.1. It requires parties "agree[]" to use their "best efforts" to resolve disputes informally, but to the extent those efforts are unsuccessful, the parties "**may**"—indicating optionality—"**choose to** submit the Dispute to the Dispute Resolution Process." *Id*. (emphasis added).

Importantly, the CCA makes clear that the dispute resolution process does not preclude litigation. Refusal to participate might be treated as a material breach, permitting Carequality to suspend or terminate the agreement, *see* Ex. A § 20.1, but the consequence is **contractual**—potential suspension or termination by signatories—**not a jurisdictional bar** enforceable by third parties like the Unit 387 Defendants. This distinction is critical and demonstrates that participation in the dispute resolution process is not a condition precedent to filing suit.

3.      The Dispute Resolution Process Does Not Apply Because Plaintiffs Seek Immediate Injunctive Relief.

The Unit 387 Defendants next argue that the carve-out in the dispute resolution provision for immediate injunctive relief does not apply. Mot. at 13. But the Unit 387 Defendants cite nothing to support their position that "immediate injunctive relief" can mean only a temporary restraining order or separate, standalone preliminary injunction. *See* Mot. at 13. The CCA does not contain that requirement*, see* Ex. A § 20.2.1, and the Unit 387 Defendants should not be permitted to add to or alter the express language of the agreements. *Jimirro v. Paley Center for Media*, 2025 WL 2994996, at *4 (C.D. Cal. Sept. 17, 2025) ("The Court cannot 'create for Plaintiff a contract which he did not make and cannot insert language which Plaintiff now wishes were there.'" (cleaned up) (quoting

7

*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1478 (1998))); *Arriagarazo v. BMW of N. Am., LLC*, 64 Cal. App. 5th 742, 748 (2021) ("Courts must refrain from altering or rewriting a contract, and they must not add a term to a contract about which the agreement is silent." (quotation omitted)).

Further, the question at this stage is not whether Plaintiffs have a "need" for immediate injunctive relief as the Unit 387 Defendants argue, *see* Mot. at 13, but whether Plaintiffs have sought that relief within the meaning of the CCA (and they have).  To be sure, there was not a delay between Plaintiffs raising concerns and the filing of this Complaint, as Plaintiffs raised the issue in November 2025 and waited for a response from the Unit 387 Defendants that never came, at which point Plaintiffs filed suit on January 13, 2026.  Compl. ¶ 183.  Nor would this be a basis to deny Plaintiffs' request for injunctive relief regardless.  *See Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (delay "by itself is not a determinative factor" as to the necessity of immediate injunctive relief (quoting *Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988)).

Plaintiffs' Complaint explains the irreparable harm caused by the Unit 387 Defendants.  Compl. ¶¶ 1-5, 11-25, 192-197.  Plaintiffs plainly seek immediate injunctive relief.  *Id.*, Caption, Prayer for Relief.  And Plaintiffs need not seek that relief through a specific procedural vehicle for this Court to award it.  *See, e.g.*, *Six Gun Territory, Inc. v. Six Gun Territory Legacy, Inc.*, 2025 WL 2853156, at *1, 7-8 (M.D. Fla. Aug. 21, 2025) (granting summary judgment and entering immediate injunctive relief).  Indeed, this Court has entered that relief against GuardDog.  ECF 79.  Thus, the criteria for Plaintiffs to be "relieved" of any obligation to follow the dispute resolution procedures are satisfied.  Ex. A § 20.2.1.

> 4.    Plaintiffs Are Excused From Compliance With The Dispute Resolution Procedures Because The Process Is Futile.

The Unit 387 Defendants next argue that Plaintiffs are not excused from participating in the dispute resolution process based on its lack of "transparency" because

Plaintiffs "do not allege Carequality or the RCE were unwilling or unable to act."  Mot. at 13-14.  The Unit 387 Defendants misconstrue Plaintiffs' allegations.  Plaintiffs are excused because the Unit 387 Defendants' conduct demonstrates that the process would be futile and Plaintiffs cannot obtain the remedies they seek.

