Nithin Kumar (SBN 300607)
  nithin@kingfisherlawapc.com
KINGFISHER LAW APC
P.O. Box 492415
Los Angeles, CA 90049-9998
Telephone: (408) 930-3580

Attorney for Defendant Max Toovey

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, <br><br> Defendants. | Case No. 2:26-cv-00321-FMO-RAO <br><br> **REPLY IN SUPPORT OF DEFENDANT MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS** <br><br> Date:   May 21, 2026 <br> Time:  10:00 a.m. <br> Dept.:  6D <br> Judge:  Hon. Fernando M. Olguin |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ……………………………………………………... 6

II.  ARGUMENT …………………………………………………… 7

    A.   The Claim for Fraud Should Be Dismissed ………………………… 7

        1.   The Only Specific Representation Attributed to Toovey Is Not Alleged to Be False and Cannot Support a Claim for Fraud …….. 7

        2.   Plaintiffs Engage in Blatant and Improper Group Pleading ……… 10

        3.   Plaintiffs Ask the Court to Adopt an Improper "Relaxed" Pleading Standard for Cases Involving "Corporate Fraud" …… 13

        4.   The Ninth Circuit Requires Plaintiffs to Plead Specific Facts, Not Conclusions, that Plausibly Support an Inference of Fraud .. 15

        5.   Plaintiffs' Fraudulent-Omission Theory Fails Because Toovey Owed No Affirmative Duty of Disclosure as a Matter of Law … 17

    B.   The Aiding and Abetting Claim is Fatally Flawed …………………. 20

    C.   Vague Allegations of HIPAA Violations Do Not Save Plaintiffs' UCL Claims ………………………………………………………… 23

    D.   Plaintiffs' Claims Against Toovey Rely Heavily on the Carequality Agreements ………..……..……..……..……..…………………….. 24

III. CONCLUSION ………………………………………………… 25

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agrify Corp. v. Cimini*
 2024 WL 5516280 (C.D. Cal. Dec. 11, 2024)......................................................21

*Allstate Ins. Co. v. Countrywide Fin. Corp.*
 824 F. Supp. 2d 1164 (C.D. Cal. 2011) ......................................................8, 15, 20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
 7 Cal. 4th 503 (1994)..........................................................................................22

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009) ..........................................................................9, 17, 20, 21

*Axonic Capital LLC v. Gateway One Lending & Fin., LLC*
 2018 WL 11355034 (C.D. Cal. Dec. 18, 2018)............................................16, 17

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544 (2007) ............................................................................................16

*Berman v. Bank of Am. N.A.*
 2025 WL 2885491 (C.D. Cal. Sept. 2, 2025) ....................................................20

*Cascade Trade, LLC v. Cascade Mobility, Inc.*
 2024 WL 5411308 (C.D. Cal. Nov. 12, 2024)....................................................21

*Cirulli v. Hyundai Motor Co.*
 2009 WL 4288367 (C.D. Cal. Nov. 9, 2009)......................................................19

*Crystal Cruises, Inc. v. Electra Cruises, Inc.*
 2009 WL 10673048 (C.D. Cal. Mar. 9, 2009)....................................................22

*Estate of Migliaccio v. Midland Nat'l Life Ins.*
 436 F. Supp. 2d 1095 (C.D. Cal. 2006) ..............................................................14

*Fiol v. Doellstedt*
 50 Cal. App. 4th 1318 (1996) ......................................................................21, 23

3

*Forlenza v. Dynakor Pharm., LLC*
    2009 WL 10698476 (C.D. Cal. Dec. 15, 2009)..................................................21

*Franklin v. Cmty. Reg'l Med. Ctr.*
    998 F.3d 867 (9th Cir. 2021)..........................................................................25

*Gardner v. Health Net, Inc.*
    2010 WL 11597979 (C.D. Cal. Aug. 12, 2010)................................................23

*Goodman v. Kennedy*
    18 Cal.3d 335 (1976) .....................................................................................18

*Hazal Tekstil Tabidot Gida Sanyai Ve Tic. Ltd. v. Play Glob. LLC*
    2015 WL 13357665 (C.D. Cal. Mar. 26, 2015)................................................22

*Hodsdon v. Mars, Inc.*
    891 F.3d 857 (9th Cir. 2018)..........................................................................18

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*
    485 F.3d 450 (9th Cir. 2007)..........................................................................25

*In re Anthem, Inc. Data Breach Litig.*
    162 F. Supp. 3d 953 (N.D. Cal. 2016)............................................................23

*Janken v. GM Hughes Elecs.*
    46 Cal. App. 4th 55 (1996) ......................................................................22, 23

*Khast v. Washington Mutual Bank*
    2010 WL 11684849 (S.D. Cal. Oct. 26, 2010)................................................14

*LiMandri v. Judkins*
    52 Cal. App. 4th 326 (1997) ...........................................................7, 17, 18, 19

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*
    858 F.2d 509 (9th Cir. 1988)..........................................................................25

*Melrose Place Holdings v. Socotra Opportunity Fund, LLC*
    2022 WL 3013226 (C.D. Cal. May 31, 2022)....................................................8

4

*Moore v. Kayport Package Express, Inc.*
885 F.2d 531 (9th Cir. 1989)................................................................................. 7, 15

*Moses v. Innoprise Software*
2013 WL 6019536 (N.D. Cal. Nov. 13, 2013) ..................................................... 13

*N.Z. v. Fenix Int'l Ltd.*
2025 WL 3627591 (C.D. Cal. Dec. 12, 2025)....................................................... 25

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*
522 F.3d 1049 (9th Cir. 2008)........................................................................ 17, 18

*Sacco v. Mouseflow, Inc.*
2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ..................................................... 21

*Sanchez v. Aviva Life & Annuity Co.*
2010 WL 2606670 (E.D. Cal. June 28, 2010) ...................................................... 22

