# EXHIBIT A

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., | Case No. 2:26-cv-00321-FMO-RAO |

Plaintiffs,

v.

Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100,

Defendants.

Assigned to: Hon. Fernando M. Olguin

**DECLARATION OF MARTIN HENSEL**

Date Action Filed:     January 13, 2026

DECLARATION OF MARTIN HENSEL

# DECLARATION OF MARTIN HENSEL

I, Martin Hensel, declare as follows pursuant to 28 U.S. Code § 1746:

1.      I am founder and the managing member of Defendant SelfRx, LLC d/b/a Myself.Health ("SelfRx"). I make this declaration for myself and SelfRx based on my personal knowledge to the best of my recollection and review of SelfRx's relevant documents and business records maintained in the regular course of business, and in response to the Complaint filed in the above-captioned action by Plaintiffs Epic Systems Corporation ("Epic"), OCHIN, Inc. ("OCHIN"), Reid Hospital & Health Care Services, Inc. d/b/a Reid Health ("Reid"), Trinity Health Corporation ("Trinity"), and UMass Memorial Health Care, Inc. ("UMass Memorial") against SelfRx, Defendant Health Gorilla, Inc. ("Health Gorilla"), Defendant Meredith Manak, Defendant Unit 387 LLC ("Unit 387"), and other defendants. If called as a witness, I could and would testify competently to all the facts stated herein.

2.      I understand from Plaintiffs' Complaint that Plaintiffs allege in this action that SelfRx has taken over 100,000 patient records through the Carequality interoperability framework from Epic's healthcare provider customers, including over 1,000 patient records collectively from Plaintiffs Trinity, Reid, and UMass Memorial Health, as well as nearly 1,000 patient records from Plaintiff OCHIN's healthcare provider customers, using Defendants Unit 387 and Health Gorilla. As managing member of SelfRx, these and other allegations about SelfRx's activities on the Carequality framework were both surprising and shocking to me.

3.      SelfRx's contracted health care providers provided health care services to SelfRx's patients in the form of blood sugar and blood pressure monitoring and coaching from April 2021 through January 2025.

4.      In or around June 2022, I was introduced to Defendant Meredith Manak, the founder and Chief Executive Officer of Defendant Unit 387, and I understood at that time that Unit 387 was a medical records retrieval company, and that Ms. Manak/Unit 387 would be able to assist SelfRx with obtaining medical records for SelfRx's current patients

2

DECLARATION OF MARTIN HENSEL

for treatment purposes.

5.     In or around September 2022, SelfRx tested Defendant Unit 387's services in a sandbox environment using dummy data (*e.g.*, fictitious or synthetic information not derived from actual patient records).  After receiving API access credentials from Unit 387 in March 2024, SelfRx began manually requesting records through the Carequality framework for its active patients in or around April 2024 to pilot Unit 387's services.

6.     I understand from Plaintiffs' Complaint that SelfRx's connection to the Carequality interoperability framework was published in a directory accessible to other framework participants, including Plaintiffs. I also understand from Plaintiffs' Complaint that SelfRx's connection was supposed to be governed by the terms of a written contract, called the Carequality Connection Terms (CCT), as well as the Carequality Connected Agreement (CCA). However, to the best of my knowledge and recollection, neither Unit 387 nor Health Gorilla had SelfRx execute the CCT to participate in the Carequality framework nor did SelfRx otherwise execute the CCT.

7.     From in or around April 2024 to approximately January 15, 2025, SelfRx continued to pull records through the Carequality framework for SelfRx's active patients for treatment purposes. During the lifetime of SelfRx's connection to the Carequality framework, SelfRx requested medical records for only 21 patients and received records for 15 of those patients, for a total record count of fewer than 100 records for these 15 patients (a single patient can have more than one record).

8.     SelfRx never provided authority or permission to Meredith Manak, Unit 387, Health Gorilla, or any other entity or person to request patient records from the Carequality framework on SelfRx's behalf.  Other than as set forth in Paragraphs 5 through 7 herein, SelfRx was not knowingly involved in and had no knowledge of any other patient record requests through the Carequality framework. SelfRx did not receive any remuneration of any kind from any person or entity for any patient records that were requested from the Carequality interoperability framework or participate in the sale of any such records.

9.     Despite these facts, SelfRx understands that Plaintiffs allege in their

3

DECLARATION OF MARTIN HENSEL

Complaint that SelfRx—using Unit 387 and Health Gorilla—requested and obtained through the Carequality framework over 100,000 patient records from Epic's and OCHIN's healthcare provider customers, including Plaintiffs Reid, Trinity, and UMass Memorial Health, from August 2024 until October 2025. I, on behalf of SelfRx, categorically deny that any patient record requests through the Carequality framework other than those described in Paragraphs 5 through 7 herein came from, or were authorized by, SelfRx. I further affirm that SelfRx had no knowledge of any other patient records requests or activity using SelfRx's credentials on the Carequality framework and I do not know who took those over 100,000 patient records.

10.    SelfRx went out of business in 2025. In February 2025, SelfRx shut down its computer servers at Amazon. In March 2025, SelfRx ceased operations completely. In December 2025, I filed a Certificate of Cancellation for SelfRx with the Massachusetts Corporations Division to that effect. The discontinuation of SelfRx's business has no relation to the allegations asserted in Plaintiffs' Complaint in this action.

11.    In my role as managing Member of SelfRx, I am a custodian of records for SelfRx and familiar with SelfRx's business records maintained in the regular course of business.    SelfRx has provided 320 documents to Plaintiffs, including prior communications with other Defendants; those documents were Bates stamped SELFRX00001 to SELFRX001595 and are true and correct copies of documents that were made at or near the time of the events set forth therein by people with knowledge of the events reflected in the records. It was the regular practice of SelfRx to make those records comprised of those documents Bates stamped SELFRX00001 to SELFRX001595, and those records were kept in the regular course of SelfRx's prior business activities.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 3, 2026, at _____, Massachusetts.

_____
MARTIN HENSEL

4

DECLARATION OF MARTIN HENSEL