**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marshall L. Baker (SBN 300987)
mbaker@akingump.com
Lauren E. Huennekens (SBN 328855)
lhuennekens@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-6022
Telephone:   310.229.1000
Facsimile:   310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Anthony T. Pierce (*pro hac vice*)
apierce@akingump.com
Mark R. Herring (*pro hac vice*)
mherring@akingump.com
Caroline L. Wolverton (*pro hac vice*)
cwolverton@akingump.com
Laura Hill (*pro hac vice*)
lhill@akingump.com
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC  20006-1037
Telephone:   202.887.4000
Facsimile:   202.887.4288

*Attorneys for Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc., Trinity Health Corporation, and UMass Memorial Health Care, Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Epic Systems Corporation; OCHIN, Inc.; Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Health Gorilla, Inc.; RavillaMed PLLC; Avinash Ravilla; Shere Saidon; LlamaLab, Inc.; Unique Medi Tech LLC, d/b/a Mammoth Dx; Mammoth Path Solution, LLC; Mammoth Rx, Inc.; Ryan Hilton; Daniel Baker; Max Toovey; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; Critical Care Nurse Consultants, LLC d/b/a GuardDog Telehealth; Hoppr, LLC; Meredith Manak, and DOES 1-100, <br><br> Defendants. | Case No. 2:26-cv-00321-FMO-RAO <br><br> Assigned To:  Hon. Fernando M. Olguin <br><br> **[~~PROPOSED~~] ORDER ENTERING JOINT STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND DOCUMENTS** <br><br> Date Action Filed:        January 13, 2026 |

On June 5, 2026, Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc. d/b/a Reid Health; Trinity Health Corporation; and UMass Memorial Health Care, Inc. (collectively, "Plaintiffs") and Defendants Health Gorilla, Inc., RavillaMed PLLC, Avinash Ravilla, Shere Saidon, LlamaLab, Inc., Unique Medi Tech LLC, d/b/a Mammoth Dx, Mammoth Path Solution, LLC, Mammoth Rx, Inc., Ryan Hilton, Daniel Baker, Max Toovey, Unit 387 LLC, and Meredith Manak (collectively, "Defendants" and together with Plaintiffs, the "Parties"), by and through their respective counsel, stipulated and agreed to the Joint Stipulation Regarding Discovery of Electronically Stored Information and Documents (the "ESI Stipulation").  Having read and considered the ESI Stipulation, and good cause appearing therefor, the Court hereby **ENTERS** the ESI Stipulation and **ORDERS** as follows:

**1.    PURPOSE**

Plaintiffs Epic Systems Corporation, OCHIN, Inc., Reid Hospital & Health Care Services, Inc. d/b/a Reid Health, Trinity Health Corporation, and UMass Memorial Health Care, Inc. (collectively, "Plaintiffs") and Defendants Health Gorilla, Inc., RavillaMed PLLC, LlamaLab, Inc., also d/b/a LlamaLab AI, Mammoth Rx, Inc., Unique Medi Tech, LLC, d/b/a Mammoth Dx, and Mammoth Path Solution, LLC, Unit 387 LLC, SelfRx, LLC, d/b/a MySelf.Health, Hoppr, LLC, Avinash Ravilla, Shere Saidon, Ryan Hilton, Daniel Baker, Max Toovey, and Meredith Manak (collectively, "Defendants" and together with Plaintiffs, the "Parties"), by and through their counsel of record, hereby stipulate and agree that the following procedures shall govern discovery of electronically stored information ("ESI") and documents in hard-copy format ("Hard Copy Documents" and together with ESI the "Documents") in this case.

**2.    GENERAL PROVISIONS**

2.1    This Order will govern discovery of Documents in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.  Nothing in this order is intended to alter or affect any party's rights or obligations under any order by Judge Fernando M. Olguin and Judge Rozella A. Oliver,

[Proposed] Order Entering Joint Stipulation Regarding Discovery of Electronically Stored Information and Documents

but shall be construed instead, where possible, as consistent with any order by Judge Fernando M. Olguin and Judge Rozella A. Oliver.