"It is an established rule that administrative remedies need not be exhausted where they are inadequate, inapplicable, or futile."  *Vernon Fire Fighters v. City of Vernon*, 107 Cal. App. 3d 802, 826 (1980); *see also Gueyffier v. Ann Summers, Ltd.*, 43 Cal. 4th 1179, 1186 (2008) ("California law allows for equitable excusal of contractual conditions causing forfeiture in certain circumstances, including circumstances making performance futile." (citations omitted)); *Jones v. Union Pac. R. Co.*, 968 F.2d 937, 942 (9th Cir. 1992) (failure to exhaust internal union remedies not required when doing so would be a futile effort); *Unnamed Physician v. Bd. of Trs. of Saint Agnes Med. Ctr.*, 93 Cal. App. 4th 607, 620-21 (2001) (declining to dismiss plaintiff's claim under the exhaustion doctrine where administrative remedy was inadequate).

Plaintiffs attempted to engage with the Unit 387 Defendants and Health Gorilla, as Unit 387's Implementer, to informally resolve the issue to no avail.  Compl. ¶ 183.  Instead of taking Plaintiffs' concerns seriously, Health Gorilla—on behalf of Unit 387—refused to respond.  *Id.*  Thus, the continued use of the dispute resolution procedures would be futile.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (denying motion to dismiss where allegations regarding defendant's inadequate response to claims indicated that complying with informal dispute settlement procedure would be futile).

Additionally, Plaintiffs seek a binding public injunction that the dispute resolution procedures cannot provide.  *See* Compl., Prayer for Relief; *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (a public injunction is "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017))).  Indeed, the injunctive relief Plaintiffs seek with respect to their UCL claims is "by definition . . .

9

primarily 'for the benefit of the general public.'" *Id.* (quoting *McGill*, 2 Cal. 5th at 961). Because the agreements' dispute resolution procedures cannot provide binding injunctive relief—let alone a public injunction—they would be futile, and thus, Plaintiffs are excused from participating in the process. *See Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315-16 (2003) (declining to enforce arbitration clause where "the request for injunctive relief is clearly for the benefit of health care consumers and the general public").

### 5. Ms. Manak And Hoppr Lack Standing To Enforce The Dispute Resolution Procedures.

Ms. Manak and Hoppr are not Implementers, Candidate Implementers, or Connections on the Carequality framework. Compl. ¶¶ 45-46; *see also* Mot. at 5. Ms. Manak and Hoppr therefore cannot enforce the CCA's dispute resolution procedures.

Nor does equitable estoppel apply to allow them to enforce this provision. Plaintiffs' claims against Ms. Manak and Hoppr do not invoke the duties or obligations under the agreements or otherwise attempt to enforce any contractual terms against them. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1134 (9th Cir. 2013) (equitable estoppel did not apply where "Plaintiffs do not seek to simultaneously invoke the duties and obligations of Toyota under the Purchase Agreement, as it has none, while seeking to avoid arbitration."); *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1136 (2025) ("[T]he essential concern is whether plaintiffs are trying to enforce contractual terms beneficial to them while avoiding their own contractual agreement to arbitrate."). Instead, the fraudulent activity and statutory violations underpinning each of Plaintiffs' claims against Ms. Manak and Hoppr exist independent of the agreements.

Ms. Manak and Hoppr also cannot avail themselves of third-party beneficiary arguments. The agreements were made for the benefit of the signatories, as well as other parties on the frameworks. *See* Exs. A, B. Ms. Manak and Hoppr are thus not "members of a class for whose benefit the contract was made." *Singer v. Ett*, 2023 WL 6787442, at *5 (C.D. Cal. Sept. 18, 2023) (Olguin, J.) (citation omitted). The agreements do not contain any provisions that benefit Ms. Manak or Hoppr or any language evidencing that

10

a motivating purpose of the signatories was to benefit them. *See generally* Exs. A, B. Allowing them to enforce the agreements would be inconsistent with the objectives of the agreements and the reasonable expectations of the signatories. *See*, *e.g.*, *Faucett v. Move, Inc.*, 2024 WL 2106727, at *4 (C.D. Cal. Apr. 22, 2024) (declining to allow non-signatory to enforce arbitration clause where contract made no mention of third party and gave no indication of a motivating purpose of benefiting the non-signatory).