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007)............................................................ 8, 11, 13, 15

*Warner Constr. Corp. v. City of Los Angeles*
2 Cal.3d 285 (1970) ............................................................................................. 18

*Webb v. SolarCity Corp.*
884 F.3d 844 (9th Cir. 2018)........................................................................ 16, 17

*625 3rd Street Assocs., L.P. v. Alliant Credit Union*
633 F. Supp. 2d 1040 (N.D. Cal. 2009).............................................................. 14

**Rules and Statutes**

42 U.S.C. § 1320d et seq. .................................................................................... 23

Cal. Bus. & Prof. Code § 17200 ....................................................................... 5, 24

Fed. R. Civ. P. 9(b)............................................................................................. *Ibid.*

Fed. R. Civ. P. 12(b)(6) ................................................................................... 3, 14

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

## I.      INTRODUCTION

The Opposition confirms what Defendant Max Toovey already established in his Motion: Plaintiffs do not allege any specific misrepresentation by Toovey, nor do they allege any actions taken specifically by Toovey. The Opposition concedes that the only specific conduct attributed to Toovey in the Complaint—sending a marketing letter—was not fraudulent. (Opp. at 5 ("Plaintiffs' fraud claim is not based on Mr. Toovey's marketing statements").) That concession is fatal. In the absence of any facts establishing Toovey's participation in the alleged scheme, the Opposition merely recites a series of conclusory verbs, including that Toovey "facilitated" misrepresentations made by other defendants, "provid[ed] cover" for them, and "took steps to hide" their connections. (*Id.* at 2, 5-6, 8-9, 11, 13.) Yet Plaintiffs do not identify anything Toovey himself personally did or said that they allege to be fraudulent. These conclusory allegations of fraud are precisely what Rule 9(b) prohibits.

Plaintiffs' efforts to avoid dismissal in spite of these deficiencies are telling. Plaintiffs do not even attempt to address the *reasoning* of the cases Toovey cited in his motion, which explained exactly why conclusory allegations nearly identical to Plaintiffs' could not create a plausible inference of fraud as a matter of law. Recognizing the insufficiency of their factual allegations against Toovey, Plaintiffs instead propose applying a novel, "relaxed" pleading standard in instances of "corporate fraud" that has never been discussed much less applied by any court in the Ninth Circuit. This outrageous attempt to invent an entirely new pleading standard from whole cloth—as well as the Opposition's citation to fabricated facts that are not actually contained in their Complaint—reveals the utter inadequacy of Plaintiffs' allegations against Toovey.

The fraud claims fail for several additional reasons. The alleged omissions by Toovey are not actionable because the "exclusive knowledge" factor Plaintiffs rely on in their Opposition to establish an affirmative duty of disclosure only applies in

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

the context of an existing transaction or contractual relationship, which Plaintiffs have not alleged they had with Toovey. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). The aiding and abetting claim suffers from a slew of defects, including because conclusory allegations of "facilitation" also do not establish substantial assistance, because the Complaint's allegation that Toovey "should have known" of the alleged fraudulent conduct forecloses a finding of actual knowledge, and because California law does not allow an employee or agent to be held liable for aiding and abetting his employer or principal. Finally, Plaintiffs' argument that Toovey cannot invoke equitable estoppel to seek dismissal based on the mandatory dispute resolution process fails because Plaintiffs' fraud theories and allegations of materiality are inherently founded on the terms of the very same framework agreements that Plaintiffs argue are unrelated to their claims against Toovey.

Accordingly, Toovey respectfully requests that the Court grant his Motion and dismiss each of the three claims asserted against Toovey in the Complaint.

## II.    ARGUMENT

### A.    THE CLAIM FOR FRAUD SHOULD BE DISMISSED

#### 1.    Conclusory Allegations that Toovey "Facilitated" Fraud, "Provid[ed] Cover" for Others, and "Took Steps" to Hide Information Do Not Satisfy Rule 9(b)

Plaintiffs' Complaint identifies exactly one specific statement allegedly made by Toovey in an advertising letter regarding non-party NHPC's services. (Compl. ¶ 167.) Toovey's Motion explained that this letter cannot support a fraud claim because Plaintiffs do not allege anything in it was untrue. (Mot. at 11-13.) Rather than defend the lone factual allegation of Toovey's conduct, Plaintiffs concede it by admitting the "fraud claim is not based on Mr. Toovey's marketing statements." (Opp. at 5.) That concession alone defeats the fraud claims against Toovey. The marketing letter contains the only statement specifically attributed to Toovey in the Complaint, and Plaintiffs now disclaim it as a basis for fraud. *See Moore v. Kayport Package Express,*

*Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (Rule 9(b) requires plaintiffs to "attribute particular fraudulent statements or acts to . . . individual defendants"). As explained below, the remaining allegations do not identify an actionable misrepresentation by Toovey as a matter of law.

In place of any specific representation, the Opposition repeats a series of conclusory verbs that do not satisfy Rule 9(b). Based on the single conclusory allegation in paragraph 264 that "Hilton, Baker, and Toovey provided substantial assistance to Mammoth's fraud by knowingly facilitating the false representations and omissions," Plaintiffs repeat *at least eight times* the single allegation that Toovey "facilitated" false statements made by the Mammoth entities. (Opp. at 2:12, 2:24, 5:18, 6:5, 6:27, 8:20, 11:23, 13:10.)[1] Yet nowhere do Plaintiffs ever attempt to explain what it means for Toovey to have "facilitated" fraudulent misrepresentations. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1189 (C.D. Cal. 2011) (allegations that defendants "facilitated and encouraged [others] in their fraud" were "bare legal assertions" that "provide no facts, particular or general, which would allow the Court to draw an inference of liability"). Plaintiffs do not identify a meeting, a directive, a memo, or any other discrete act of "facilitat[ion]." These are mere conclusions and labels untethered to any underlying fact and are precisely the kind of "boilerplate" allegations that the Ninth Circuit has rejected as insufficient to state a claim. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007); *Melrose Place Holdings v. Socotra Opportunity Fund, LLC*, 2022 WL 3013226, at *3 (C.D. Cal. May 31, 2022). Unless Plaintiffs describe Toovey's actual conduct that "facilitated"