2.2    The Parties and non-parties producing Hard Copy Documents and ESI ("Producing Parties") shall prepare their Hard Copy Documents and ESI for production to the Parties receiving the production ("Receiving Parties") in accordance with the agreed-upon specifications set forth below.  As of the date this Stipulation is executed between the Parties, these specifications apply to Hard Copy Documents or ESI that are to be produced.

2.3    There is no presumption under this protocol that any Party must re-process or recollect Documents (including data and metadata fields) that have been processed or collected prior to the date of entry of this ESI Stipulation and Order (the "Order") for use in another litigation, inquiry, or investigation.  However, to the extent any Party has produced or intends to produce Documents in this action that originally were collected or produced in other cases or government investigations and that do not comply with the requirements of this Protocol, and metadata for such Documents (as specified in this Protocol) can be produced in whole or in part without undue burden, such metadata shall be produced in the form of an overlay file that contains the Bates number of the document as originally produced and the additional metadata fields.  The overlay file should be formatted in the same way as the Concordance data load file described herein.  To the extent any Party has produced or intends to produce Documents in this action that originally were collected or produced in other cases, inquiries, or investigations and that do not comply with the requirements of this Protocol, and the Producing Party believes it would be unduly burdensome to re-collect or re-process the Documents to comply with the requirements of this Protocol, the parties shall meet and confer to attempt to arrive at a suitable solution.  If no informal solution can be reached, the requesting Party may seek the Court's assistance.

**3.    PRODUCTION OF HARD COPY DOCUMENTS**

3.1    Tagged Image File Format (TIFFs).  Producing Parties shall produce Hard Copy Documents in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number.  They shall maintain Original Document orientation (i.e., portrait to portrait and landscape to landscape) to the extent practicable.  They shall provide TIFF image files in a self-identified "Images" folder. TIFF files shall be compatible for use in the Parties' respective Relativity databases.

3.2    OCR Text Files.  Producing Parties shall provide Optical Character Recognition ("OCR") text files as a single text file for each Hard Copy Document, not one text file per page.  They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt.  They shall provide OCR text files in a self-identified "Text" directory.  To the extent that a Hard Copy Document is redacted, they shall produce OCR text files for that Hard Copy Document that shall not contain text for redacted portions.  OCR text files shall be compatible for use in the Parties' respective Relativity databases.

3.3    Database Load Files/Cross-Reference Files.  Unless otherwise agreed by the Parties, Producing Parties shall provide Hard Copy Documents with Concordance-compatible image and data load files (i.e., .OPT and DAT files) using standard Concordance delimiters.  They shall provide Concordance-compatible image and data load files (i.e., .OPT and DAT files) in a self-identified "Data" folder.

3.4    Metadata Fields.  Producing Parties shall produce Hard Copy Documents with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) OCRTextPath, (7) Redactions and (8) Confidentiality.  The Producing Party shall populate the Custodians metadata field (i.e., the person or entity from whose data the documents originate) for Hard Copy Documents with the name(s) of individual custodian(s) or non-custodial source(s) as reasonably practicable.  To the extent the Producing Party populates the Custodian metadata field with individual custodian name(s), it shall use any of the

following conventions: "Last Name, First Name"; "last name_first name"; or "first name_last name."  The Producing Party shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon.

3.5    Bates Numbering.  Producing Parties shall assign each TIFF image a Bates number that:  (1) is unique across the entire production; (2) maintains a constant length across the entire production (i.e., padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

3.6    Parent-Child Relationships.  Producing Parties shall preserve parent-child relationships (i.e., the association between an attachment, the child, and the document to which it is attached, the parent), to the extent they exist in the manner in which the Hard Copy Documents are maintained in the ordinary course of business.  For example, if a Producing Party produces a printout of an e-mail with its attachments, it shall produce such attachments sequentially after the e-mail in the order in which they were attached.

3.7    Color.  Producing Parties need not produce in color format in the first instance Hard Copy Documents containing color.  However, if good cause exists for the Receiving Party to request production of certain Hard Copy Documents in color, the Receiving Party may request production of such Hard Copy Documents in color by providing (1) a list of the Bates numbers of the Hard Copy Document(s) it requests to be produced in color format and (2) an explanation of the need for production of the Hard Copy Document(s) in color format.  Producing Parties shall comply with reasonable requests for production of the Hard Copy Documents in color format.