**B.      Plaintiffs Have Stated A Fraud Claim Against The Unit 387 Defendants.**

Fraud has five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *9 n.13 (C.D. Cal. Mar. 23, 2025) (Olguin, J.) (internal citations and quotations omitted). The Unit 387 Defendants challenge four of them.

1.      Plaintiffs Allege Actionable Misrepresentations And Omissions.

The Unit 387 Defendants contend that Plaintiffs fail to allege actionable misrepresentations by failing to allege their time, place, and specific content as well as the identities of the parties involved. Mot. at 19. In actuality, Plaintiffs identify multiple false representations and omissions by the Unit 387 Defendants with detail sufficient to satisfy Rule 9(b).

***First***, as to Unit 387 and Ms. Manak, Plaintiffs allege the following misrepresentations and omissions:

- Unit 387 (who) falsely represented that it sought access to the Carequality framework for treatment purposes (what) in September 2022 (when) when it was onboarded to the Carequality framework (where/how). Compl. ¶¶ 174, 182.
- Ms. Manak (who) made or directed Unit 387's false statement that it sought access to the Carequality framework for treatment purposes (what) in September 2022 (when) when it was onboarded to the Carequality framework (where/how). *Id.* ¶¶ 45, 173-174, 182, 241, 272-273.

PLAINTIFFS' OPPOSITION TO THE UNIT 387
DEFENDANTS' MOTION TO DISMISS

- Unit 387 (who) falsely represented that SelfRx and GuardDog were healthcare providers seeking access to patient records for treatment purposes (what) in September 2022 and September 20224, respectively, (when) when they were onboarded to the Carequality framework (where/how). *Id.* ¶¶ 176-177, 182.

- Ms. Manak (who) made or directed Unit 387's false statements that SelfRx and GuardDog were healthcare providers seeking access to patient records for treatment purposes (what) in September 2022 and September 20224, respectively (when) when they were onboarded to the Carequality framework (where/how). *Id.* ¶¶ 45, 173, 176-177, 182, 241, 272-273.

- Unit 387 and Ms. Manak (who) failed to disclose that SelfRx's and GuardDog's true purpose in seeking access to patient records was to sell those records to law firms and other third parties (what) in September 2022 and September 20224, respectively (when) when onboarding them to the Carequality framework (where/how). *Id.* ¶¶ 45, 173, 176-177, 182, 241, 272-273.

- Unit 387 (who) falsely represented that it, SelfRx, and GuardDog sought access to and were querying records for legitimate treatment purposes (what) from September 2022 to November 2025 (when) each time Unit 387 itself queried records or facilitated a query by SelfRx or GuardDog through the Carequality framework (where/how). *Id.* ¶¶ 182, 237, 311.

- Ms. Manak (who) made or directed Unit 387's false statements that Unit 387, SelfRx, and GuardDog sought access to and were querying records for legitimate treatment purposes (what) from September 2022 to November 2025 (when) each time Unit 387 itself queried records or facilitated a query by SelfRx or GuardDog through the Carequality framework (where/how). *Id.* ¶¶ 45, 173, 182, 241, 272-273, 311.

- Unit 387 and Ms. Manak (who) failed to disclose that its, SelfRx's, and GuardDog's true purpose in seeking access to patient records was to sell those records to law firms and other third parties (what) from September 2022 to November 2025 (when)

12

each time Unit 387 itself queried records or facilitated a query by SelfRx or GuardDog through the Carequality framework (where/how). *Id.* ¶¶ 45, 173, 182, 237, 241, 272-273, 311.