---

[1] Plaintiffs list several allegations in addition to paragraph 264's conclusion that Toovey "facilitated" fraud. (Opp. at 5, 13.) The vast majority of the allegations listed, however, do not even reference Toovey and appear to be included only to give the false impression that multiple different allegations support Plaintiffs' arguments. For example, Plaintiffs argue that Toovey:

"Made or facilitated the false statements on Mammoth's behalf with knowledge that Mammoth was not providing treatment to the patients whose records Mammoth sought (Compl. ¶¶ 37-39, 42, 161, 170, 219-220, 223-225, 262-265)"

(Opp. at 13.) Yet, paragraphs 37, 38, 39, 161, 219, 220 and 265 all do not even mention Toovey, while paragraph 42 merely states Toovey's job title and residence.

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

the fraud, Toovey lacks sufficient notice to even begin to defend himself in this case.

Plaintiffs also rely on other conclusory allegations in their Opposition, including that Toovey "served an integral role in the fraudulent and illegal scheme" (Opp. at 2:6), "actively participated in the fraud" (2:24, 13:25), "provid[ed] cover for the false representations and omissions" (6:28-7:1), "[t]ook steps to cover up the Mammoth Defendants' suspicious activity" (9:7-8), and "[t]ook steps to hide the connections" between other Mammoth defendants (9:8, 13:19-23). These are all conclusions that are not supported by any actual facts explaining **how** Toovey "actively participated" in any fraud or what specific "steps" he took to conceal information. The Complaint does not allege that Toovey himself communicated any treatment-purpose claim, signed any agreement, possessed an NPI, queried any record, sent any email, drafted any document, or made any decision in connection with the alleged scheme.

The Opposition's repeated assertion that Toovey "[t]ook steps" to conceal Mammoth's connection to Daniel Baker (Opp. at 8, 13) is illustrative. The Complaint nowhere alleges any affirmative act of concealment by Toovey: it states only that he "omitted" Baker's connection. (Compl. ¶ 224.) There is no factual allegation that Toovey ever spoke to anyone about Baker, drafted any document referencing or omitting Baker, or took any specific step to suppress information about Baker. Plaintiffs' Opposition silently upgrades passive omission alleged in the Complaint into "active concealment" by Toovey without any factual support. That is exactly the kind of pleading-by-relabeling that *Twombly* and *Iqbal* forbid. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

In the absence of factual allegations regarding Toovey's conduct, Plaintiffs attempt to manufacture specificity by inventing facts that are not pled in the Complaint. As the Unit 387 Defendants similarly point out in their own Reply brief

---

[2] And, as discussed below, the omission allegation fails for an independent reason: Toovey owed no duty to disclose. *See infra* § II.A.5.

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

(ECF No. 106), Plaintiffs falsely imply they have alleged that "Toovey makes or facilitates the Mammoth Defendants' requests for patient records." (Opp. at 16 (citing Compl. ¶ 195).) Not only does paragraph 195 say absolutely nothing about Toovey, but there is also not a single allegation contained anywhere in the Complaint even remotely suggesting that "Toovey makes or facilitates the Mammoth Defendants' requests for patient records." (*See* ECF No. 106 at 14-15 ("The Complaint contains no factual allegation that Unit 387 'itself queried records'").) Likewise, the Opposition points to fake allegations that Toovey "made and/or facilitated . . . false representations that [Mammoth entities] were healthcare providers . . . when [they] were onboarded to the Carequality and TEFCA frameworks," and again "each time [Mammoth entities] queried records." (Opp. at 5–6.) But the Complaint contains no factual allegation that Toovey was involved in onboarding Mammoth's entities, no allegation that he signed any agreement or possessed an NPI, and no allegation that he had any role in any individual query. (*See* Mot. at 9.) To the contrary, the Complaint affirmatively alleges that it was ***Hilton*** who "made or directed the above false statements on Mammoth's behalf as Mammoth's authorized NPI" while "acting in concert with Defendants Baker and Toovey." (Compl. ¶ 223; *see* Mot. at 15 n.1.) Plaintiffs cannot rewrite their Complaint in their Opposition, and they cannot contradict their own factual allegations to manufacture fraud claims that the Complaint itself does not allege.

### 2.    Plaintiffs Engage in Blatant and Improper Group Pleading

After conceding that Toovey's marketing letter does not support the fraud claims, all that Plaintiffs are left with is impermissible group pleading allegations. Plaintiffs attempt to excuse the lack of particularized factual allegations by arguing, "Mr. Baker and Mr. Hilton made the same misrepresentations and omissions as Mr. Toovey." (Opp. at 7.) But Plaintiffs get *Swartz* exactly backward. The Ninth Circuit has explained that Rule 9(b) "does not allow a complaint to merely lump multiple defendants together" but instead "requires plaintiffs to differentiate their allegations

10

when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

While Plaintiffs may deny it, the Complaint clearly engages in impermissible group pleading that fails to inform Toovey of his role in the alleged scheme or which of his specific actions Plaintiffs contend constitute fraud. Plaintiffs instead creatively re-cast their allegations in their Opposition to remove references to the other Mammoth Defendants. The following is just one example of how Plaintiffs have attempted to mask their group pleading in the Opposition:

> Toovey "made and/or facilitated Mammoth Dx's and Mammoth Path Solutions false representations that they were healthcare providers seeking access to patient records for treatment services . . . in July 2024 [] when Mammoth Dx and Mammoth Path Solution were onboarded to the Carequality and TEFCA frameworks. Compl. ¶¶ 37-39, 42, 161, 170, 219-220, 223-225, 262-265."