3.8    Unitizing of Documents.  A Producing Party shall not, when scanning Hard Copy Documents: (1) merge distinct Hard Copy Documents into a single record; or (2) split single Hard Copy Documents into multiple records (i.e., Hard Copy Documents should be logically unitized).

[PROPOSED] ORDER ENTERING JOINT STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND DOCUMENTS

**4.     PRODUCTION OF ESI**

4.1     <u>TIFFs</u>.  Producing Parties shall produce ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi.  They shall name each TIFF image as its corresponding Bates number.  They shall maintain original document orientation (i.e., portrait to portrait and landscape to landscape) to the extent practicable.  They shall provide TIFF image files in a self-identified "Images" folder.  TIFF files shall be compatible for use in the Parties' respective Relativity databases.

4.2     <u>System Files</u>.  Producing Parties need not process, review, or produce common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production).

4.3     <u>De-Duplication</u>.  Producing Parties need produce only a single copy of responsive ESI, and shall de-duplicate responsive ESI across custodians with MD5 or SHA-1 hash values at the parent level.  However, a Producing Party:

(a)     shall not eliminate attachments from their parent emails; and

(b)     shall not eliminate Hard Copy Documents as duplicates of responsive ESI.

4.4     <u>Parent-Child Relationships</u>.  Producing Parties shall preserve parent-child relationships (i.e., the association between an attachment and the document to which it is attached). Parties may not withhold a parent or child document that has a responsive family member unless the withheld document is privileged or otherwise protected from disclosure.

4.5     <u>Email Threading</u>.  The Parties may employ email thread suppression during their review process to reduce the volume of documents requiring review. Where a Party asserts privilege over an entire email thread, or where a Party needs to redact privileged portions that appear throughout multiple emails in a thread, the Party may produce only the most inclusive email(s) in the thread. However, where any email in a thread is determined to be responsive and not privileged, the producing Party shall produce all

emails in that thread to preserve the complete communication chain and associated metadata for each message. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.

4.6   Metadata Fields and Processing.  Producing Parties shall produce each of the metadata and coding fields set forth in Table A that can be extracted from ESI for that ESI. The Producing Party shall populate the Custodians field, as appropriate, with the names of individual custodian(s) or non-custodial source(s).  To the extent the Producing Party populates the Custodian metadata field with individual custodian name(s), it shall use any of the following conventions: "Last Name, First Name"; "last name_first name"; or "first name_last name."  The Producing Party shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon.

4.7   Extracted Text Files.  For all ESI containing text (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata.  They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt.  They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file.  However, if a file contains redactions, OCR of the redacted file will be provided in lieu of extracted text.

4.8.   Database Load Files/Cross-Reference Files.  Unless otherwise agreed to by the Parties, Producing Parties shall include in each production (i) a metadata file (DAT file) using standard Concordance delimiters and carat pipe delimiters and (ii) an image load file in Opticon format (.OPT file).  They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (i.e., .OPT and DAT files).

4.9   Native Files.  The following governs the production of native files.

(a)   Producing Parties shall produce Excel files and/or audio/video media files in native format ("Native Files"), unless they have redactions.

[PROPOSED] ORDER ENTERING JOINT STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND DOCUMENTS

(b)    Producing Parties shall provide native files in a self-identified "Natives" directory.  Producing Parties shall produce each native file with a corresponding Bates numbered single-page TIFF placeholder image, which shall state the ESI is being produced as a native file and provide the confidentiality designation, if any.  Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

(c)    Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media.  Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs IV.21 and IV.22.  Producing Parties may produce redacted files with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file.  Producing Parties shall exclude any metadata fields for redacted files that would reveal privileged information.

(d)    Each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data or content from redacted native files that are produced as TIFF image files and ensure that redacted native files will be formatted so as to be readable.  (For example, column widths should be formatted so that numbers do not appear as "#########").