- Unit 387 and Ms. Manak (who) failed to disclose the ties between them and Hoppr (what) in September 2022 (when) when Unit 387 was onboarded to and querying patient records through the Carequality framework (where/how). *Id.* ¶¶ 45, 173-174, 241, 272-273, 311.

Plaintiffs' allegations are not "conditional" and do not assert only what Unit 387 "would have" done, Mot. at 16, but instead identify the who, what, when, where, and how of Unit 387's and Ms. Manak's fraud. These allegations satisfy Rule 9(b)—in particular because "[i]n cases of corporate fraud," Rule 9(b)'s "pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual." *Khast v. Wash. Mut. Bank*, 2010 WL 11684849, at *3 (S.D. Cal. Oct. 26, 2010) (citing *625 3rd St. Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1049-50 (N.D. Cal. 2009)); *see also Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006) (similar). To be sure, Plaintiffs have, but need not, attribute "specific conduct" to each Unit 387 Defendant, and instead may "identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (internal quotation omitted). Plaintiffs' allegations go well beyond these requirements.

***Second***, as to Hoppr, the Unit 387 Defendants contend that "the Complaint pleads no misrepresentation to any party at all" but merely alleges an Hoppr failed to disclose its connection to and role in the Unit 387 Defendants' scheme. Mot. at 19. But Hoppr's failure to disclose its connection to and role with the Unit 387 Defendants supports a cause of action for fraud. A duty to disclose exists "when the defendant had exclusive knowledge of material facts not known to plaintiff" or "the defendant actively conceals a material fact from plaintiff." *Sonneveldt v. Mazda Motor of Am., Inc.*, 2021 WL 4813753, at *4 (C.D. Cal. July 29, 2021). Here, Plaintiff alleges that Hoppr had exclusive knowledge of its

13

involvement with the Unit 387 Defendants and this fact was material because Hoppr's involvement makes evident that the Unit 387 Defendants were not using records for purposes of treatment (they were improperly accessing patient data in order to monetize it). Compl. ¶¶ 182, 238, 241-242. Plaintiffs also allege that Hoppr actively concealed its involvement with the Unit 387 Defendants in order to enable their continued access to patient records on the Carequality framework. *Id.*

### 2. Plaintiffs Allege Actual, Justifiable Reliance.

The Unit 387 Defendants argue that Plaintiffs did not actually, justifiably rely on the Unit 387 Defendants' misrepresentations and omissions because (1) the CCA and CC Terms contain provisions disclaiming Plaintiffs' reliance and (2) Plaintiffs did not take any action as a result of their justifiable reliance. Mot. at 16-18. These arguments fail.

**Plaintiffs Did Not Disclaim Reliance.** The Unit 387 Defendants assert that Plaintiffs disclaimed reliance, pointing to Section 19 of the CCA and Section 15 of the CC Terms. Mot. at 17-18. Both provisions state that Plaintiffs "acknowledge[] that other Implementers and Carequality Connections may be added to or removed from the Carequality Directory at any time; therefore, [Plaintiffs] may not rely upon the inclusion in the Carequality Directory of a particular Implementer or Carequality Connection." Ex. A § 19; Ex. B § 15. These provisions only disclaim reliance on any Implementer's or Connection's indefinite participation in the Carequality framework. *Id.* In other words, Implementers and Connections can come and go. The CCA does not purport to disclaim reliance on representations made by Implementers and Connections while they are members of the Carequality Directory or to shield Implementers or Connections from complying with all of the relevant rules while they participate in the Carequality framework. Plaintiffs simply did not disclaim any relevant reliance.[3]

**Plaintiffs Allege Justifiable Reliance On The Unit 387 Defendants' Misrepresentations and Omissions.** The Unit 387 Defendants contend that Plaintiffs

---

[3] Moreover, by their own terms, these provisions simply do not apply to Ms. Manak and Hoppr—non-parties to the CCA and CC Terms who are neither Implementers nor Connections.