(Opp. at 5; *see id.* at 13.) But the following is what Plaintiffs actually allege in those same paragraphs, which essentially encompass every allegation referencing Toovey in the entire Complaint:

> ¶42: Toovey is the Chief Commercial and Strategy Officer at Mammoth Rx and Nationwide Healthcare Provider Corp, an entity that markets access to patient records to lawyers and others in connection with social security claims. Toovey resides in Los Angeles, California.

> ¶170: From July 2024 to October 2025, Mammoth obtained sensitive patient records from Plaintiffs by falsely asserting that the requests were for treatment purposes and without requisite authorization. Mammoth has sold patient records to NHPC in violation of the law Carequality agreements. ***Hilton, Baker, and Toovey, carried out these bad acts*** to benefit the interests of the interconnected business web they operate.

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

¶223: Hilton was the authorized official for multiple Mammoth-entity NPIs and made or directed the above false statements as Mammoth's authorized NPI, which Mammoth held out as evidence of treatment purposes, *acting in concert with Baker and Toovey*, two closely connected and leading members of Mammoth. The statements regarding requests for patient records were all knowingly false.

¶224: Hilton falsely asserted that Mammoth was not connected to Baker, and Baker omitted that he was deeply connected with Mammoth. ***Toovey similarly omitted Defendant Baker's connection to Mammoth.***

¶¶ 225, 263: ***Hilton, Baker, and Toovey knew these assertions were false***. They knew that the treatment representations were false, that Mammoth's true purpose was to sell the patient records, and that Mammoth's connection with Baker should have disqualified Mammoth from the Carequality framework.

¶264: ***Hilton, Baker, and Toovey provided substantial assistance to Mammoth's fraud by knowingly facilitating the false representations and omissions*** that were essential to the scheme described herein by ***either making the false representations and omissions themselves as described above or providing cover for the false representations and omissions*** and enabling Mammoth to make the fraudulent requests despite knowing that the patient records were not requested for treatment purposes – they were critically integral to the success of Mammoth's scheme.

That last allegation is perhaps the most egregious. Plaintiffs allege Hilton, Baker and Toovey all made false representations without differentiating between them as to who made which statements. (*Id.*) But even worse, Plaintiffs allege that Hilton, Baker and Toovey ***"either"*** made the misrepresentations themselves ***"or"*** provided cover. Based on these allegations, it is unclear whether Plaintiffs allege (i) Toovey only made the misrepresentations himself, (ii) Toovey only "provid[ed] cover" for others, or (iii) Toovey both made misrepresentations and "provid[ed] cover." Similarly, the allegation that "Hilton, Baker, and Toovey, carried out these

bad acts" because it is not clear whether they each played a role in both obtaining sensitive data *and* falsely asserting treatment purposes, or whether, as alleged in paragraph 223, Hilton alone made the false requests using his NPI. (*Id.* ¶¶ 222-223). Indeed, it is difficult to fathom how Plaintiffs could not concede that these allegations constitute impermissible group pleading under Rule 9(b) and *Swartz*.

Plaintiffs' attempt to gloss over these defects by asserting that "Mr. Toovey and his Mammoth co-Defendants are closely connected" (Opp. at 4) does not work either. The assertion is made without citing Complaint, and the only factual hooks for it are that Toovey was an executive of Mammoth Rx and NHPC and worked from the same business address as the other Mammoth entities. (Compl. ¶¶ 39–42, 167.) Those facts describe an ordinary employer-employee relationship—nothing more. They do not establish that Toovey personally engaged in any specific act of fraud or that he occupied any role beyond his corporate title. As Toovey previously explained, "the mere fact that Mammoth employed Toovey as an officer does not make it plausible that he had knowledge of any and all fraudulent conduct that allegedly took place." (Mot. at 17 (citing *Moses v. Innoprise Software*, 2013 WL 6019536, at *8 (N.D. Cal. Nov. 13, 2013)).)

### 3.    Plaintiffs Ask the Court to Adopt an Improper "Relaxed" Pleading Standard for Cases Involving "Corporate Fraud"

Recognizing the clear deficiencies in their allegations as to Toovey, Plaintiffs ask the Court to apply an entirely novel and radically different Rule 9(b) standard for pleading fraud against individual executives in "cases of corporate fraud." (Opp. at 7.) Under that supposedly "relaxed" standard, Plaintiffs claim their Complaint need not "attribute 'specific conduct' to" any individual defendant. (*Id.*) That purported pleading standard, however, is inconsistent with controlling Ninth Circuit precedent—indeed, it would constitute a massive sea change in the law—and rests on ridiculously thin legal authority that cannot bear the enormous weight Plaintiffs have placed on it. The Court should soundly reject Plaintiffs' attempt to apply this

unsupported and improper pleading standard.

Plaintiffs cite three cases in support of adopting the "relaxed" standard for alleging fraud. The first is a 2010 district court ruling adjudicating a *pro se* plaintiff's request for injunctive relief, not a Rule 12(b)(6) motion. *Khast v. Washington Mutual Bank* 2010 WL 11684849, at *3 (S.D. Cal. Oct. 26, 2010). Even a cursory review of *Khast* shows that other than in a single passing remark, the court did not discuss—much less attempt to apply—a relaxed standard for pleading fraud. *Id.* at *3-*5.