4.10    Messaging Files.  To the extent a Producing Party produces short messaging files (e.g., Text Messages, WhatsApp, Teams, Slack, Skype, Telegram, etc.) ("Short Messages"), the Producing Party shall produce the messaging files in 24-hour segments to the extent reasonably possible and shall provide metadata for each of those 24-hour segments to the extent it is available.

4.11    Structured Data.  To the extent a Producing Party produces ESI contained in a database, the Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format.  Such file will, to the extent feasible and not unduly burdensome, show the column headers for each field of data included.  The Parties shall meet and confer regarding the appropriate

8

data extraction and production format for specific information contained in a database under this paragraph.

4.12  <u>Audio and Video Files</u>.  Producing Parties shall produce audio and video files in a reasonably usable format.

4.13  <u>Requests for Other Native Files</u>.  Other than as specifically set forth above, a Producing Party need not produce ESI in native format.  If good cause exists for the Receiving Party to request production of certain ESI in native format, the Receiving Party may request production in native format by providing (1) a list of the Bates numbers of ESI it requests to be produced in native format; and (2) an explanation of the need for reviewing such ESI in native format.  The Parties shall meet and confer regarding requests for the production of ESI in native format under this paragraph.

4.14  <u>Confidentiality Designations</u>.  If a Producing Party converts native files to image or hard copy format or other ESI designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," as defined by the Protective Order, to Hard Copy Document form, it shall mark the Hard Copy Document with the appropriate designation.  The failure of a Producing Party to mark such Hard Copy Document with the appropriate designation shall not affect such Hard Copy Document's designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Producing Parties shall produce all ESI designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" with the designation in the metadata field pursuant to Table A and in the ESI itself.

4.15  <u>Dynamic Fields</u>.  Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

4.16  <u>Time Zone</u>.  To the extent reasonably practicable, Producing Parties shall produce all ESI normalized to Coordinated Universal Time (UTC).  To the extent a Producing Party cannot process ESI in UTC time, it shall disclose the same and the Parties

[PROPOSED] ORDER ENTERING JOINT STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND DOCUMENTS

shall meet and confer regarding a reasonable alternative, such as the applicable time zone. However, a Producing Party shall have no obligation to reformat or otherwise modify date or time data in ESI, such as spreadsheets, databases or audio files.

4.17    Data Integrity.  The Producing Party may not reformat, scrub, or alter the ESI, including the metadata, in any manner that may downgrade the usability of the data. However, the Producing Party may redact metadata that is privileged.

4.18    Encrypted Files.  The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.  The Producing Party may alternatively provide a working password for each encrypted file.

**5.    PROCESSING OF THIRD-PARTY DOCUMENTS**

5.1    A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and request that the non-party produce Hard Copy Documents and ESI in accordance with the specifications set forth herein.  If an Issuing Party issued a non-party subpoena prior to the execution of this Stipulation, that Issuing Party shall promptly forward a copy of this Stipulation to the non-party and request that the non-party produce Hard Copy Documents and ESI in accordance with the specifications set forth herein.

5.2    The Issuing Party is responsible for providing to all other Parties any Hard Copy Documents and/or ESI obtained pursuant to a subpoena.  If a non-party refuses to produce Hard Copy Documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.  However, the Issuing Party shall apply Bates numbering to the non-party's production if the production does not contain it.

5.3    Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of Parties or non-parties to object to a subpoena.

## 6.    MISCELLANEOUS PROVISIONS

6.1    This Stipulation is intended solely to address the format of Hard Copy Document and ESI productions.  Nothing in this Stipulation is intended to affect the rights of any Party to object to any requests or demand for production.  Nothing herein is intended to, nor shall be construed to, expand, diminish or otherwise affect any Party's discovery obligations.  Nothing in this Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under any applicable law, rule, or court order.

6.2    Nothing in this Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Hard Copy Document or ESI.  Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Hard Copy Documents and ESI.

6.3    Pursuant to Federal Rule of Evidence 502(d), the production of privileged or work-product protected information, whether inadvertent or otherwise, shall not constitute a waiver of any applicable privilege or protection.  The Parties shall comply with the clawback procedure outlined in the Protective Order.

6.4    The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation.  Any practice or procedure set forth herein may be modified by agreement of the Parties, provided that the modification has been confirmed in a writing signed by all counsel of record to the affected Parties.