PLAINTIFFS' OPPOSITION TO THE UNIT 387
DEFENDANTS' MOTION TO DISMISS

neither allege that they received or saw the Unit 387 Defendants' misrepresentations or omissions, *see* Mot. at 16, nor that they took any action based upon them, *see id.* at 17-28. Both are wrong

Plaintiffs allege that they received and relied upon the Unit 387 Defendants' onboarding representations because these statements were incorporated into the Carequality directory. Compl. ¶¶ 55, 174-177. The Provider Plaintiffs further allege that they received the misrepresentations made by the Unit 387 Defendants in connection with Unit 387's, SelfRx's, and GuardDog's queries for patient records. *Id.* ¶¶ 182, 237, 246, 311.

Moreover, where, as here, a plaintiff alleges fraud based on concealment or nondisclosure, a plaintiff pleads justifiable reliance by alleging facts showing that the plaintiff was unaware of the information at issue and would not have acted as it did if it "had known of the concealed or suppressed" information. *Labbe v. Dometic Corp.*, 2022 WL 846972, at *4 (E.D. Cal. Mar. 22, 2022) (quoting *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008)). As such, the Complaint need not allege that Plaintiffs "saw" any particular statement from the Unit 387 Defendants concealing the connections between Hoppr and Unit 387. *See id.* at *2-4 (plaintiffs did not "see" statements concealing product defect but nevertheless stated a claim for fraud by concealment based on defendant's omissions concealing the defect). Rather, based on the allegations made here, "it is reasonable to infer th[at] [P]laintiffs" were unaware of the Unit 387 Defendants' true purposes (as well as Unit 387's customers' true purposes) and ties to one another and "would have acted differently" had they known the information the Unit 387 Defendants concealed. *Id.* at *2-4.

As to the actions taken in reliance upon the Unit 387 Defendants' misrepresentations and omissions, Plaintiffs allege that Epic and OCHIN allowed and enabled their customers to exchange patient records with Unit 387, SelfRx, and GuardDog in reliance on the Unit 387 Defendants' misrepresentations and omissions. Compl. ¶¶ 138-141, 173, 176-177, 182, 241-242, 246, 311. Further, Plaintiffs allege that the Provider

15

Plaintiffs disclosed patient records to Unit 387 and its customers in reliance on the Unit 387 Defendants' misrepresentations and omissions. *See id.*

Accordingly, Plaintiffs have adequately alleged reliance on the Unit 387 Defendants' misrepresentations and omissions, including when and how they did so.

### 3.    Plaintiffs Allege Scienter.

The Unit 387 Defendants assert that Plaintiffs' scienter allegations are insufficient. Mot. at 22-23. On the contrary, Plaintiffs allege that the Unit 387 Defendants knew their representations or omissions were false or, at the very least, acted recklessly and without regard for the truth of their statements because they:

- Knew they, SelfRx, and GuardDog were misstating their true purpose (Compl. ¶¶ 182, 241-242, 272-273);
- Knew their, SelfRx's, and GuardDog's treatment-purpose requests were false (*id.*);
- Knew their purpose in accessing the Carequality framework, as well as SelfRx's and GuardDog's purpose, was to sell patient records and data to law firms and other third parties (*id.* ¶¶ 174, 182, 241-242, 272-273);
- Knew that SelfRx and GuardDog exhibited abnormal patient record exchange patterns (*id.* ¶¶ 178, 180-181)
- Knew of and concealed the connection between Ms. Manak, Hoppr, and Unit 387 (*id.* ¶¶ 173, 182, 241-242);
- Knew they were selling patient records to law firms and insurance companies through Hoppr (*id.* ¶¶ 45-46, 173, 182); and
- Ignored and attempted to cover up their, SelfRx's, and GuardDog's suspicious activity (*id.* ¶¶ 182-183, 187).