Second, the proposition in *Khast*—"*In cases of corporate fraud, however, the pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual*"—is a single sentence quoted from another case. *Id.* at *3 (quoting *625 3rd Street Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1049–50 (N.D. Cal. 2009)). Critically, the district court in *625 3rd Street* did not cite a single legal authority in support of its articulation of a "relaxed" pleading in cases of corporate fraud, nor was the "relaxed" standard applied or discussed in the course of resolving any of the disputed issues, most likely because the plaintiff alleged specific misrepresentations of facts by the individual defendant. *Id.*

Tellingly, since *Khast* and *625 3rd Street* were decided over 15 years ago, no other court has ever followed them and adopted the "relaxed" pleading standard that Plaintiffs now urge this Court to follow.

Finally, Plaintiffs cite *Estate of Migliaccio v. Midland Nat'l Life Ins.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006), to argue that "Rule 9(b)'s particular requirement is 'relaxed in instances of corporate fraud' if facts supporting fraud allegations are 'exclusively within the defendants' possession.'" Even assuming *arguendo* that were true—a dubious proposition at best—for the reasons discussed *infra* § II.A.5, the "exclusive knowledge" rule does not apply to Plaintiffs' claims against Toovey.

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

**4.** **The Ninth Circuit Requires Plaintiffs to Plead Specific Facts, Not Conclusions, that Plausibly Support an Inference of Fraud**

Plaintiffs cite no Ninth Circuit decision applying any "relaxed" standard. That is no accident. The Ninth Circuit's controlling rule is the opposite: in fraud actions involving multiple defendants, "[t]he complaint must inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007); *see Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989) (Rule 9(b) requires plaintiffs to "attribute particular fraudulent statements or acts to . . . individual defendants").

Ironically, after attempting to introduce a radically new pleading standard for corporate fraud based on next to nothing, Plaintiffs completely avoid addressing the highly instructive reasoning contained in several of the cases cited in Toovey's moving papers. (Opp. at 9-10.) For example, Plaintiffs pay short shrift to *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1185 (C.D. Cal. 2011), which held that "bare legal assertions" that a defendant "facilitated" fraud did not satisfy Rule 9(b). Plaintiffs respond by misrepresenting *Allstate's* holding, asserting that "the court found that scienter was adequately alleged and den[ied the] motion to dismiss state law fraud claims" against the primary entity defendants. (Opp. at 10.) But Toovey cited *Allstate* for its discussion of the claims asserted against the individual defendants—which were ***dismissed*** for failing to adequately plead knowledge. (*Allstate*, 824 F. Supp. 2d at 1189 (allegations that "'[t]he Aiding and Abetting Defendants gave substantial assistance to and/or facilitated and encouraged [others] in their fraud' . . . . are bare legal assertions" that "mirror the legal standard for liability, but [] provide no facts, particular or general, which would allow the Court to draw an inference of liability"); *see* Mot. at 18.) The reasoning of *Allstate* thus applies precisely to Plaintiffs' claims against Toovey. The allegations that Toovey "knew" Mammoth's representations were false, and that he "facilitated" or "provided cover" for them, are exactly the kind of conclusory and "bare legal assertions" that *Allstate*

15

held to be insufficient.

In brushing aside *Axonic Capital LLC v. Gateway One Lending & Fin., LLC*, 2018 WL 11355034 (C.D. Cal. Dec. 18, 2018), as "inapposite" because it involved the PSLRA's heightened standard for pleading scienter, Plaintiffs miss the point entirely. (Opp. at 9-10.) Toovey's Motion cited *Axonic Capital* for its cogent explanation of why allegations of executives' seniority, decades of industry experience, and familiarity with relevant industry standards are "***as a matter of law, insufficient to plead scienter***." *Axonic Capital*, 2018 WL 11355034, at *14 (quoted at Mot. at 17–18) (emphasis added). That reasoning does not change depending on which pleading standard is being applied; rather, it is a substantive finding that allegations of industry experience and seniority—which closely resemble Plaintiffs' allegations against Toovey—are insufficient to support any inference of fraud. *Id.* at *14–15. Plaintiffs do not address that reasoning at all. They simply observe that *Axonic Capital* involved the PSLRA and move on. (Opp. at 9–11.)

The same is true of *Webb v. SolarCity Corp.*, 884 F.3d 844 (9th Cir. 2018). Plaintiffs again dismiss *SolarCity* as PSLRA-specific without engaging its reasoning. (Opp. at 10.) But Toovey cited it for the Ninth Circuit's holding that several facts—more detailed than what Plaintiffs have alleged against Toovey—did not allow for an inference of knowledge that was "as compelling" as the alternative inference of an honest mistake. 884 F.3d at 855–58. As the Motion explained, that conclusion necessarily disposes of the lower *Twombly/Iqbal* plausibility threshold as well: if a fraud inference is no more compelling than an innocent inference, it is not plausible at all. (Mot. at 18–19.) Plaintiffs' effort to push *SolarCity* aside as PSLRA-specific is therefore beside the point—the reasoning of the case applies with equal force under the ordinary 9(b) and *Twombly/Iqbal* standards. Indeed, Plaintiffs' fact pattern—an executive who could be either deliberately participating in fraud or simply doing his marketing job without knowledge of the underlying conduct—is exactly the situation the Supreme Court has described as failing to "cross[] the line from possibility to

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

plausibility." *Iqbal*, 556 U.S. at 678.

In sum, *Allstate* held that allegations the defendant "facilitated" fraud are conclusory, *Axonic Capital* held that industry experience and seniority alone do not give rise to a plausible inference of scienter, and *SolarCity* held that the factual allegations must create an inference of fraud that is "as compelling" as the possibility of an honest mistake. Each case independently demonstrates why Plaintiffs' conclusory allegations against Toovey fail. Plaintiffs' silence in the face of these authorities is itself telling, and Plaintiffs' attempt to introduce an entirely new pleading standard is a tacit acknowledgment that they cannot satisfy the actual one.