6.5    Each Party shall bear its own costs related to the preservation, collection, review, and production of ESI in this matter.  However, should a dispute arise concerning the proportionality, burden, or cost of responding to a specific ESI request, any Party may seek appropriate relief from the Court.

6.6    Nothing in this Stipulation shall be construed as a waiver of any right of any Party to apply to the Court for an Order modifying its terms for good cause shown, provided however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Stipulation and Order prior to seeking relief from the Court.

6.7    The Parties shall meet and confer regarding the production of any type of document or data that is not addressed in this Stipulation.

**IT IS SO ORDERED**.

Dated:06/08/226

_____
**Hon. Rozella A. Oliver**
**United States Magistrate Judge**

12

## TABLE A:  ESI METADATA FIELDS

| Field Name | Description |
|---|---|
| BEG BATES | The beginning Bates Numbers for the document at issue. |
| END BATES | The ending Bates Numbers for the document at issue. |
| BEG ATTACH | The beginning Bates Numbers of the collection to which the parent document and any attachments thereto are associated. For example, for an email that is Bates stamped ABC0001 - ABC0002, with two attachments Bates stamped ABC0003 - ABC0004 and ABC0005 - ABC0008, the BegAttach and EndAttach for all three documents would be ABC0001 - ABC0008. |
| END ATTACH | The ending Bates Numbers of the collection to which the parent document and any attachments thereto are associated. |
| CUSTODIANS | Names of all persons from whom the file was obtained (if available).  Multiple items to be separated by a semicolon. |
| RECORD TYPE | Indicates document type, i.e., email; attachment; edoc; hard copy; Short Messages etc. |
| DATE RECEIVED | For all email documents.  Date & time email was received. (i.e. mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| DATE SENT | For all email documents.  Date & time email was sent. (i.e. mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| DATE CREATED | For all non-email and non-email documents. Date & time file was created. (i.e. mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| DATE SAVED | For all non-email documents. Date & time file was last saved or modified. (i.e. mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| DOC TITLE | For all non-email documents & attachments.  Title given to native file. |
| FILE NAME | For all non-email and non-email documents. The original file name of the document. |
| FILE EXTENSION | For all non-email and non-email documents. The original file extension of the document. |
| HASHCODE | Hash code created for file in connection with deduplication (*e.g.*, MD5/SHA-1) |
| HIDDEN CONTENT | For non-email and non-email documents, indicates whether hidden content is present (*e.g.*, track changes, comments, etc.) |

[P̶R̶O̶P̶O̶S̶E̶D̶] ORDER ENTERING JOINT STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND DOCUMENTS

| CONVERSATION ID | For email, the conversation index value. |
|---|---|
| SUBJECT | For all email and non-email documents. Subject line of an email or subject field. |
| AUTHORS | For all non-email documents & attachments. Name of person creating document. |
| FROM | For all email documents. Name of person sending an email. |
| TO | For all email documents. Name(s) of person(s) receiving email. Multiple names to be separated by a semicolon. |
| CC | For all email documents. Names of persons copied on an email. Multiple names to be separated by a semicolon. |
| BCC | For all email documents. Names of persons blind copied on an email. Multiple names to be separated by a semicolon. |
| EMAIL SUBJECT | Subject line of email. |
| CONFIDENTIALITY | Whether the document is Confidential or Highly Confidential. |
| REDACTIONS | Yes/No |
| REDACTION DESIGNATION | A description of the redaction. |
| PARTICIPANTS | For short messages, names of the conversation participants in the document. |
| CONVERSATION START DATE/TIME | For short messages, the conversation start date/time of the document (i.e. mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| CONVERSATION END DATE/TIME | The conversation end date/time of the document (i.e. mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| SHORT MESSAGE CONVERSATION ID | Unique ID that links all documents from the same conversation together. |
| NATIVE LINK | Link to the native file, when included in the production set |
| TEXT LINK | Link to the text file included in the production set |
| PROD VOLUME | Name of production volume |

[Proposed] Order Entering Joint Stipulation Regarding Discovery of Electronically Stored Information and Documents