Plaintiffs' allegations satisfy Rule 9(b), which requires only that knowledge be alleged generally. Fed. R. Civ. P. 9(b); *see United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (under Rule 9(b), scienter "can be alleged generally"). Indeed, in keeping with Rule 9(b), courts have found it "is often enough to establish scienter for fraud" that defendant "made [a] false statement 'without belief in its truth or

16

recklessly, careless of whether it is true or false," or "knows that [it] 'lacks an honest belief' in the statement's truth." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 752 (2023) (quoting Restatement (Second) of Torts, § 526, cmts. e, d); *see also Virun, Inc. v. Cymbiotika LLC*, 2023 WL 12119026, at *3 ("To plead fraud, a party must plead facts showing," among other things, "knowledge of falsity or reckless disregard for the truth[.]").

> 4. <u>Plaintiffs Allege Damages Caused By The Unit 387 Defendants' Misconduct.</u>

The Unit 387 Defendants argue that SelfRx and GuardDog caused any alleged damage to Plaintiffs, not the Unit 387 Defendants. Mot. at 23-24. This, again, ignores that Plaintiffs' claim is based on the Unit 387 Defendants' misconduct and actions that Plaintiffs undertook in reliance on the same. *See* Sections III.B.1-2, *supra*. Plaintiffs clearly allege damages as a result of Unit 387's conduct. *See* Compl. ¶¶ 182, 241-242, 246, 249-250; *see also* Section III.A.1, *supra*.

**C.     Plaintiffs State A Claim For Aiding And Abetting Fraud.**

To plead a claim for aiding and abetting fraud, Plaintiffs must allege that the Unit 387 Defendants (1) "knew the other's conduct constituted a breach of duty" and (2) "gave substantial assistance or encouragement to so act." *Berman v. Bank of Am. N.A.*, 2025 WL 2885491, at *12 (C.D. Cal. Sept. 2, 2025) (Olguin, J.) (cleaned up, quoting *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1113 (S.D. Cal. 2024)).

**Actual Knowledge.** Actual knowledge "may be averred generally." *Bhatia*, 725 F. Supp. 3d at 1114. A "direct allegation (really, assertion) of actual knowledge" satisfies the first step of the inquiry. *Id.* (quoting *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *4 (N.D. Cal. Apr. 7, 2020)). Here, Plaintiffs directly allege the Unit 387 Defendants knew that they, SelfRx, and GuardDog were not providing treatment. *See* Compl. ¶¶ 182, 241-242, 272-273.

The Complaint then need only "plead[] sufficient facts as required to make that allegation plausible." *Bhatia*, 725 F. Supp. 3d at 1114-15 (quoting *Chang*, 2020 WL

17

PLAINTIFFS' OPPOSITION TO THE UNIT 387
DEFENDANTS' MOTION TO DISMISS

1694360, at *4). The Complaint pleads precisely such facts, as detailed in the above bullet points. *See* Section III.B.3, *supra*. These detailed allegations are more than sufficient. Contrary to the Unit 387 Defendants' contention (*see* Mot. at 20), and as affirmed by the Ninth Circuit, ignoring suspicious activity or "red flags"—here, the red flags associated with SelfRx and GuardDog—is "enough to establish actual knowledge under the California aiding and abetting standard." *In re First All. Mortg. Co.*, 471 F.3d 977, 999 (9th Cir. 2006); *see also In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020) (recognizing that the Ninth Circuit has found that "ignor[ing] suspicious activity or red flags is sufficient to demonstrate actual knowledge"); *Bhatia*, 725 F. Supp. 3d at 1116 ("Plaintiffs allege that numerous red flags were visible to Defendants, which they ignored . . . [T]his alone is sufficient to demonstrate actual knowledge.").