### 5. Plaintiffs' Fraudulent-Omission Theory Fails Because Toovey Owed No Affirmative Duty of Disclosure as a Matter of Law

Plaintiffs' fraudulent-omission theory rests on a single proposition: that Toovey had a duty to disclose Daniel Baker's alleged connection to the Mammoth Defendants because Toovey supposedly had "exclusive knowledge of material facts not known to plaintiff." (Opp. at 7–8.) And because they allege "Toovey had exclusive knowledge of Mr. Baker's involvement with the Mammoth Defendants,"[3] Plaintiffs contend that they have established that Toovey had an affirmative duty to disclose such information.

Plaintiffs egregiously misapprehend the law. It is well-settled California law that a party's "exclusive knowledge" of facts alone does not give rise to a duty to disclose. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997); *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1059 n.3 (9th Cir. 2008). Rather, a duty of disclosure arises when (1) one party has exclusive knowledge of material information,

___

[3] To be clear, the Complaint does not allege that Toovey had "exclusive knowledge," or more specifically, that Plaintiffs did not know that Baker had been banned from the Carequality framework. To the contrary, the Complaint alleges "Epic brought evidence of Mammoth's ties to Baker to Health Gorilla's attention on October 24, 2025," and that "Publicly available information indicates that Defendant Daniel Baker . . . was the founder and Chief Technology Officer (CTO) of Mammoth Rx" and listed as the CTO of Mammoth Dx. (Compl. ¶¶ 165-166.) Given Plaintiffs' misapplication of the law, however, whether or not Plaintiffs plead that Toovey had "exclusive knowledge" is entirely irrelevant.

and—crucially—(2) there is an existing transactional or contractual relationship between the parties. *LiMandri v. Judkins*, 52 Cal. App. 4th at 337.

The "exclusive knowledge" rule on which Plaintiffs rely is one of the four *LiMandri* factors for determining whether an affirmative duty of disclosure exists. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018).[4] The court in *LiMandri* analyzed this same issue and ultimately held that no duty to disclose existed because there was no existing relationship—confidential, fiduciary, contractual, or otherwise—between the parties:

> As a matter of common sense, such a relationship can only come into being as a result of some sort of ***transaction*** between the parties. (*See Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 294 ["In ***transactions*** which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances]; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 347 ["duty of disclosure may exist ***when one party to a transaction*** has sole knowledge or access to material facts and knows that such facts are not known to ***the other party***"].) Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement. [citation omitted]. All of these relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances.

*LiMandri v. Judkins*, 52 Cal. App. 4th at 337 (cleaned up) (emphasis in original). The *LiMandri* court thus concluded that "[t]he fundamental problem with LiMandri's nondisclosure causes of action is that he alleges no such transaction or relationship with Judkins. . . . LiMandri alleges no existing or anticipated contractual relationship or any other relationship with Judkins that would give rise to a duty to disclose." *Id.*; *see, e.g.*, *Platt*, 522 F.3d at 1059 n.3 ("[B]ecause Platt failed to allege that there was

---

[4] There are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th at 336.

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

a transactional relationship between Platt and UL, . . . Platt's fraudulent concealment claim could not be premised on a duty to disclose"); *Cirulli v. Hyundai Motor Co.*, 2009 WL 4288367, at *4 (C.D. Cal. Nov. 9, 2009) (dismissing claim for failing to allege transaction or relationship between the parties).

The holding in *LiMandri* squarely applies to Plaintiffs' allegations of fraudulent concealment by Toovey. Because Plaintiffs do not allege ever entering into any type of relationship with Toovey, the mere fact that he purportedly had "exclusive knowledge" of facts did not impose on him an affirmative duty of disclosure to Plaintiffs as a matter of law. *LiMandri v. Judkins*, 52 Cal. App. 4th at 337. Toovey is not alleged to have signed any agreement with Carequality or TEFCA, dealt with any Plaintiffs in any commercial capacity, or interacted with any Plaintiffs in any way at all. (*See* Mot. at 9.) Plaintiffs do not allege Toovey was their employee, their agent, their counterparty, or anything other than an executive of an unrelated corporate entity that participated in different agreements with different parties. Without a transaction or relationship between Toovey and a Plaintiff, the "exclusive knowledge" factor cannot do the work Plaintiffs ask of it.

This is also the only logical outcome. The result Plaintiffs urge would collapse the entire structure of California fraudulent concealment law. If "exclusive knowledge" alone created a duty of disclosure, such a duty would ***always*** exist in the context of an undisclosed material fact—which is the opposite of the long-standing California law providing that omissions are generally non-actionable absent a fiduciary duty, a confidential relationship, or a transaction giving rise to a disclosure obligation.

To the extent the fraud and/or aiding and abetting claims turn on allegations of fraudulent omission, Plaintiffs' claim against Toovey fails as a matter of law because Toovey was under no such duty to disclose.

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

**B.    THE AIDING AND ABETTING CLAIM IS FATALLY FLAWED**

Plaintiffs' aiding and abetting claim should be dismissed for at least three independent reasons, the last of which warrants dismissal without leave to amend.

***First***, the same conclusory allegations of "facilitat[ing]" fraud and "providing cover" that do not support the fraud claim also cannot satisfy the substantial assistance element of the aiding and abetting claim. (*See* Opp. at 13.) "Substantial assistance" requires "a significant and active, as well as a knowing participation" in the wrong. *Berman v. Bank of Am. N.A.*, 2025 WL 2885491, at *13 (C.D. Cal. Sept. 2, 2025) (Olguin, J.); *see Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d at 1189 (allegation that defendants "facilitated and encouraged [others] in their fraud" were "bare legal assertions" that "provide no facts, particular or general, which would allow the Court to draw an inference of liability"). Plaintiffs' concession that their "fraud claim is not based on Mr. Toovey's marketing statements" (Opp. at 5) defeats their own argument attempting to characterize Toovey's marketing letter as "substantial assistance" in any fraud. (*Id.* at 13 (citing Compl. ¶ 167).) The Complaint otherwise identifies no specific act, communication, or decision made specifically by Toovey, and conclusory allegations that Toovey "facilitated" fraud and "took [unspecified] steps to hide the connections between [the other Mammoth Defendants]" do not establish "significant and active" participation with the factual specificity required by Rule 9(b). *Supra* § II.A.1.