**Substantial Assistance.** "Pleading the element of 'substantial assistance requires a significant and active, as well as a knowing participation in the wrong, and a plaintiff must also allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff.'" *Berman*, 2025 WL 2885491, at *13 (cleaned up) (quoting *Chang*, 2020 WL 1694360, at *6). Even "'ordinary business transactions' can satisfy the substantial assistance element of an aiding and abetting claim if the defendant actually knew those transactions were assisting the principal in committing a specific tort." *Bhatia*, 725 F. Supp. 3d at 1120 (collecting cases).

Defendants argue as to Ms. Manak that Plaintiffs fail to allege substantial assistance because they do not identify any specific act of Ms. Manak's that assisted "any specific fraudulent inquiry." Mot. at 25. That is incorrect. Plaintiffs allege that Ms. Manak:

- Made, facilitated, and provided cover for false representations and omissions related to Unit 387's, SelfRx's, and GuardDog's true purpose for seeking medical records through the Carequality framework (Compl. ¶¶ 272-273, 311);
- Enabled Unit 387's, SelfRx's, and GuardDog's false assertions of treatment purposes (*id.*);

18

- Participated in the sale of improperly accessed patient data to law firms and other third parties through Hoppr (*id.* ¶¶ 182, 241-242, 272-273);
- Founded Hoppr, which allowed Unit 387, SelfRx, and GuardDog to sell patient records to law firms and insurance companies (*id.* ¶¶ 45-46, 173, 182, 241-242, 272-273); and
- Actively concealed the connections between herself, Hoppr, and Unit 387 (*id.* ¶¶ 138-141, 173, 182, 241-242, 272-273).

As these allegations make clear, Ms. Manak provided substantial assistance by actively participating in and facilitating Unit 387's, SelfRx's, and GuardDog's fraud to benefit her own interests and the interests of the business web she operates for the improper purpose of obtaining and selling patient records taken from the interoperability frameworks under the false pretense of providing access to entities with a treatment purpose. *Id.* ¶¶ 45-46, 138-141, 173, 182, 241-242, 272-273. This assistance was integral to Unit 387's, SelfRx's, and GuardDog's schemes and the resulting harm to Plaintiffs. *Id.*

**D.     Plaintiffs State A Breach Of Contract Claim.**

1.     Plaintiffs Are Third-Party Beneficiaries of the CC Terms.

The Unit 387 Defendants argue that Plaintiffs cannot assert that they are third-party beneficiaries to the CC Terms because Unit 387 is a Candidate Implementer, not a Connection, and Plaintiffs do not allege that Unit 387 signed the CC Terms. Mot at 26. This is false. Plaintiffs allege that Unit 387 is ***both*** a Candidate Implementer ***and*** a Connection and, further, that as a Connection, Unit 387 entered into the CC Terms with Health Gorilla. Compl. ¶¶ 60, 73, 175. The CC Terms explicitly provide that Plaintiffs as "Implementers [and] Carequality Connections" are "third party beneficiaries of these [CC Terms] for purposes of enforcing Organization's"—defined to mean the "Carequality Connection on which these [CC Terms] are binding, which here is Unit 387—"compliance with these [CC Terms]." Ex. B § 16.2. Thus, the Complaint clearly lays out that Unit 387 is bound by the CC Terms and that Plaintiffs are third-party beneficiaries of the same.

PLAINTIFFS' OPPOSITION TO THE UNIT 387
DEFENDANTS' MOTION TO DISMISS

The Unit 387 Defendants' remaining arguments are misguided. ***First***, the Unit 387 Defendants refer to a provision in the CCA they contend limits Plaintiffs' third-party beneficiary status. Mot. at 22. But Plaintiffs' breach of contract claim is based on the CC Terms and the relevant third-party beneficiary provision therein does not contain any such limitation. Ex. B § 16.2. And, ***second***, the Unit 387 Defendants argue that Plaintiffs' claim for breach of Section 15 of the CCA fails, Mot. at 22, but Plaintiffs do not bring a claim for breach of Section 15 of the CCA against Unit 387. *See* Compl. ¶¶ 303-318.