***Second***, Plaintiffs' allegations regarding Toovey's actual knowledge of fraud are not just conclusory, they are also contradictory and inconsistent. (*See* Opp. at 11-12.) Rule 9(b) permits knowledge to be alleged generally, but plaintiffs must still plead facts that plausibly give rise to an inference of actual knowledge of fraud. *Iqbal*, 556 U.S. at 678, 682. The only actual fact alleged in the Complaint regarding Toovey's knowledge is that he is "an experienced individual in the patient records retrieval industry, [who] knew ***or should know*** that the only conceivable way [reduced wait times] could be accomplished would be by falsely claiming the

20

treatment purpose." (Compl. ¶ 167 (emphasis added).) The other allegations are all naked conclusions that Toovey "knew" the relevant statements were false, which do not establish a plausible—as opposed to merely possible—inference of fraud. (*See, e.g.*, *id* ¶¶ 225, 226, 263.)

Plaintiffs cannot have it both ways. They cannot simultaneously allege that Toovey "should [have] know[n]" (*id.* ¶ 167) about the fraud while also alleging that Toovey actually "knew" about the fraud (*id* ¶¶ 225, 226, 263). "[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *2 (E.D. Cal., Sept. 30, 2022) (citation omitted); *see Cascade Trade, LLC v. Cascade Mobility, Inc.*, 2024 WL 5411308, at *9 (C.D. Cal., Nov. 12, 2024) (citing *Forlenza v. Dynakor Pharm., LLC*, 2009 WL 10698476, at *2 (C.D. Cal. Dec. 15, 2009)). By acknowledging the possibility that Toovey "knew *or* should [have] know[n]" about the alleged misrepresentations, Plaintiffs have pled themselves out of court by effectively admitting that it is equally plausible that Toovey did not have actual knowledge of any fraud. *See Iqbal*, 556 U.S. at 678, 682.[5]

***Third***, and perhaps most importantly, the aiding and abetting claim is fatally flawed as a matter of California law. "An employee cannot aid and abet his or her corporate employer." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) (citation omitted). The California Court of Appeal explained in *Fiol* as follows:

> A corporation can act only through its employees; thus, an employee acting on behalf of the employer cannot be acting in concert with the employer, as

---

[5] Recognizing this inherent contradiction in their allegations of Toovey's knowledge, Plaintiffs attempt to minimize the impact of the "singular 'knew or should know' allegation" in paragraph 167 by noting that there are "numerous [other] allegations of actual knowledge." (Opp. at 12.) But whether there is only one contradictory allegation or dozens of them is irrelevant, as Plaintiffs have not attempted to plead these inconsistent allegations in the alternative. *See Agrify Corp. v. Cimini*, 2024 WL 5516280, at *3 (C.D. Cal., Dec. 11, 2024) ("The Ninth Circuit has held that where inconsistent allegations are not pled in the alternative, but are expressly incorporated into each cause of action, an allegation may constitute a judicial admission by the plaintiff which allows dismissal of the complaint.").

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

there is in law only a single actor. Similarly, under the agent's immunity rule, an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal."

*Id.* (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 n.4 (1994)). "Thus when a corporate employee acts in his or her authorized capacity on behalf of his or her corporate employer, there can be no claim of conspiracy [or aiding and abetting] between the corporate employer and the corporate employee." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 78 (1996) (discussing public policy reasons for not holding employees liable for actions taken at their employer's direction); *see also, e.g.*, *Hazal Tekstil Tabidot Gida Sanyai Ve Tic. Ltd. v. Play Glob. LLC*, 2015 WL 13357665, at *4 (C.D. Cal. Mar. 26, 2015) (dismissing aiding and abetting claim under agent immunity rule); *Crystal Cruises, Inc. v. Electra Cruises, Inc.*, 2009 WL 10673048, at *2 (C.D. Cal., Mar. 9, 2009) (holding that corporate officer and shareholder could not be held liable for aiding and abetting his own company under California law). [6]

Plaintiffs' aiding and abetting theory is unquestionably premised on Toovey's status as an employee of the Mammoth Defendants. Plaintiffs allege the Mammoth entities are part of a single "Mammoth Family" of interconnected entities, and that Toovey was employed by Mammoth Rx. (Compl. ¶¶ 39-43, 141.) Plaintiffs further allege that "Mammoth Dx and Mammoth Path Solution, LLC[] act[ed] in concert with its employees and affiliates including Defendants Mammoth, Mammoth Rx, Ryan Hilton, and Max Toovey[] [to] engage[] in a deliberate fraudulent scheme," that "Hilton, Baker, and Toovey[] carried out these bad acts to benefit the interests of the interconnected business web that [they] operate," and that "Hilton, Baker, and Toovey provided substantial assistance to Mammoth's fraud by knowingly

---

[6] The only exception to this rule—which is not applicable here—is "where the alleged agent or employee involved in the conspiracy or aiding and abetting claim is alleged to have carried out the conduct 'as individuals for their own advantage' and not solely on behalf of the principal." *Sanchez v. Aviva Life & Annuity Co.*, 2010 WL 2606670, at *7 (E.D. Cal. June 28, 2010) (citing *Janken*, 46 Cal.App.4th at 78).

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

facilitating the false representations and omissions." (Compl. ¶¶ 159, 170, 264.)