### 2. Plaintiffs Allege that Unit 387 Breached The CC Terms.

The Unit 387 Defendants argue Plaintiffs do not allege a breach because Unit 387 purportedly did not initiate any requests for patient records. Mot. at 27. Again, this mischaracterizes Plaintiffs' Complaint. Plaintiffs do, in fact, allege that Unit 387 "request[ed] patient records under the guise of treatment purposes" even though it did not have a valid treatment purpose in breach of the CCA. Compl. ¶¶ 309-311; Ex. B §§ 5, 12. The Unit 387 Defendants may dispute whether Unit 387 actually initiated requests for patient records, but Plaintiffs' pleadings control. *Davis*, 691 F.3d at 1159 (factual allegations in complaint accepted as true at pleading stage).

The Unit 387 Defendants also ignore that Section 12 of the CC Terms also prohibits Unit 387 from using, disclosing, and selling patient records for their own benefit without patient authorization. Compl. ¶ 310; Ex. B § 12. In other words, it is not merely requesting patient records for non-treatment purposes that is prohibited. And here, Plaintiffs allege that Unit 387 breached this section by transmitting patient records to Hoppr for its own commercial gain without patient knowledge or consent. Compl. ¶¶ 182, 310.

Thus, Plaintiffs have alleged that Unit 387 breached the CC Terms.

### E. Plaintiffs State A UCL Claim.

The Unit 387 Defendants contend that Plaintiffs UCL claim fails if Plaintiffs' contract and fraud claims fail. Mot. at 21. As explained above, however, Plaintiffs adequately allege their claims for fraud and breach of contract and, accordingly, Plaintiffs' UCL claim is adequately alleged. Moreover, the Unit 387 Defendants fail to address

20

Plaintiffs' claim pursuant to the "unlawful" prong of the UCL predicated upon the Unit 387 Defendants' violation of HIPAA. *See* Compl. ¶ 283; *see also* Mot. at 25. The claim should at a minimum survive on that ground.

## IV. IF THE MOTION IS GRANTED, THEN PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

To the extent the Court grants any portion of the Unit 387 Defendants' Motion, Plaintiffs respectfully request leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment). The Unit 387 Defendants do not present any argument that leave to amend would be futile, and thus leave to amend is proper.

## V. CONCLUSION

Plaintiffs respectfully request that the Court deny the Unit 387 Defendants' motion.

Dated: April 30, 2026      By: */s/ Marshall L. Baker*
Marshall L. Baker
Lauren E. Huennekens
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022

- and -

Anthony T. Pierce (*pro hac vice*)
Mark R. Herring (*pro hac vice*)
Caroline L. Wolverton (*pro hac vice*)
Laura Hill (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037

*Attorneys for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services Inc.,*
*Trinity Health Corporation, and UMass Memorial*
*Health Care, Inc.*

21

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs Epic System Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc., certifies that this brief contains 6,970 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 30, 2026  By: */s/ Marshall L. Baker*
            Marshall L. Baker
            Lauren E. Huennekens
            **AKIN GUMP STRAUSS HAUER & FELD LLP**
            1999 Avenue of the Stars, Suite 600
            Los Angeles, CA  90067-6022

            - and -

            Anthony T. Pierce (*pro hac vice*)
            Mark R. Herring (*pro hac vice*)
            Caroline L. Wolverton (*pro hac vice*)
            Laura Hill (*pro hac vice)*
            **AKIN GUMP STRAUSS HAUER & FELD LLP**
            Robert S. Strauss Tower
            2001 K Street, N.W.
            Washington, DC  20006-1037

            *Attorneys for Plaintiffs*
            *Epic Systems Corporation, OCHIN, Inc.,*
            *Reid Hospital & Health Care Services Inc.,*
            *Trinity Health Corporation, and UMass Memorial*
            *Health Care, Inc.*

22

PLAINTIFFS' OPPOSITION TO THE UNIT 387
DEFENDANTS' MOTION TO DISMISS