Under *Fiol*, *Janken* and their progeny, Plaintiffs' own allegations clearly foreclose aiding and abetting liability against Toovey. The Complaint makes abundantly clear that whatever Toovey allegedly did that constituted fraud, he did so while acting within the scope of his employment and to benefit his employer. Accordingly, the aiding and abetting claim is fatally flawed for yet another reason and should be dismissed without leave to amend given that there are not set of facts under which Plaintiffs can allege that Toovey aided and abetted his employer.

### C.    VAGUE ALLEGATIONS OF HIPAA VIOLATIONS DO NOT SAVE PLAINTIFFS' UCL CLAIM

Because the underlying fraud and aiding and abetting claims against Toovey fail, the UCL "fraudulent" prong claim falls with them. Plaintiffs' futile attempt to rescue their UCL claim by pointing to factually unsupported HIPAA violations fares no better. (Opp. at 14). The Complaint contains no specific allegation that Toovey personally violated any provision of the sprawling HIPAA statutes and regulations, 42 U.S.C. § 1320d *et seq*.; instead, the HIPAA allegations are addressed to the alleged scheme as a whole. (*See* Compl. ¶ 283.) The UCL "unlawful" prong cannot be satisfied by conclusory and vague allegations of HIPAA violations untied to any specific HIPAA obligation owed or breached by Toovey personally. *Compare In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (allowing UCL claim where "allegations identify the particular section of [HIPAA] that was violated" and "describe with reasonable particularity the facts supporting the violation") *with Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *10 (C.D. Cal. Aug. 12, 2010) ("Plaintiffs allege in summary fashion that Defendant failed to implement certain policies and procedures and failed to protect Plaintiffs' health information. . . . Such a 'formulaic recitation' of the elements is not sufficient").

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

### D.   PLAINTIFFS' CLAIMS AGAINST TOOVEY RELY HEAVILY ON THE CAREQUALITY AND TEFCA AGREEMENTS

Plaintiffs argue that the dispute resolution provisions of the Carequality Connected Agreement ("CCA") and TEFCA Common Agreement do not apply to Toovey because their "claims against Mr. Toovey are neither 'intimately founded in [nor] intertwined with' the agreements." (Opp. at 17.) That assertion is irreconcilable with Plaintiffs' own theories of fraud and materiality.

The claims against Toovey depend at every step on the Carequality and TEFCA framework agreements. The Carequality Framework Policies provide that "[o]nly a healthcare provider can assert a treatment purpose," and the Carequality Connected Agreement requires that "Applicants only engage in exchange activities through the Carequality Elements for permitted purposes as defined in the Implementation Guides." (Compl. ¶¶ 80, 295.) Even more directly, the Complaint alleges that Toovey and the other Mammoth Defendants "misrepresented their true purpose for seeking patient records, in violation of the requirements of Carequality [and] TEFCA," and "disclosed the patient records to NHPC and/or other entities for sale for profit in violation of . . . the CC Terms as well as the TEFCA SOPs." (*Id.* ¶¶ 170, 226.) It further alleges, "Carequality banned any entity or entities owned or operated by Defendant Baker from the Carequality framework for one year," and seeks injunctive relief to stop Toovey and the other Mammoth Defendants "from continuing to abuse the Carequality framework." (*Id.* ¶¶ 224, 268.)

Without these crucial allegations, Plaintiffs' fraud claims would be meaningless. Without the interoperability framework requirements, whether or not any defendant misrepresented the purpose for requesting medical records would be irrelevant, as it would no longer constitute a material fact. Likewise, the nondisclosure of Daniel Baker's connection to Mammoth and the disclosure of patient records would not be actionable for any reason without the Carequality and TEFCA agreements. It is beyond absurd for Plaintiffs to seek a permanent injunction to ban Toovey from the

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

Carequality framework for violating its requirements while simultaneously asserting that "Plaintiffs' claims against Mr. Toovey are neither 'intimately founded in [nor] intertwined with' the agreements." (Opp. at 17.)

Without the interoperability framework agreements, the alleged misrepresentations about treatment purpose would have no meaning whatsoever— and Plaintiffs would have no theory of liability against Toovey or any other defendant. The frameworks (and the agreements that govern them) are the entire substantive context for Plaintiffs' fraud theory. Each materiality, reliance, and damages element of the fraud claim is "logically [and] causally connected" to those agreements. *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *17 (C.D. Cal. Dec. 12, 2025) (citing *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)).

Thus, contrary to Plaintiffs' argument, the doctrine of equitable estoppel clearly applies here to prevent Plaintiffs from flouting the dispute resolution requirements contained in the very same agreements they accuse Toovey and the other defendants of violating. Accordingly, should the Court find that dismissal is warranted due to Plaintiffs' failure to engage in the mandatory dispute resolution process, the claims against Toovey should also be dismissed notwithstanding his status as a nonsignatory. *See Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021).

## III.   CONCLUSION

For the foregoing reasons and those set forth in his Motion, Defendant Max Toovey respectfully requests that the Court grant his Motion to Dismiss and dismiss the Second (fraud), Fifth (aiding and abetting), and Seventh (UCL) Causes of Action asserted against him in the Complaint.

DATED:  May 8, 2026                    KINGFISHER LAW APC

By:        */s/ Nithin Kumar*
            Nithin Kumar
Attorney for Defendant Max Toovey

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant Max Toovey certifies that this brief contains 6,759 words, which complies with the word limit of L.R. 11-6.1. Pursuant to section IV.A.1.5 of Judge Olguin's Initial Standing Order, Toovey's undersigned counsel further certifies that he has reviewed all source materials cited and verified the accuracy of any AI-generated content.

DATED:  May 8, 2026                KINGFISHER LAW APC


By:     */s/ Nithin Kumar*
                        Nithin Kumar
                        Attorney for Defendant Max Toovey

REPLY IN SUPPORT OF MAX TOOVEY'S RULE 12(B)(6) MOTION TO DISMISS